# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE: COMMUNITY HOME**
**FINANCIAL SERVICES, INC.**                         **CASE NO: 12-01703-EE**

---

**EDWARDS FAMILY PARTNERSHIP, LP AND BEHER HOLDINGS TRUST'S EMERGENCY MOTION TO  (I) PROHIBIT USE OF CASH COLLATERAL (II) REQUIRE THE DEBTOR TO SEGREGATE FUNDS BELONGING TO JOINT VENTURES AND (III) PROHIBIT THE DEBTOR FROM USING SUCH JOINT VENTURE FUNDS AND REQUIRING PAYMENT OF FUNDS TO EDWARDS FAMILY PARTNERSHIP, LP AND BEHER HOLDINGS TRUST**

---

Edwards Family Partnership, LP ("EFP") and Beher Holdings Trust ("BHT"), secured creditors and parties in interest in this proceeding, file their emergency motion to (I) prohibit the use of cash collateral, (II) require the Debtor, Community Home Financial Services, Inc. ("CHFS") to segregate funds related to the various joint ventures by and among EFP, BHT and CHFS and (III) prohibit CHFS from using any funds related to the joint ventures and requiring payment to the funds collected to EFP and BHT.  In support of this motion, EFP and BHT would show as follows:

## I.  INTRODUCTORY STATEMENT

1.      EFP and BHT  have invested tens of millions of dollars in thousands of mortgage loans managed by CHFS.  The transactions are structured two ways: 1) by BHT/EFP lending money to CHFS enabling CHFS to purchase mortgage loan portfolios upon which CHFS granted BHT/EFP  a perfected security interest; and 2) by BHT/EFP directly purchasing mortgage loan portfolios under joint venture agreements with CHFS.  In both scenarios, CHFS serviced the mortgages and collected the monthly payments from mortgagor borrowers.

1

2.       Under the loan documents and the joint venture agreements, CHFS was required to forward the mortgage proceeds to BHT/EFP; however, CHFS has failed to do so.  Specifically, since January of 2011, CHFS has withheld millions of dollars from BHT and EFP which necessitated BHT and EFP filing an emergency motion to appoint a receiver for CHFS.[1]  After two days of trial before United States District Judge Carlton Reeves, at which Butch Dickson the principal of CHFS[2] testified that he had taken millions of dollars in loan payments from both the loan transaction and the joint ventures and diverted the payments for other purposes, CHFS filed this Chapter 11 case.[3]  Over $1,000,000 a month is being collected by CHFS on the two transactions. This money is either BHT/EFP's cash collateral, which CHFS may not use without this Court's permission, or funds that belong to BHT/EFP under the joint venture agreements. CHFS has demonstrated that its management cannot be trusted to properly manage and account for the money. All of these funds must be locked down immediately to prevent further loss to BHT/EFP.

---

[1]CHFS filed suit against BHT, EFP and others in the Chancery Court of Hinds County, Mississippi in February of 2012 alleging a breach of the joint venture agreements. BHT and EFP removed the case to United States District Court for the Southern District of Mississippi, Civil Action No. 3:12cv00252 CMR-LRA, and filed a counter claim which included a request for the appointment of a receiver for CHFS. The District Court conducted a trial on the merits of the motion to appoint a receiver on May 16, 21 and 23, 2012.

[2]Mr. Dickson is no stranger to this Court.  At the receivership hearing, he testified that he was the principal in Leadco Construction Company, Inc., Case No. 00-04355EE. Leadco's attorney in that bankruptcy proceeding, John Allen, is now an employee of CHFS.

[3]At the hearing, Dickson admitted that CHFS had taken over $1,300,000 in loan payments that belonged to BHT and EFP under the joint venture agreements. Dickson never answered the simple question: "where is the money?"

## II.  LOAN TRANSACTION

3.      On or about September 25, 2006, BHT and CHFS entered into a Loan and Security Agreement ("Loan Agreement") with the Rainbow Group, Ltd. ("Rainbow"), a predecessor of BHT and EFP.  A true and correct copy of the Loan Agreement is attached hereto as Exhibit "1" and incorporated herein by reference.  Under the terms of the Loan Agreement, Rainbow agreed to finance up to $10,000,000 of CHFS's purchase of retail installment contracts secured by second mortgages.  The original retail installment contracts and mortgages were assigned to CHFS, who assigned them to Rainbow.  The original contracts and mortgages were delivered to a custodian, Hal McCarley, who was required to maintain possession of the original notes and assignments on behalf of Rainbow and its successors.  A true and correct copy of the custodial agreement is attached hereto as Exhibit "2" and incorporated herein by reference.

4.      Under the Loan Agreement, payments on the underlying retail installment contracts were made to a Blocked Account  at BancorpSouth, in Tupelo, Mississippi ending in numbers 3644.  The funds in the Blocked Account were to be released only to the Rainbow, and its successors, BHT and EFP.  At the receivership hearing, Mr. Dickson testified that CHFS had used account no. 3644 as a "sweep account" and commingled other funds in that account. At a minimum, this constitutes a breach of the Loan Agreement.

5.      Under the terms of the Loan Agreement, CHFS granted Rainbow a first lien security interest in and to all of the retail installment contracts, mortgages and all of the payments held in the Blocked Account.  The security interest was perfected by the delivery of possession of the contracts to the custodian as required by Mississippi Code Annotated 75-9-313.

6.      On or about September 25, 2006, CHFS executed a promissory note to and in

3

favor of Rainbow in the original principal amount of $10,000,000 ("2006 Note"). A true and correct copy of the 2006 Note is attached hereto as Exhibit "3" and incorporated herein by reference.

7.      Pursuant to the terms of the 2006 Note, CHFS agreed to pay Rainbow the unpaid principal amount of all advances made to CHFS under the Loan Agreement. The 2006 Note required payment of interest only on the outstanding principal amount advanced to CHFS from the date of the original advance under the Loan Agreement until February 25, 2009. Thereafter, CHFS agreed to pay principal and interest until the maturity date of March 25, 2009.

8.      On or about August 1, 2007, CHFS executed a supplemental promissory note and credit facility in the amount of $3,000,000 payable to Beher Holdings, Ltd., a successor to Rainbow ("Supplemental Note"). A true and correct copy of the Supplemental Note is attached hereto as Exhibit "4" and incorporated herein by reference. The supplemental promissory note increased the amount of available credit under the Loan Agreement to $15,000,000. The Supplemental Note's maturity date was also March 25, 2009.

9.      The 2006 Note and the Supplemental Note matured in March 2009. BHT and EFP agreed to renew the indebtedness owed by CHFS under the notes.

10.     On or about August 10, 2010, the loan amount was increased and divided between two lenders, BHT and EFP. Specifically, on August 10, 2010, CHFS executed a commercial loan note and line of credit in the amount of $12,000,000 and payable to BHT ("BHT Note"). A true and correct copy of the BHT Note is attached hereto as Exhibit "5" and incorporated herein by reference. The BHT Note provides for the payment of interest only at 12.5% until maturity on August 1, 2013. The BHT Note was subject to the terms and conditions of the Loan Agreement.

4

11.     On August 10, 2010, CHFS executed a commercial loan note and line of credit in the original principal amount of $4,000,000 and payable to EFP ("EFP Note").  A true and correct copy of the EFP Note is attached hereto as Exhibit "6" and incorporated herein by reference.  The EFP Note provides for the payment of interest only at 12.5% until maturity on August 1, 2013. This note was also subject to the terms and conditions of the CHFS loan and security agreement.

12.     On August 10, 2010, CHFS executed an amendments to the Loan and Security Agreement which recognized that BHT and EFP were the successor to Rainbow under the Loan and Security Agreement. True and correct copies of the amended Loan and Secuirty Agreements are attached hereto as Exhibits "7" and "7A" and incorporated herein by reference.

13.     CHFS defaulted under the terms of Loan Agreement, BHT Note, and EFP Note by, *inter alia*, failing to make the payments due since December 10, 2010, by failing to maintain the Blocked Account required by the Loan Agreement, by failing to provide required financial statements on CHFS, by exceeding its borrowing limit, and by failing to release funds from the Blocked Account. CHFS is also in default by commingling funds in the Blocked Account.

14.     On January 20, 2012, BHT and EFP made demand on CHFS to cure the defaults on the BHT Note, the EFP Note and Loan Agreement but CHFS failed to do so.  A true and correct copy of the demand letters are attached hereto as Exhibits "8" and "9" respectively and incorporated herein by reference.  BHT and EFP have accelerated all sums due on the BHT and EFP Notes.

15.     As of April 18, 2012, a balance of $13,555,914 is due and payable on the BHT Note, and a balance of $4,518,638 is due on the EFP Note.  Interest continues to accrue.

16.     According to the last information provided by CHFS, as of October 31, 2011, there were 1,944 notes and mortgages subject to the Loan Transaction.

### III.  JOINT VENTURE TRANSACTIONS

17.     On or about January 28, 2008, EFP and CHFS entered into a Mortgage Portfolio Joint Venture ("Agreement I").  A true and correct copy of the Agreement I is attached hereto as Exhibit "10" and incorporated herein by reference.

18.     Pursuant to the terms of Agreement I, EFP committed approximately $3,000,000 to purchase 233 second mortgages with a principal balance of $10,400,000 from DLJ Mortgage Capital.

19.     The terms of Agreement I provided that EFP would be paid interest monthly on its $3,000,000 advance at the rate of 12%.  CHFS would receive a service fee of $20 a month for each loan payment collected.  Once EFP's initial advance with interest and CHFS's servicing fees were paid, the net proceeds from the loan portfolio would be split 75% to EFP and 25% to CHFS.

20.     The notes and mortgages purchased by EFP were assigned to EFP and held by EFP until all were paid.  It was agreed that all payments on the underlying notes and mortgages were to be made to a lock box account.  CHFS was required to send a monthly statement along with a financial summary of its collections to EFP.

21.     In February of 2008, CHFS proposed that EFP purchase a second mortgage portfolio.  After analysis of the portfolio and negotiation with the seller, EFP and CHFS entered into the Mortgage Portfolio Joint Venture II agreement on April 20, 2008 ("Agreement II"). A true and correct copy of the Agreement II attached hereto as Exhibit "11" and incorporated herein

6

by reference.  The terms of the Agreement II were essentially the same as Agreement I, with additional detail under the Basic Business Terms heading.   EFP purchased 151 first and second mortgages from DLJ Mortgage Capital/Bank of Boston pursuant to Agreement II.

22.    Between July 2008 and December 2010 EFP purchased 4 additional portfolios which CHFS serviced under the same business arrangement.  All original notes with assignments are owned and held by EFP. All funds received from the loans within the 6 portfolios were to be kept in a lock box for the benefit of EFP and forwarded monthly to EFP's bank account.

23.    As of April 15, 2012, the remaining EFP investment balances for each of the six portfolios was:

    A)  Portfolio #1: $1,269,005;

    B)  Portfolio #2: $563,327;

    C)  Portfolio #3: $90,581;

    D)  Portfolio #4: Mountain View $48,343;

    E)  Portfolio #5:  BWP 2009  $2,608,202;

    F)  Portfolio #6:  BWP 2007 $3,216,710

Thus, the total EFP investment balance was $7,710,044.

24.    On March 21, 2011, BHT and CHFS entered into an agreement pursuant to which BHT agreed to provide $6,500,000 to purchase the 2008 Blue World Pools Mortgage Portfolio consisting of approximately 700 loans secured by second mortgages with an outstanding principal balance of $10,000,000 ("BHT Agreement").  The BHT Agreement is attached hereto as Exhibit "12" and incorporated herein by reference.  The BHT Agreement provided that BHT was the owner of the notes and mortgages and entitled to hold possession of the same.  BHT

would be credited for interest on its outstanding investment at the rate of 12%.  The parties agreed to servicing fee to CHFS in the amount of  $15 per mortgage payment collected.  The parties agreed to split the net proceeds 75/25 after repayment of BHT's investment. The original notes with assignments were to be held by J. Patrick Frascogna, as custodian. According to Mr. Dickson's testimony, he took the notes from Frascogna and has possession of them.

25.     The BWP 2008 mortgage portfolio was purchased in 4 installments between March 8 and June 30, 2011.  As of April 15, 2012 the outstanding balance owed to BHT on its BWP investment was $4,857,782.

26.     CHFS breached the terms of Agreement I, Agreement II, and the BHT Agreement by failing to forward to EFP/BHT the February, March and April 2012 payments made  by the individual borrowers on the notes owned by EFP and/or BHT. At the receivership hearing, Mr. Dickson testified that CHFS had kept approximately $1,300,000 of joint venture funds and spent it as CHFS pleased.

## IV.  CHFS SHOULD BE PROHIBITED FROM USING EFP AND BHT'S CASH COLLATERAL UNDER THE LOAN TRANSACTION

27.     Under the Loan Transaction, EFP and BHT have a perfected security interest in at least 1,944 promissory notes that in are possession of a custodian for the lender. The payments on the underlying notes constitute EFP and BHT's cash collateral.

28.     Pursuant to 11 U.S.C. § 363, CHFS is prohibited from using EFP and BHT's cash collateral without their consent. EFP and BHT do not consent to the use of their cash collateral.

29.     Further, because the value of EFP and BHT's collateral decreases each month as payments on the underlying loans are made, there is no adequate protection that CHFS can offer

to protect EFP and BHT's interest. Accordingly,  CHFS must be prohibited from using any of EFP or BHT's cash collateral.

30.     EFP and BHT are entitled to an order prohibiting CHFS from using EFP and BHT's cash collateral. Because of CHFS's pre-petition misuse of the cash collateral, it should be required to segregate all cash collateral of EFP and BHT and place it into a separate blocked account as required under the Loan Agreement with the proceeds from the account paid to EFP and BHT on a monthly basis.

## V.  CHFS SHOULD BE REQUIRED TO SEGREGATE ALL FUNDS COLLECTED ON THE JOINT VENTURE TRANSACTIONS AND SHOULD BE PROHIBITED FROM USING ANY SUCH FUNDS.

31.     EFP and BHT purchased all the promissory notes and mortgages that are subject to the joint venture agreements. Pursuant to the terms of the joint venture agreements, EFP and BHT own all of the promissory notes and mortgages. The promissory notes, the mortgages and the payments on the same belong to EFP and BHT and are not property of the estate under 11 U.S.C. §541.

32.     The estate's only interest in the joint ventures is the right to service the loans for a monthly fee and a 25% share of the net proceeds, if any, of the joint venture after EFP and BHT are repaid their purchase price for the loans with interest.[4]

33.     As a matter of law, CHFS is a fiduciary to EFP and BHT with respect to the collection of all payments on the loans subject to the joint venture agreements. Under the terms of the joint venture agreements, CHFS was required to direct all payments to a lock box account

_____

[4]CHFS's ability to service these loans is questionable. Mr. Dickson testified at the receivership hearing that CHFS did not have a license to service any loans under Mississippi law.

9

to be distributed only to EFP and BHT. CHFS breached its fiduciary duties by commingling the payments on the loans subject to the joint ventures with funds in other bank accounts under CHFS's control and by spending the money that belonged to EFP and BHT.[5]

34.    According to Mr. Dickson's testimony at the receivership hearing, CHFS appropriated all of the February, March and April payments on the loans subject to the joint ventures, approximately $1,300,000, and spent the money for its own purposes. Such egregious misconduct by a fiduciary cannot continue in the bankruptcy proceeding. Accordingly, EFP and BHT are entitled to an order requiring CHFS to segregate all loan payments received on the loans subject to the joint venture agreements into separate accounts.

35.    Specifically, CHFS should be required to establish two separate accounts: one dedicated for all trust funds collected on the loans subject to the EFP joint ventures and one dedicated for all trust funds collected on the loans subject to the BHT joint venture.

36.    Because the proceeds collected on the loans subject to the joint ventures belong to BHT and EFP and are not property of the estate, CHFS is prohibited from using any of those funds for any purposes. Accordingly, EFP and BHT are entitled to an order expressly prohibiting CHFS from using any of the joint venture proceeds for any purpose and requiring that all the proceeds be paid to BHT and EFP in accordance with the terms of the joint venture agreements.

WHEREFORE, PREMISES CONSIDERED, EFP and BHT demand the following relief:

1.    An order prohibiting CHFS from using EFP and BHT's cash collateral;

2.    An order requiring CHFS to establish a new blocked account to deposit all of EFP

---

[5]At the receivership hearing, Mr. Dickson could not answer the simple question: "Where is the money?"

and BHT's cash collateral and requiring monthly payments from the account to EFP and BHT;

3.    An order requiring CHFS to segregate all payments received on the loans subject to the EFP joint venture;

4.    An order requiring CHFS to segregate all payments received on the loans subject to the BHT joint venture;

5.    An order prohibiting CHFS from using any of the proceeds from the loans subject tot he EFP joint venture or the BHT joint venture;

6.    An order requiring CHFS to turn over all funds in the segregated joint venture accounts to EFP and BHT on a monthly basis;

7    For general relief.

Dated this 30th day of May, 2012.

EDWARDS FAMILY PARTNERSHIP, LP
AND BEHER HOLDINGS TRUST


By: /s/ Jim F. Spencer, Jr.
Jim F. Spencer, Jr.


OF COUNSEL:

Jim F. Spencer, Jr. (MSB # 7736)
Watkins & Eager PLLC
Post Office Box 650
Jackson, MS 39205-0650
(601) 965-1900 (p)
(601) 965-1901 (f)
jspencer@watkinseager.com

11

## <u>CERTIFICATE OF SERVICE</u>

I, Jim F. Spencer, Jr., hereby certify that I have this day caused to be mailed via United States mail, postage prepaid, a true and correct copy of the above and foregoing document to the following counsel of record:

Jonathan Bissette
Wells Marble & Hurst, PLLC
300 Concourse Blvd, Suite 200
Ridgeland, MS 39157

and caused to served via electronic mail on the Office of the United States Trustee:

Ronald.McAlpin@usdoj.gov

This 30th day of May, 2012.

By: <u>/s/ Jim F. Spencer, Jr.</u>
