UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

IN RE:

COMMUNITY HOME FINANCIAL
SERVICES, INC.,                                    CASE NO. 12-01703-EE

DEBTOR.                                                      CHAPTER 11

### TRUSTEE'S OBJECTION TO EDWARDS FAMILY PARTNERSHIP, LP AND BEHER HOLDING TRUST'S MOTION TO CONVERT TO CHAPTER 7 *[Dkt. #1041]*

Kristina M. Johnson, Chapter 11 Trustee ("**Trustee**") of the Estate of Community Home

Financial Services, Inc. ("**Debtor**"), objects to the Motion to Convert to Chapter 7 ("**Motion to**

**Convert**") **[Dkt. #1067]**[1] filed by Edwards Family Partnership, LP and Beher Holdings Trust

("**EFP/BHT**") in the above-referenced Chapter 11 proceeding.  In support thereof, the Trustee

states the following:

### EFP/BHT'S REQUEST FOR IMMEDIATE HEARING

The commencement of a hearing on the Motion to Convert within 30 days and a ruling

within 15 days of the commencement of such hearing is statutorily provided by 11 U.S.C. §

1112(b)(3) absent either consent by the movant for an alternative time or compelling

circumstances which prevent the Court from meeting the time limits established by Section

1112(b)(3).  EFP/BHT have refused consent to anything short of this time frame in their Motion

to Convert.  While the Trustee concedes that under Fed. R. Bankr. Proc. 5011(c), the Trustee's

Motion to Withdraw Reference & Consolidate Actions[2] **[Dkt. #1026, 1027]** does not stay the

---

[1] Docket references are to the CHFS Chapter 11 Case docket unless otherwise noted.

[2] The Trustee hereby incorporates by reference the definitions from her Motion to Withdraw Reference & Consolidate Actions **[Dkt. #1026]** and her initial Memorandum in Support Thereof **[Dkt. #1027]**.

administration of the CHFS Chapter 11 Case, the impact of the District Court's rulings on the Motion to Withdraw Reference & Consolidate Actions, the related Trustee's RICO Case against the Edwards Parties, and her Motion to Consolidate & Intervene filed in the Edwards Guaranty Case, the Edwards TRO Case and the Trustee's RICO Case in the District Court will have a significant impact on how the CHFS Chapter 11 Case proceeds.  The Trustee asserts that her motions pending in District Court (collectively, the "Trustee's District Court Motions")  and the Trustee's RICO Case constitute compelling circumstances such that this Court should not rule on the Motion to Convert in the statutory timeframe provided by Section 1112(b)(3).   For this reason and others discussed herein, the Trustee requests this Court to find that compelling circumstances prevent the Court from meeting the time limits established by Section 1112(b)(3). and to wait until the District Court has ruled on the Trustee's District Court Motions.[3] Alternatively, the Trustee requests the Court to deny the Motion to Convert on the merits.

## INTRODUCTION

This Case cannot be classified as anything but complex.  The Trustee offers a handful of indisputable facts:  (1) CHFS is company whose business is in a highly regulated consumer finance industry at the state and federal level; (2) over $9 million in cash along with books and records were stolen out of the bankruptcy Estate and removed to two foreign countries in Latin America; (3) a rogue operation continued to divert money away from the Estate even after the Trustee was appointed; (4) many of the books and records of CHFS still have not been located or

---

[3] Due to the technical requirement to file the Motion to Withdraw Reference & Consolidate Actions in not only the main CHFS Chapter 11 Case but also in each of the Edwards Adversary Proceedings and the Trustee's Dickson Proceeding, the identical motion has been given five different cause numbers by the District Court.  This has further complicated the procedural issues involved.  The Trustee has requested guidance from the District Court but has yet to receive a response.  *See* Exhibit "A" attached hereto and incorporated herein by reference.

turned over to the Trustee in spite of her demand[4]; (5) the former CHFS president is now in federal custody[5] without bail awaiting his criminal trial  and has pleaded the Fifth Amendment when asked about CHFS's operations and business affairs; (6) multiple civil actions surrounding the relationship of EFP/BHT and CHFS and its affiliates are pending in the Bankruptcy Court and the District Court; (7) e-mails the Trustee recently uncovered that are attached to the Meehan Affidavit **[Dkt.# 1017, Ex. "BB"]** demonstrate that the Edwards Parties have been working to obtain and did obtain CHFS assets in September, 2014, without advising the Trustee or turning over the information.   Even this sampling[6] of undisputed facts indicates the CHFS Chapter 11 Case and the related matters referenced in the Trustee's District Court Motions are anything but simple.   EFP/BHT's suggestion that this case is a "two-party dispute"[7] is an over-simplification which overtly fails to acknowledge not only the Trustee's existence but also her role in this case

---

[4]  The Trustee has also served subpoenas under Fed. R. Bankr. Proc. 9016 on a number of persons and entities, including the Edwards Parties.  **[Dkt. # 1055-1060]**.  The Edwards Parties have objected to the production of *any information* to the Trustee. **[Dkt. # 1064]**.  This is in spite of the Trustee's clear right to seek this information under Fed. R. Bankr. Proc. 9016 and 2004, and her duties under 11 U.S.C. §1106(a)(3) and the Edwards Parties' representations to this Court at hearings held on March 17, 2015 in connection with their meritless objection to the Trustee's application to employ Costa Rican counsel **[Dkt. ##983, 998]** that they would voluntarily provide information to the Trustee.  These subpoenas were not issued until the information previously, voluntarily promised by EFP/BHT had not been supplied even after further inquiry by counsel for the Trustee and the filing of the Meehan Affidavit with the Trustee's 2nd Report (defined hereinafter), clearly indicating that they possessed information which should be turned over to the Trustee.

[5]  On or about March 14, 2014, Butch Dickson was apprehended in Panama en route to Costa Rica due to the Criminal Complaint filed on or about March 1, 2014, a true and correct copy of which is attached to the Trustee's 1st Report (defined hereinafter).  Butch Dickson has been held without bond pending his criminal trial since he was apprehended.  On February 18, 2015, First Superseding Indictments were filed by the U.S. Attorney's Office, which added Colby Dickson (Butch Dickson's son and a former employee of CHFS) as a criminal defendant as well as additional criminal violations, which are attached to the Trustee's 2nd Report (defined hereinafter).

[6]  The Trustee has filed two statements in compliance with her statutory duties under 11 U.S.C. § 1106(a)(4) respectively on December 17, 2014 **[Dkt. #918]** (the "Trustee's 1st Report") and March 28, 2015 **[Dkt. #1017]** (the "Trustee's 2nd Report") (collectively, the "Trustee's Reports") which are incorporated herein by reference.

[7]  Motion to Convert, ¶4.

as fiduciary to *all* creditors of CHFS.[8]   Many of the issues previously cited by EFP/BHT as reasons to appoint a Chapter 11 trustee in this case[9] continue to be issues the Trustee has had to manage while also dealing with the pressing issues of the theft of nearly all of the Estate's funds on deposit,[10] the disappearance of all business operations, documents and employees of the Debtor to unidentified places and a rogue operation by the Debtor intentionally designed to divert additional Estate funds away from the Estate after her appointment.

ALLEGATIONS OF THE MOTION TO CONVERT

The Motion to Convert contains 57 numbered paragraphs much of which constitutes self-serving, inaccurate and/or incomplete statements regarding the EFP/BHT claims in the CHFS Chapter 11 Case and inaccurate descriptions of the Trustee's actions in this case and in the District Court.   The Trustee denies all allegations of the Motion to Convert unless specifically admitted herein and responds to the factual inaccuracies set out in the Motion to Convert below:

I.      **EFP/BHT's Incorrect Allegations of "Fact"**

A.      **The Trustee's Withdrawal of Her Plan and Disclosure Statement Constitutes an "Admission" This Case Has No Reasonable Likelihood of Rehabilitation[11] and That She Seeks to "Wag[e] a Litigation War" Instead**

The Trustee's first Plan of Liquidation filed on February 9, 2015 **[Dkt. #965]** ("Trustee's 1st Plan") and associated Disclosure Statement **[Dkt. #964]** were withdrawn on April 7, 2015 **[Dkt. #1022]** shortly after the Trustee discovered the actions of the Edwards Parties more

---

[8] EFP/BHT recognized in their own motion to appoint a trustee filed early in this case **[Dkt.#96]** many of the complexities of the CHFS Chapter 11 Case.   Therein, they also specifically acknowledge that the interim "cash collateral" orders they so strenuously press in the Motion to Convert as indicative of their sole right to the revenues of the CHFS Estate, were in fact "designed to protect not only CHFS's single largest creditor but all creditors." **[Dkt.#96, ¶16.]** (emphasis added).

[9] *See supra* n.8.

[10] The Trustee had approximately $7,500.00 available in CHFS accounts at the time of her appointment.

[11] Motion to Convert, ¶¶ 1, 3, 39, 45, 47.

specifically described in the Trustee's RICO Case. *See* Exhibit "B" attached hereto. The Trustee's 1st Plan was withdrawn because it proposed to give EFP/BHT in full satisfaction of its allegedly secured claim substantially all assets of the Estate and to dismiss the Estate's claims in the Edwards Adversary Proceedings after affording appropriate protections to other creditors. The Trustee's 1st Plan also gave all net recoveries to the unsecured creditor class (of which EFP/BHT was the primary creditor anticipated) for their alleged unsecured claims on the joint venture loan porfolios.

The Trustee, in her business judgment and consistent with her fiduciary duties to all creditors, determined that the recently discovered actions of EFP/BHT in hindering her efforts to recover assets for the Estate no longer warranted the treatment proposed in the Trustee's 1st Plan. She further determined it was necessary to file the Trustee's RICO Case and seek to consolidate (as proposed) the Edwards Adversary Proceedings with the Edwards Guaranty Case, the Edwards TRO Case, the Trustee's RICO Case and the Trustee's Dickson Proceeding.[12] This withdrawal is in no way an admission that the Trustee seeks to "instead wag[e] a litigation war"[13] against the Edwards Parties in lieu of proceeding with her plan to administer assets in the CHFS Chapter 11 Case. The Trustee's 1st Plan simply needed to be amended to change the treatment of the EFP/BHT claims as is now reflected by the Trustee's First Amended Chapter 11 Plan of Liquidation of the Estate of Community Home Financial Services, Inc. Proposed by the Trustee, Kristina M. Johnson Dated as of May 15, 2015 **[Dkt. #1081]** (Trustee's 2nd Plan") and First Amended Disclosure Statement for the Chapter 11 Plan of Liquidation of the Estate of Community Home Financial Services, Inc. Proposed by the Trustee, Kristina M. Johnson Dated

---

[12] *See* Trustee's proposed consolidations referenced in her District Court Motions attached hereto as Exhibit "C" and incorporated herein by reference.

[13] Motion to Convert, ¶ 1.

as of May 15, 2015 **[Dkt. #1080]** ("Trustee's Amended Disclosure Statement") filed on May 15, 2015.

The Trustee filed her 1st Plan a little over one year after her appointment in spite of tremendous difficulties described in her 1st Report and in the face of ongoing parallel, federal, criminal proceedings, confirmed theft of nearly all Estate property, and woefully incomplete records of the Debtor. Approximately 30 days after the withdrawal of the Trustee's 1st Plan, the Trustee's 1st Plan was replaced with the Trustee's 2nd Plan out of necessity after discovery of information revealed in the Trustee's 2nd Report, which contained the Meehan Affidavit and the supporting attachments thereto. The Motion to Convert was filed in apparent retaliation a mere ten days after the Trustee's District Court Motions were filed and is an attempt to divert attention away from the improper actions of the Edwards Parties.

### B.    EFP/BHT Comprise 99.9% of the Creditors in the CHFS Case[14]

Creditors continue to file proofs of claim in the CHFS Chapter 11 Case.[15] Importantly, many potential creditors of CHFS were never noticed with the initial deadline to file proofs of claim. As such, the Trustee has filed Motion: (I) to Establish Amended Bar Date for Pre-Petition Claims and Bar Date for Post-Petition and Administrative Claims; and (II) to Approve Form, Manner, and Sufficiency of Notice for Same **[Dkt. #1067]** ("Bar Date Motion") to establish a new bar date and notice protocols for filing claims in the CHFS Chapter 11 Case.[16] No deadline has been set for administrative expense claims incurred to date and the Bankruptcy Court has not yet ruled on various administrative expense claims that have been asserted, including those of the

---

[14] Motion to Convert, ¶¶ 1, 8, 44, 52.

[15] *See* CHFS Proof of Claim Docket.

[16] As with nearly every filing the Trustee has made in the CHFS Chapter 11 Case since her appointment, EFP/BHT have objected to the Bar Date Motion **[Dkt. #1079]**.

Debtor's former attorneys and experts.  While the Trustee does not dispute that EFP/BHT may have significant claims against the CHFS Estate, the exact amount, nature and priority of those claims have yet to be determined.  It is premature to ascertain their percentage of the Estate. EFP/BHT is not the only relevant creditor of the Estate.  The Trustee's fiduciary obligations run to all creditors including those EFP/BHT consider insignificant or non-existent.

Moreover, the assertion by EFP/BHT that the CHFS Chapter 11 Case is "essentially a two-party dispute" between CHFS and its former principals, on the one hand, and the Edwards Parties, on the other hand, is just wrong. EFP/BHT seem oblivious to two critical points.  First, the Trustee replaced CHFS as debtor-in-possession.  Second, the Trustee represents the Estate, not Dickson or the Debtor.  The Trustee is a separate party and is the *sole* representative of the Estate.  11 U.S.C. § 323(a)[17], 1104.  In that capacity, the Trustee has pending actions against Butch Dickson and his affiliates as well as the Edwards Parties.  EFP/BHT's continued failure to acknowledge the Trustee is ***not*** the Debtor is akin to their failure to recognize that just because funds may have been invested and/or loaned to CHFS by EFP/BHT does not make those funds the property of EFP/BHT or subject to their control.

### C.    The Trustee has been "Completely Unwilling to Address" the "Meritless" Edwards Adversary Proceedings since Her Appointment Over 15 Months Ago[18]

First, the Edwards Adversary Proceedings filed by the Debtor prior to the Trustee's appointment were initially stayed by consent of all parties thereto immediately after the Trustee was appointed to avoid litigation expenses at a time when no Estate funds existed to either fund litigation or fight over.  Second, EFP/BHT gloss over the enormously successful results the

---

[17] EFP/BHT previously acknowledged this before this Court in their prior support for the Trustee's appointment in January, 2014. **[Dkt. # 463, ¶15]**.

[18] Motion to Convert, ¶¶ 11-17.

Trustee has obtained in a relatively short period of time as a result of not having to litigate the Edwards Adversary Proceedings:  successful repatriation of approximately $6 million in stolen funds,  prevention of further diversion of funds, general stabilization of mortgage portfolio, and the discovery of additional assets and material witnesses in Latin America – all in a mere 16 months.

Third, as previously provided herein,[19] the Trustee's 1st Plan in fact provided for the dismissal of these claims upon confirmation. A stay of proceedings to save Estate funds pending stabilization followed by a provision in a plan providing for dismissal of the Estate's claims in the Edwards Adversary Proceedings is, in fact, action which addresses the Edwards Adversary Proceedings.  EFP/BHT's assertions to the contrary are at best misleading.  Fourth, as EFP/BHT have previously acknowledged, the Trustee "has an independent duty to investigate the claims of EFP and BHT and decide for herself the validity of the claims.  *See* 11 U.S.C. 1106(a)(1).  It will be the [T]rustee's decision alone whether to pursue objections to EFP and BHT's claims…." **[Dkt. #463, ¶16]** (emphasis added).  The Trustee's decision is now evidenced in her request for relief in the Trustee's District Court Motions, the Trustee's RICO Case, the Trustee's 2nd Plan and the Trustee's 2nd Disclosure Statement.  EFP/BHT simply do not like the Trustee's decision.

    **D.**    **The Trustee "Purchased" the Information in the Meehan Affidavit and Inappropriately Paid Post-Petition Taxes with "Cash Collateral"[20]**

This allegation is without merit.  EFP/BHT cite to the March 2015 Monthly Operating Report filed by the Trustee in the CHFS case which indicates two wires to Meehan for "protect, secure, preserve collateral."   These payments were to:  (1) secure and return to the United States 25 CHFS computers used in the rogue Latin American operation after the Trustee's appointment;

---

[19] *See supra*, p.5.

[20] Motion to Convert, ¶¶ 13, 28, 32.

{JX156416.1}                                    8

and (2) to secure, purchase and return to the United States 7 computers owned by the call center in Costa Rica that conducted the rogue operation. All of these computers were believed to contain CHFS servicing records on U.S. based loans and personal identifiers of U.S. citizens (such as Social Security numbers). The Trustee's decision to obtain and secure the return to the United States of these computers and the information contained on them is clearly within her duties under 11 U.S.C. § 1106(a) to obtain possession of Estate Property under 11 U.S.C. §§ 541 and 1106(a) and under the federal Graham-Leach-Bliley Act to secure personal identifiers of United States citizens in her operation of the CHFS business within 11 U.S.C. § 1108.

Meehan was not paid for his testimony. He provided his testimony and supporting documents to the Trustee voluntarily and unconditionally. Moreover, the assertion by EFP/BHT that the Trustee used their "cash collateral" to secure the return of the CHFS property from Costa Rica in violation of Court order is wrong. First, whether any of the funds at issue in the CHFS Chapter 11 Case are "cash collateral" has been in dispute since this case was filed. These issues are part of the Edwards Bankruptcy Litigation that is the subject of the pending Trustee's District Court Motions and is, therefore, clearly disputed. Second, the Trustee has received funds (not readily traceable to any interests of EFP/BHT) which are sufficient to cover the cost to return this CHFS property. Indeed, there is information indicating the Debtor purchased loans post-petition outside of any relationship with EFP/BHT.

Similarly, EFP/BHT complain that the Trustee paid post-potion Mississippi franchise taxes in the amount of $84,000.00 in March, 2015 in alleged violation of "cash collateral" orders.[21] For the same reasons previously noted, the Trustee's payment of these funds taxes was not a violation of any "cash collateral" order. In fact, the failure of the Trustee to pay said taxes

---

[21] Motion to Convert, ¶13 n.4.

would not only be a violation of her duties under Section 1106(a), it would be a basis to convert under Section 1112(b)(4)(I). These payments were properly made by the Trustee and not in violation of any Court order.

### E. The Trustee Suffers Loss of Independence and "Impartiality", Is No Longer Disinterested and/or Has Developed a "Conflict of Interest" as a Result of Her Firm's Unpaid Administrative Expense Claim[22]

Ironically, EFP/BHT admitted in connection with the first fee application filed by the Trustee's counsel that the fees were reasonable **[Dkt. #1046, ¶20]** (not unreasonable[23] or "exorbitant"[24] as they now assert). It should come as no surprise that legal fees and expenses will be sizeable in a case of this complexity, given the theft of millions of dollars of Estate funds, the commission of bankruptcy crimes, international legal issues, absconding principals of the Debtor, and a rogue operation of the Debtor's business in two foreign countries specifically designed to further divert Estate funds – just to name a few. Carried to its logical conclusion, EFP/BHT's position is that a bankruptcy trustee's judgment in a complex case becomes clouded the moment someone files an objection claiming the fees are too high or otherwise should not be paid. Such contentions should not be permitted as a matter of public policy as it will discourage competent trustees and attorneys from accepting difficult, complex cases. The Bankruptcy Code and Rules have clear procedures for the ultimate determination of fees and expenses, and allegations such as those made by EFP/BHT (which appear to be retaliatory in direct response to the Trustee's exercise of her statutory duties that EFP/BHT have already acknowledged[25]) have no place in the analysis of the merits of civil litigation. Moreover, the Trustee's exercise of her

---

[22] Motion to Convert, ¶¶ 1-2, 27, 49-56.

[23] Motion to Convert, ¶51 n.11.

[24] Motion to Convert, ¶51.

[25] *See* Dkt.# 463, ¶16.

judgment in seeking to re-characterize and subordinate the claims of EFP/BHT is not without precedent.[26]

There is no basis in law (and notably, none is cited by EFP/BHT) or fact to assert the Trustee (or her lead counsel firm) has developed a conflict of interest, impartiality, or loss of disinterestedness as a result of the alleged administrative insolvency of the CHFS Chapter 11 Case.

Instead, EFP/BHT are guilty of the same behavior they complained of before this Court when the Debtor and its affiliates contested the Trustee's appointment:  they "seem to confuse a disagreement... with a conflict of interest" **[Dkt.#463, ¶14]** and "manufactured the notion of a potential conflict in an improper attempt to pressure the trustee…." **[Dkt.# 436, ¶18]**.  As EFP/BHT so clearly stated, "[t]he law does not permit …such a stranglehold on the trustee…or the manner in which the trustee decides to operate the company and pursue (or not pursue) the company's claims." **[Dkt.# 436, ¶18]**.  In the words of EFP/BHT, "[t]his situation does not present a conflict." **[Dkt. #436, ¶18]**.

**F.    Assets Associated with the "Joint Venture" Between CHFS and EFP/BHT are not Property of the Estate[27]**

Of course, this begs the question.  The exact nature of the joint venture relationship, CHFS's rights and interests in that relationship and any loans affiliated with that relationship are the matters being litigated in the Edwards Bankruptcy Litigation. What is or is not property of the Estate relating to the joint ventures[28] is yet to be determined in the Edwards Adversary Proceedings.  The interests of CHFS could vary in type and value over seven different alleged

---

[26] *See, e.g., Templeton v. O'Cheskey (In re American Housing Foundation)* No. 14-10563 (5th Cir. Apr. 28, 2015) (creditor's rights were subordinated under § 510 to an equity interest with no distribution).

[27] Motion to Convert, ¶¶ 4 n.1, 13, 24.

[28] This excludes the home mortgage portfolio.

joint ventures (only three of which have written agreements).  The interests of CHFS could be anything from a fifty percent ownership interest to a contractual split with servicing fees. EFP/BHT's generalization that CHFS has no property interest in the joint ventures within the meaning of 11 U.S.C. § 541 is without merit and is not warranted by existing law.[29]

EFP/BHT's assertion that "[a]ll of the money involved in this case"[30] is traceable to them is simply incorrect. The Trustee has collected funds from a variety of sources not all of which are readily traceable to any particular loan portfolio in which EFP/BHT may ultimately be determined to have an interest.  Moreover, to assert the Trustee is cannot operate the business of CHFS or comply with her statutory duties without the "permission" of EFP/BHT when any right to demand that permission is expressly challenged in the Edwards Bankruptcy Litigation currently the subject of the Trustee's District Court Motions is unreasonable and without merit.

### G. The Trustee's District Court Motions were Filed by the Trustee in District Court Because They are "Too Complex" for the Bankruptcy Court[31]

The Trustee merely filed pleadings seeking to change the forum to save the Estate unnecessary administrative expenses and in the interests of judicial economy given the limited jurisdiction of the Bankruptcy Court.  The Trustee's District Court Motions ask the District Court to oversee the CHFS Chapter 11 Case due to the significant issues of international, federal and state laws and the need to consolidate related litigation currently pending in both the District Court and in the Bankruptcy Court in a way that makes sense. *See* Exhibit "C" hereto. The Trustee's requests are permitted and recognized under federal statutes, the rules of bankruptcy

---

[29] In fact, EFP/BHT later admits in the Motion to Convert that CHFS's joint venture interest <u>is</u> property of the Estate.  See Motion to Convert, ¶41.

[30] Motion to Convert, ¶22 n.6.

[31] Motion to Convert, ¶33.

and civil procedure and applicable law. There is nothing peculiar about the Trustee's requests except that requests to withdraw the reference to the Bankruptcy Court as to an entire chapter 11 case under 28 U.S.C. §157(d) is rarely requested.  Notwithstanding that rarity, it is in fact permitted on the face of the statute and precedent exists to support the Trustee's request. *See* Trustee's Motion to Withdraw Reference & Consolidate **[Dkt. #1026]** and her initial brief in support **[Dkt. #1027]** citing among other authorities, *Ackles v. A.H.Robins Co.(In re A.H. Robins Co.)*, 59 B.R. 99, 105-107 (Bankr. E.D. Va. 1986).  The unique circumstances of the CHFS Chapter 11 Case and the related litigation identified in the Trustee's District Court Motions compels a unique response.  EFP/BHT's response that something is different than how it is usually done neither makes it insulting to the Bankruptcy Court or otherwise "nuclear" in effect.

### H. Dr. Edwards' Independent Investigation Yielded Only "One CD With Some Information on it About CHFS Loans" that He Turned Over to the U.S. Attorney's Office."[32]

This inaccurate assertion is astonishing.  A CD of information is a medium that contains many documents.  In this case, the CD included (among many other things) copies of two blank checks on previously unknown CHFS accounts, one with a bank in Costa Rica and one in Panama, and servicing information by the rogue operation on U.S. based loans stolen from the Estate and loans made in Costa Rica with funds traceable to those stolen from CHFS bank accounts.  The Edwards Parties had this information eight months ago after they paid to have it copied from a CHFS computer used by the Debtor's rogue operation in Costa Rica.  Yet, this information was never provided to the Trustee (who is charged with collecting CHFS assets and had repeatedly stated publicly and in communications with EFP/BHT that she was looking for and needed this information).  Indeed, this information might never have seen the light of day but

---

[32] Motion to Convert, ¶36.

for the fact that the Edwards Parties got "caught." Equally surprising is that counsel for EFP/BHT make this erroneous representation to the Court despite admitting that they have even not reviewed the CD.[33] It appears also that they have not read their own clients' emails attached to the Meehan Affidavit since they describe the Trustee's actions in their Motion to Convert as improper in relying on the very emails of the Edwards Parties' attached to the Meehan Affidavit[34] and filed with this Court approximately two months ago as part of the Trustee's 2nd Report. If they had reviewed this information, they would also know that the Edwards Parties obtained a link to approximately 6,000 loans from computers used by CHFS in Costa Rica, reflecting about 2,000 more loans than the Trustee previously had access to through the Debtor's computer servers as well as other information leading to assets in Costa Rica and Panama. Their assertion that the Trustee's RICO Case and the Meehan Affidavit are "unsubstantiated" belies the evidence in their own possession, making their challenges to the Trustee's actions in response thereto without merit, unwarranted under law and without evidentiary support.

There is no doubt from the review of the information on the CD that the Edwards Parties paid for, had possession of, and concealed from the Trustee for eight months property of the Estate in the face of inquiries by the Trustee for information she needed to administer the Estate. The emails from the Edwards Parties speak for themselves. Additionally, the emails and their content are an admission of a party opponent and *are* substantiated by the sworn testimony set

---

[33] *See* Exhibit "D" hereto. This is not reasonable inquiry into the facts. *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1025-26 (5th Cir. 1994) (investigation summed up as asking client and alleged co-conspirators if they were frauds insufficient; unreasonable for attorney to believe that his client "would simply confess to what amounts to a criminal offense."); *Ins. Ben. Admin. v. Martin*, 871 F.2d 1354, 1356-59 (7th Cir. 1989) (documents available at time of signing should be reviewed); *Balfour Guthrie, Inc. v. Hunter Marine Transp., Inc.*, 118 F.R.D. 66, 78 (M.D. Tenn. 1987) (failure to make pre-filing investigation of the relevant documents; careful review of documents available showed arguments in summary judgment motion were without factual support).

[34] Motion to Convert, ¶¶21, 26-28.

out in the Meehan Affidavit and/or are consistent with the information contained in the Rick Felton Affidavit **[Dkt. #1031]**, the criminal complaints against Butch and Colby Dickson, and the information derived from the Trustee's investigation to date.  The Trustee does not take her duties under Title 11 and Title 18[35] lightly.  Quite the contrary, the Trustee's actions demonstrate a diligent pursuit of these duties.  In spite of the spin EFP/BHT attempt to put on the actions of the Edwards Parties,[36] the matters challenged by the Trustee regarding the interests of EFP/BHT involve more than a minor stay violation[37] as reflected in the Trustee's RICO Case against the Edwards Parties.

   While EFP/BHT may now characterize the actions of the Trustee to challenge their claims in the CHFS Chapter 11 Case as "nuclear", they have previously acknowledged that the Trustee has an independent duty to investigate EFP/BHT's claims and an obligation to decide for

---

[35] The Trustee has a duty to report suspected violations under 18 U.S.C. § 3057.

[36] Motion to Convert, ¶36.  EFP/BHT suggests a "lack of experience and familiarity with bankruptcy law" may be the explanation for EFP/BHT's actions.  This explanation is not credible. This is not the first time that one or more of the Edwards Parties have been accused of stay violations. *See* filings attached hereto as composite Exhibit "E" in *In re Coastal Condos, LLC* involving a related dispute with Butch Dickson.  Importantly, these filings (including some signed by counsel for EFP/BHT) recognize not only the existence of the stay under Section 362 but also the nuances of it, including specifically their argument that 11 U.S.C. § 362(k) does not provide a corporate debtor with the right to recover monetary damages.  Therefore, EFP/BHT's suggestion that other remedies exist under Section 362(k) for the stay violations in the CHFS Chapter 11 Case is made with knowledge that the principals of EFP/BHT wearing another corporate hat have previously argued in this very Court that, other than injunctive power (which they clearly know exists by operation of law but has been blatantly ignored by EFP/BHT apparently just as in other cases), there is no remedy solely under such statute.  Perhaps even more telling, however, is the fact that Charles Edwards is intimately familiar with federal bankruptcy law inasmuch as he purchased out of and then promptly but back into Chapter 11 Kiwi Air Lines.  *See* composite of news articles attached hereto as Exhibit "F." To suggest any naivety of EFP/BHT and their principals is without merit.  To suggest that a simple call to request the Edwards Parties to stop their actions, when they clearly know what they are doing, borders on ridiculous.  Cessation of future conduct does not erase the harm of prior conduct.

[37] There is no doubt that the information provided to the Trustee in the Meehan Affidavit and the Edwards Parties emails attached thereto shows that the Edwards Parties have violated, among other things, the automatic stay. *Stettner v. Smith (In re IFS Fin. Corp.)*, 669 F.3d 255 (5th Cir. 2012) (bank accounts through which allegedly fraudulent transferred passed were property of debtor); *Cadle Co. v. Moore (In re Moore)*, 608 F.3d 253 (5th Cir. 2010) (reverse veil-piercing claim was property of estate); *Schimmelpenninck v. Byrne (In re Schimmelpenninck)*, 183 F.3d 347 (5th Cir. 1999) (veil-piercing claims are property of estate); *S.I. Acquisition, Inc. v. Eastway Del. Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142 (5th Cir. 1987) (veil-piercing claims property of estate; automatic stay applies); *Am. Nat'l Bank v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266 (5th Cir. 1983) (state fraudulent transfer actions are property of estate).

herself whether to pursue those very claims. **[Dkt.# 436, ¶16]**. Discovery of blatant transgressions by significant creditors in the CHFS Chapter 11 Case in disregard of the automatic stay and the Trustee's statutory right to possess and pursue property of the Estate including recorded information (books, documents, records and papers) relating to the property or financial affairs of the Debtor demands a swift response by the Trustee to protect the Estate and the integrity of the bankruptcy process. A simple motion for contempt would be hopelessly ineffective under these circumstances. The Trustee's response to the actions of the Edwards Parties was justified, supported by law, founded on substantiated facts, and wholly within her rights and obligations to protect the interests of all creditors of the CHFS Estate.

The Trustee has confirmed as described in her 2nd Disclosure Statement that, if she had received the information the Edwards Parties obtained and concealed from her by the Edwards Parties in September of 2014, she would have had the opportunity to pursue those assets in Costa Rica prior to assets being frozen by the Costa Rican government's independent criminal investigation. As a result of the Edwards Parties' actions in concealing this information from the Trustee, the Estate has been damaged and will now have to participate as a victim in the criminal proceedings in Costa Rica to claim these assets thereby creating further delays and increased administrative expenses. As further described in the Trustee's 2nd Disclosure Statement, the Trustee has met with officials at the U.S. Embassy in Costa Rica in an effort to expedite this process.

I.    **The Loan Portfolio Decrease In Value was the Result of Servicing After the Trustee's Appointment**

EFP/BHT's own submissions[38] on this point prove otherwise.  Assuming for the sake of argument, and specifically without admitting the truth thereof, the numbers and statistics on Exhibit "4" to the Motion to Convert simply show that: 1) the CHFS loan portfolio "values" dropped by up to 50% prior to the theft by Dickson of Estate funds and property and essentially fell to nominal values after the theft but immediately prior to the Trustee's appointment; and 2) since the Trustee's appointment and start of servicing by ClearSpring Loan Services, Inc. ("Servicer") in late June, 2014, the loan portfolio values have increased and started to stabilize. In fact, EFP/BHT recognized this substantial decline in portfolio value when they moved to appoint a trustee in August, 2012 **[Dkt. # 101, ¶¶4-6]** (acknowledging nearly 1,000 loans were unaccounted for in the total approximate amount of $33 million) as well as in their Motion to Convert.[39]   Any loss in value to the loan portfolios were known well before the Trustee's appointment and were cited by EFP/BHT as reasons for the appointment of the Trustee. EFP/BHT cannot now use this very same decline in value prior to the Trustee's appointment as the basis to convert the CHFS Chapter 11 Case.

The reality is that the Trustee's diligence and retention of the Servicer has restored the loan portfolio to functionality with collections of over $3.5 million since the loans were boarded with the Servicer less than a year ago.  *See* Servicer Report as of May 14, 2015 attached hereto as Exhibit "G". The unpaid principal balance of the loans boarded with the Servicer to date are $42,633,745.56.   The Trustee's investigation has recently discovered another 283 loans on a

---

[38] Motion to Convert, ¶43, Exhibit "4" (Affidavit of Martha Edwards Borg). The Trustee contests the legal conclusions and factual assertions stated in this Affidavit as previously stated herein.

[39] Motion to Convert, ¶42.

computer server previously inaccessible by the Trustee for another $9,875,000 in unpaid principal balance value which the Trustee has authorized the Servicer to board for collections and servicing.   This brings the estimated total of the unpaid principal balance of the loan portfolios being administered by the Trustee through the Servicer to at least $52,508,745.56. This calculation does not include loans not boarded with the Servicer that the Trustee is continuing to service on her own due to issues which have prevented those loans from being boarded with the Servicer or the recently discovered loans made in Costa Rica uncontested by Dickson to be traceable to CHFS funds in the  minimum amount of $2.2 million.

Moreover, the loan portfolio values are in addition to other property of the Estate being administered by the Trustee.   Contrary to the allegations of EFP/BHT that the only property of the Estate are the loan portfolios,[40] the Estate also holds interests in real estate owned as a result of foreclosures all over the Country, causes of action including standard bankruptcy causes of action under chapter 5 of the Bankruptcy Code and the litigation referenced in the Trustee's District Court Motions, and restitution rights in criminal proceedings in the U.S. and in Costa Rica. The allegations that this Estate is administratively insolvent is, therefore, at best premature and without credible proof.

## II.    Cause Does Not Exist for Conversion to Chapter 7

EFP/BHT assert that cause exists to convert the CHFS Chapter 11 Case to Chapter 7 for two reasons: 1) for cause under 11 U.S.C. § 1112(b)(4)(A) for alleged substantial and continuing diminution in value detrimental to creditors;   and 2) the Trustee's action in pursuing claims

---

[40] Motion to Convert, ¶41.

against the Edwards Parties allegedly ensure there is no reasonable likelihood of rehabilitation of the Debtor and creates an alleged "intolerable conflict of interest".[41]

### A.    Standards for Conversion Under Section 1112(b)(4)(A)

After their multiple efforts to get a trustee appointed in this case, which was finally granted when the Trustee was appointed on January 16, 2014, EFP/BHT have now requested this case be converted to Chapter 7.   Under 11 U.S.C. § 1112(b)(1), a Chapter 11 case may be converted or dismissed upon a showing by the movant of "cause" under the specific circumstances of the case unless the court determines that the appointment of a trustee under Section 1104(a) is in the best interests of the creditors and the estate.  What constitutes "cause" is based on the totality of the circumstances of the case and is a "question left to the broad discretion of the Court."  *In re Hyperion Foundation, Inc.*, 2009 WL 2477392 at *2 (Bankr. S.D. Miss. Aug. 11, 2009)(denying conversion and dismissal on basis that "it was better for this Court to allow the Debtor to limp along in this chapter 11 case than to dismiss its case and thereby create chaos…").   EFP/BHT bear the burden of proof to show cause exists. *Collier on Bankruptcy* ¶ 1112.04[4].   EFP/BHT assert that Section 1112(b)(4)(A) is the basis for cause in this case so they must prove both: (1) substantial or continuing loss to or diminution of the estate;  and (2) absence of reasonable likelihood of rehabilitation.

In the event EFP/BHT proves cause under this subsection, then the Court may dismiss, convert to Chapter 7 or appoint a Chapter 11 trustee depending on its findings as to which relief is most beneficial to the Estate and its creditors.  *Collier on Bankruptcy* ¶¶ 1112.04[6][a][ii]; 1112.05[1].

---

[41] Motion to Convert, at p. 1 and ¶¶39-40, 49-56.

B.    **The Trustee's Plan to Liquidate the Estate Qualifies as "Rehabilitation" Within the Meaning of Section 1112(b)(4)(A)**

EFP/BHT assert that because the Trustee seeks to liquidate the CHFS Estate there is no chance at rehabilitation as that term is defined in Section 1112(b)(4(A). The authorities they cite for this proposition are either clearly distinguishable on their facts,[42] or their holding that a plan of liquidation is not "rehabilitation" is not binding on this Court.[43] Liquidation plans are permitted in Chapter 11. *In re Sandy Ridge Dev. Corp.*, 881 F.2d 1346, 1352 (5th Cir. 1989); *In re All Amer. of Asburn, Inc.*, 40 B.R. 104, 106 (Bankr. N.D. Ga, 1984)(denying motion to convert where Chapter 11 trustees were liquidating estates); *In re L.N. Scott Co., Inc.*, 13 B.R. 387, 388-89 (Bankr. E.D. Pa. 1981)(dismissal under section 1112(b) denied where all tangible assets had been liquidated and only remaining assets were unresolved causes of action that could lead to influx of assets to estate). There is no binding authority in the Fifth Circuit that holds that the interpretation of "rehabilitation" within the meaning of Section 1112(b)(4)(A) precludes a liquidation plan in Chapter 11 case. If a Debtor may successfully liquidate, as is undisputably statutorily permitted, Section 1112(b)(4)(A) does not apply. *In re McTiernan*, 519 B.R. 860, 866 (Bankr. D. Wyo. 2014).

C.    **No Substantial or Continuing Loss to or Diminution of the Estate has Occurred During the Trustee's Administration**

In support of their assertion that Section 1112(b)(4)(A) mandates conversion of the CHFS case, they rely on their factual allegations of substantial and continuing loss or diminution of the

---

[42] Motion to Convert, ¶46. *Quarles v. UST*, 194 B.R. 94 (W.D. Va. 1996) (repeated failure to file plan, failure to comply with court orders, no likelihood of success in pending litigation based on related court rulings); *In re Imperial Hghts. Apts., Ltd.*, 18 B.R. 858 (Bankr. S.D. Ohio 1982) (no assets other than cause of action).

[43] *Santa Fe Minerals, Inc. v. BEPCO, L.P.(In re 15375 Mem'l Corp.)*, 386 B.R. 548 (Bankr. Del. 2008) (conversion denied; court unwilling to find debtor unable to propose confirmable plan).

Estate addressed previously herein.[44] The only substantial loss or continuing diminution in the case occurred prior to the Trustee's appointment as a result of factors other than her administration. As such, these factors cannot be used as a basis to convert. *In re All Amer. of Ashburn*, 40 B.R. at 107-108 ("no cause for conversion exists under . . . 1112(b) where there has been no loss or diminution of the estate during the Trustee's administration."); *see also In re Vaughan Co.*, 2013 WL 2244285 at *5-8 (Bankr. D.N.M. May 21, 2013)(where Trustee had already liquidated tangible assets and only remaining assets were litigation claims against investors, no loss found in spite of allegations that professional fees of Trustee would deplete estate).

EFP/BHT supported the appointment of the Trustee when the cash value in the Estate was essentially zero due to the theft by Dickson of all tangible assets of the Estate. To grant EFP/BHT relief on unchanged facts in clear retaliation for actions taken by the Trustee to challenge their claims (which they admit she has a right to take in her capacity as Trustee) would be prejudicial to other creditors in this case and reward creditors who simply do not like the Trustee's chosen course of action.

EFP/BHT would have this Court ignore the substantial collections in excess of $11,000,000 since the Trustee's appointment. Every day the Trustee is in place she is closer to collecting all of the funds diverted from the Estate.[45] To replace her with a Chapter 7 Trustee, who cannot operate the business without express permission under 11 U.S.C. § 704(8) and who has no knowledge of the complexities of this case after the Trustee's intensive, 16-month investigation would be highly prejudicial, duplicative of administrative expenses already

---

[44] *See supra* at pp. 16-18.

[45] For example, on May 14, 2015, the District Court entered an Order Granting Petition to Disclose Grand Jury Material to the Trustee, a true and correct copy of which is attached hereto as Exhibit "H."

incurred by the Estate, and would hinder the progress made in Latin America to collect assets there which are traceable to CHFS.  The greatest value in the Estate rests in the continued operation of the Debtor's business by the Trustee with significant knowledge about the facts surrounding the CHFS Chapter 11 Case.  *In re Euro-Amer. Lodging Corp.*, 365 B.R. 421, 425-26 (Bankr. S.D.N.Y. 2007)(conversion to Chapter 11 from involuntary Chapter 7 to allow operation of business).

Monthly operating reports during the Trustee's administration are current and all funds expended are almost immediately reviewable by all creditors in the case as well as the United States Trustee ("UST").  "Monthly operating reports are the 'life blood' of chapter 11, enabling creditors to stay informed about the debtor's post-petition operations." *Hyperion*, 2009 WL 2477392 at *6.  Those reports in the CHFS Chapter 11 Case since the Trustee's appointment show tremendous gain in Estate value since the CHFS funds were stolen.  All funds expended by the Trustee are either fully authorized by the Code or by order of the Court and are, therefore, protected.  To the extent a party-in-interest disagrees, they have timely information to seek relief from the Court.

Importantly, the UST has not moved for conversion of this case.  Additionally, no panel Chapter 7 Trustees for this district are disinterested in this case which would then require an appointment of a Chapter 7 trustee outside of this judicial district, further increasing the administrative expenses of this case.  Finally, a conversion or any change in the trustee appointment in this case after the Trustee's significant investment through the Servicer and otherwise will only hinder the progress made to date to stabilize the loan portfolio in the face of fraud and criminal activity.  The effect of replacing the Trustee at this point will have a negative impact on the value of the Estate, create chaos among the borrowers of loans CHFS services and

increase administrative expenses. "To discard the knowledge of [the Trustee] at this stage could only result in a multiplication of administrative expenses...." *All Amer. of Ashburn*, 40 B.R. at 109.

**D.    The Trustee's Litigation Against the Edwards Parties[46] Does Not Create a Conflict of Interest or Otherwise Prove Lack of Rehabilitation**

The Motion to Convert is akin to the one filed in *All Amer. of Ashburn*, where the creditor most directly affected by administrative expenses was also the subject of investigation and allegations of committing illegal, inequitable or improper acts. As in *All Amer. of Ashburn,* 40 B.R. 109,  the existence of this claim by the Estate against the EFP/BHT is "the primary reason" to deny the Motion to Convert.  *In re All Amer. Ashburn*, 40 B.R. at 109.  It is within the Trustee's sound discretion. . . to pursue this claim so long as the reasonably expected benefits exceed the reasonably expected costs." *Id.*

*In re Waterways Barge P'ship*, 104 B.R. 776 (Bankr. N.D. Miss. 1989) cited by EFP/BHT[47] is not dispositive and is distinguishable on its facts (denying plan confirmation due to classification and absolute priority rule issues; dicta regarding pursuit of litigation against main creditor where no other creditors exist).  ***EFP/BHT is not the only creditor in the CHFS Chapter 11 Case.***  More importantly, and in spite of their assertions to the contrary,[48] EFP/BHT is not the only creditor of the Estate that matters.  Additionally, the Trustee's District Court Motions are an effort to pursue litigation against the Edwards Entities and resolve the Edwards

---

[46] EFP/BHT assert the Trustee has sued "children."  Motion to Convert, ¶30.  As clearly provided by, among other things, Exhibit "4" to the Motion to Convert, these people are adults.

[47] Motion to Convert, ¶31.

[48] Motion to Convert, ¶48 (requesting a Chapter 7 trustee "who recognizes the fiduciary duties owed to the estate's largest creditors....")

Bankruptcy Litigation in the most efficient manner possible to further limit administrative expenses.

The Trustee has previously addressed the erroneous allegation that somehow the Trustee's exercise of her absolute right to pursue litigation[49] she deems beneficial to the Estate as creating a conflict of interest,[50] but will address this point again because it bears repeating. The argument by EFP/BHT that the Trustee's new plan to actually litigate their claims in this case somehow creates a conflict of interest which hinders the rehabilitation and administration of this Estate is wholly without merit and not supported by their own authorities. As the court held in *In re Office Prod. of Amer., Inc.*, 136 B.R. 983, 987-90 (Bankr. W.D. Tex. 1992),[51] the argument that a plan which shifted nonpayment risks to a particular creditor class created a conflict of interest for debtor's counsel by advancing that plan in the face of opposition creates "serious policy ramifications….Were we to hold here that pursuing those goals over the objections of creditors in and of itself created a conflict of interest, lawyers would be discouraged from even representing debtors in the face of creditor opposition (even if the plan could pass muster under §1129(b)), for fear of not being paid. Such as result is so antithetical to the structure of the reorganization chapters that we must retreat from such a harsh ruling. If there is a basis for … objections to the fees requested, this is not it…." The ultimate control over professional fees is under 11 U.S.C. § 330. *Office Prod.*, 136 B.R. at 990-91; *In re All Amer. of Ashburn*, 40 B.R. at 110.

---

[49] It seems odd that EFP/BHT complain that the Edwards Adversary Proceedings have not moved forward but now complain that they are. Motion to Convert, ¶50. The truth is that EFP/BHT just wants the claims against them dismissed, all loans serviced by CHFS abandoned to them and all funds of the CHFS Estate turned over to them without any concessions on their part and without being questioned in any manner by the Trustee. To do this would be an obvious breach of the Trustee's statutory duties.

[50] *See supra* at pp. 10-11.

[51] Motion to Convert, ¶19.

There is no merit to EFP/BHT's argument. There is no conflict of interest. The Trustee has a right to pursue Estate causes of action - even against the primary creditors in the case and even if these creditors are the ones most affected by an increase in administrative expenses. *All Amer. of Ashburn*, 40 B.R. at 109-110.

## CONCLUSION

"Based on the facts of this case, it is not unreasonable to infer that the Motion [to Convert] was filed solely for the purpose of using psychological leverage against the [Trustee] to overcome [her] objection to [EFP/BHT's assertions regarding]. . . use of cash collateral." *In re Lykes Bros. Steamship Co., Inc.*, 196 B.R. 586, 596 (Bankr. M.D. Fla. 1996)(motion to convert denied). Given no adverse change in circumstances other than the Trustee's decision to challenge the rights of EFP/BHT, there is little doubt that the Motion to Convert is intended to punish and/or pressure the Trustee.

No causes exist to convert this case to Chapter 7. In the event the Court finds cause exists, a Chapter 11 Trustee is already appointed and intends to liquidate the Estate so conversion merely creates another level of administrative expenses, most of which would be unnecessarily duplicative. In Chapter 11, the Trustee may continue to operate the business to conduct an orderly liquidation, while also pursuing significant estate causes of action in the U.S. and in Latin America which processes would be seriously hindered upon conversion. The loan portfolio unpaid principal balance exceeds the claims of EFP/BHT but would likely plummet if liquidated under Section 363 by a Chapter 7 trustee. EFP/BHT would not magically have the right to stay relief on their asserted rights in a Chapter 7 since the Estate causes of action against them survive any conversion. These claims need to be dealt with by the Estate. EFP/BHT, in apparent

retaliation, should not be allowed to dictate such a prejudicial result in response to the simple exercise of a Trustee's statutory duties.

There are other assets available to the Trustee to liquidate in addition to the loan portfolios. The Estate has not suffered substantial or continuing losses under the Trustee's administration. Quite the contrary, the Trustee has collected over $11,000,000 since her appointment just 16 months ago when she started at ground zero. The Trustee's liquidation of the CHFS Chapter 11 Estate should be allowed to continue given her successful investment of time and effort to date. Nothing precludes the filing of a Chapter 11 liquidation plan by the Trustee, which is preferred under the circumstances of this case since there is no one else available to run the Debtor's business. *In re Vaughan Company*, 2013 WL 2244285 at *11-12.

Conversion would not be in the best interests of the Estate, as recognized in the Trustee's 1st Report, ¶¶ 55-56, and the Motion to Convert should be denied. The Trustee reserves the right to raise other and/or further objections at the hearing on the Motion.

WHEREFORE, the Trustee objects to the Motion to Convert and requests that the Motion to Convert be denied. Alternatively, the Trustee requests such other and/or further relief as the Court deems just and appropriate.

DATED: May 15, 2015.

Respectfully submitted,

KRISTINA M. JOHNSON, TRUSTEE OF THE ESTATE OF COMMUNITY HOME FINANCIAL SERVICES, INC.

By Her Attorneys,
JONES WALKER LLP

s/ Kristina M. Johnson

Jeffrey R. Barber (MB #1982)
Kristina M. Johnson (MB #9382)
Stephanie B. McLarty (MB #104585)
**JONES WALKER LLP**
190 East Capitol Street, Suite 800 (39201)
Post Office Box 427
Jackson, Mississippi  39205-0427
Telephone:  (601) 949-4765
Facsimile:  (601) 949-4804
jbarber@joneswalker.com
kjohnson@joneswalker.com
smclarty@joneswalker.com

Admitted *Pro Hac Vice*:
Mark A. Mintz (LAB #31878)
Laura F. Ashley (LAB # 32820)
**JONES WALKER LLP**
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana  70170-5100
Telephone:  (504) 582-8368
Facsimile:  (504) 589-8368
mmintz@joneswalker.com
lashley@joneswalker.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2015, I electronically filed the foregoing with the Clerk

of the Court using the ECF system which sent notification of such filing to the parties set forth in

the Electronic Mail Notice List as of the date hereof, including the following:

Ronald H. McAlpin, Esq.
ronald.mcalpin@usdoj.gov

Luther M. Dove, Esq.
lukedove@dovechill.com

Jim F. Spencer, Jr., Esq.
jspencer@wakinseager.com

Eileen N. Shaffer
enslaw@bellsouth.net

DATED:  May 15, 2015.

s/ Kristina M. Johnson