

**SO ORDERED,**

*Edward Ellington*

**Judge Edward Ellington**
**United States Bankruptcy Judge**
**Date Signed: October 27, 2015**

**The Order of the Court is set forth below. The docket reflects the date entered.**

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: | **CHAPTER 11** |
| **COMMUNITY HOME FINANCIAL** | **CASE NO. 1201703EE** |
| **SERVICES, INC.** | |

Hon. Kristina M. Johnson                     Chapter 11 Trustee
kjohnson@joneswalker.com
Post Office Box 427
Jackson, MS  39205-0427


Hon. Mark A. Mintz                     Attorneys for Chapter 11 Trustee
mmintz@joneswalker.com
201 St. Charles Ave. 49th Floor
New Orleans, LA  70170

Hon. Jeffrey R. Barber
jbarber@joneswalker.com
Post Office Box 427
Jackson, MS  39205-0427


Hon. Jim F. Spencer, Jr.                     Attorneys for Edwards Family Partnership, LP
Hon. Stephanie M. Rippee                          and Beher Holdings Trust
jspencer@watkinseager.com
srippee@watkinseager.com
Post Office Box 650
Jackson, MS  39205-0650

Edward Ellington, Judge

## MEMORANDUM OPINION

**THIS MATTER** came before the Court on the *First Application for Compensation for the Period of January 2, 2014 through July 31, 2014, and Reimbursement of Expenses by the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc.* (Dkt. #783) filed by Kristina M. Johnson, Chapter 11 Trustee; *Edwards Family Partnership, L.P. and Beher Holdings Trust's Objection to Fee Applications* (Dkt. #820); and the *Combined Reply and Memorandum: (I) in Support of First Application for Compensation for the Period of January 2, 2014 through July 31, 2014, and Reimbursement of Expenses by the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc. [Dkt. #783]; and (II) in Opposition to Edwards Family Partnership, L.P. and Beher Holdings Trust's Objection to Fee Applications [Dkt. #820]* (Dkt. #849) filed by Kristina M. Johnson, Chapter 11 Trustee.  Having considered same, the testimony and evidence presented at trial, and the respective briefs[1] filed by the parties, the Court finds that for the reasons expressed more fully below, the application is granted in part and disallowed in part.

See Next Page

---

[1] Including pretrial and post-trial briefs, the parties filed a total of six (6) briefs.

## TABLE OF CONTENTS

FINDINGS OF FACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.      Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II.     Procedural Matters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        A.      Waiver of Right to Object . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B.      Objection to Trial Exhibit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III.    Employment, Compensation and Duties . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        A.      Statutory Framework . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                1.      Compensation of a Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . 14
                2.      Hiring and Payment of Professionals . . . . . . . . . . . . . . . . . . . 15
                3.      Duties of a Chapter 11 Trustee . . . . . . . . . . . . . . . . . . . . . . . 16

        B.      Case Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                1.      "Traditional" Calculation of Attorney Fee . . . . . . . . . . . . . . . 20
                2.      Trustee's Duties v. Professional Duties . . . . . . . . . . . . . . . . . 22
                        a.      Reviewing the Debtor's Records . . . . . . . . . . . . . . . . . 24
                        b.      Investigating Estate Property . . . . . . . . . . . . . . . . . . . 25
                        c.      Communicating with Other Parties . . . . . . . . . . . . . . 25
                        d.      Reviewing and Objecting to Claims . . . . . . . . . . . . . 26
                        e.      Communicating with and Supervising Estate Professionals . . . . 27
                        f.      Collecting and Liquidating Estate Assets . . . . . . . . . . . . . 27
                        g.      Performing Banking Functions/Bookkeping . . . . . . . . . . . . . . 28

        C.      Edwards' Specific Objections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

                1.      Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
                        a.      Dual Compensation . . . . . . . . . . . . . . . . . . . . . . . . . 29
                        b.      Hourly Rates of Attorneys . . . . . . . . . . . . . . . . . . . . . 42
                        c.      Hourly Rates for Paralegals/Non-Professionals . . . . . . . . . . . 49
                        d.      Law Clerks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
                        e.      Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

                2.      Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

## FINDINGS OF FACT[2]

Although not directly relevant to the matter pending before the Court, the Court will briefly describe the events leading up to the bankruptcy filing. Community Home Financial Services, Inc. (CHFS) is in the business of purchasing and servicing loan portfolios. The president of CHFS is William D. Dickson (Dickson). CHFS entered into various business transactions with several companies controlled by Dr. Charles C. Edwards (Dr. Edwards). This bankruptcy case evolved out of disputes between Dickson and CHFS on the one hand, and Dr. Edwards and his companies on the other.

CHFS and Edwards Family Partnership, L.P. and Beher Holdings Trust[3] (collectively, Edwards) entered into a series of agreements whereby Edwards invested money for the purchase of home improvement loans, typically second and third mortgages. In addition, CHFS and Edwards entered into seven (7) joint ventures for the purchase of mortgage portfolios. These mortgage portfolios consisted of a large number of individual promissory notes which were backed by first and second residential mortgages on homes located across the country. Edwards alleged the balance owed on the home improvement loans was $27,785,548.00, and the balance owed on the seven (7)

---

[2]These proposed findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 9014(c). To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

[3]CHFS had business dealings with The Rainbow Group, Ltd. and Beher Holdings, Ltd., two other entities controlled by Dr. Edwards, prior to entering into agreements with Edwards Family Partnership, L.P. and Beher Holdings Trust.

Page 4 of 61

joint ventures was $12,018,591.89.[4]  Edwards is by far the largest creditor of CHFS.

On February 15, 2012, CHFS (and Dickson individually) filed suit against Edwards and others in the Chancery Court of the First Judicial District of Hinds County, Mississippi.  A variety of relief was sought in the complaint, including:  specific performance; an accounting; damages for breach of contract; and rescission or modification of the agreement.  On April 11, 2012, Edwards removed the suit to the United States District Court for the Southern District of Mississippi (District Court Litigation) [USDC Case No. 3:12-cv-252-CWR-LRA].

In the District Court Litigation, Edwards denied that CHFS and Dickson were entitled to any relief.  Edwards also filed a counterclaim against CHFS and Dickson requesting various relief including: judgments against CHFS on the promissory notes; a judgment against Dickson on his guaranty agreements; and the appointment of a receiver for CHFS.  Edwards filed a separate motion for the appointment of a receiver, and the district court set the receiver motion for trial.

Over the course of several days, the receiver motion was heard by United States District Court Judge Carlton W. Reeves (in Case No. 3:12-cv-252-CWR-LRA).  The day prior to the final hearing before Judge Reeves, CHFS (Debtor) filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on May 23, 2012.[5]

Except for the Internal Revenue Service, Edwards is, for the most part, the only creditor to

---

[4]*Edwards Family Partnership, LP and Beher Holdings Trust's Objection to Trustee's First Amended Disclosure Statement for the Chapter 11 Plan of Liquidation (Doc. No. 1080)*, Case No. 1201703EE, Dkt. #1124, p. 1-2, July 21, 2015.

[5]On March 29, 2013, Judge Reeves entered a *Memorandum Opinion and Order* (USDC Dkt. #100) in which he severed Edwards' counterclaims against Dickson.  These counterclaims were assigned a new case number [USDC Case No. 13-cv-587-CWR-LRA].  Judge Reeves further held that "proceedings against CHFS remain subject to the bankruptcy stay." *Memorandum Opinion and Order*, USDC Case No. 12-cv-252-CWR-LRA, Dkt. #100, p. 6, March 29, 2013.

actively participate in the Chapter 11 case. The relationship between Edwards and the Debtor appears to have been amicable at one point, but it deteriorated rapidly as the Chapter 11 case progressed. Any motion filed by the Debtor was hotly opposed by Edwards and vice versa. The Debtor filed adversary proceedings against Edwards that were also hotly contested. The Debtor proceeded as the debtor-in-possession (DIP) in the bankruptcy case for approximately a year and a half.

On December 20, 2013, the attorney for the Debtor, Derek A. Henderson (Henderson), filed *Disclosure of Transfer of Funds and Other Matters* (Dkt. #426) (Disclosure). In the Disclosure, Henderson stated that the Debtor had changed its principal place of business from Jackson, Mississippi, to Panama, and had opened branch offices in Panama and in Costa Rica. Further Henderson disclosed that the Debtor transferred all of the funds from the Wells Fargo DIP bank accounts to banks located in Panama. All of these actions were done by the president of the Debtor, Dickson, without the knowledge or the advice of Henderson or Dickson's personal bankruptcy attorney, Eileen N. Shaffer.[6]

On that same day, the United States Trustee (UST) filed the *United States Trustee's Emergency Motion for Order for the Appointment of a Chapter 11 Trustee* (Dkt. #427). On December 23, 2013, the Court entered the *Order Granting United States Trustee's Emergency Motion for Order for the Appointment of a Chapter 11 Trustee* (Dkt. #429). The UST was directed to appoint a Chapter 11 trustee for the Debtor.

---

[6]Dickson also relocated to Central America. Subsequently, he was arrested and returned to the United States by federal law enforcement personnel. He is currently facing criminal charges related to his transfer of assets of the bankruptcy estate out of the country. On September 10, 2015, Dickson entered a *Plea Agreement* in which Dickson pled guilty to two counts in the indictment. *United States v. Dickson*, No. 3:14-CR-78-TSL-FSB (S. D. Miss.)

The *United States Trustee's Application for Approval of Chapter 11 Trustee* (Dkt. #455) was filed on January 8, 2014. On January 21, 2014, an *Order* (Dkt. #473) was entered appointing Kristina M. Johnson as the Chapter 11 trustee (Trustee) for the Debtor.

The Trustee filed an application to employ her law firm, Jones Walker, LLP (JW), as counsel for the Trustee. On March 5, 2014, an *Order Granting Application of Kristina M. Johnson, Trustee, to Employ Jones Walker LLP as Counsel Nunc Pro Tunc to January 8, 2014, and Disclosure of Compensation with Supporting Affidavit [Dkt. #474]* (Dkt. #558) was entered.

As noted above, at the time the Trustee was appointed, Dickson had moved to Central America and had taken almost all of the Debtor's books, records, and money, and had set up a new operating base in Central America. With the exception of a few relatives of Dickson, the employees of the Debtor living in Mississippi were either fired or relocated to Central America. Consequently, the Trustee was placed in a position where she had to operate the Debtor's loan servicing business with very few books and records, no computers, no employees, and very little cash.

The Trustee also had to stop someone's attempts (presumed to be Dickson) to divert funds from the bankruptcy estate to Central America by changing the Debtor's address to a company in Nevada and by telling borrowers to send payments to an address in Miami. With records later obtained from Edwards, the Trustee was able to send letters to borrowers instructing them to send their payments to the Trustee and to provide copies of any loan documents, etc. that they possessed. Once the borrowers received correspondence from the Trustee, the Trustee began to receive emails, telephone calls, faxes, and letters from the borrowers, closing attorneys, regulators, etc.

In April of 2014, the Trustee was able to obtain access to computer servers of the Debtor that were located in Panama. In June of 2014, the professional mortgage servicing company hired by

the Trustee began to service the vast majority of the loans.  The information on the Debtor's computer servers along with any records and files already in the Trustee's possession were transferred to the servicing company.

Dickson was arrested in March of 2014.  Once Dickson was arrested and returned to the United States, the attempts to divert money from the bankruptcy estate stopped.[7]  The Trustee has received approximately $5.9 million of funds Dickson had moved to Central America.[8]  In addition, the estate has collected over $3 million from borrowers.  In all, the Trustee has received over $11 million from all sources.[9]

On August 15, 2014, the Trustee filed her *First Application for Compensation for the Period of January 2, 2014 through July 31, 2014, and Reimbursement of Expenses by the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc.* (Dkt. #783) (Application).[10]   In the Application, JW seeks total compensation in the amount of $733,656.50 and expenses in the amount of $67,203.53.

Edwards filed *Edwards Family Partnership, L.P. and Beher Holdings Trust's Objection to Fee Applications* (Dkt. #820) (Objection) on October 3, 2014, and *Edwards Family Partnership, L.P. and Beher Holdings Trust's Trial Brief and Supplement to Objection to First Application for Compensation of Jones Walker LLP as Attorneys for the Trustee* (Dkt. #917) on December 16, 2014.

---

[7]*First Amended Disclosure Statement for the Chapter 11 Plan of Liquidation of the Estate of Community Home Financial Services, Inc. Proposed by the Trustee, Kristina M. Johnson Dated as of May 15, 2015*, Case No. 1201703EE, Dkt. #1080, p. 17, May 15, 2015.

[8]*Id.* at 18.

[9]*Id.*

[10]The Application was admitted into evidence at trial as Trial Exhibit JW-1.

On October 10, 2014, the *Order Granting, in Part and on an Interim Basis, First Application for Compensation for the Period of January 2, 2014 through July 31, 2014, and Reimbursement of Expenses by the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc. [Dkt. #783]* (Dkt. #833) (Interim Order) was entered.  The Interim Order allowed on an interim basis:

A. 70% of fees for a total of $513,559.55;

B. 100% of expenses (minus $4,000 in expenses attributed to employee overtime and $4,756.16 attributed to 50% of computerized legal research) for an undisputed total of $58,447.37. The expenses set forth in the Application include all expenses of both the Trustee and Jones Walker through the dates set forth in the Application.

IT IS FURTHER ORDERED that all remaining amounts in the Application other than those allowed above shall be subject to allowance and payment only upon further order of this Court.[11]

The Interim Order further reserved all rights, defenses and claims of all parties.

A trial was held on the Application and Objection on December 18, 2014.  At the conclusion of the trial, the parties were instructed to submit an agreed scheduling order on the submission of post-trial briefs.  On February 13, 2015, the *Order Setting Briefing Schedule* (Dkt. #971) was entered.  The last brief was filed on March 12, 2015, and the Application and Objection were taken under advisement.

On April 7, 2015, the Trustee filed *Urgent Motion to:  (1) Withdraw the Reference to Bankruptcy Court of the Whole Chapter 11 Case or, Alternatively, of Certain Adversary Proceedings and Contested Matters, and (2) Consolidate Certain Adversary Proceedings and*

---

[11]*Order Granting, in Part and on an Interim Basis, First Application for Compensation for the Period of January 2, 2014 through July 31, 2014, and Reimbursement of Expenses by the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc. [Dkt. #783]*, Case No. 1201703EE, Dkt. #833, p. 2, Oct. 10, 2014.

*Contested Matters with Pending District Court Actions*[12] (Dkt. #1026) (Trustee Motion) in the Debtor's bankruptcy case. In addition, the Trustee filed a separate complaint[13] in the United States District Court for the Southern District of Mississippi against Edwards and other parties. Shortly thereafter, this Court put the entire bankruptcy case "on hold" pending a ruling by the United States District Court on whether it would grant the Trustee Motion to withdraw reference of the bankruptcy case.

On April 9, 2015, the Court of Appeals for the Fifth Circuit entered an opinion relating to the compensation of professionals in bankruptcy cases, *Barron & Newburger, PC v. Tex. Skyline, Ltd. (In re Woerner),* No. 13-50075, 2015 WL 1591143 (5th Cir. Apr. 9, 2015). Subsequently (on April 15, 2015, and April 20, 2015[14]), the parties submitted supplemental briefs addressing the effect, if any, of the *Woerner* decision on the Application and the Objection.

On June 29, 2015, the Judge Reeves entered an *Order*[15] denying the Trustee Motion (to withdraw reference). On July 15, 2015, Judge Reeves entered an *Order*[16] in the RICO Action denying the Trustee's motion to consolidate; denying Edward's motion to dismiss; granting a motion to exceed the page limit; and after the parties had met with the Magistrate Judge, granting the

---

[12]These motions were also filed in the adversary proceedings. The motions were assigned USDC Case Numbers: 15-cv-312; 15-cv-313; 15-cv-314; 15-cv-315; and 15-cv-316. Eventually, all of these cases were assigned to Judge Reeves.

[13]The complaint contains nine (9) counts [USDC Case No. 3:15-cv-260-CWR-LRA]. Since the first count is a claim that Edwards and others violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, this lawsuit has been labeled the RICO Action.

[14]Docket Numbers 1039 and 1046.

[15]3:15-cv-316-CWR-LRA, (S.D. Miss. June 29, 2015) (Dkt. #4).

[16]3:15-cv-260-CWR-LRA, (S.D. Miss. July 15, 2015) (Dkt. #27).

Trustee leave to file an amended complaint.[17]  Since Judge Reeves had denied all of the Trustee's motions to withdraw reference, the bankruptcy case was no longer "on hold," and the Court "reinstated" the Application and Objection on its matters under advisement list.

## CONCLUSIONS OF LAW

### I.  Jurisdiction

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(1) and (2)(A).

### II.  Procedural Matters

### A.  Waiver of Right to Object

JW alleges that the *Trustee's Motion for Interim Authority Nunc Pro Tunc to January 8, 2014, to Service Loans in the Ordinary Course of Business* (Dkt. #553) (Loan Servicing Motion) and the subsequently entered *Order Granting Trustee's Motion for Interim Authority Nunc Pro Tunc to January 8, 2014, to Service Loans in the Ordinary Course of Business [Dkt. #553]* (Dkt. #616) (Loan Servicing Order) authorized the Trustee to use JW attorneys and paralegals to service the Debtor's loans.  Since Edwards did not object to the interim servicing motion, JW asserts that Edwards is "precluded from re-litigating the issue"[18] of the Application.  Edwards asserts this

---

[17]The parties met with the Magistrate Judge Linda R. Anderson on July 29, 2015.  On August 5, 2015, an *Agreed Order Dismissing Count I of Complaint* (*Id.* at Dt. Crt. Dkt. #28) was entered in which the Trustee dismissed without prejudice the RICO action.  On August 6, 2015, the parties entered an *Agreed Order Directing the Parties to Mediation* (*Id.* at Dt. Crt. Dkt. #29).  The parties agreed to participate in mediation before former bankruptcy judge David W. Houston, III, no later than August 28, 2015.

[18]*Supplemental Memorandum of Law: (I) in Support of First Application for Compensation for the Period of January 2, 2014 Through July 31, 2014, and Reimbursement of Expenses by the Law*

argument is "frivolous."[19]

The Court agrees with Edwards. Federal Rule of Bankruptcy Procedure 2016[20] provides that "[a]n entity seeking interim . . . compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Only "[a]fter notice . . . and a hearing"[21] may the Court approve an application for compensation.

The *Trustee's Motion for Interim Authority Nunc Pro Tunc to January 8, 2014, to Service Loans in the Ordinary Course of Business* (Dkt. #553) is not an application which complies with Rule 2016(a)–the motion does not give "a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested."[22] Consequently, Edwards has not waived its right to object to the properly filed Application nor is Edwards precluded from objecting to the properly filed Application.

### B. Objection to Trial Exhibit

At trial, Edwards requested that a chart it had created entitled *Summary of Time Entries on*

---

Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc. (Dkt. No. 783); and (II) in Opposition to Objection Thereto by Edwards Family Partnership and Beher Holdings Trust (Dkt. No. 820), Case No. 1201703EE, Dkt. #916, p. 9, Dec. 15, 2014 (footnote omitted).

[19]*Edwards Family Partnership, L.P. and Beher Holdings Trust's Trial Brief and Supplement to Objection to First Application for Compensation of Jones Walker LLP as Attorneys for the Trustee* (Dkt. #917), Case No. 1201703EE, Dkt. #917, p. 11, Dec. 16, 2014.

[20]Hereinafter, all rules refer to the Federal Rules of Bankruptcy Procedure unless specifically noted otherwise.

[21]11 U.S.C. § 330(a)(1).

[22]Rule 2016(a).

*Jones Walker Fee Application* (Summary Chart) (Trial Exhibit EFP-2) be admitted into evidence. Edwards' attorney explained that Edwards objected to approximately 800 time entries on the Application, and that the Summary Chart was a compilation of the specific entries to which Edwards objects. (Trial Tr. at 102).

The attorney for the Trustee objected to the admission of the Summary Chart: "As a summary of the objection, it is fine. We do note that we believe that the summary has incorrect descriptions of the work on there, but that would be our primary objection to its being entered that it's not necessarily an accurate summary of what the objected-to time entries are." (Trial Tr. at 102). The Court overruled the objection "in the sense that I will allow it to be admitted as their objection [to the Application]. Whether it's right or not is a whole 'nother matter." (Trial Tr. at 102).

In the Trustee's *Post-Trial Memorandum in Support of Jones Walker LLP's First Fee Application* (Dkt. #973), the Trustee again raises an objection to the Summary Chart, but on a different ground than raised at trial: "The Summary Chart violates Fed. R. of Evid. 1006." *Id.* at p. 11.

At trial, the Trustee objected to the admissibility of the Summary Chart, and the Court overruled her objection. Pursuant to Federal Rule of Evidence 103, by objecting to the admission of the Summary Chart, the Trustee preserved her claim of error. The Fifth Circuit has held that "'[a]n appellant must raise an objection to the admission of evidence at trial such that the issue is presented to the district court with sufficient specificity . . . . If the issue was not adequately raised at trial, we review only for plain error.' *United States v. Burton,* 126 F.3d 666, 671 (5th Cir.1997) (internal citations and quotation marks omitted)." *United States v. Morin*, 627 F.3d 985, 994 (5th Cir. 2010). Consequently, the Trustee may not, and especially not in a post-trial brief, attempt to

reopen the record and raise a different or a more specific ground which was not presented to the Court at trial.[23]

The Court notes that the Summary Chart is helpful because it specifies exactly which time entries in the over 700 page Application to which Edwards objects. However, the Court is not bound by any generalized descriptions of the work performed by JW employees used by Edwards in the Summary Chart. The Court is capable of using the Summary Chart to find the time entries in the Application to which Edwards objects, and then reading the description used by JW for each entry.

### III. Employment, Compensation and Duties

#### A. Statutory Framework

##### 1. Compensation of a Trustee

A trustee appointed by the Court is not expected to perform his/her duties without compensation. Therefore, the Code permits a trustee to be compensated for "the trustee's services"[24] under 11 U.S.C. § 326.[25] The trustee's compensation under § 326 is commonly referred to as the *Trustee's Comp*. The amount of the Trustee's Comp is based upon all monies disbursed by a trustee, and the amount has a cap. In the case at bar, the disputes over the Trustee's Comp are not before the Court at this time.[26]

---

[23]The Court notes that even if it were permissible, a "[m]emorandum is not a pleading from which the Court grants relief." *In re Gilmore, Jr.,* 198 B.R. 686, 692 n. 4 (Bankr. E.D. Tex. 1996), *amended in part on reh'g*, 1996 WL 1056889 (Bankr. E.D. Tex. 1996), *aff'd, United States v. Gilmore,* 226 B.R. 567 (E.D. Tex. 1998).

[24]11 U.S.C. § 326(a).

[25]Hereinafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

[26]The Trustee has filed an application for Trustee's Comp (Dkt. #984) and a supplement to her application (Dkt. #1136). Edwards has objected to both (Dkt. #999 and Dkt. #1158). The Trustee

## 2.  Hiring and Payment of Professionals

Additionally, a trustee is not required or expected to perform his/her duties alone, and, therefore, the Code permits a trustee to hire professionals to assist him/her under § 327(a). "Congress has enacted a uniform scheme for retaining and compensating . . . attorneys under 11 U.S.C. §§ 327-330.  First under § 327(a), the [trustee] must obtain the bankruptcy court's approval to employ the attorney."[27]  Once the attorney's employment has been approved under § 327(a), "an attorney . . . may request 'reasonable compensation for actual, necessary services rendered.  The bankruptcy court may exercise its discretion, upon motion or sua sponte, to 'award compensation that is less than the amount . . . requested.'  *Id.* § 330(a)(2)."[28]

As stated previously, pursuant to § 327, the Trustee hired JW, the Trustee's law firm, to represent her in the above-styled bankruptcy case.  Subsequently, JW filed its Application for compensation pursuant to § 330(a), and Edwards objected to the Application.  Section 330(a) provides in pertinent part:

**11 U.S.C. § 330.  Compensation of officers**.

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to . . . a professional person employed under section 327 or 1103–

(A) reasonable compensation for actual, necessary services rendered by . . . [an] attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

---

is seeking Trustee's Comp for the period of January 16, 2014, to June 30, 2015, in the total amount of $88,656.25.  The applications and objections are currently pending before the Court.

[27]*In re Woerner,* 783 F.3d at  271-72.

[28]*Id.* at 272.

(2) The court may, on its own motion or . . . any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded to [a] . . . professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–

> (A) the time spent on such services;

> (B) the rates charged for such services;

> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for–

> (i) unnecessary duplication of services; or

> (ii) services that were not–

>> (I) reasonably likely to benefit the debtor's estate; or

>> (II) necessary to the administration of the case.

11 U.S.C. § 330(a).


### 3. Duties of a Chapter 11 Trustee

Section 1104 of the Code, provides for the appointment of a trustee in a Chapter 11 case.

Once a Trustee has been appointed, the duties of a Chapter 11 trustee are spelled out in § 1106. The pertinent sections of § 1106 are:

**§ 1106. Duties of trustee and examiner**

(a) A trustee shall–

(1) perform the duties of the trustee, as specified in paragraphs (2), (5), (7), (8), (9), (10), (11), and (12) of section 704(a);

(2) if the debtor has not done so, file the list, schedule, and statement required under section 521(a)(1) of this title;

(3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(4) as soon as practicable–

(A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and

(B) transmit a copy or a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates;

(5) as soon as practicable, file a plan under section 1121 of this title, file a report of why the trustee will not file a plan, or recommend conversion of the case to a case under chapter 7, 12, or 13 of this title or dismissal of the case;

(6) for any year for which the debtor has not filed a tax return required by law, furnish, without personal liability, such information as may be required by the governmental unit with which such tax return was to be filed, in light of the condition of the debtor's books

and records and the availability of such information;

(7)  after confirmation of a plan, file such reports as are necessary or as the court orders;

11 U.S.C. § 1106.

Upon a review of § 704, the applicable provisions which apply to the Trustee in the case at bar are:

### § 704.  Duties of trustee

(a)  The trustee shall–
. . . .

(2)  be accountable for all property received;

. . . .

(5)  if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

. . . .

(7)  unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

(8)  if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires;

11 U.S.C. § 704.

The responsibility of supervising a Chapter 11 trustee falls under the office of the United States Trustee (UST).  In order to meet its responsibility, in May of 2004, the UST issued a *Chapter*

*11 Trustee Handbook*[29] (Trustee Handbook).

In discussing the role of a Chapter 11 trustee who acts as his/her attorney and also hires professionals, the Trustee Handbook states that "[a] trustee acting as an attorney . . . under § 327(d) may receive compensation only for services performed in that capacity and not for the performance of regular trustee duties.  11 U.S.C. § 328(b).  Similarly, attorneys and accountants may not be compensated for performing the statutory duties of the trustee."[30]  The Trustee Handbook lists examples of what falls under the statutory duties of a Chapter 11 trustee:

> The following list includes examples of services considered to fall within the duties of a trustee:
>
> 1.  preparing for and examining the debtor at the § 341(a) meeting in order to verify factual matters;
>
> 2.  examining proofs of claim to eliminate duplicate claims and to identify those that are in addition to or differ in amounts from claims listed on the debtor's schedules;
>
> 3.  investigating the financial affairs of the debtor;
>
> 4.  furnishing information to parties in interest on factual matters;
>
> 5. collecting and liquidating assets of the estate by employing auctioneers or other agents and soliciting offers;
>
> 6. preparing required reports;
>
> 7. performing banking functions;
>
> 8. supervising professionals; and
>
> 9. engaging in any specific duties assigned pursuant to court order.

---

[29]The Chapter 11 Trustee Handbook is available at: http://www.justice.gov/UST/eo/private_trustee/library/chapter11/index.htm.

[30]*Chapter 11 Trustee Handbook*, Ch. 10, § E, pp. 67 (May 2004).

The aforementioned trustee duties are not compensable as legal or accounting services unless there is sufficient documentation to show that special circumstances exist.[31]

## B.  Case Law

### 1. "Traditional" Calculation of Attorney Fees

In *Perdue v. Kenny,* 559 U.S. 542, 551 (2010), the Supreme Court of the United States adopted the method to calculate attorney fees as established by the Court of Appeals for the Third Circuit.[32] In adopting the Third Circuit's lodestar approach, the Supreme Court noted "that because the method is readily administrable and objective, it 'cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.' *Perdue v. Kenny,* 559 U.S. 542, 552, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010)." *In re Ritchey*, 512 B.R. 847, 864 (Bankr. S.D. Tex. 2014).

The method a bankruptcy court must follow in order to determine the amount of an award of attorney fees in a bankruptcy case was recently explained by the Fifth Circuit:

> Following the Bankruptcy Code's enactment, we made clear that the lodestar, *Johnson* factors, and § 330 coalesced to form the framework that regulates the compensation of professionals employed by the bankruptcy estate. *See Cahill,* 428 F.3d at 539–40. Under this framework, bankruptcy courts must first calculate the amount of the lodestar. *Id.* at 539. After doing so, bankruptcy courts "then may adjust the lodestar up or down based on the factors contained in § 330 and [their] consideration of the twelve factors listed in *Johnson.*" *Id.* at 540. We also have emphasized that bankruptcy courts have "considerable discretion" when determining whether an upward or downward adjustment of the lodestar is warranted.

---

[31]*Id.* at 67-68.

[32]The lodestar approach was pioneered by the Third Circuit in *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973), *appeal after remand*, 540 F.2d 102 (1976).

*CRG Partners Grp., LLC v. Neary (In re Pilgrim's Pride Corp.),* 690 F.3d 650, 656 (5th Cir. 2012), as revised (Aug. 14, 2012) (citation omitted) (footnote omitted).

"The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. There is a strong presumption of the reasonableness of the lodestar amount." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citations omitted). The party seeking an award of attorney fees bears the burden of "establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.,* No. 1:06cv433, 2014 WL 691500, at *9 (S.D. Miss. Feb. 21, 2014).

The lodestar, *Johnson,* and § 330 form the framework that is applied in the vast majority of bankruptcy cases which deal with the determination of an award of attorney fees. However, in the case at bar, Edwards specifically states[33] that it is not objecting to the reasonableness of the Application.[34] "Thus, if there was no dispute as to whether the services at issue in the JW Fee Application were legal rather than trustee services, the Court could simply analyze whether the services JW provided were actual and necessary and whether the compensation they were seeking was reasonable."[35]

Instead, Edwards contends that the Application is replete with entries where attorneys,

---

[33]*Edwards Family Partnership, L.P. and Beher Holdings Trust's Post-Trial Brief in Support of its Objection to First Application for Compensation of Jones Walker LLP as Attorneys for the Trustee*, Case No. 1201703EE, Dkt. #990, p. 6-7, March 2, 2015.

[34]Edwards does object to the hourly rates for law students and to the hourly rates charged by some of the attorneys, paralegals and non-professionals. However, in ruling on these objections, it will not be necessary for the Court to use the lodestar, *Johnson,* and § 330 method.

[35]*Id.*

paralegals, and non-professionals are billing the bankruptcy estate for work that would fall under the Trustee's Comp–because the work the attorneys, paralegals, and non-professionals performed fell under the statutory duties of the Trustee.  Consequently, the traditional manner of determining the reasonableness of an award of attorney fees (the lodestar, *Johnson,* and § 330 calculations) is unnecessary to rule on Edwards' Objection.

### 2.  Trustee's Duties v. Professional Duties

As noted above, the duties of a Chapter 11 trustee are set forth in § 1106 and § 704.  At trial, the Trustee testified as to what she understood part of her duties covered:

> Q.  Did you understand that your job – part of your job as the trustee was going to be to recover those assets?
>
> A.  Absolutely and I started doing that immediately.  In fact, most of what I did do in addition to responding to borrowers was the discovery process on where the assets were, where these people were, what were they doing, and trying to stop further diversion.  So yes, I knew that.
>
> Q.  You would agree with me that that is part of the trustee's job?
>
> A.  Absolutely.
>
> Q.  Did you also understand that running the loan service business, running CHFS was part of the trustee's statutory duty?
>
> A.  Running the business as an operating 11 is part of the trustee's duty, yes.

(Trial Tr. at 37); *see also* (Trial Tr. at 49-50) (obtaining control of bank accounts, mail and web site).

"[I]t is well-settled that courts may not compensate an attorney appointed to represent the trustee for services statutorily required of the trustee.  *In re J.W. Knapp Co.,* 930 F.2d 386, 388 (4th Cir. 1991)."  *In re Finney,* No. 91-20239-SCS, 1997 WL 33475580, at *25 (Bankr. E.D. Va. Feb. 26, 1997).

An attorney is never entitled to professional compensation for performing duties

Page 22 of  61

which the statute imposes upon the trustee.  *See e.g. In re Mabson Lumber Co., Inc.,* 394 F.2d 23, 24 (2d. Cir. 1968); *In re Harman Supermarket, Inc.*, 44 B.R. 918, 920 (Bkrtcy. W.D. Vir. 1984); *In re Auto Train Corp.,* 15 B.R. 160, 161 (Bkrtcy. D. C. 1981).  The function of an attorney for the trustee is to render to the estate those services which cannot and should not properly be performed by one who does not have a license to practice law. *See In re Meade Land & Development Co., Inc.,* 527 F.2d 280, 284-85 (3d Cir. 1975).  *See also House Report* No. 95-595, 95th Cong., 1st Sess. 328-29 (1977); *See Senate Report* No. 95-989, 95th Cong., 2d Sess. 39 (1978), U.S. Code Cong. & Admin. News 1978, 5787.

*In re Shades of Beauty, Inc.,* 56 B.R. 946, 949 (Bankr. E.D.N.Y. 1986), *aff'd in part and remanded on other grounds,* 95 B.R. 17 (E.D.N.Y. 1988); *see U.S. Trustee v. Porter, Wright, Morris & Arthur (In re J. W. Knapp Co.),* 930 F.2d 386, 388 (4th Cir. 1991); *In re Finney,* 1997 WL 33475580, at *25; *In re Polk,* 215 B.R. 250, 253 (Bankr. M.D. Fla. 1997); *Gordon v. Walton (In re Hambrick),* No. 08-66265, 2012 WL 10739279, at *4 (Bankr. N.D. Ga. April 10, 2010); 9 Am. Jur 2d Bankruptcy § 264; *In re NRG Res., Inc.,* 64 B.R. 643, 651 (W.D. La. 1986); *In re Lexington Hearth Lamp & Leisure, LLC.,* 402 B.R. 135, 142 (Bankr. M.D.N.C. 2009).

In drawing the line between the duties of an attorney versus a trustee, courts generally have asked whether the trustee could perform the task without a license to practice law.  "The burden rests with the attorney for the trustee to demonstrate that the services for which compensation is sought involve legal skills beyond the scope of the trustee's statutory duty." *In re Polk,* 215 B.R. at 253. (citations omitted).  "[T]he attorney must establish that the tasks for which compensation is sought are not duties which are generally performed by a trustee without attorney assistance. *In re Whitney,* 27 B.R. at 353-354." *In re Finney,* 1997 WL 33475580, at *25; *see In re Howard Love Pipeline Supply Co.,* 253 B.R. 781, 792 (Bankr. E.D. Tex. 2000) (services for attorney compensation cannot be performed except by an attorney).  "Several courts have stated that the attorney for the trustee should only perform services that someone without a law license could not perform." *In re*

*Lexington Hearth,* 402 B.R. at 143. (citations omitted).  "Attorneys must therefore present billing records with enough detail to show that the charge involves some legal service beyond the scope of the trustee's statutory duty."  *In re Hambrick,* 2012 WL 10739279, at *4; *see In re NRG Res.,* 64 B.R. at 653.

"Courts have consistently acknowledged that differentiating the roles of a trustee and an attorney is often a difficult task."  *In re Finney,* 1997 WL 33475580, at *25 (citations omitted); *see In re Meade Land & Development Co., Inc,* 527 F.2d at 280, 285 (3d Cir. 1975);  *In re LeClair*, 336 B.R. 718, 721 (Bankr. E.D. Va. 2002);  *In re King,* 88 B.R. 768, 770 (Bankr. E.D. Va. 1988); *In re Wilmon, Inc.,* 61 B.R. 989, 991 (Bankr. W.D. Pa. 1986);  *In re Red Cross Hosp. Assoc., Inc.,* 18 B.R. 593, 594 (Bankr. W.D. Ky. 1982).

Based on the Court's review of the case law, the duties listed below[36] have been adjudicated to fall squarely within the scope of the duties of a trustee and, consequently, constitutes services that do not require a law license to perform.  Accordingly, these types of duties or services are not compensable as legal work under § 330:

a. *Reviewing the Debtor's Records. See* 11 U.S.C. § 704(a)(4) ("investigate the financial affairs of the debtor"); *Chapter 11 Trustee Handbook,* p. 67-68, http://www.justice. gov/UST/eo/private_trustee/library/chapter11/index.htm (investigating the financial affairs of the debtor); *In re Hambrick,* 2012 WL 10739279, at *5 (initial investigation of financial affairs); *In re Holub,* 129 B.R. 293,  295 (Bankr. M.D. Fla 1991) (review of the debtor's books and records); *In re Garcia,* 317 B.R. 810, 816 n.4 (Bankr. S.D. Cal. 2004) (examination of the debtor's papers); *In*

---

[36]The Court grouped the cases under broad categories.  Some duties may fall under more than one category.

*re Polk,* 215 B.R. at 253 (review of file); *In re Garcia,* 317 B.R. at 818 (reviewing the debtor's file);

*In re Howard Love Pipeline,* 253 B.R. at 791 n.14 (review of the debtor's books and records); *In re*

*Adelson,* 239 B.R. 627, 629 (Bankr.S.D.Fla.1999) (review the debtor's file); *In re Kuhn,* 150 B.R.

825, 826–27 (Bankr. M.D. Fla. 1993) (review of the debtor's file); *In re McKenna,* 93 B.R. 238, 242

(Bankr. E.D. Cal. 1988) (examination of the debtor's papers); *In re King,* 88 B.R. 768, 771 (Bankr.

E.D. Va. 1988) (review of the debtor's files); *In re McAuley Textile Corp.,* 11 B.R. 646, 648–49

(Bankr. D. Me. 1981) (examining the debtor's books and records); *In re Lexington Hearth,* 402 B.R.

at 144 (review of records).

b. *Investigating Estate Property. See* 11 U.S.C. § 1106(a)(3); *In re Shades of Beauty, Inc.,*

56 B.R. at 953 (obtain documents regarding accounts receivables and monitoring accounts

receivables); *In re Shades of Beauty, Inc.,* 95 B.R. 17, 18 (E.D.N.Y. 1988) (examine books, gain

access to debtor's premises, collecting accounts receivables); *In re Prairie Central Railway Co.,* 87

B.R. 952, 959 (Bankr. N.D. Ill. 1988) ("Investigation of assets, conduct, liabilities and financial

condition of the debtor"); *In re Virissimo,* 354 B.R. 284, 294 (Bankr. D. Nev. 1981) (inspect the

debtor's property); *In re Howard Love Pipeline,* 253 B.R. at 792–94 (telephone calls to the debtor's

attorney or to a creditor's attorney regarding assets); *In re Finney,* 1997 WL 33475580, at *23

(gathering information concerning the debtor); *In re Lexington Hearth,* 402 B.R. at 144

(investigation of estate property); *In re Wilmon,* 61 B.R. at 992-93 (investigating existence of

security interests and investigating whether to abandon property); 7 *Collier on Bankruptcy*

¶ 1106.03[10] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (trustee shall investigate the

affairs of the debtor).

c. *Communicating with Other Parties. See* 11 U.S.C. § 704(a)(7) ("furnish such information

concerning the estate and the estate's administration as is requested by a party in interest"); *Chapter 11 Trustee Handbook,* p. 67-68, http://www.justice. gov/UST/eo/private_trustee/ library/chapter11/ index.htm (investigating the financial affairs of the debtor); *In re J.W. Knapp),* 930 F.2d at 387-88 n.4 (furnish information); *In re Crutcher Transfer Line, Inc.,* 20 B.R. 705, 707-08 (Bankr. W.D. Ky. 1982) (consulting with accountant); *In re McLean Wine Co.,* 463 B.R. 838, 849 (Bankr. E.D. Mich. 2011) (responding to inquiries and routine phone calls and correspondence); *In re Holub,* 129 B.R. 293, 295 (communications with debtor, creditors, and attorneys regarding status of case); *In re Virissimo,* 354 B.R. at 298 (calls to and from information seekers); *In re Garcia,* 317 B.R. at 824 (answering inquiries from creditors, employees, etc.); *In re McKenna,* 93 B.R. at 241-42 (meeting with debtor's counsel and routine calls and correspondence with information seekers); *In re Howard Love Pipeline,* 253 B.R. at 792–94 (calls from creditors); *In re Wilmon,* 61 B.R. at 993 (review and drafting of correspondence regarding status of property of estate); *In re Minton Grp., Inc.,* 33 B.R. 38, 41 (Bankr. S.D.N.Y.1983) (telephone calls to and from information seekers and correspondence with information seekers); *In re Lexington Hearth,* 402 B.R. at 144 (communicating with other parties).

      d. *Reviewing and Objecting to Claims.* *See* 11 U.S.C. § 704(a)(5) ("examine proofs of claims and object to the allowance of any claim that is improper"); *Chapter 11 Trustee Handbook,* p. 67, http://www.justice.gov/UST/eo/private_trustee/library/chapter11/index.htm (investigating the financial affairs of the debtor); *In re Hambrick,* 2012 WL 10739279, at *4 ("preparation of a routine objection to a claim"); *In re Garcia*, 317 B.R. at 822 (examination of claims and objecting to them); *In re Howard Love Pipeline,* 253 B.R. at 792–94 (review of prepetition and administrative claims); *In re Perkins,* 244 B.R. 835, 843 (Bankr. D. Mont. 2000) (routine objections to claims that are

unopposed and require no legal analysis); *In re Haggerty,* 215 B.R. 84, 86 (Bankr. M.D. Fla. 1997) (routine objections to claims that are unopposed and require no legal analysis); *In re Kuhn,* 150 B.R. at 826–27 (review of claims); *In re Holub,* 129 B.R. at 296 (routine objections to claims, such as lack of documentation); *In re King,* 88 B.R. at 771 (preparing objections to claims); *In re Lexington Hearth,* 402 B.R. at 144-45 (reviewing and objecting to claims).

  e. <u>*Communicating with and Supervising Estate Professionals*</u>. *See* 11 U.S.C. § 704(a)(7) ("furnish such information concerning the estate and the estate's administration as is requested by a party in interest")*; Chapter 11 Trustee Handbook,* p. 67, http://www.justice.gov/UST/eo/ private_trustee/ library/chapter11/index.htm (furnishing information to parties); *In re Shades of Beauty, Inc.,* 56 B.R. at 953 (review auctioneer's report, attend auction & pay secured creditor); *In re Holub,* 129 B.R. at 296 (supervision of professionals); *In re Garcia,* 317 B.R. at 817 n. 4 (acting as liaison with special counsel); *In re McLean Wine Co.,* 463 B.R. at 848 (applications to employ professionals); *In re Howard Love Pipeline,* 253 B.R. at 791 n.14 (corresponding with estate professionals); *In re McKenna,* 93 B.R. at 242 (acting as liaison with special counsel); *In re Jebco, Inc.,* 44 B.R. 81, 83 (Bankr.W.D. Ky.1984) (audit conference with estate CPA); *In re Lexington Hearth,* 402 B.R. at 145 (communicating and supervising professionals).

  f. <u>*Collecting and Liquidating Estate Assets*</u>. *See Chapter 11 Trustee Handbook,* p. 67, http://www.justice.gov/UST/eo/private_trustee/library/chapter11/index.htm (collecting and liquidating estate assets)*; In re J.W. Knapp,* 930 F.2d at 388 (sale of assets); *In re Finney,* 1997 WL 33475580, at \*28 (gathering financial information regarding the debtor); *In re Virissimo,* 354 B.R. at 295 (routine negotiations regarding the sale of the debtor's property); *In re Garcia,* 317 B.R. at 824 (liquidate estate assets); *In re Howard Love Pipeline,* 253 B.R. at 792-94 & n.14 (advertising

assets for sale, attending asset auctions, locating buyers for assets and telephone calls from creditor attorney regarding asset disposition); *In re Adelson,* 239 B.R. at 629 (call to auctioneer regarding asset liquidation); *In re Boltec Indus., Inc.,* No. 91–21463, 1993 WL 853018, at *2 (Bankr. E.D. Mich. Jan. 8, 1993) (communicating with various parties re sale of the debtor's assets); *In re Gary Fairbanks, Inc.,* 111 B.R. 809, 813 (Bankr. N.D. Iowa 1990) (calls re the sale of assets); *In re McKenna,* 93 B.R. at 241 (communication with prospective buyers); *In re King,* 88 B.R. at 771 (reviewing proposal by auctioneer and communicating with auctioneer); *In re McAuley Textile,* 11 B.R. at 648–49 (selling estate property); *In re Lexington Hearth,* 402 B.R. at 145 (selling and/or disposing of estate assets).

   g. *Performing Banking Functions/Bookkeeping. See Chapter 11 Trustee Handbook,* p. 67, http://www.justice. gov/UST/eo/private_trustee/library/chapter11/index.htm (performing banking functions); *In re Minton Group, Inc.,* 33 B.R. at 41 (payment of bills and taxes); *In re Prairie Central Railway Co.,* 87 B.R. at 959 (bookkeeping, payment of operating expenses); *In re Holub,* 129 B.R. at 295 ("routine trustee banking matters, including deposits of funds, issuance of checks, and reconciliation of bank statements"); *In re Howard Love Pipeline*, 253 B.R. at 791, n. 14 ("supervising bank transactions"); *In re Pickering,* 66 B.R. 11, 12 (Bankr. N.D. Ohio 1986) (consulting with court regarding bank account).

   Consequently, if any of the time entries on the Application are for services that fall under any of the above categories, the services will be deemed compensable as Trustee's Comp under § 326[37] and not as professional services under § 330.

---

[37]*See supra* note 26.

### C.  Edwards' Specific Objections

In its Objection, Edwards lists seven (7) specific objections to the Application.  Three (3) of the objections relate to expenses JW requests to be reimbursed (overtime pay, computer-assisted legal research, and long distance charges).  These three (3) objections to expenses will be addressed separately.

The Court turns first to Edwards' remaining four (4) objections that relate to compensation for services.  With respect to compensation, Edwards contends that the Application seeks compensation under § 330 for trustee duties performed by attorneys, paralegals and other non-professionals.  Edwards contends if allowed, the Trustee and JW will be compensated twice.  This category forms the bulk of Edwards' objections.  With the exception of a specific attorney, Edwards objects to hourly rates above $340.00 for work performed by attorneys.[38]  In addition to seeking duplicate compensation for the Trustee's statutory duties, Edwards objects to any non-lawyer rates higher than $155.00 an hour.  Edwards objects to hourly rates of $165.00 for work done by law students.

### 1.  Compensation

### a.  Dual Compensation

As stated above, an attorney may not be compensated for duties statutorily assigned to a trustee.  The Summary Chart prepared by Edwards lists specific time entries in the Application which Edwards asserts are trustee duties and which should not be compensated under § 330.  Edwards asserts that the Application contains approximately $215,485.00 in fees which are for the

---

[38]*Edwards Family Partnership, L.P. and Beher Holdings Trust's Objection to Fee Applications,* Case No. 1201703EE, Dkt. #820, p. 3-8, Oct. 3, 2014.

performance of the Trustee's statutory duties by professionals and non-professionals.

On the other hand, the Trustee asserts that every entry in the Application is for legal work compensable under § 330.  The Trustee testified:  "Q.  Ms. Johnson, are you contending that every service that is billed for in the fee application by Jones Walker is a legal service?   A.  Yes, compensable by law firm [*sic*].   Compensable to a law firm under the standards of 330.  I am contending that."  (Trial Tr. at 64.)

The Trustee's lead attorney, Jeff Barber, concurred with the Trustee's position.  Mr. Barber testified:  "Q.  Mr. Barber, as you review the Jones Walker fee application, [Exhibit] JW1, and have listened to the testimony today, in your opinion is the  – are the time entries that are on this application legal services provided by Jones Walker to assist the trustee? A.  Yes, I do."  (Trial Tr. at 88); *see also* (Trial Tr. at 91) (Jones Walker did not provide any nonlegal services to the Trustee).

Using the Summary Chart and Trial Exhibit EFP-1[39] as a guide, the Court reviewed the entries in the Application to which Edwards objected.  Contrary to the Trustee's contention and her attorney's contention that all of the services provided by JW were legal in nature, the Court finds that the Application contains numerous entries that are not legal in nature and fall under the duties of the Trustee.

The following charts are a few examples of the type of entries the Court found in the Application where JW professionals and non-professionals have billed the estate under § 330 for duties of the Trustee.  A legend at the end of the charts identifies the initials and the task codes.

See Next Page

---

[39]EFP-1 is the Application which was submitted by JW.  Edwards highlighted in yellow the specific entries to which it objects.

Page 30 of  61

**INVESTIGATING ESTATE PROPERTY:**

| Page #[40] | Date | Initials | Task Code | Description | Hours | Fees |
|---|---|---|---|---|---|---|
| 45 | 02/20/14 | PSA | BO | CORRESPONDENCE WITH MR. BARBER REGARDING REQUESTED CHANGES TO CHFONLINE.COM WEBSITE.  CREATED PAGE MOCKUP OF REQUESTED CHANGES TO WEBSITE. (WORK PERFORMED BY FRANK HUTCHINSON, WEB DEVELOPER.) | .30 | 49.50 |
| 45 | 02/20/14 | PSA | BO | APPLIED REQUESTED CHANGES TO MOCKUP OF CHFONLINE.COM FOR PUBLICATION.  (WORK PERFORMED BY FRANK HUTCHINSON, WEB DEVELOPER.) | .20 | 33.00 |
| 74 | 03/07/14 | KB | CA | REVIEW CORRESPONDENCE RE TELEPHONE CONFERENCES WITH ACCOUNT HOLDERS | .20 | 31.00 |
| 74 | 03/07/14 | KB | CA | REVIEW DOCUMENTS AND INFORMATION REGARDING ACCOUNT HOLDERS IN BANKRUPTCY | .40 | 62.00 |
| 145 | 04/16/14 | TK | BO | WORK ON COMPILING INFORMATION FOR BORROWER FILES AND ACCOUNTING FOR BORROWER PAYMENTS RECEIVED | 7.60 | 1,482.00 |
| 145 | 04/16/14 | NLC | BO | RECONCILIATION OF PAYMENT SPREADSHEET | 2.50 | 287.50 |
| 177 | 05/02/14 | KB | CA | REVIEW INSURANCE FILE TO BEGIN TO COMPILE LIST OF INSURANCE COMPANIES TO RECEIVE NOTICE OF TRUSTEE APPOINTMENT | 1.70 | 263.50 |
| 177 | 05/02/14 | KB | CA | REVIEW INSURANCE FILE WITH J. BARBER | .20 | 31.00 |

---

[40]The page numbers listed are the page numbers typed on the top, right side of each page of the Application and not the ECF page numbers at the top of each page.

| 177 | 05/02/14 | TK | CA | WORK ON COMPILING BORROWER INFORMATION FOR FILES | 7.50 | 1,462.50 |
|-----|----------|-----|-----|-------------------------------------------|------|----------|
| 184 | 05/07/14 | TK | CA | WORK ON COMPILING DOCUMENTS AND PAYMENT INFORMATION FOR BORROWER FILES | 7.80 | 1,521.00 |
| 230 | 06/03/14 | TK | CA | DRAFT MULTIPLE SPREADSHEETS OF PAYMENTS, LIST OF NON-BOARDED FILES, ETC. FOR TRANSITION TO VANTIUM | 7.80 | 1,521.00 |
| 230 | 06/03/14 | MG | CA | NOTARIZE MULTIPLE RELEASES AND SUBORDINATION AGREEMENTS FOR K. JOHNSON | .60 | 93.00 |
| 245 | 06/10/14 | PSA | CA | ANALYSIS OF COMMUNITY HOME DATA AND PROVIDE SAME TO VANTIUM | 3.00 | 495.00 |
| 245 | 06/10/14 | PSA | CA | CONFERENCE CALL WITH H. TAYLOR AND VANTIUM RE: DATA REQUESTED FROM VANTIUM | .50 | 82.50 |
| 261 | 06/18/14 | BKP | RE | CALL VARIOUS COUNTY OFFICES AND SEARCH ONLINE TO OBTAIN INFORMATION SO CLIENT CAN DETERMINE WHETHER IT SHOULD REDEEM TAX SALES AND/OR PAY DELINQUENT TAXES | 2.40 | 480.00 |
| 267 | 06/20/14 | MG | CA | NOTARIZE TWENTY LIMITED POWERS OF ATTORNEY, RELEASE OF LIEN, ASSIGNMENT OF DEED OF TRUST AND RELEASE/AUTHORITY TO CANCEL FOR TRUSTEE | .90 | 139.50 |

See Next Page

**COMMUNICATING WITH OTHER PARTIES (MAIL):**

| Page # | Date | Initials | Task Code | Description | Hours | Fees |
|---|---|---|---|---|---|---|
| 21 | 02/06/14 | KB | BO | REVIEW VARIOUS ISSUES ON CHANGE OF ADDRESS WITH K. JOHNSON AND J. BARBER | .30 | 46.50 |
| 21 | 02/06/14 | KB | BO | CONFERENCE CALL WITH POST OFFICE, K. JOHNSON AND J. BARBER RE CHANGE OF ADDRESS PROCEDURES | .20 | 31.00 |
| 21 | 02/06/14 | KB | BO | REVIEW ONLINE CHANGE OF ADDRESS FORMS WITH K. JOHNSON | .40 | 62.00 |
| 21 | 02/06/14 | KB | BO | DRAFT LETTER TO POST OFFICE CONTACT FORWARDING ORDER GRANTING APPOINTMENT OF CHAPTER 11 TRUSTEE | .30 | 46.50 |
| 50 | 02/22/14 | RPV | CA | EMAILS TO AND FROM MS. FUTRELL, MR. BARBER AND MS. JOHNSON REGARDING PAYMENTS FORWARDED TO POST OFFICE BOX AND RECEIPT OF SAME | .30 | 135.00 |

See Next Page

**COMMUNICATING WITH & SUPERVISING ESTATE PROFESSIONALS:**

| Page # | Date | Initials | Task Code | Description | Hours | Fees |
|---|---|---|---|---|---|---|
| 71 | 03/06/14 | KB | EA | DRAFT, REVIEW AND REVISE APPLICATION TO EMPLOY JOHN MOORE AS SPECIAL COUNSEL AND ORDER GRANTING SAME | .70 | 108.50 |
| 77 | 03/10/14 | KB | EA | REVISE AND FINALIZE APPLICATION TO EMPLOY JOHN MOORE AS SPECIAL CONFLICTS COUNSEL | .30 | 46.50 |
| 77 | 03/10/14 | KB | EA | ELECTRONICALLY FILE APPLICATION TO EMPLOY JOHN MOORE AND ELECTRONICALLY UPLOAD ORDER GRANTING SAME TO COURT FOR ENTRY | .20 | 31.00 |
| 130 | 04/09/14 | KB | CA | REVIEW CORRESPONDENCE FROM J. MOORE RE PENDING LITIGATION AND FORECLOSURE MATTERS | .30 | 46.50 |
| 130 | 04/09/14 | KB | CA | REVIEW AND COMPILE PENDING LITIGATION AND FORECLOSURE MATTERS FOR J. MOORE | 2.00 | 310.00 |
| 130 | 04/09/14 | KB | CA | VARIOUS E-MAIL CORRESPONDENCE TO J. MOORE FORWARDING PENDING LITIGATION AND FORECLOSURE PLEADINGS | .30 | 46.50 |
| 147 | 04/17/14 | MTD | RE | CONFERENCE WITH J. MOORE RE PRIORITY OF TEXAS DEED OF TRUST, EFFECTIVENESS OF RENEWAL ADDENDUM | .20 | 69.00 |
| 147 | 04/17/14 | MTD | RE | TELEPHONE CONFERENCE WITH [J.] MOORE RE RELATIVE PRIORITY OF DEEDS OF TRUST, EFFECT OF EXTENSION ADDENDUM | .20 | 69.00 |
| 147 | 04/17/14 | MTD | RE | DRAFT E-MAIL J. MOORE RE TITLE MATTERS | .10 | 34.50 |

## COLLECTING & LIQUIDATING ESTATE ASSETS:

| Page # | Date | Initials | Task Code | Description | Hours | Fees |
|---|---|---|---|---|---|---|
| 34 | 02/14/14 | KB | L190 | EXTENSIVE SEARCHES ON COMPANY WEBSITES, SECRETARY OF STATE WEBSITES, AND SECURITIES AND EXCHANGE COMMISSION WEBSITE RE POSSIBLE SUBPOENAS OR ADDITIONAL TURNOVER LETTERS TO VARIOUS COMPANIES | 1.30 | 201.50 |
| 36 | 02/17/14 | KB | AAA | SEARCHES, INCLUDING SECRETARY OF STATE, FOR CORPORATE INFORMATION AS TO VARIOUS TURNOVER LETTERS | .40 | 62.00 |
| 36 | 02/17/14 | KB | AAA | REVIEW INFORMATION FOR TURNOVER LETTERS WITH J. BARBER | .30 | 46.50 |
| 39 | 02/18/14 | KB | AAA | DRAFT TURNOVER LETTER TO NEVADA REGISTER AGENT | .70 | 108.50 |
| 49 | 02/21/14 | KB | AAA | REVIEW FINAL TURNOVER DEMAND LETTER TO NEVADA REGISTERED AGENT FOR CHFS | .20 | 31.00 |
| 54 | 02/24/14 | KB | AAA | BEGIN DRAFT TURNOVER LETTER TO D. MULLIN | .30 | 46.50 |
| 56 | 02/25/14 | KB | AAA | REVIEW AND REVISE TURNOVER LETTER TO D. MULLIN | .30 | 46.50 |
| 72 | 03/06/14 | KB | BO | DRAFT, REVIEW AND REVISE LETTERS TO VARIOUS CHAPTER 13 TRUSTEE ADVISING OF APPOINTMENT OF TRUSTEE AND NEW ADDRESS FOR PAYMENTS | 1.30 | 201.50 |
| 96 | 03/19/14 | KB | AAA | DRAFT TURNOVER LETTER TO PAT FRASCOGNA | .10 | 15.50 |
| 104 | 03/25/14 | KB | AAAR | REVIEW TURNOVER LETTERS TO BANCORPSOUTH, PAT FRASCOGNA, AND BANVIVIENDA AND DOCKET RESPONSE DEADLINES TO SAME | .30 | 46.50 |
| 115 | 04/01/14 | KB | AAAR | REVIEW WITH K. JOHNSON RE PREPARATION OF ADDITIONAL TURNOVER LETTERS | .20 | 31.00 |

**PERFORMING BANKING FUNCTIONS/BOOKKEEPING:**

| Page # | Date | Initials | Task Code | Description | Hours | Fees |
|---|---|---|---|---|---|---|
| 8 | 01/22/14 | KB | L110 | REVIEW BANK ACCOUNT INFORMATION WITH K. JOHNSON | .40 | 62.00 |
| 8 | 01/22/14 | KB | L110 | TELEPHONE CONFERENCE WITH J. SPENCER RE BANK ACCOUNT INFORMATION | .20 | 31.00 |
| 8 | 01/22/14 | KB | L110 | REVIEW BANK ACCOUNT INFORMATION WITH K. JOHNSON | .40 | 62.00 |
| 9 | 01/27/14 | CJH | CA | RESPOND TO QUERIES FROM K. JOHNSON RE BANCORPSOUTH ACCOUNT ISSUES | .10 | 29.50 |
| 9 | 01/27/14 | CJH | CA | PREPARE E-MAIL TO BANCORPSOUTH COUNSEL L. ALVIS RE NEED FOR FREEZING FUNDS, AND RELATED MEASURES | .20 | 59.00 |
| 173 | 04/30/14 | NLC | BO | CHFS BANK ACCOUNT RECONCILIATION | 6.00 | 690.00 |
| 200 | 05/15/14 | ARF | AAAR | REVIEW VOICEMAIL FROM SUNTRUST RE POSSIBLE CHFS SAFETY DEPOSIT BOX | .10 | 31.50 |
| 227 | 06/02/14 | KB | CA | REVIEW CHECKS FROM CHAPTER 13 TRUSTEES | .20 | 31.00 |
| 248 | 06/11/14 | NLC | BO | BANK ACCOUNT RECONCILIATION | 10.00 | 1,150.00 |

See Next Page

**MISCELLANEOUS–PREPARING TAX FORMS:**

| Page # | Date | Initials | Task Code | Description | Hours | Fees |
|--------|------|----------|-----------|-------------|-------|------|
| 71 | 03/06/14 | MMC | TAX | FILLED OUT EXTENSION FORMS FOR MULTIPLE STATES | 2.90 | 710.50 |
| 71 | 03/06/14 | MMC | TAX | RESEARCHED FEDERAL AND STATE EXTENSION REQUIREMENTS AND SUMMARIZED FEDERAL EXTENSIONS BASED ON WEBSITE LISTING | 6.00 | 1,470.00 |
| 71 | 03/06/14 | MMC | TAX | CONFERENCE WITH MS. JOHNSON AND MR. BARBER RE:  FEDERAL AND STATE RETURN EXTENSIONS | .30 | 73.50 |

See Next Page

**VAGUE DESCRIPTIONS:**

| Page # | Date | Initials | TaskCode | Description | Hours | Fees |
|--------|------|----------|----------|-------------|-------|------|
| 74 | 03/07/14 | MMC | TAX | RESEARCHED NEW JURISDICTIONS AND COMPLETED EXTENSION FORMS | .70 | 171.50 |
| 85 | 03/13/14 | KB | L310 | WORK ON VARIOUS SUBPOENAS | 1.20 | 186.00 |
| 214 | 05/23/14 | MAM | BO | CONFERENCE WITH MR. BARBER REGARDING KANSAS REGULATORY ISSUES | 1.00 | 280.00 |
| 235 | 06/05/14 | MTD | L110 | REVIEW 234 CAPITOL STREET PROPERTY WITH J. BARBER AND K. JOHNSON | .50 | 172.50 |
| 235 | 06/05/14 | MTD | L110 | CONFERENCE WITH K. JOHNSON RE APPRAISERS | .20 | 69.00 |
| 253 | 06/13/14 | MMC | CA | CONFERRED WITH MS. COLLETT RE:  VIRGINIA NOTICE | .10 | 24.50 |
| 261 | 06/18/14 | MTD | L110 | CONFERENCE WITH K. PAYNE RE STATUS OF COMPLETION OF TITLE REPORTS | .10 | 34.50 |
| 261 | 06/18/14 | MTD | L110 | DRAFT FINAL REPORTS FOR K. JOHNSON AND J. BARBER RE AFFILIATE PROPERTIES | .20 | 69.00 |

**Paralegals/Non-Attorneys (pages 322-330):**

| BKP | B. Karan Payne | $200/hr. |
|-----|----------------|----------|
| KB | Kilby Brabston | $155/hr. |
| MG | Michelle Green | $155/hr. |
| NLC | Nancy L. Canterbury | $115/hr. |
| PSA | Project Support Analysts (IT) | $165/hr. |
| TK | Theresa Keys | $195/hr. |

**Attorneys (pages 322-330):**

| ARF | April Reeves Freeman | $315/hr. |
|-----|----------------------|----------|
| CJH | Chad J. Hammons | $295/hr. |
| MAM | Mark A. Mintz | $280/hr. |
| MMC | Megan M. Curran | $245/hr. |
| MTD | Mark T. Davis | $345/hr. |
| RPV | R. Patrick Vance | $450/hr. |

**Task Codes (page 321):**

| AAA | Avoidance Action Analysis |
|-----|---------------------------|
| AAAR | Asset Analysis and Recovery |
| BO | Business Operations |
| CA | Case Administration |
| L110 | Fact Investigation/Development |
| L190 | Other Case Assessment/Dev & Adm |
| L310 | Written Discovery |
| RE | Real Estate |
| TAX | Tax |

A professional generally may not be compensated for services statutorily required to be performed by the trustee.[41]  Notwithstanding this general rule, courts have found exceptions and allowed a professional to be compensated for performing a trustee's statutory duties, however, "[o]nly when unique circumstances arise may an attorney be compensated for services that coincide or overlap with the trustee's statutory duties pursuant to Section 704 [and Section 1106], and only then to the extent of matters requiring legal expertise." *In re Lexington Hearth,* 402 B.R. at 144. (citations omitted).  "Only when unique difficulties arise may compensation be provided for services which coincide or overlap with the trustee's duties, and only to the extent of matters requiring legal expertise." *In re J.W. Knapp,* 930 F.2d at 388.  *See Ferrette & Slater v. U.S. Trustee (In re Garcia),* 335 B.R. 717, 725 (B.A.P. 9th Cir. 2005)*;  In re LeClair,*  336 B.R. at 722 (overlap okay in unique circumstances); *United States v. Freeland (In re Spungen),* 168 B.R. 373, 377-78 (N.D. Ind. 1993) (failure to show unique circumstances); *In re King,* 88 B.R. at 770.

In *In re Computer Learning Centers, Inc.,*[42] the trustee hired a management consultant, his law firm, and an accounting firm to help him manage the case.  The trustee "inherited" twenty-five (25) schools with over 1,600 employees and over 9,000 students, and had to manage over 2,800 proofs of claim.  The issue before the bankruptcy court was whether the trustee's delegation of his core responsibilities was allowed and "whether such a delegation effects a circumvention of the maximum compensation that may be paid to a trustee.  *In re Lowry Graphics, Inc.,* 86 B.R. 74 (Bankr. S.D. Tex. 1988).  In general, such a delegation should not be permitted."[43]  The court went

---

[41]*In re Shades of Beauty*, 56 B.R. at 949.

[42]*In re Computer Learning Centers, Inc.,* 285 B.R. 191 (Bankr. E.D. Va. 2002).

[43]*Id.* at 206.

on to find that "[t]here should be no absolute rule because cases differ and the resources necessary to properly administer them will necessarily differ. However, the trustee must remain in control of the administration of the case and may not delegate essential decision-making responsibility."[44]

Ultimately, the *Computer Learning* court found that given the scope of the case, the trustee "could not have personally performed all of his duties"[45] and permitted the management company, law firm, and accounting firm to be compensated under § 330 for performing the trustee's statutory duties. In allowing the professionals and non-professionals to be compensated for performing the trustee's statutory duties, the court held that "the fees will be charged against the trustee's maximum compensation allowable under § 326(a). But for this charge against the trustee's maximum compensation, they would be disallowed."[46] Another court arrived at a similar conclusion: "In other words, if the trustee is awarded the maximum amount pursuant to 11 U.S.C. § 326, the delegate's compensation must be subtracted from that amount." *In re Lowry Graphics,* 86 B.R. at 80.

Previously, the Court found that the Application contained many time entries for which compensation under § 330 is generally not allowed. The Court finds further that at the time the Trustee was appointed, the Trustee could not have physically performed all of her duties without assistance. For example, the Trustee could not have responded to all of the calls, emails and/or letters from the borrowers; accepted payments; executed releases of liens; monitored bank accounts, and the post office, etc. without help from the professionals and non-professionals of JW. Consequently, the Court finds that exceptional or unique circumstances existed at the time the

---

[44]*Id.* at 206-07 (citations omitted).

[45]*Id.* at 207.

[46]*Id.* at 237.

Trustee was appointed to allow the Trustee to utilize the professionals and non-professionals in her law firm in order to assist her in the performance of her statutory duties. Therefore, the Court concludes that JW may be compensated under § 330 for performing the Trustee's statutory duties.

The next issue is whether such compensation should reduce the Trustee's Comp. In several places in the Loan Servicing Motion, the phrase "with the assistance of counsel" is used in connection with the Trustee's request for authority to service the Debtor's loans on an interim basis–that is, until a servicing company could be hired. While the Court has previously found that the Loan Servicing Motion did not bar Edwards from objecting to the Application,[47] the Loan Servicing Motion did give notice that the Trustee had been and would continue to service the Debtor's loans "with the assistance of counsel." For this reason, unlike the courts in *Computer Learning* and *Lowry Graphics*, the Court will not, at this point, charge against or subtract from the Trustee's Comp the fees in the Application which are attributable to professionals and non-professionals carrying out the Trustee's statutory duties.

The Court, however, wants to make it clear that while the exceptional and unique circumstances existed at the time the Trustee was appointed and continued thereafter for some period of time, the Court is not finding that such exceptional and unique circumstances will remain in existence for the entire tenure of the Trustee's appointment. For example, once the Trustee hired a professional loan servicing company,[48] the Trustee was no longer servicing the bulk of the Debtor's loans, and therefore, those exceptional or unique circumstances which existed at the time

---

[47]*See supra* II. A.

[48]The *Trustee's Application to Employ Loan Servicing Company and to Establish Settlement Authority* (Dkt. #618) was filed on April 11, 2014. The *Agreed Order Granting Trustee's Application to Employ Loan Servicing Company and to Establish Settlement Authority [Dkt. #618]* (Dkt. #702) was entered on June 3, 2014.

of the Trustee's appointment were no longer in place because the Trustee and JW were not having to operate the Debtor's entire loan servicing business.

The Court is also not holding that with regard to any future applications by JW or any other fee application by other professionals, the Court will allow professionals and non-professionals to be compensated for performing the Trustee's statutory duties without charging against or subtracting from the Trustee's Comp.  This is an interim fee application pursuant to § 331.  "Any amounts that were awarded as interim compensation are subject to reconsideration at any time prior to the final award, for any reason."  3 *Collier on Bankruptcy* ¶ 331.04[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (footnote omitted).  "Because of the speculative nature of interim fee awards, they are 'always subject to the court's reexamination and adjustment during the course of the case.' *In re Evangeline*, 890 F.2d at 1321."[49] At the time the final fee applications and the final application for Trustee's Comp are filed, the Court will evaluate whether a charge against or a subtracting from the Trustee's Comp is warranted.

### b.  Hourly Rates of Attorneys

Edwards objects to hourly rates for attorneys above $340.00   JW asserts that Edwards' contention that hourly rates above $340.00 "are unreasonable in Mississippi. . . .is patently false."[50]

---

[49]*In re Fernandez*, 441 B.R. 84, 98-99 (Bankr. S.D. Tex. 2010), *aff'd*, No. 07-35173, 2011 WL 1404891 (S.D. Tex. Apr. 13, 2011), *aff'd*, 478 F. App'x 138 (5th Cir. 2012) (unpublished).

[50]*Supplemental Memorandum of Law: (I) in Support of First Application for Compensation for the Period of January 2, 2014 Through July 31, 2014, and Reimbursement of Expenses by the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc. (Dkt. No. 783); and (II) in Opposition to Objection Thereto by Edwards Family Partnership and Beher Holdings Trust (Dkt. No. 820)*, Case No. 1201703EE, Dkt. #916, p. 20, Dec. 15, 2014

JW further states that "[i]n *Huffman,*[51] the court found hourly billing rates up to $400.00 were appropriate in the Southern District of Mississippi."[52]

The Court must note that contrary to JW's assertion, the *Huffman* court did not *find* that a $400.00 hourly rate was "appropriate in the Southern District of Mississippi." Instead, the court held "that $200.00 is a reasonable hourly rate in this legal community for attorneys of their experience and qualifications. *See, e.g., United States ex rel. Rigsby v. State Farm Fire & Cas. Co.,* No. 1:06CV433, 2014 WL 691500 (S.D. Miss. Feb. 21, 2014) (approving hourly billing rates ranging from $262.00 to $400.00)."[53] Rather, the *Rigsby* court found that a $400.00 hourly rate was appropriate in the Southern District of Mississippi and not the bankruptcy court in *Huffman.*

"A reasonable attorney fee . . . is one calculated on the basis of rates and practices prevailing in the relevant market, *i.e.,* 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. . . .'" *Missouri v. Jenkins,* 491 U.S. 274, 286 (1989); *see also McClain v. Lufkin Ind., Inc.* 649 F.3d 374, 381 (5th Cir. 2011).

In a bankruptcy case, a trustee has a duty to the bankruptcy estate not only to hire competent professionals but also to hire professionals with reasonable rates "not exceeding the prevailing market rate, even if proposed counsel must reduce his or her regular rates. The test is not the particular attorney's rate, but the prevailing market rate. This is especially important where the

---

[51]*Henderson v. Legal Helpers Debt Resolution, L.L.C. (In re Huffman),* Adv. Case No. 1200099NPO, 2014 WL 1767694 (Bankr. S.D. Miss. May 2, 2014).

[52]*Supplemental Memorandum of Law,* at 20.

[53]*Huffman,* 2014 WL 1767694, at *4.

trustee employs his own firm.  The transaction is not an arm's length transaction."[54]

In the State of Mississippi, the issue of whether the hourly rates of the community where the attorney is physically located or where the debtor is situated should apply has been addressed in at least three bankruptcy cases:  *In re Waldoff's, Inc.,* 132 B.R. 329 (Bankr. S.D. Miss. 1991); *In re Condere Corp.,* 251 B.R. 693, (Bankr. S.D. Miss. 2000); and *In re Washington Furniture Manufacturing,* 283 B.R. 201 (Bankr. N.D. Miss. 2002).  The standard established by the Honorable Edward R. Gaines in *Waldoff's* is the standard applied in *Condere* and *Washington Furniture.*

The debtor in *Waldoff's* was a retail clothing store located in Hattiesburg, Mississippi.  The debtor was owned by one man, Milton Waldoff.  For reasons unclear to Judge Gaines, the debtor hired a law firm based in New York to represent it in its bankruptcy case.  The UST and a creditor objected to the hourly rates charged by the New York law firm.  Instead they argued that the law firm should be limited to the hourly rate charged by bankruptcy attorneys in Mississippi.

After reviewing applicable case law, Judge Gaines held that the higher rates of out-of-town attorneys may be appropriate in view of "the particular circumstances of the case."  *Id.* at 335.  As for the particular circumstances of *Waldoff's,* Judge Gaines disallowed the out-of-town rates:

> The Court is unable to detect the presence of factors that would qualify Waldoff's Inc.'s corporate or financial structure as so intricately complex as to justify compensation for legal services on a basis equal to that paid by businesses in a New York locale, that may have national holdings and whose bankruptcy proceedings would encompass a national scope. . . .[T]he Court must look at the overall circumstances of the case with an eye toward guarding the assets of the estate, and must recognize that the complexities referred to in the cited cases that would justify payment of nationally based fees are not present in this case.

*Id.*

In *Condere,* the court applied the *Waldoff's* standard and found that unlike the debtor in

---

[54]*In re Computer Learning,* 285 B.R. at 227.

*Waldoff's*, the debtor in *Condere* operated a large tire manufacturing facility in Natchez, Mississippi, but was headquartered in the State of Massachusetts. In addition, the debtor sold tires across the entire United States. Creditors from many parts of the United States made appearances in the case, and the ultimate purchaser of the debtor's assets, Titan Tire, was from the State of Illinois. The court therefore found that the circumstances of the debtor's case justified the award of hourly rates higher than those of the prevailing market in Mississippi.

Likewise, the court in *Washington Furniture* found that the debtor's case was a "'national' or 'regional' case as opposed to a 'local' case. Accordingly, the court finds that 'out-of-town' hourly rates are justified in this case even though they are higher than the hourly rates charged by local professionals." *In re Washington Furniture,* 283 B.R. at 204.

As stated previously, the Debtor is in the business of purchasing and servicing loan portfolios. In addition to joint ventures, the Debtor and Edwards entered into a series of agreements whereby Edwards invested money for the purchase of home improvement loans, typically second and third mortgages. At the time the bankruptcy petition was filed, the Debtor's business was located in Jackson, Mississippi. Edwards is located in the State of Maryland.

In the bankruptcy case, ten (10) creditors filed twenty-five (25) proofs of claim for the total amount of $60,904,435.96. The total dollar amount claimed in the six (6) proofs of claim filed by Edwards is $60,818,604.23. The remaining $85,831.73 was filed by the following:

–seven (7) taxing authorities in the State of Michigan;

–two (2) taxing authorities in the State of Tennessee;

–two (2) taxing authorities in the State of New Jersey;

–three (3) by the Mississippi Department of Revenue (MDOR);

–one (1) by the Internal Revenue Service (IRS);

–one (1) by Dickson; and

–three (3) by other creditors.

Of these ten (10) creditors, only attorneys for Edwards, MDOR, IRS and Dickson have appeared before the Court on a regular basis.  None of the other creditors has appeared at any of the hearings or trials.

The Court finds that while the Debtor has accounts receivables from across the United States, this case is not a *national* or a *regional* case like the debtors in *Condere* and *Washington Furniture*. That JW is a national law firm does not justify rates higher than those customarily charged in the Southern District of Mississippi.  Consequently, the Court will not allow *out-of-town* attorney rates in this bankruptcy case.

Given the number of fee applications filed before this Court, the Court is in the exact position to evaluate and determine the prevailing attorney rate in this Court.[55]  In this Court, the vast majority of the Chapter 11 cases are filed by a handful of attorneys, and the cases are not national or regional cases.  Currently, the most experienced Chapter 11 debtor attorneys have had fee applications approved with hourly rates ranging from $275.00 to $375.00; however, only two cases have had hourly rates approved at $375.00 an hour.[56]  The hourly rate in the majority of the approved

---

[55]The Court routinely reviews and approves fee applications for attorneys for Chapter 11 debtors, and the experience of the attorneys vary.  Over twenty (20) fee applications have been filed so far this year.  While the Court did not review every fee application filed in 2015 for this Opinion, the Court reviewed the most recently filed ten (10) fee applications.  In addition, the Court's opinion on what constitutes the prevailing market rate in the Southern District of Mississippi is based on the Court's collective experience gained from almost thirty (30) years on the bench.

[56]At trial, neither the Trustee nor Edwards introduced any evidence on the rates charged by attorneys in the Southern District of Mississippi.

Page 46 of 61

applications has been $340.00 and below.[57]

The Court will further note that with the exception of Dan Restreppo,[58] the Application does not provide the Court with information regarding the experience of any of the JW attorneys, paralegals or other non-professionals named in the Application.[59]

Except for Barber, who has practiced before this Court, the Court is without knowledge of the educational background, position, or experience level for the remaining attorneys and paralegals/non-professionals in the Application. In *Rigsby*, United States District Court Judge Halil S. Ozerden disallowed all time entries for what he called *unknown timekeepers*[60] of a law firm who were simply identified by their initials in a fee application. Judge Ozerden held that without being able to "ascertain the identity, position, or experience level of any of the timekeepers,"[61] the court could not determine "whether the hourly rates listed or the amount of time expended is reasonable

---

[57]In one of its briefs, JW points out that in *Simply Wheelz LLC d/b/a Advantage Rent-A-Car*, Case No. 1303332EE, this Court approved rates of $440.00 an hour for the debtor's counsel, an attorney with a local law firm. Unlike the Debtor in this case, *Simply Wheelz* is a national case. The debtor in *Simply Wheelz* operated as Advantage Rent-A-Car and had over 70 rental car offices across the United States; had an inventory of over 22,000 vehicles; and attorneys from across the United States appear in the case on a regular basis. Further, the debtor's lead counsel has over 39 years of experience. For these reasons, the Court did approve a rate of $440.00 an hour.

[58]In its Objection, Edwards specifically states that due to Daniel A. Restreppo's contacts in the United States government and his contacts in Central America, Mr. Restreppo was instrumental in the recovery of estate funds from Panama. Therefore, Edwards does not oppose the hourly rate of $750.00 for Mr. Restreppo.

[59]The Court reviewed not only the Application, but also the Trustee's motion to employ JW. The Court did not find any biographical information on any of the professionals or non-professionals.

[60]*United States ex rel. Rigsby v. State Farm Fire & Cas. Co.,* No. 1:06cv433, 2014 WL 691500, at *13 (S.D. Miss. Feb. 21, 2014).

[61]*Id.*

for these unknown timekeepers."[62] Regardless of its lack of knowledge as to the *unknown timekeepers* in the Application, because of the circumstances of this case at the time the Trustee was appointed, the Court will not disallow the time entries for attorneys, paralegals, and non-professionals unknown to this Court. Going forward, however, the Court may reach a different result.

In a recent case from the Southern District of Mississippi, *Henderson v. Legal Helpers Debt Resolution, L.L.C. (In re Huffman),* Adv. Case No. 1200099NPO, 2014 WL 1767694 (Bankr. S.D. Miss. May 2, 2014), a creditor objected to the fee application of the attorneys for the trustee. The creditor asserted that the attorneys were not entitled to be compensated for performing clerical duties. The court found that "[c]lerical work performed by an attorney is compensable at an hourly rate that is lower than the attorney's. *Cruz v. Hauck,* 762. F.2d 1230, 1235 (5th Cir. 1985) (holding that '[a] finding that some of the hours claimed were for clerical work . . . does not . . . justify complete denial of the fee request')." *Huffman*, 2014 WL 1767694, at *11.

It is clear that in order to draw the line between attorney and trustee duties, courts have generally done so by asking whether the trustee could perform the task without a license to practice law. Consequently, many of the duties of a trustee are clerical in nature. Since it has been established that JW professionals were performing the Trustee's statutory duties, the Court could reduce the hourly rates charged by JW attorneys for those time entries indicating the performance of clerical work. However, because of the exceptional or unique circumstances of the case at the time the Trustee was appointed, the Court will not reduce the hourly rate of attorneys who in this Application performed work that was clerical in nature.

---

[62]*Id.*

For all of these reasons, the Court finds that a reasonable maximum hourly rate and the prevailing maximum market rate in this Court is $350.00.[63]  In the current Application, only six (6)[64] attorneys charged rates above $350.00 an hour, and these attorneys did minimal work for the Trustee.  As a result, lowering their rates to $350.00 an hour will result in only a total reduction of $330.00[65] from the amount requested in the Application.

### c.  Hourly Rates for Paralegals/Non-Professionals

"The Fifth Circuit has held that paralegal work can be recovered as attorneys' fees if the work is legal in nature, rather than clerical.  *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001)."[66]   Edwards did not object to the compensation of paralegals and non-professionals (collectively, Non-Professionals) on any ground other than hourly rates above $155.00.  The Court recognizes that it has an independent duty to review fee applications, however, because of the unique circumstances of this case at the time the Trustee was appointed, the Court will not review the time entries in this current Application of the Non-Professionals to determine whether the work was legal in nature as opposed to clerical.

In *Rigsby*, the court approved a rate of $124.00 an hour[67] for paralegals.  In *Huffman*, the court found that "[w]ith respect to determining the reduced rate for non-legal work, the [c]ourt finds

---

[63]In *Rigsby*, hourly rates ranging from $262.00 to $400.00 were approved by the court.

[64]This does not include Restreppo–his hourly rate is not being reduced to $350.00.  *See supra* n.57.

[65]The $330.00 reduction is composed of the following dollar reduction for these six (6) attorneys: R. Patrick Vance ($30.00); Elizabeth J. Futrell ($71.50); Rudolph R. Ramelli ($108); Louis S. Nunes ($32.50); John F. Fletcher ($67.50); and Edward J. Ashton ($20.50).

[66]*Id.* at *18.

[67]*Id.*

guidance from courts in this judicial district that have found a range of $75.00 to $124.00 to constitute a reasonable hourly rate for paralegal work." *In re Huffman,* 2014 WL 1767694, at *12 (citing *Rigsby,* 2014 WL 691500, at *17 and *Trout Point Lodge Ltd. v. Handshoe,* No. 1:12cv90, 2013 WL 6524650, at *7 (S.D. Miss. Dec. 11, 2013).)

In a review of the fee applications in other Chapter 11 cases which have been filed in this Court, the range of approved hourly rates for Non-Professionals is $65.00 to $125.00 an hour.  With the guidance of other decisions in the Southern District of Mississippi and with the guidance of the fee applications approved by this Court in other Chapter 11 cases and without any biographical information on the Non-Professionals, the Court finds that a reasonable maximum hourly rate and the prevailing maximum market rate in the Southern District of Mississippi for Non-Professionals is $125.00.

The reductions in the hourly rates of Non-Professionals who charged above $125.00 an hour are as follows:

See Next Page

| Initials | Billed Hours | Billed Hourly Rate | Billed Total | Revised Billed Total at Hourly Rate of $125 | Difference from "Billed Total" at the Reduced Rates |
|---|---|---|---|---|---|
| MG | 6.30 | $155 | $976.50 | $787.50 | $189.00 |
| PSA | 5.40 | $165 | $891.00 | $675.00 | $216.00 |
| TK | 381.80 | $195 | $74,451.00 | $47,725.00 | $26,726.00 |
| CH | 94.30 | $185 | $17,445.50 | $11,787.50 | $5,658.00 |
| BKP | 48.70 | $200 | $9,740.00 | $6,087.50 | $3,652.50 |
| GMT | .40 | $160 | $64.00 | $50.00 | $14.00 |
| LSJ | .30 | $175 | $52.50 | $37.50 | $15.00 |
| KB | 408.60 | $155 | $63,333.00 | $51,075.00 | $12,258.00 |
|  |  |  | $166,953.50 | $118,225.00 | $48,728.50 |

As a result of lowering the rates for the above Non-Professionals, the total reduction from the amount requested in the Application for Non-Professionals is $48,728.50.[68]

### d.  Law Clerks

Edwards objects to the hourly rate of $165.00 for law clerks.  In *Missouri v. Jenkins,* the United States Supreme Court permitted compensation for work done by law clerks.[69]  Therefore, the issue before the Court is not whether a law firm may be compensated for law clerks, but rather, what hourly rate may a law firm charge for work done by a law clerk.

Neither JW nor Edwards provides the Court with much guidance on this issue.  Edwards does not cite authority to support its position that $165.00 is too high.   JW cites two cases, however, neither case is helpful in determining what a reasonable hourly rate should be for law clerks.  In one

---

[68]$48,728.50 = $166,953.50 - $118,225.00.

[69]*Missouri v. Jenkins,* 491 U.S. at 284.

case cited by JW, *Alter Fin. Corp. v. Citizens & S. Int'l Bank of New Orleans*, 817 F.2d 349, 350 (5th Cir. 1987), the court does not discuss an hourly rate for law clerks at all. In the other JW case, *Blanchard v. Forrest,* No. 93-3780, 1996 WL 125955, at *3 (E.D. La. Mar. 19, 1996), the court approved an hourly rate of only $35.00 for law clerks.

In *Carr v. Astrue,* the court discussed compensation for law clerks in order to determine the amount of allowed fees and expenses in a Social Security case. The court found:

> It is also undisputed that a prevailing party may recover hours billed by a law clerk, or a law school graduate not yet admitted to the bar at the prevailing market rate for such services. *See JGB Enters., Inc. v. United States,* 83 Fed. Cl. 20, 31–32 (Fed.Cl.2008) (citing *Richlin Security Serv. Co. v. Chertoff,* 553 U.S. 571, 128 S.Ct. 2007, 170 L.Ed.2d 960 (2008)). At issue here is the hourly rate that Plaintiff may reasonably charge for an unlicensed law clerk who has contributed to the attorney's work product by preparing a statement of facts and procedural history, summarizing the administrative proceedings and medical records, conducting legal research, and drafting arguments for multiple briefs.

*Carr v. Astrue*, No. 3:10CV1474, 2011 WL 5985292, at *2 (N.D. Tex. Nov. 28, 2011). The court found that an hourly rate of $75.00 was reasonable compensation for law clerks.

Based on the Court's research,[70] the following rates have been allowed for law clerks in the Fifth Circuit: *Sigillito v. Hollander (In re Hollander),* Adv. No. 04-1193, 2015 WL 4456070, at. *7 (Bankr. E.D. La. July 20, 2015) (bankruptcy case–approved $90.00 hourly rate for law clerk); *Jones v. White,* No. H-03-2286, 2007 WL 2427976, at *3 (S.D. Tex. Aug. 22, 2007) (Americans with Disabilities Act case–hourly rates of $90.00 to $135.00 were reasonable for law clerks who were second and third-year law students *given the nature of the case* and the experience of the law clerks);

---

[70]"As was stated in *In re Kleckner,* 81 B.R. 464, 466 (Bkrtcy. N.D. Ill. 1988), '[w]ere the Court solely restricted to the arguments of counsel and the research provided, there would be many uninformed and just plain incorrect decisions rendered. Rather, the Court must be free to research the law and apply logical extensions of arguments made by counsel.'" *BP Amoco Chemical v. Flint Hills Res., LLC,* 489 F.Supp.2d 853, 857 (N.D. Ill. 2007).

*Landmark Am. Ins. Co. v. Ray,* No. SA-05-ca-0005, 2006 WL 4092436, at *3 (W.D. Tex. Dec. 21, 2006) (insurance defense case–approved $100.00 per hour for law clerk); *Purdie v. Ace Cash Express, Inc.,* No. 301CV1754, 2003 WL 22976611, at *9 (N.D. Tex. Dec.11, 2003) (payday loan class action case–approved $75.00 to $125.00 per hour for law clerks); *Cope v. Duggins,* 203 F.Supp.2d 650, 651 (E.D. La. 2002) (Fair Debt Collection Practices Act case–approved $85.00 rate for law clerk). Based on its review of relevant case law, the Court finds that a maximum of $100.00 an hour is a reasonable hourly rate for a law clerk in this Court.

Although the Court finds that $100.00 is a reasonable maximum hourly rate for law clerks, the Court finds that it cannot award JW any compensation based on this reduced hourly rate for the work it billed the estate for law clerks in the Application for another reason. In the Application, the only entry for law clerks the Court was able to find simply states:

| Page # | Name | Task Code | Description | Rate | Hours | Fees |
|--------|------|-----------|-------------|------|-------|------|
| 329 | LAW CLERKS, NO | L190 | OTHER CASE ASSESSMENT/DEV & ADM | 165.00 | 36.80 | 6,072.00 |

This type of time entry represents *block billing* in the extreme. "The term 'block billing' refers to the 'time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.' *Glass v. United States,* 335 F.Supp.2d 736, 739 (N.D. Tex. 2004) (Lindsay, J.) (citing *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1534 n.15 (10th Cir. 1996)); *accord Barrow v. Greenville Indep. Sch. Dist.,* 2005 U.S. Dist. LEXIS 34557, at *10 (N.D. Tex. Dec. 20, 2005) (Fitzwater, J.) (citing *Robinson v. City of Edmond,* 160 F.3d 1275, 1284 n.9 (10th Cir. 1998)), *aff'd,* 2007 WL

3085028 (5th Cir. Oct. 23, 2007)."[71]   "This practice can make it impossible for the court to determine the reasonableness of the hours spent on each task; particularly, when the generic labels are used and the [c]ourt cannot determine whether the tasks are related or which matters the 'calls' or 'correspondence' address."[72]  The Supreme Court has indicated, however, that even though *block billing* impedes a court's analysis of a fee application, that in itself is not a basis for denying attorney fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

In the Application, the *block* entry for law clerks not only is composed of an unknown number of unidentified timekeepers, it does not list the dates the work was performed, the subject matter of the work, the experience level of the law clerks, etc.  Without a description of any kind as to what duties the law clerks performed, the Court is unable to determine the reasonableness of the billing entry or the basis of the hourly rate of $165.00.

In *Burns v. Home Zone Sales and Lease Purchase, LLC (In re Burns),* 503 B.R. 666 (Bankr. S.D. Miss. 2013), the court reduced an attorney's fee by 50% "due to the inordinate occurrences of 'block billing.'" *Id.* at 678.  The Court finds that the total lack of supporting information in this block time entry does not permit the Court to evaluate the reasonableness of the work, and therefore, a greater reduction than the court found in *Burns* is justified.  Therefore, the Court disallows the entire fee of $6,072.00 for law clerks.

### e.  Summary

The Court finds that the Application contained many time entries where JW professionals

---

[71] *Fralick v. Plumbers & Pipefitters Nat. Pension Fund*, No. 3:09CV0752, 2011 WL 487754, at *4 (N.D. Tex. Feb. 11, 2011); *see also Harris v. Allstate Ins. Co.,* No. 07-8789, 2009 WL 86673, at *3 (E.D. La. Jan. 12, 2009).

[72] *Harris*, 2009 WL 86673, at *3.

and Non-Professionals billed for performing the Trustee's statutory duties, that is, non-legal work. The Court, however, finds that exceptional or unique circumstances existed *at the time the Trustee was appointed* to allow JW to assist the Trustee in carrying out her statutory duties. Consequently, the Court will allow JW to be compensated for these non-legal time entries under § 330. The Court, however, is not finding that such exceptional and unique circumstances will remain in effect for any future fee applications filed by JW.

At this point, moreover, the Court will allow JW professionals and Non-Professionals to be compensated for performing the Trustee's statutory duties without charging the amount against or subtracting the amount from the Trustee's Comp. This is, however, an interim fee application, and the issue of whether to charge against the Trustee's Comp will be revisited by the Court when the final fee applications and the final application for Trustee's Comp are filed.

As to the hourly rates of attorneys, the Court finds that this is not a *national* or *regional* case which would justify *out-of-town* hourly rates. With the guidance of other decisions in the Southern District of Mississippi and with the guidance of the fee applications approved by this Court in other Chapter 11 cases, the Court finds that a reasonable maximum hourly rate and the prevailing maximum market rate in this Court for professionals is $350.00. This will result in a $330.00 reduction from the amount requested in the Application.

With the guidance of other decisions in the Southern District of Mississippi and with the guidance of the fee applications approved by this Court in other Chapter 11 cases, the Court finds that a reasonable maximum hourly rate and the prevailing maximum market rate in this Court for Non-Professionals is $125.00. This will result in a $48,728.50 reduction from the amount requested in the Application.

The Court finds that $100.00 is a reasonable maximum hourly rate for law clerks.  The Court, however, finds that it cannot award JW any compensation based on this reduced hourly rate for the work it billed the estate for law clerks in the Application because of *block billing*.  Without a description of any kind as to what duties the law clerks performed, the Court is unable to determine the reasonableness of the billing entry or the basis of the hourly rate of $165.00.  Therefore, the Court finds that JW may not be compensated $6,072.00 for the work it billed the estate for law clerks.  This will result in a $6,072.00 reduction from the amount requested in the Application.

## 2. Expenses

In its Objection, Edwards' objected to three (3) expenses for which JW seeks to be reimbursed:  overtime, computer-assisted legal research and long distance charges.  In the Interim Order, the Trustee agreed to waive its request for reimbursement of $3,992.75 in overtime expenses.[73]  As for the long distance charges, the Trustee agreed to waive its request for reimbursement of $2,851.07 in long distance charges.

As for the final item, the computer-assisted legal research expenses, the Trustee agreed to waive its request for reimbursement of one-half ($4,756.16) of the $9,512.23 in computer-assisted legal research expenses.  However, JW is requesting to be reimbursed for the remaining amount of $4,756.17 in computer-assisted legal research expenses.[74]

---

[73]Trial Tr. at 87.

[74]In its Objection, Edwards states that if there was no profit built into the long distance charges, then Edwards agreed to withdraw it objection to the long distance charges. On September 15, 2015, the Court sent an email to the parties asking for clarification about the long distance charges and for a clarification regarding the reimbursement of overtime and of computer-assisted legal research expenses. (The Court was unclear if JW was totally waiving its request for overtime and computer-assisted legal research.) The Trustee's attorney, Jeff Barber, responded to the Court's email. Barber represented to the Court that JW was waiving its request for reimbursement for overtime and for

After a review of the case law on whether to allow reimbursement for computer-assisted legal research, the court in *In re Fibermark, Inc.*, 349 B.R. 385, 399 (Bankr. D. Vt. 2006), allowed the reimbursement for computer-assisted legal research, subject to certain conditions:

> During the course of this case, the Court has had occasion to consider whether to reimburse various applicants for computer-accessed legal research (CALR). CALR, such as Westlaw or Lexis, has two distinct expense components. First, there is a fixed cost subscriber fee. The Court finds this fee to be analogous to the cost of subscribing to legal digests and reporters and determines it to be an overhead expense. This cost will not be reimbursed. Second, CALR also has a time or transaction charge for accessing its databases to perform legal research, analogous to the time charges of an attorney doing research in texts. Courts are divided as to whether CALR time charges should be eligible for reimbursement from bankruptcy estates.
>
>     . . . .
>
> This Court finds the case of *In re Drexel Burnham Lambert Group, Inc.,* 133 B.R. 13 (Bankr. S.D. N.Y. 1991), to be persuasive. There, the Southern District of New York allowed reimbursement for computerized legal research services expenses, such as Lexis and Westlaw, to the extent of the invoiced cost from the vendor. *Id.* at 32. After considering the controlling statute, relevant case law and the guiding principles for allowance of fees and expenses in this District, this Court has determined that it will allow reimbursement for CALR use costs, provided the applicant: (1) demonstrates that the use charges incurred were reasonable and necessary (which necessarily includes a description of the research topic and the length of time spent on each topic); (2) affirms that the applicant bills its non-bankruptcy clients for CALR use charges, including the rate at which it bills its non-bankruptcy clients; and (3) certifies the invoiced cost from the vendor. With this information, the Court can make the findings required by § 330 and ensure that only actual and necessary expenses are being paid by the bankruptcy estate. This standard will also apply to other forms of computerized research.

*In re Fibermark, Inc.*, 349 B.R. at 399-400; *see In re Wizard Enterprises, Inc.,* 109 B.R. 708 (Bankr. W.D. La. 1990) (allowed expenses for computer-assisted research when evidence was submitted establishing reasonableness).

---

long distance charges.  Barber further stated that JW was requesting that it be reimbursed for the balance of $4,756.17 for computer-assisted legal research.

This Court finds *Fibermark* to be persuasive and adopts the three-part requirement an applicant must follow in order to allow the Court to determine whether to permit reimbursement for computer-assisted research under § 330.  In the case at bar, even though JW did not meet the three-part requirement *per se*, since JW agreed to reduce its request by one-half ($4,756.16), the Court finds that JW is entitled to be reimbursed for the remaining one-half, $4,756.17 for computer-assisted legal research.

## CONCLUSION

"A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee.  Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Since the parties were unable to settle the amount of JW's fee, JW "bears the burden of establishing entitlement to an award." *Id.*

Edwards objected to JW professionals and Non-Professionals being compensated for performing the Trustee's statutory duties.  While the Court finds many time entries where JW professionals and Non-Professionals billed for performing the Trustee's statutory duties (non-legal work), the Court finds that based on the exceptional or unique circumstances in existence *at the time the Trustee was appointed*, the Court will allow JW to be compensated for the non-legal time entries under § 330.  The Court, however, wants to make it clear that while the exceptional or unique circumstances existed at the time the Trustee was appointed and continued thereafter for some period of time, the Court is not finding that such exceptional or unique circumstances will remain in existence for the entire tenure of the Trustee's appointment.

Moreover, because of the exceptional or unique circumstances in existence *at the time the Trustee was appointed*, the Court will allow JW professionals and Non-Professionals to be compensated for performing the Trustee's statutory duties without charging the amount against or subtracting from the Trustee's Comp.  Since this is an interim fee application pursuant to § 331, the issue of whether to charge against the Trustee's Comp will be revisited by the Court when the final fee applications and the final application for Trustee's Comp are filed.  "Interim fee awards are not final determinations intended to put a matter to rest. Rather, they are interlocutory and reviewable, and are intended only to provide some interim relief from the economic hardships of subsidizing litigation." *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Charles N. Wooten, LTD. (In re Evangeline Refining Co.),* 890 F.2d 1312, 1321 (5th Cir. 1989).

As for the hourly rates of attorneys and Non-Professionals, the Court finds that since this case is not a *national* or *regional* case, *out-of-town* hourly rates are not justified.  With the guidance of other decisions in the Southern District of Mississippi and with the guidance of the fee applications approved by this Court in other Chapter 11 cases, the Court finds that a reasonable maximum hourly rate and the prevailing maximum market rate in this Court is $350.00 for professionals and $125.00 for Non-Professionals.

The Court finds that $100.00 is a reasonable maximum hourly rate for law clerks.  The Court, however, finds that it cannot award JW any compensation based on this reduced hourly rate for the work it billed the estate for law clerks in the Application because of *block billing*.  Without a description of any kind as to what duties the law clerks performed, the Court is unable to determine the reasonableness of the billing entry or the basis for the hourly rate of $165.00.  Therefore, the Court finds that JW may not be compensated for the work it billed the estate ($6,072.00) for law

clerks.

As for expenses claimed by JW in the Application, JW previously agreed to waive $2,851.07 billed for long distance telephone service; $3,992.75 billed for overtime; and $4,756.16 for computer-assisted research, which represents one-half of the total amount requested.

JW requests to be reimbursed for the remaining $4,756.17 billed for computer-assisted research. The Court adopts the *Fibermark* three-part test an applicant must follow in order to allow the Court to determine whether to permit reimbursement for computer-assisted research under § 330. In the case at bar, even though JW did not meet the three-part requirement *per se*, since JW agreed to reduce its request by one-half ($4,756.16), the Court finds that JW is entitled to be reimbursed for the remaining one-half, $4,756.17 for computer-assisted legal research.

The Court does not take pleasure in having to resolve this dispute over JW's attorney fees. The Court, however, has "an independent duty to review the reasonableness of the fees of any professional." *In re Lexington Hearth,* 402 B.R. at 139 (footnote omitted). Further, the Fifth Circuit recently held that "[t]he bankruptcy court may exercise its discretion, upon motion or sus sponte, to 'award compensation that is less than the amount . . . requested.' *Id.* § 330(a)(2)." *Barron & Newburger, P.C. v. Texas Skyline Ltd (In re Woerner),* 783 F.3d 266, 271-72 (5th Cir. 2015). Consequently, the Court finds that pursuant to § 331, JW is entitled to the following interim attorney fees and expenses:

See Next Page

**SUMMARY OF DEDUCTIONS TO COMPENSATION**:

Deduction for attorneys charging hourly rates above $350.00 (excluding Restreppo): . . $330.00

Deduction for Non-Professionals charging hourly rates above $125.00: . . . . . . . . . . . $48,728.50

Deduction for law clerks: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $6,072.00

**TOTAL DEDUCTIONS**: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **$55,130.50**

Total compensation requested:  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $733,656.50

Minus total deductions: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $55,130.50

**TOTAL INTERIM AMOUNT AWARDED FOR COMPENSATION**: . . . . . . . **$678,526.00**

**SUMMARY OF WAIVED EXPENSES**:

Waived long-distance telephone charges: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $2,851.07

Waived over-time charges:  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $3,992.75

Waived computer-assisted research (one-half): . . . . . . . . . . . . . . . . . . . . . . . . . . . $4,756.16

**TOTAL WAIVED DEDUCTIONS**: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **$11,599.98**

Total expenses requested: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $67,203.53

Minus total waived charges: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $11,599.98

**TOTAL INTERIM AMOUNT AWARDED FOR EXPENSES**: . . . . . . . . . . . . . . **$55,603.55**

A separate interim order will be entered by the Court.

**##END OF OPINION##**