

**SO ORDERED,**

**Judge Edward Ellington**
**United States Bankruptcy Judge**
**Date Signed: December 7, 2015**

**The Order of the Court is set forth below. The docket reflects the date entered.**

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **COMMUNITY HOME FINANCIAL** | **CASE NO. 1201703EE** |
| **SERVICES, INC.** | |

Hon. Derek A. Henderson                     Attorney for Debtor (former)
derek@derekhendersonlaw.com
1765-A Lelia Drive, Suite 103
Jackson, MS  39216

Hon. Jim F. Spencer, Jr.           Attorneys for Edwards Family Partnership, LP
Hon. Stephanie M. Rippee                    and Beher Holdings Trust
jspencer@watkinseager.com
srippee@watkinseager.com
Post Office Box 650
Jackson, MS  39205-0650

Hon. Kristina M. Johnson                         Chapter 11 Trustee
kjohnson@joneswalker.com
Post Office Box 427
Jackson, MS  39205-0427

Hon. Jeffrey R. Barber                    Attorney for Chapter 11 Trustee
jbarber@joneswalker.com
Post Office Box 427
Jackson, MS  39205-0427

Edward Ellington, Judge

## MEMORANDUM OPINION ON THE
### *FIFTH APPLICATION OF ATTORNEY FOR THE DEBTOR FOR ALLOWANCE OF FEES AND ALLOWANCE OF COSTS AND EXPENSES*

**THIS MATTER** came before the Court on the *Fifth Application of Attorney for the Debtor for Allowance of Fees and Allowance of Costs and Expenses* (Dkt. #443) filed by Derek A. Henderson, attorney for Debtor and *Edwards Family Partnership, L.P. and Beher Holdings Trust's Objection to Fee Applications of Derek Henderson (DK #443)* (Dkt. #479); and the *Trustee's Objection to Fifth Application of Attorney for the Debtor for Allowance of Fees and Allowance of Costs and Expenses [Dkt. #443]* (Dkt. #529).[1]  Having considered same, the testimony and evidence presented at trial, and the respective briefs filed by the parties, the Court finds that for the reasons expressed more fully below, the application is allowed in part and disallowed in part.

## FINDINGS OF FACT[2]

Although not directly relevant to the matter pending before the Court, the Court will briefly describe the events leading up to the bankruptcy filing.  Community Home Financial Services, Inc. (CHFS) is in the business of purchasing and servicing loan portfolios.  The president of CHFS is William D. Dickson (Dickson).  CHFS entered into various business transactions with several companies controlled by Dr. Charles C. Edwards (Dr. Edwards).  This bankruptcy case evolved out

---

[1]The Chapter 11 Trustee filed *Trustee's Objection to Fifth Application of Attorney for the Debtor for Allowance of Fees and Allowance of Costs and Expenses [Dkt. #443]* (Dkt. #529), however, the parties announced at trial that they had settled the Trustee's objection.

[2]These proposed findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to contested matters pursuant to Federal Rule of Bankruptcy Procedure 9014(c).  To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law.  To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

of disputes between Dickson and CHFS on the one hand, and Dr. Edwards and his companies on the other.

CHFS and Edwards Family Partnership, LP and Beher Holdings Trust[3] (collectively, Edwards) entered into a series of agreements whereby Edwards invested money for the purchase of home improvement loans, typically second and third mortgages. In addition, CHFS and Edwards entered into seven (7) joint ventures for the purchase of mortgage portfolios. These mortgage portfolios consisted of a large number of individual promissory notes which were backed by first and second residential mortgages on homes located across the country. Edwards alleged the balance owed on the home improvement loans was $27,785,548.00, and the balance owed on the seven (7) joint ventures was $12,018,591.89.[4] Edwards is by far the largest creditor of CHFS.

On February 15, 2012, CHFS (and Dickson individually) filed suit against Edwards and others in the Chancery Court of the First Judicial District of Hinds County, Mississippi. A variety of relief was sought in the complaint, including: specific performance; an accounting; damages for breach of contract; and rescission or modification of the agreement. On April 11, 2012, Edwards removed the suit to the United States District Court for the Southern District of Mississippi (District Court Litigation) [USDC Case No. 3:12-cv-252-CWR-LRA].

In the District Court Litigation, Edwards denied that CHFS and Dickson were entitled to any relief. Edwards also filed a counterclaim against CHFS and Dickson requesting various relief

---

[3]CHFS had business dealings with The Rainbow Group, Ltd. and Beher Holdings, Ltd., two other entities controlled by Dr. Edwards, prior to entering into agreements with Edwards Family Partnership, LP and Beher Holdings Trust.

[4]*Edwards Family Partnership, LP and Beher Holdings Trust's Objection to Trustee's First Amended Disclosure Statement for the Chapter 11 Plan of Liquidation (Doc. No. 1080)*, Case No. 1201703EE, Dkt. #1124, p. 1-2, July 21, 2015.

including: judgments against CHFS on the promissory notes; a judgment against Dickson on his guaranty agreements; and, the appointment of a receiver for CHFS. Edwards filed a separate motion for the appointment of a receiver, and the district court set the receiver motion for trial.

Over the course of several days, the receiver motion was heard by United States District Court Judge Carlton W. Reeves (in Case No. 3:12-cv-252-CWR-LRA). The day prior to the final hearing before Judge Reeves, CHFS (Debtor) filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on May 23, 2012.[5]

On June 11, 2012, Derek A. Henderson (Henderson) filed his *Application of Debtor to Employ Counsel* (Dkt. #34). The *Order Authorizing Debtor to Employ Counsel* (Dkt. #52) was entered on July 5, 2012.

Except for the Internal Revenue Service, Edwards is, for the most part, the only creditor to actively participate in the Chapter 11 case. The relationship between Edwards and the Debtor appears to have been amicable at one point, but it deteriorated rapidly as the Chapter 11 case progressed. Any motion filed by the Debtor was hotly opposed by Edwards and vice versa. The Debtor filed adversary proceedings against Edwards that were also hotly contested. The Debtor proceeded as the debtor-in-possession (DIP) in the bankruptcy case for approximately a year and a half.

On December 20, 2013, Henderson filed *Disclosure of Transfer of Funds and Other Matters* (Dkt. #426) (Disclosure). In the Disclosure, Henderson stated that the Debtor had changed its

---

[5]On March 29, 2013, Judge Reeves entered a *Memorandum Opinion and Order* (USDC Dkt. #100) in which he severed Edwards' counterclaims against Dickson. These counterclaims were assigned a new case number [USDC Case No. 13-cv-587-CWR-LRA]. Judge Reeves further held that "proceedings against CHFS remain subject to the bankruptcy stay." *Memorandum Opinion and Order*, USDC Case No. 12-cv-252-CWR-LRA, Dkt. #100, p. 6, March 29, 2013.

principal place of business from Jackson, Mississippi, to the country of Panama, and had opened branch offices in Panama and in the country of Costa Rica.  Further, Henderson disclosed that the Debtor transferred all of the funds from the Wells Fargo DIP bank accounts to banks located in the country of Panama.  All of these actions were done by the president of the Debtor, Dickson, without the knowledge or the advice of Henderson or Dickson's personal bankruptcy attorney, Eileen N. Shaffer.[6]

On that same day, the United States Trustee (UST) filed the *United States Trustee's Emergency Motion for Order for the Appointment of a Chapter 11 Trustee* (Dkt. #427).  On December 23, 2013, the Court entered the *Order Granting United States Trustee's Emergency Motion for Order for the Appointment of a Chapter 11 Trustee* (Dkt. #429).  The UST was directed to appoint a Chapter 11 trustee for the Debtor.

The *United States Trustee's Application for Approval of Chapter 11 Trustee* (Dkt. #455) was filed on January 8, 2014.  On January 21, 2014, an *Order* (Dkt. #473) was entered appointing Kristina M. Johnson as the Chapter 11 trustee (Trustee) for the Debtor.

On January 2, 2014, Henderson[7] filed his *Fifth Application of Attorney for the Debtor for Allowance of Fees and Allowance of Costs and Expenses* (Dkt. #443) (Application).  In his Application, Henderson seeks compensation for services rendered to the Debtor from September 2,

---

[6]Dickson also relocated to Central America.  Subsequently, he was arrested and returned to the United States by federal law enforcement personnel.  He is currently facing criminal charges related to his transfer of assets of the bankruptcy estate out of the country.  On September 10, 2015, Dickson entered a *Plea Agreement* in which Dickson pled guilty to two counts in the indictment. *United States v. Dickson*, No. 3:14-CR-78-TSL-FSB (S. D. Miss.).   Dickson is currently awaiting sentencing on his guilty plea.

[7]On March 6, 2014, the Court entered an order (Dkt. #559) allowing Henderson to withdraw as attorney for the Debtor.

2013, through December 28, 2013, in the amount of $46,595.00, and for expenses in the amount of $5,169.44.[8]

On January 23, 2013, *Edwards Family Partnership, L.P. and Beher Holdings Trust's Objection to Fee Applications of Derek Henderson (DK #443)* (Dkt. #479) (Objection) was filed. In its Objection, Edwards contends that Henderson should not be compensated because "a considerable amount of time was spent working on . . . matters which are of no apparent value to the bankruptcy estate."[9]

The Trustee filed *Trustee's Objection to Fifth Application of Attorney for the Debtor for Allowance of Fees and Allowance of Costs and Expenses [Dkt. #443]* (Dkt. #529) (Trustee's Objection).

A trial was held on the Application and the objections on January 30, 2015. At the trial, Henderson announced that he had agreed with the Trustee to voluntarily reduce his request by 2.60 hours (2.60 hours x $275.00 = $715.00). Further, the Trustee stated that "the trustee has agreed to defer to the Court's ruling today and then compensate professionals accordingly, based on the Court's ruling." (Trial Tr. at 4). At the conclusion of the trial, Henderson and Edwards agreed upon a briefing schedule. The transcript of the trial was received on April 14, 2015 (Dkt. #1037).

On April 7, 2015, the Trustee filed *Urgent Motion to: (1) Withdraw the Reference to*

---

[8]The Court previously approved fees and expenses for Henderson in the following amounts: First Application (Dkt. #107): $29,428.12 attorney's fees and $1,113.79 expenses (Dkt. #131). Second Application (Dkt. #151): $32,697.50 attorney's fees and $1,465.51 expenses (Dkt. #166). Third Application (Dkt. #227): $46,550.00 attorney's fees and $765.72 expenses (Dkt. #254). Fourth Application (Dkt. #321): $73,576.25 attorney's fees and $3,902.66 expenses (Dkt. #374).

[9]*Edwards Family Partnership, L.P. and Beher Holdings Trust's Objection to Fee Applications of Derek Henderson (DK #443),* Case No. 1201703EE, Dkt. #479, p. 6, Jan. 23, 2014.

Bankruptcy Court of the Whole Chapter 11 Case or, Alternatively, of Certain Adversary Proceedings and Contested Matters, and (2) Consolidate Certain Adversary Proceedings and Contested Matters with Pending District Court Actions[10] (Dkt. #1026) (Trustee Motion) in the Debtor's bankruptcy case.  In addition, the Trustee filed a separate complaint[11] in the United States District Court for the Southern District of Mississippi against Edwards and other parties.  Shortly thereafter, this Court put the entire bankruptcy case "on hold" pending a ruling by the United States District Court on whether it would grant the Trustee Motion to withdraw reference of the bankruptcy case.

On April 9, 2015, the Court of Appeals for the Fifth Circuit entered an opinion relating to the compensation of professionals in bankruptcy cases, *Barron & Newburger, PC v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266 (5th Cir. 2015).  On August 24, 2015, and September 15, 2015,[12] the Debtor and Edwards submitted supplemental briefs addressing the effect, if any, of the *Woerner* decision on the Application and the Objection.

On June 29, 2015, Judge Reeves entered an *Order*[13] denying the Trustee Motion (to withdraw reference).  On July 15, 2015, Judge Reeves entered an *Order*[14] in the RICO Action denying the

---

[10]These motions were also filed in the adversary proceedings.  The motions were assigned USDC Case Numbers:15-cv-312; 15-cv-313; 15-cv-314; 15-cv-315; and 15-cv-316.  Eventually, all of these cases were assigned to Judge Reeves.

[11]The complaint contains nine (9) counts [USDC Case No. 3:15-cv-260-CWR-LRA].  Since the first count is a claim that Edwards and others violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, this lawsuit has been labeled the RICO Action.

[12]Docket Numbers 1129, 1146 and 1164.

[13]3:15-cv-316-CWR-LRA, (S.D. Miss. June 29, 2015) (Dkt. #4).

[14]3:15-cv-260-CWR-LRA, (S.D. Miss. July 15, 2015) (Dkt. #27).

Trustee's motion to consolidate; denying Edward's motion to dismiss; granting a motion to exceed the page limit; and after the parties had met with the Magistrate Judge, granting the Trustee leave to file an amended complaint.[15]   Since Judge Reeves had denied all of the Trustee's motions to withdraw reference, the bankruptcy case was no longer "on hold," and the Court "reinstated" the Application and Objection on its matters under advisement list.

## CONCLUSIONS OF LAW

### I. Jurisdiction

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.  This is a core proceeding as defined in 28 U.S.C. § 157(b)(1) and (2)(A).

### II.  Employment and Compensation

### A.  Statutory Framework

When CHFS filed bankruptcy under Chapter 11 of the Bankruptcy Code, CHFS became the DIP pursuant to 11 U.S.C. § 1101[16] and retained control of all of the property of the Debtor's[17] estate.  *See* § 541(a).   As a DIP, the Code permits a DIP to hire professionals to represent and to assist it under § 327(a).  "Congress has enacted a uniform scheme for retaining and compensating

---

[15]The parties met with the Magistrate Judge Linda R. Anderson on July 29, 2015.  On August 5, 2015, an *Agreed Order Dismissing Count I of Complaint* (*Id.* at Dt. Crt. Dkt. #28) was entered in which the Trustee dismissed without prejudice the RICO action.  On August 6, 2015, the parties entered an *Agreed Order Directing the Parties to Mediation* (*Id.* at Dt. Crt. Dkt. #29).  The parties agreed to participate in mediation before former bankruptcy judge David W. Houston, III, no later than August 28, 2015.

[16]Hereinafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

[17]The terms debtor-in-possession and debtor are synonymous.

. . . attorneys under 11 U.S.C. §§ 327-330.  First under § 327(a), the debtor must obtain the bankruptcy court's approval to employ the attorney."[18]  Once the attorney's employment has been approved under § 327(a), "an attorney . . . may request 'reasonable compensation for actual, necessary services rendered.'  The bankruptcy court may exercise its discretion, upon motion or sua sponte, to 'award compensation that is less than the amount . . . requested.'  *Id.* § 330(a)(2)."[19]

As stated previously, pursuant to § 327, the Debtor hired Henderson to represent it in the above-styled bankruptcy case.  Subsequently, Henderson filed his Application for compensation pursuant to § 330(a), and Edwards filed its Objection.  Section 330(a) provides in pertinent part:

**11 U.S.C. § 330.  Compensation of officers**.

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to . . . a professional person employed under section 327 or 1103–

> (A) reasonable compensation for actual, necessary services rendered by . . . [an] attorney and by any paraprofessional person employed by any such person; and
> (B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion or . . . any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded to [a] . . . professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or

---

[18]*Woerner,* 783 F.3d at 271-72.

[19]*Id.* at 272.

beneficial at the time at which the service was rendered toward the
completion of, a case under this title;

(D) whether the services were performed within a reasonable amount
of time commensurate with the complexity, importance, and nature
of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board
certified or otherwise has demonstrated skill and experience in the
bankruptcy field; and

(F) whether the compensation is reasonable based on the customary
compensation charged by comparably skilled practitioners in cases
other than cases under this title.

11 U.S.C. § 330(a).

Furthermore, § 330(a)(4) lists those items for which a court may not award a professional

compensation:

(4)(A) Except as provided in subparagraph (B), the court shall not allow
compensation for–

(i) unnecessary duplication of services; or

(ii) services that were not–

(I) reasonably likely to benefit the debtor's estate; or
(II) necessary to the administration of the case.

11 U.S.C. § 330(a)(4).

### B. Legal Standard

In *Perdue v. Kenny,* 559 U.S. 542, 551 (2010), the Supreme Court of the United States

adopted the method to calculate attorney's fees as established by the Court of Appeals for the Third

Circuit.[20] In adopting the Third Circuit's lodestar approach, the Supreme Court noted "that because

---

[20]The lodestar approach was pioneered by the Third Circuit in *Lindy Bros. Builders, Inc. of
Philadelphia v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973), *appeal
after remand*, 540 F.2d 102 (1976).

the method is readily administrable and objective, it 'cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.' *Perdue v. Kenny,* 559 U.S. 542, 552, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010)." *In re Ritchey*, 512 B.R. 847, 864 (Bankr. S.D. Tex. 2014).

"The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. There is a strong presumption of the reasonableness of the lodestar amount." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citations omitted). The party seeking an award of attorney's fees bears the burden of "establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.,* No. 1:06cv433, 2014 WL 691500, at *9 (S.D. Miss. Feb. 21, 2014).

In the bankruptcy context, the method a court must follow in order to determine the amount of an award of attorney's fees was explained by the Fifth Circuit:

> Following the Bankruptcy Code's enactment, we made clear that the lodestar, *Johnson* factors, and § 330 coalesced to form the framework that regulates the compensation of professionals employed by the bankruptcy estate. *See Cahill,* 428 F.3d at 539–40. Under this framework, bankruptcy courts must first calculate the amount of the lodestar. *Id.* at 539. After doing so, bankruptcy courts "then may adjust the lodestar up or down based on the factors contained in § 330 and [their] consideration of the twelve factors listed in *Johnson.*" *Id.* at 540. We also have emphasized that bankruptcy courts have "considerable discretion" when determining whether an upward or downward adjustment of the lodestar is warranted.

*CRG Partners Grp., LLC v. Neary (In re Pilgrim's Pride Corp.),* 690 F.3d 650, 656 (5th Cir. 2012), as revised (Aug. 14, 2012) (citation omitted) (footnote omitted).

The *Johnson* factors are:

(1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other

employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases. *In re First Colonial Corp. of Am.,* 544 F.2d 1291, 1298–99 (5th Cir.1977) (quoting *Johnson v. Ga. Highway Express, Inc.* 488 F.2d 714, 717–19 (5th Cir.1974)).

*Pilgrim's Pride,* 690 F.3d at 654.

It should be noted that the United States Supreme Court has stated that there is a strong presumption that the lodestar method provides a reasonable fee. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). The Supreme Court has further held that "'[t]he district court also may consider [the] factors identified in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-719 (CA5 1974), though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'"[21]

In summary, the Court must first determine the lodestar fee "by multiplying the number of hours an attorney would reasonably spend for the same type of work by the prevailing hourly rate in the community. A court then may adjust the lodestar up or down based on the factors contained in § 330 and its consideration of the twelve factors listed in *Johnson.*" *In re Cahill,* 428 F.3d 536, 540 (5th Cir. 2005) (citations omitted) (footnote omitted).

## C.  Calculation of Lodestar

At the start of the trial, the attorney for Edwards, Stephanie Rippee (Rippee), stated: "We're not here questioning the rates or whether he did the work, what we're here to question is whether

---

[21]*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564, (1986) supplemented, 483 U.S. 711 (1987) (citation omitted). *See also Black v. SettlePou, P.C.,* 732 F.3d 492, 502 (5th Cir. 2013) ("The lodestar may not be adjusted to a *Johnson* factor that was taken into account during the initial calculation of the lodestar.")

or not it benefitted the estate." (Trial Tr. at 6). Since Edwards is only objecting to the Application based on § 330(a)(4)(A)(ii)(I), the Court finds that in reviewing the Application, the number of hours expended by Henderson to be reasonable.

Because of the contentious nature of the relationship between the Debtor and Edwards, the Court is aware of the time and labor this case required of Henderson and that this case at times precluded other employment by Henderson. Henderson has been practicing before this Court for over 28 years, therefore, the Court is well aware of his experience and reputation. This Court routinely approves applications for compensation for attorneys, and in this same case, the Court recently approved an application for attorneys' fees for the law firm for the Trustee. Consequently, the Court is aware of other awards of attorney's fees in this case and in this district. Considering all factors, the Court finds that the hours billed by Henderson and his paralegal to be reasonable.

| Paralegal: | 3.75 hours |
|---|---|
| Henderson: | 165.95 hours<br>(168.55 minus the 2.60 hours Henderson agreed to withdraw) |

Further, since the Court recently held that a reasonable maximum hourly rate and the prevailing maximum market rate in this Court for attorneys to be $350.00[22] and for non-professionals to be $125.00,[23] the Court finds that the hourly rates in the Application of $275.00 for Henderson and $65.00 for his paralegal to be reasonable.

The Court finds the following to be the final lodestar figure for the Application:

---

[22]*In re Cmty. Home Fin. Servs., Inc.*, No. 1201703EE, 2015 WL 6511183, at *23 (Bankr. S.D. Miss. Oct. 27, 2015).

[23]*Id.*

### LODESTAR CALCULATION

| TIMEKEEPER | HOURS | RATE | TOTAL |
|---|---|---|---|
| Paralegal | 3.75 | $65.00 | $243.75 |
| Henderson | 165.95 | $275.00 | $45,636.25 |
| | | | **$45,880.00** |

The Court will now determine whether the lodestar amount should be adjusted pursuant to § 330(a)(4)(A)(ii)(I).

### D.  § 330(a)(4)(A)(ii)(I)

As noted previously, Edwards objects to the Application because it claims Henderson's actions did not benefit the estate, and therefore, compensation should be denied pursuant to § 330(a)(4)(A)(ii)(I).  Specifically, Edwards objects to the Application because it asserts that at the time Henderson performed the services, "it was not reasonable for Mr. Henderson to believe that the litigation activities he was pursing at Butch Dickson's direction would provide a material benefit to the estate."[24]  The *Woerner* decision is therefore directly on point.

In *Woerner,* the Fifth Circuit revisited its prior decision in *Family Snacks, Inc. v. Andrews & Kurth, L.L.P. (In re Pro-Snax Distibs., Inc.),* 157 F.3d  414 (5th Cir. 1998).  In *Pro-Snax*, one of the issues addressed by the Fifth Circuit was whether the services were beneficial *at the time they were performed* or whether in hindsight the services *resulted* in a material benefit to the estate. *Woerner,* 783 F.3d  at 273.  In *Pro-Snax,* the Fifth Circuit "adopted the stricter 'hindsight' or 'material benefit' measure."  *Id.*  Upon reconsideration of *Pro-Snax* in *Woerner,* the Fifth Circuit

---

[24]*Edwards Family Partnership, LP and Beher Holdings Trust's Post-Trial Brief on Fifth Application for Compensation of Derek A. Henderson as Attorney for the Debtor (Doc. No. 443),* Case No. 1201703EE, Dkt. #1146, p. 5, August 24, 2015.

overturned *Pro-Snax* and adopted "the prospective, 'reasonably likely to benefit the estate' standard endorsed by our sister circuits." *Id.* at 268.

The facts of *Woerner* are similar to the facts of the case before the Court. Woerner and Texas Skyline, Ltd. entered into a partnership for the purpose of undertaking a real estate venture. Similar to Edwards, Texas Skyline was the sole investor. During the three year relationship, Woerner misappropriated funds. After Texas Skyline discovered the misappropriated funds, Texas Skyline sued Woerner in state court. At the completion of the bench trial, the state court orally ruled in favor of Texas Skyline. The court set a remedies hearing a few weeks off. The night before the remedies hearing, Woerner filed a Chapter 11 bankruptcy case and hired bankruptcy counsel to represent him. Over the next eleven (11) months, the debtor and Texas Skyline clashed over adversary proceedings and numerous motions and also attempted mediation. When it was discovered that the debtor had concealed assets, another creditor moved to have the case converted to a Chapter 7. The debtor opposed the conversion, however, the court ultimately converted the case to a Chapter 7. *Id.* at 268-70.

After the case was converted, the debtor's attorneys, the law firm of Barron & Newburger, P.C. (B & N), filed its fee application. The bankruptcy court allowed B & N to be compensated in full for its expenses, but following *Pro-Snax,* cut the amount of attorney's fees requested by 85%. *Id.* at 270. "Most of the disallowed fees were denied due to B & N's lack of success. Specifically, the bankruptcy court found much of B & N's billed time was not of identifiable benefit to the estate." *Id.* The district court affirmed the bankruptcy court. On appeal to the Fifth Circuit, a panel of the court affirmed the district court's decision, but all three members called for an en banc reconsideration of *Pro-Snax. Id.* at 268. The Fifth Circuit granted a rehearing en banc to reconsider

*Pro-Snax.*

Upon reconsideration, the Fifth Circuit held:

We now recognize that the retrospective, "material benefit" standard enunciated in *Pro-Snax* conflicts with the language and legislative history of § 330, diverges from the decisions of other circuits, and has sown confusion in our circuit. Correspondingly, we overturn *Pro-Snax's* attorney's-fee rule and adopt the prospective, "reasonable likely to benefit the estate" standard endorsed by our sister circuits.

*Id.* at 268 (footnote omitted).

The importance and effect of *Woerner* on fee applications was addressed in *In re Digerati Technologies, Inc.*, 537 B.R. 317 (Bankr. S.D. Tex. 2015):

The leading Fifth Circuit decision regarding § 330 is *Woerner.* In *Woerner,* the Fifth Circuit joined the majority of circuits in adopting a prospective test for determining whether professional services are compensable, as suggested by the third factor that courts must consider under § 330: "whether the services were necessary . . . or beneficial *at the time at which the service was rendered.* " *Id.* at 268, 273–74 (emphasis added). Additionally, the Fifth Circuit provided the following list of factors that bankruptcy courts "ordinarily consider" when weighing this factor:

> the probability of success at the time the services were rendered, the reasonable costs of pursuing the action, what services a reasonable lawyer or legal firm would have performed in the same circumstances, whether the attorney's services could have been rendered by the Trustee and his or her staff,  and any potential benefits to the estate (rather than to the individual debtor).

*Id.* at 276.

*Woerner* reversed the Fifth Circuit's prior retrospective test, under which professionals could only be compensated for services that *actually* resulted in a tangible, identifiable, and material benefit to the estate. *See Pro–Snax,* 157 F.3d at 426. Instead, under the new, prospective test, "[w]hether the services were ultimately successful is relevant to, *but not dispositive of,* attorney compensation." *Woerner,* 783 F.3d at 276 (emphasis added). In sum, the Fifth Circuit held that when read in its entirety, § 330 "permits a court to compensate an attorney not only for activities that were 'necessary,' but also for good gambles—that is, services that were objectively reasonable at the time they were made—even when those gambles do not subsequently (or eventually) produce an 'identifiable, tangible, and material

benefit.'" *Id.* at 273–74.  If professional services were *either* "'necessary to the administration' of a bankruptcy case or 'reasonably likely to benefit' the bankruptcy estate 'at the time at which [they were] rendered,' *see* 11 U.S.C. § 330(a)(3)(C), (4)(A), then the services are compensable." *Id.* at 276.  However, the Fifth Circuit emphasized that its *Woerner* ruling "is not intended to limit courts' broad discretion to award or curtail attorney's fees under § 330, 'taking into account *all* relevant factors.' " *Id.* at 277 (quoting § 330) (emphasis added).

*Digerati,* 537 B.R. at 331. (footnote omitted).

   In summary, under the new standard of *reasonable at the time* established in *Woerner*, "if a fee applicant establishes that its services were 'necessary to the administration' of a bankruptcy case or 'reasonably likely to benefit' the bankruptcy estate 'at the time at which [they were] rendered,' *see* 11 U.S.C. § 330(a)(3)(C), (4)(A), then the services are compensable." *Woerner,* 783 F.3d at 276.

   The Court acknowledges that when reviewing the Application with the knowledge that Dickson depleted the estate of its cash and set up the Debtor's operations outside of the United States, it would be easy to find that Henderson's services did not provide a material benefit to the estate.  The Court finds, however, that at the time Henderson was performing the bulk of the services for the Debtor, he was totally unaware of what Dickson was planning.  The services Henderson was performing were necessary for the administration of the bankruptcy estate, and but for Dickson's later actions, were a material benefit to the bankruptcy estate.

   During the approximately eighteen months the Debtor operated as a DIP, Henderson was attempting to move the case forward as required by Chapter 11 of the Code.  Like the attorneys in *Woerner*, early in the case, Henderson filed the Debtor's mandatory *Schedules* and *Statement of Financial Affairs* (Dkt. #40) and later, filed amended schedules; filed applications to employ attorneys; filed applications to approve salaries; attended the meeting of creditors; negotiated

Edwards' motion to prohibit use of cash collateral (Dkt. #23), and participated in mediation. Henderson also filed several adversary proceedings against Edwards which were vigorously opposed by Edwards.

Approximately eight (8) months after the case was filed, Henderson filed the Debtor's *Disclosure Statement with Respect to Plan of Reorganization* (Dkt. #167) and its *Plan of Reorganization* (Dkt. #168) on January 29, 2013.  On March 5, 2013, the *Edwards Family Partnership, LP and Beher Holdings Trust's Objection to Disclosure Statement of Community Home Financial Services, Inc. (Dk #167)* (Dkt. #204) was filed.  In an attempt to resolve Edwards' objection to the disclosure statement, Henderson filed an *Addendum to Disclosure Statement* (Dkt. #205) on March 6, 2013, and a *Second Addendum to Disclosure Statement* (Dkt. #286) on July 18, 2013.  On August 8, 2013, an *Order on Objection to Disclosure Statement* (Dkt. #303) was entered resolving Edwards' objections to the disclosure statement and the *Order Approving Disclosure Statement and the Two (2) Addendums and Fixing Time for Filing Acceptances or Rejections of the Plan of Reorganization Combined with a Notice of Hearing* (Dkt. #304) was entered.

Edwards filed an objection to confirmation of the plan.  In addition, Edwards filed a motion to appoint a trustee and a motion to dismiss the case or to convert the case to a Chapter 7. Confirmation of the Debtor's plan was held in abeyance pending the resolution by the Court of the motions to appoint a trustee and dismiss or convert.  The trial on the motion to convert and the motion to dismiss was set for January of 2014, and the time entries in Henderson's Application show that Henderson was preparing for the January 2014 trial.  During the same time period, Henderson was conducting discovery in the adversary proceedings he had filed on behalf of the Debtor.

Edwards contends that because the plan provided for a release of Dickson's personal

guaranties, the Debtor's plan was not confirmable, and therefore, Henderson should not be compensated for work he performed on a non-confirmable plan. The Court finds, however, that there is no prohibition against the Debtor including such a provision in its plan–indeed, over the years, this Court has seen many similar provisions in Chapter 11 plans. The inclusion in the plan of the release of Dickson's guaranties was a *gamble*, which ultimately proved to be an unsuccessful gamble because Edwards objected to the provision. The Fifth Circuit has held that a provision to release a non-debtor is not permitted by the Code *when* the affected creditor timely objects to the release. *Feld v. Zale Corp. (In re Zale),* 62 F.3d 746, 780 (5th Cir. 1995). Edwards objected to the release, therefore, before the plan could be confirmed, that provision would be removed from the Debtor's plan.

As for the Debtor's opposition to the appointment of a trustee, it is routine for a Chapter 11 debtor to contest the appointment of a Chapter 11. Therefore, the Court finds that Henderson's opposition to the trustee motion is not unusual and was necessary for the Debtor to continue as the DIP and to administer its bankruptcy estate.

Without getting into the details of the complex adversaries, the Court finds that the adversary proceedings filed by the Debtor were for the benefit of the bankruptcy estate and necessary for the administration of the bankruptcy estate. Edwards status as a creditor, whether it is secured or unsecured, will impact the Debtor's estate and will impact the provisions of the Debtor's plan. It appears that Edwards holds the belief that because Edwards believes that the Debtor's claims in the adversary proceedings are baseless and that Edwards will prevail, then Henderson's litigation of the adversary proceedings should not be compensated because the litigation of the adversary proceedings cannot benefit the estate. It is the ultimate decision of this Court, however, to determine

whether the Debtor's claims in the adversary proceedings are valid. At this point in time, the Court is of no opinion as to the validity of the Debtor's claims in the adversary proceedings. Consequently, the Court cannot find that Henderson's actions in litigating the adversary proceedings were not "'reasonably likely to benefit' the bankruptcy estate 'at the time at which [they were] rendered.'" *Digerati,* 537 B.R. at 331 (citation omitted).

Further, the Court notes that the Trustee apparently agrees with the Debtor that there is a question as to whether Edwards is a secured creditor–the Trustee has elected to proceed with the adversary proceedings filed by the Debtor against Edwards. On November 19, 2015, the Court held a trial on Edwards' motion to dismiss one of the adversary proceedings. At the trial, the Trustee argued against the motion to dismiss, or alternatively, the Trustee requested time to file an amended complaint if the Court granted the motion to dismiss.[25]

With hindsight, it is easy to see that Dickson "played" Henderson, and that Henderson had no knowledge that Dickson was plotting to take the bankruptcy assets out of the country. Henderson's Application has numerous entries where Henderson was consulting with Dickson about various matters in the bankruptcy case. Indeed, seven days before Henderson filed the Disclosure, he consulted with Dickson regarding matters in the bankruptcy case.

As the Fifth Circuit held in *Woerner,* as long as a court finds that at the time the services were rendered, an attorney's services were reasonably likely to benefit the bankruptcy estate, the court may award an attorney compensation regardless of whether the services ultimately resulted in a material benefit to the estate.

---

[25]The Court granted the motion to dismiss, but gave the Trustee leave to file an amended complaint.

Section 330, then, explicitly contemplates compensation for attorneys whose services were reasonable when rendered but which ultimately may fail to produce an actual, material benefit. "Litigation is a gamble, and a failed gamble can often produce a large net loss even if it was a good gamble when it was made." *In re Taxman Clothing Co.*, 49 F.3d 310, 313 (7th Cir.1995). The statute permits a court to compensate an attorney not only for activities that were "necessary," but also for good gambles—that is, services that were objectively reasonable at the time they were made—even when those gambles do not produce an "identifiable, tangible, and material benefit." What matters is that, prospectively, the choice to pursue a course of action was reasonable.

*Woerner,* 783 F.3d at 274. (footnote omitted).

Consequently, subject to the items listed below, the Court finds that the services rendered by Henderson were "objectively reasonable at the time they were made,"[26] and therefore, compensable under § 330.

### E. Not Compensable under § 330(a)(4)(A)(ii)(I)

In reviewing the Application, the Court agrees with Edwards that the services provided by Henderson in connection with the motion to have the § 362 stay applied to Dickson personally should not be compensable as an "identifiable tangible, and material benefit"[27] to the estate. As the Court held when it denied the motion to impose the stay, Dickson would be the only person to benefit if the stay was applied to him. Consequently, the Court finds that Henderson may not be compensated for work he performed which relates to the request to apply § 362 to Dickson personally.

In reviewing the Application, the Court finds that some of the time entries which mention the stay for Dickson are *block entries.* "The term 'block billing' refers to the 'time-keeping method

---

[26]*Woerner*, 783 F.3d at 274.

[27]*Id.*

by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.' *Glass v. United States,* 335 F.Supp.2d 736, 739 (N.D. Tex. 2004) (citation omitted).  Since the Court cannot determine how much of the block of time was spent on the matters involving the stay for Dickson, Henderson may not be compensated for the entire time entry.  The Court finds that Henderson will not be compensated for the following entries:

See Next Page

| Page # | Date | Description of Service | Hours | Fees |
|--------|------|------------------------|-------|------|
| 1 of 14 | 09/02/13 | Work on file<br>E-mail to Jim Spencer re:  discovery responses<br>E-mail to client & attorney re:  expert<br>E-mail to client & attorney re:  stay of district<br>    court & documents, bank accounts,<br>Rainbow Company, accounting, summary<br>judgment<br>TC Jonathan re:  issues, discover<br>E-mail back from Jim re:  extension | 1.75 | $481.25 |
| 4 of 14 | 09/27/13 | Review of objection to fees<br>Draft motion to extend time, stay<br>Finalize & file<br>E-mail to Kimber | 1.25 | $343.75 |
| 6 of 14 | 11/06/13 | Preparation for hearing, notes, outline,<br>    documents, pleadings, dates to continue<br>Receipt of motion for stay pending appeal<br>TC John Allen & Butch re:  hearings,<br>    indemnity claim | 2.0 | $550.00 |
| 7 of 14 | 11/07/13 | TC Rita re:  dates<br>E-mail to Jim re:  dates, deposition<br>Receipt of order on extension<br>Receipt of order on stay<br>Begin review of supplemental discovery for<br>    EFP/BHT, notes | 2.0 | $550.00 |
| 7 of 14 | 11/07/13 | Receipt of e-mails from Jonathan<br>E-mail from Roy re:  fee application, notice,<br>    itemization, amendment<br>TC Jonathan re:  fee application & stay<br>    pending appeal argument & courts | .75 | $206.25 |
| 8 of 14 | 11/15/13 | Receipt of district court appeal motion, order to<br>    withdraw<br>Receipt of sur-reply to motion for leave<br>E-mail from Roy<br>E-mail to Kim Hall & David Mullin re:  district<br>    court appeal | .75 | $206.25 |
| **Total:** | | | 8.5 | $2,337.50 |

Consequently, the Application will be reduced by $2337.50.

## CONCLUSION

"A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee. Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Since the parties were unable to settle the amount of Henderson's fee, Henderson "bears the burden of establishing entitlement to an award." *Id.*

Under the new standard of *reasonable at the time* established in *Woerner*, "if a fee applicant establishes that its services were 'necessary to the administration' of a bankruptcy case or 'reasonably likely to benefit' the bankruptcy estate 'at the time at which [they were] rendered,' *see* 11 U.S.C. § 330(a)(3)(C), (4)(A), then the services are compensable." *Woerner,* 783 F.3d at 276. The Court finds that, except for the entries related to the imposition of a stay for Dickson, Henderson has established that his services were necessary for the administration of the bankruptcy case and were reasonably likely to benefit the bankruptcy estate at the time he performed the services. Henderson may not, however, be compensated for the $2,337.50 of his requested fees which relate to the imposition of a stay for Dickson personally.

A separate judgment consistent with this Opinion will be entered in accordance with Rule 9014 of the Federal Rules of Bankruptcy Procedure.

## ##END OF OPINION##