___

SO ORDERED,

*[signature: Edward Ellington]*

**Judge Edward Ellington**
**United States Bankruptcy Judge**
**Date Signed: December 16, 2016**

The Order of the Court is set forth below. The docket reflects the date entered.
___

### IN THE UNITED STATES BANKRUPTCY COURT FOR THE
### SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **COMMUNITY HOME FINANCIAL** | **CASE NO. 1201703EE** |
| **SERVICES, INC.** | |

### MEMORANDUM OPINION ON THE
### *MOTION FOR ORDER DIRECTING IMMEDIATE,*
### *INTERIM PAYMENT OF FEES IN SECOND AND THIRD*
### *FEE APPLICATIONS IN AN AMOUNT NOT LESS THAN AMOUNTS*
### *NOT OBJECTED TO ON A LINE-ITEM BASIS [DKT. NOS. 1243 AND 1400]*

**THIS MATTER** came before the Court on the trial on the *Motion for Order Directing Immediate, Interim Payment of Fees in Second and Third Fee Applications in an Amount Not Less Than Amounts Not Objected to on a Line-Item Basis [Dkt. Nos. 1243 and 1400]* (Dkt. #1527) filed by Jones Walker LLP counsel to Kristina M. Johnson, Trustee of Community Home Financial Services, Inc. and *Edwards Family Partnership, LP and Beher Holdings Trust's Response and Objection to Motion for Order Directing Immediate, Interim Payment of Fees in Second and Third Fee Applications in an Amount Not Less Than Amounts Not Objected to on a Line-Item Basis (Dkt #1527)* (Dkt. #1533). Having considered same, the testimony and arguments presented at trial, the Court finds that for the reasons expressed more fully below, the motion is granted.

# FINDINGS OF FACT[1]

This is another Opinion in a series of opinions this Court has entered in this bankruptcy case. For a detailed explanation of the facts leading up to the filing of the bankruptcy case and the subsequent appointment of a trustee, see *In re Cmty. Home Fin. Servs. Inc.,* Case No. 12-01703EE, 2015 WL 6511183 (Bankr. S.D. Miss. Oct. 27, 2015).

On January 21, 2014, an *Order* (Dkt. #473) was entered appointing Kristina M. Johnson as the Chapter 11 trustee (Trustee) for the Debtor. The Trustee filed an application to employ her law firm, Jones Walker, LLP (JW), as counsel for the Trustee pursuant to 11 U.S.C. § 327(a).[2] On March 5, 2014, an *Order Granting Application of Kristina M. Johnson, Trustee, to Employ Jones Walker LLP as Counsel Nunc Pro Tunc to January 8, 2014, and Disclosure of Compensation with Supporting Affidavit [Dkt. #474]* (Dkt. #558) was entered.

Second Fee Application:

On August 26, 2015, the *Second Application for Compensation for the Period of August 1, 2014 through June 30, 2015, and Reimbursement of Expenses by the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc.* (Dkt. #1148) was filed by JW in which JW seeks $938,397.50 as attorneys' fees and $67,943.88 in expenses (for a total of $1,006,341.38). On September 25, 2015, *Edwards Family Partnership,*

---

[1]These findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

[2]Hereafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

*L.P. and Beher Holdings Trust's Objection to Fee Application* (Dkt. #1178) was filed.

On October 27, 2015, the Court entered its *Memorandum Opinion* (Dkt. #1206) (First Fee Opinion) on the first fee application filed by JW. In response to the Court's First Fee Opinion, the *Amended Second Application for Compensation for the Period of August 1, 2014 through June 30, 2015, and Reimbursement of Expenses by the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc.* (Dkt. #1243) (Amended Second Fee Application) was filed by JW on December 18, 2015. In the Amended Second Fee Application, JW seeks $895,274.00 as attorneys' fees and $67,943.88 in expenses (for a total of $963,217.88).

*Edwards Family Partnership, LP and Beher Holdings Trust's Supplemental Objection to Amended Second Application for Compensation for the Period of August 1, 2004 [sic] – June 30, 2015 and Reimbursement of Expenses of the Law Firm of Jones Walker, LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc. (Dkt. #1243)* (Dkt. #1257) (Second Objection) was filed on January 8, 2016. In the Second Objection, Edwards Family Partnership, LP and Beher Holdings Trust (collectively, Edwards) objects to $244,000.50 in time entries which it asserts are dual compensation or double-dipping, that is, where JW is seeking compensation for work which falls under the provisions of the Code which provide for a Chapter 11 trustee's compensation.[3] Edwards further objects to $279,680.50 in time entries which it asserts are for services which did not benefit the bankruptcy estate. In total, Edwards objects to time

---

[3]A Chapter 11 trustee's compensation is governed by § 326 and § 330. The compensation under § 326 is commonly referred to as the *trustee's comp*. Section 326 provides a mathematical calculation to determine the amount of the trustee's comp. Trustee's comp is based upon all monies disbursed by a trustee, and the amount is capped.

entries which total $523,681.00.[4] Of the requested $895,274.00,[5] Edwards does not object to time entries totaling $371,593.00.

A trial was held on the Amended Application and Second Objection on January 21, 2016. Once the last brief was filed in April of 2016, the Court took the matter under advisement. The opinion on the Amended Second Fee Application is currently in draft form.

Third Fee Application:

On July 8, 2016, the *Third Application for Compensation for the Period of July 1, 2015 Through February 29, 2016, and Reimbursement of Expenses by the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc.* (Dkt. #1400) (Third Fee Application) was filed. In the Third Fee Application, JW seeks $557,647.00 as attorneys' fees and $12,580.88 in expenses (for a total of $570,227.88).

On August 3, 2016, *Edwards Family Partnership, LP and Beher Holdings Trust's Objection to Third Application for Compensation for the Period of July 1, 2015, Through February 29, 2016, and Reimbursement of Expenses of the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc. (Dkt. #1400)* (Dkt. #1417) (Third Objection) was filed. In the Third Objection, Edwards objects to: (1) $42,075.00 in time entries which it asserts are dual compensation or double-dipping; (2) $205,568.50 in time entries which it asserts are for services that did not benefit the bankruptcy estate; (3) $23,885.00

---

[4] *See EFP/BHT Exhibit A to Trial on Second Fee Application* (Edwards' 2nd Exhibit) ([2nd] Trial Exhibit CR-1).

[5] At the trial, JW voluntarily reduced its Amended Second Fee Application. The reductions are not reflected in this total nor are the expenses requested by JW. For purposes of this Opinion, the Court will use the total of the legal fees requested and the total of Edwards' line-item objections listed in Edwards' 2nd Exhibit.

in time entries which it asserts are for JW defending its fee application; and (4) $24,825.00 in time entries which it asserts are JW's overhead. In total, Edwards objects to time entries which total $296,353.50.[6] Of the requested $557,647.00,[7] Edwards does not object to time entries totaling $261,293.50.

A trial was held on the Third Fee Application and Third Objection on September 22, 2016. Once the last brief is filed, the Court will take the matter under advisement.[8]

Current Motion:

The matter currently before the Court is the *Motion for Order Directing Immediate, Interim Payment of Fees in Second and Third Fee Applications in an Amount Not Less Than Amounts Not Objected to on a Line-Item Basis [Dkt. Nos. 1243 and 1400]* (Dkt. #1527) (Motion)[9] filed by JW on November 22, 2016. In its Motion, JW states that by its calculations, Edwards has not objected to $628,037.00[10] in legal fees requested by JW. Therefore, JW requests that the Court direct immediate payment (by December 31, 2016) on an interim basis the $628,037.00 to which Edwards has not objected.

---

[6]*See Creditor Exhibit 1 to Trial on Third Fee Application* (Edwards' 3rd Exhibit) ([3rd] Trial Exhibit CR-1).

[7]At the trial, JW voluntarily reduced its Third Fee Application. The reductions are not reflected in this total nor are the expenses requested by JW. For purposes of this Opinion, the Court will use the total of the legal fees requested and the total of Edwards' line-item objections.

[8]The Court entered its own *Order Setting Briefing Schedule* (Dkt. #1521) on November 15, 2016. The last brief is due to be filed no later than February 3, 2017.

[9]The Motion was introduced at trial as JW Trial Exhibit #1.

[10]By the Court's calculations, Edwards did not object to a total of $632,886.50 in legal fees requested in the Amended Second Fee Application and Third Fee Application. For purposes of this Opinion, the Court will, however, use the amount requested by JW, specifically $628,037.00.

Attached to the Motion as Exhibit 1 is a letter (Letter) dated September 27, 2016, written to the attorney for Edwards on behalf of the Trustee by the Trustee's attorney. In the Letter, the Trustee asserts that she has on hand funds that are unencumbered by a lien or interest claimed by Edwards. At trial, the Trustee testified as to the amount of the funds and the sources of the funds as follows:

| DATE: | AMOUNT: | SOURCE: |
| --- | --- | --- |
| July 10, 2014 | $1,824,871.49 | Panamanian bank account in the name of William D. Dickson. |
| August 24, 2016 | $144,191.90 | Coastal Condos settlement proceeds. (Adv. No. 1400030EE) |
| August 24, 2016 | $111,367.59 | Willow Court sale. (Adv. No. 1400030EE) |
| January 29, 2014 | $300,000.00 | BancorpSouth Official Check drawn on Discount Mortgage, Inc. account made payable to the Debtor. |
| February 25, 2014 | $240,000.00 | Omnibank check drawn on W.D. Dickson account made payable to the Debtor. |
| Various | $11,500.00 | Funds from preference litigation. |
| Various | $12,500.00 | Settlement of stay violations litigation. |
| **TOTAL:** | **$2,644,430.98**[11] | |

As shown, the largest source of funds, $1,824,871.49, are funds the Trustee received from a

---

[11] The Letter states the total amount of unencumbered funds being held by the Trustee totals $2,631,930.98 instead of $2,644,430.98. It appears, however, that the Trustee failed to include the $12,500.00 recovered as a result of stay violation litigation.

Panamanian bank account which was in the name of William D. Dickson, and not the Debtor.

On November 30, 2016, *Edwards Family Partnership, LP and Beher Holdings Trust's Response and Objection to Motion for Order Directing Immediate, Interim Payment of Fees in Second and Third Fee Applications in an Amount Not Less Than Amounts Not Objected to on a Line-Item Basis (Dkt #1527)* (Dkt. #1533) (Objection) was filed. In its Objection, Edwards contends that: (1) the Court has already ruled that the "Trustee cannot automatically use any of the money she has on hand to pay any fees";[12] (2) that the only funds the Trustee has on hand which are not subject to Edwards' claimed security interest totals only $279,559.49; and (3) that the motion should be denied and the case converted to a Chapter 7.

Edwards alleges that only the Costal Condo settlement ($144,191.90), the Willow Court sale ($111,367.59), the preference litigation recovery ($11,500.00), and the stay violation recovery ($12,500.00) are unencumbered by Edwards' lien. Edwards further states, however, that because the Trustee has used its cash collateral, it is entitled to a replacement lien on the unencumbered funds of $279,559.49. Therefore, in essence, Edwards is claiming a lien of one type or the other on all of the $2,644,430.98[13] the Trustee alleges are unencumbered funds.

A trial was held on December 9, 2016, on the Motion and Objection. At the conclusion of

---

[12]*Order Denying Motion to Transfer Certain Contested Matters to Another Bankruptcy Judge Due to Congested Docket [Dkt. Nos. 984, 1136, 1243, 1399, and 1400]*, Dkt. No. 1464, p. 16 (Sept. 9, 2016).

[13]Edwards claim its security interest is attached to $2,364,871.46 (Panamian bank funds $1,824,871.49; BankcorpSouth check $300,000.00; and OmniBank check $240,000.00) of the funds the Trustee has on hand. As a result of the Trustee using its cash collateral, Edwards claims a replacement lien on the balance of the funds of $279,559.46 (Coastal Condo settlement $144,191.90; Willow Court sale $111,367.59; preference settlements $11,500.00; and stay violation settlements $12,500.00). This totals all of the funds ($2,644,430.98) detailed in the Letter.

the trial, the Court took the matter under advisement.

## CONCLUSIONS OF LAW

### I. Jurisdiction

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(1) and (2)(A).

### II. Employment and Compensation

#### A. Hiring and Payment of Professionals

A trustee is not required or expected to perform his/her duties alone, and, therefore, the Code permits a trustee to hire professionals to assist him/her under § 327(a). "Congress has enacted a uniform scheme for retaining and compensating . . . attorneys under 11 U.S.C. §§ 327-330. First, under § 327(a), the [trustee] must obtain the bankruptcy court's approval to employ the attorney."[14] Once the attorney's employment has been approved under § 327(a), "an attorney . . . may request 'reasonable compensation for actual, necessary services rendered. The bankruptcy court may exercise its discretion, upon motion or sua sponte, to 'award compensation that is less than the amount . . . requested.' *Id.* § 330(a)(2)."[15]

As stated previously, pursuant to § 327, the Trustee hired JW to represent her in the above-styled bankruptcy case. Subsequently, JW filed its Amended Second Fee Application and Third Fee Application for compensation pursuant to § 330(a), and Edwards objected to both applications. Section 330(a) provides in pertinent part:

---

[14]*In re Woerner,* 783 F.3d at 271-72.

[15]*Id.* at 272.

**11 U.S.C. § 330. Compensation of officers**.

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to . . . a professional person employed under section 327 or 1103–

> (A) reasonable compensation for actual, necessary services rendered by . . . [an] attorney and by any paraprofessional person employed by any such person; and

> (B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion or . . . any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded to [a] . . . professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–

> (A) the time spent on such services;

> (B) the rates charged for such services;

> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for–

> (i) unnecessary duplication of services; or

>> (ii) services that were not–
>>> (I) reasonably likely to benefit the debtor's estate; or
>>> (II) necessary to the administration of the case.

11 U.S.C. § 330(a).

The Court will note that in the vast majority of cases, § 330, the lodestar,[16] and *Johnson* factors[17] form the framework that is utilized when addressing an application for an award of attorneys' fees. Edwards does not raise reasonableness as one of the grounds to which it bases its objections to JW's fees. Instead, Edwards contends that the applications are replete with entries where attorneys, paralegals, and non-professionals are billing the bankruptcy estate for work that would fall under the Trustee's Comp–because the work the attorneys, paralegals, and non-professionals performed fell under the statutory duties of the Trustee. Further, JW is not requesting payment of fees to which Edwards has objected–JW is asking the Court to allow it to be paid for the legal work to which Edwards does not object. Consequently, the traditional manner of determining the reasonableness of an award of attorney fees (the lodestar, *Johnson,* and § 330 calculations) is unnecessary to rule on JW's fee applications or this Motion.

### B. Interim Compensation

### 1. Legal Standard

Section 331 authorizes a professional to be awarded compensation on an interim basis.

---

[16] The lodestar approach was pioneered by the Third Circuit in *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973), *appeal after remand*, 540 F.2d 102 (1976). The Supreme Court of the United Stated adopted the lodestar approach in *Perdue v. Kenny,* 559 U.S. 542, 551 (2010).

[17] *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974).

Section 331 provides:

> **§ 331. Interim compensation**.
>
> [A]ny professional person employed under section 327. . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C. § 331.

"The Bankruptcy Code specifically provides for the award of interim compensation. 11 U.S.C. § 331. The purpose of interim compensation is to alleviate economic hardships that would otherwise visit court appointed officers committed to finance extended engagements. 2 *Collier on Bankruptcy* ¶ 331.01 (15th ed.)." *Cont'l Ill. Nat'l Bank & Trust Co. Of Chicago v. Charles N. Wooten, LTD. (In re Evangeline Refining Co.),* 890 F.2d 1312, 1321 (5th Cir. 1989).

While the Court has wide discretion to award interim compensation to JW, all awards of interim compensation are subject to final Court approval and subject to disgorgement:

> There are two possible reasons to require disgorgement of interim fees previously awarded and paid: (1) the court eventually does not award final fees in an amount at least as great as the amount previously paid; and (2) although the court does grant a final fee award in a sufficient amount, the bankruptcy case is administratively insolvent and other classes of administrative claimants or professionals have received a lesser percentage on their claims than the professional in question.

3 Collier on Bankruptcy ¶ 331.05 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Consequently, if the Court awarded JW interim fees, the law is clear that an interim fee award is interlocutory and reviewable and subject to disgorgement. Interim fees "are intended only to provide some interim relief from the economic hardships of subsidizing litigation." *In re Evangeline,* 890 F.2d at 1322.

In awarding JW fees based on JW's first fee application, the Court acknowledged that the award was on an interim basis and subject to adjustment at the end of the case:

> The Court is also not holding that with regard to any future applications by JW or any other fee application by other professionals, the Court will allow professionals and non-professionals to be compensated for performing the Trustee's statutory duties without charging against or subtracting from the Trustee's Comp. This is an interim fee application pursuant to § 331. "Any amounts that were awarded as interim compensation are subject to reconsideration at any time prior to the final award, for any reason." 3 *Collier on Bankruptcy* ¶ 331.04[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (footnote omitted). "Because of the speculative nature of interim fee awards, they are 'always subject to the court's reexamination and adjustment during the course of the case.' *In re Evangeline,* 890 F.2d at 1321." At the time the final fee applications and the final application for Trustee's Comp are filed, the Court will evaluate whether a charge against or a subtracting from the Trustee's Comp is warranted.

*In re Cmty. Home Fin. Servs., Inc.*, No. 1201703EE, 2015 WL 6511183, at *19 (Bankr. S.D. Miss. Oct. 27, 2015) (footnote omitted).

Section 330(a)(5) provides that any final award of compensation under § 330 will be reduced by any fees awarded on an interim basis. Further, "if the amount of such interim compensation exceeds the amount of compensation awarded under this section, [the court] may order the return of the excess to the estate." 11 U.S.C. § 330(a)(5). Consequently, in the event the Debtor becomes administratively insolvent, the law is very clear that the Trustee and any other professional may be ordered to disgorge any funds allowed on an interim basis. Similarly, if in the Court's consideration of JW's final fee application and the Trustee's final compensation request, the Court reduces the amount of JW's fees based on *double-dipping* or for any other reason, the law is clear that JW and/or the Trustee may be ordered to disgorge such funds.

### 2. Application to the Case at Bar

Edwards first alleges that in the *Order Denying Motion to Transfer Certain Contested*

*Matters to Another Bankruptcy Judge Due to Congested Docket [Dkt. Nos. 984, 1136, 1243, 1399, and 1400]* (Dkt. #1464) (Transfer Order), the Court ruled that JW was not entitled to payment of its fees until it was determined whether Edwards was a secured creditor and the motion to use/motion to prohibit use of case collateral were finally adjudicated. At trial, Edwards argued that this was the law of the case, and therefore, JW's Motion should be denied.

The Court finds that the issue before it in the Transfer Order was not the payment of fees. Instead, JW was asking this Court to transfer its attorneys' fees applications to another judge. The Court did lay out a framework for how it was going to proceed in this case, however, the Court's comments cannot be taken as a ruling on the current Motion. The Court's comments in the Transfer Order are not the law of the case. If anything, the Court's comments constitute dicta and are not binding. Consequently, the Court finds that the Transfer Order does not prohibit JW from requesting payment of the fees to which Edwards has not objected.

At trial, Edwards' attorney questioned the Trustee regarding the source of the funds in the bank account and the bank checks ($2,364,871.49). As for the $1,824,871.49, the Trustee testified at trial that other than knowing that the funds were in an account in William D. Dickson's name, the Trustee does not know how the funds got in the bank account or where the funds originated. The Trustee's testimony as to the Omnibank check for $240,000.00 was similar. As for the BancorpSouth check for $300,000.00, the Trustee testified that a woman employed by both the Debtor and Discount Mortgage, Inc. purchased the official check, however, the Trustee does not know the source of the funds used to purchase the official check.

At trial, Edwards claimed that its security interest attached to the approximately $2.3 million the Trustee collected from the Panamanian bank account of William Dickson and the two bank

checks. No one knows the source of the funds that were in the Panamanian bank account or the two bank checks. Consequently, the Court finds that *at this point in time*, the $2,364,871.49 the Trustee recovered from the Panamanian bank account and the two bank checks is unencumbered.

Edwards next asserts that the Motion should be denied because the case should be converted to a Chapter 7. While the question of whether the case should be converted to a Chapter 7 is not before the Court today, it is clear that if a Chapter 11 is converted to a Chapter 7, § 726(b) gives priority to Chapter 7 expenses over fees paid to professionals in a Chapter 11. Therefore, if at some point in time, the Court converts the Debtor to a Chapter 7, any professionals awarded fees on an interim basis may be ordered to disgorge their fees in order to allow the Chapter 7 estate to recover an amount sufficient to satisfy any Chapter 7 claims which are of a higher priority under § 726. *U.S. Trustee v. Johnston,* 189 B.R. 676, 678 (N.D. Miss. 1995).

While Edwards acknowledges that its security interest does not attach to the approximately $280,000.00 in settlement funds the Trustee has on hand, Edwards claims that it is entitled to a replacement lien on the $280,000.00 because of the Trustee's prior use of its cash collateral. Therefore, Edwards alleges that the Trustee cannot use the $280,000.00 to pay its attorney fees. In support of its position, Edwards cited at trial the case of *TNB Fin'l, Inc. v. James F. Parker Interests (In re Grimland, Inc.),* 243 F.3d 228 (5th Cir. 2001) for the proposition that "[t]he default rule in bankruptcy is, accordingly, that administrative expenses are paid out of the estate and not by the secured creditors of the debtor." *In re Grimland,* 243 F.3d at 233 (citations omitted). The Court agrees with Edwards that administrative expenses are to be paid out of the estate, but the Court finds that *Grimland* can be distinguished from the case at bar.

In *Grimland*, a secured creditor's collateral was surcharged with the costs of storage and

environmental remediation–a surcharge which depleted the estate of all funds. The Court of Appeals for the Fifth Circuit held that the secured creditor did not benefit from the remediation or from the storage of the personal property, and therefore, the court found that the surcharge order was contrary to established law.

Unlike the secured creditor in *Grimland,* Edwards has benefitted from the Trustee's actions. The Trustee was able to stabilize the Debtor's business and to collect the Debtor's account receivables. Plus, the Trustee was able to secure the return of millions of dollars of the Debtor's funds William Dickson took to South America. Unlike *Grimland*, there is little chance that the estate will be depleted by the payment of JW's interim fee request. At trial, the Trustee testified that as of December 8, 2016, the estate had on hand $12,977,361.86. Consequently, the Court finds that *Grimland* is distinguishable from the case at bar and does not bar the Trustee's request for interim compensation.

Even if the Court agreed with Edwards and gave Edwards a replacement lien on the approximately $280,000.00 from the settlement funds, the Trustee still has the approximately $2.3 million from the bank account and checks, which at this point in time, is unencumbered. JW's attorneys' fees can be paid out of this unencumbered money.

### 3. Summary

As the Court stated in a prior order, over the past 31 years, this Court has had many very large cases filed before it–cases with huge numbers of creditors involving hundreds of million of dollars. This relatively small case, however, which is mainly a dispute between two (2) parties, has been the most contentious case this Court has seen. Any pleading filed in this case invokes an objection from the other side, which leads to more litigation.

Before the Court granted the U.S. Trustee's motion to appoint a trustee, Edwards had moved for the appointment of a trustee.[18] Because of the actions of the Debtor's principal, the Court appointed a trustee before it could rule on Edwards' motion. Regardless of whether the Trustee was appointed via Edwards' motion or via the U.S. Trustee's motion, any trustee appointed by the Court and his/her law firm are entitled to be paid assuming there are funds available for the payment of their fees.

Edwards has objected to every fee application filed by the Trustee and by JW. As for the Amended Second Fee Application and the Third Fee Application, the Court is carefully considering Edwards' objections to JW's attorneys' fees requests. In the end, the Court might very well agree with Edwards' objections and reduce JW's fees and/or reduce the Trustee's Comp. This is not, however, an easy or quick task–the Amended Second Fee Application is 845 pages and the Third Fee Application is 429 pages. The Court is having to review every time entry of the applications to determine whether Edwards has valid objections. In the meantime, it is not fair to require JW to continue to subsidize the administration of this bankruptcy case without any compensation.

What JW is seeking in the Motion is to be paid on an interim basis for the fees *to which Edwards did not object.* JW is not seeking to be paid for any of the time to which Edwards' objects in either the Amended Second Fee Application or the Third Fee Application, therefore, Edwards' rights are protected.

The time period of the Amended Second Fee Application and the Third Fee Application is from August 1, 2014, to February 29, 2016–for a total of eighteen (18) months. While in 2015, JW

---

[18]*Edwards Family Partnership, LP and Beher Holdings Trust's Motion to Appoint Chapter 11 Trustee for Community Home Financial Services, Inc.*, Dkt. # 96, Aug. 15, 2012.

was paid $734,129.55 on its First Fee Application, JW has not been paid any fees or expenses since that time.

The Court is sympathetic toward Edwards and its desire to be paid. The Court cannot, however, rule in Edwards' favor simply because Edwards believes it is "right" about having a lien on the majority of the Debtor's assets.

JW is a national law firm which employs approximately 390 attorneys in offices in nine (9) states and the District of Columbia. If at the end of the case or upon conversion, the Court orders JW to disgorge funds, the Court is confident that JW would have the financial ability to repay the funds to the bankruptcy estate. For these reasons, the Court finds that JW should be paid on an interim basis the fees to which Edwards did not object on a line-item basis. The Court also finds that the Trustee is authorized to immediately pay to JW the sum requested in its Motion, $628,037.00, out of the $2,644,430.98 of unencumbered funds.

## CONCLUSION

"Interim fee awards are not final determinations intended to put a matter to rest. Rather, they are interlocutory and reviewable, and are intended only to provide some interim relief from the economic hardships of subsidizing litigation." *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Charles N. Wooten, LTD. (In re Evangeline Refining Co.),* 890 F.2d 1312, 1322 (5th Cir. 1989).

Consequently, the Court finds that JW should be granted interim compensation in the total amount of $628,037.00. The Trustee is authorized to pay these funds immediately, subject to any possible disgorgement at a later date.

To the extent the Court has not addressed any of the parties' other arguments or positions, it has considered them and determined that they would not alter the result.

A separate order consistent with this Opinion will be entered in accordance with Rule 9014 of the Federal Rules of Bankruptcy Procedure.

**##END OF OPINION##**