_____



**SO ORDERED,**

*[signature: Edward Ellington]*

**Judge Edward Ellington**
**United States Bankruptcy Judge**
**Date Signed: January 18, 2017**

**The Order of the Court is set forth below. The docket reflects the date entered.**
_____

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **COMMUNITY HOME FINANCIAL** | **CASE NO. 1201703EE** |
| **SERVICES, INC.** | |

### MEMORANDUM OPINION ON THE *EDWARDS FAMILY PARTNERSHIP, LP AND BEHER HOLDINGS TRUST'S* MOTION TO RECONSIDER ORDER GRANTING MOTION FOR ORDER DIRECTING IMMEDIATE, INTERIM PAYMENT OF FEE APPLICATIONS IN AN AMOUNT NOT LESS THAN AMOUNTS <u>NOT OBJECTED TO ON A LINE-ITEM BASIS (DKT. # 1543) (DKT. # 1544)</u>

**THIS MATTER** came before the Court on the *Edwards Family Partnership, LP and Beher Holdings Trust's Motion to Reconsider Order Granting Motion for Order Directing Immediate, Interim Payment of Fees in Second and Third Fee Applications in an Amount Not Less Than Amounts Not Objected to on a Line-Item Basis (Dkt. # 1543) (Dkt. # 1544)* (Dkt. #1555). Having considered same, the Court finds that for the reasons expressed more fully below, the motion should be denied.

# FINDINGS OF FACT[1]

This is another Opinion in a series of opinions this Court has entered in this bankruptcy case. For a detailed explanation of the facts leading up to the filing of the bankruptcy case and the subsequent appointment of a trustee, see *In re Cmty. Home Fin. Servs. Inc.,* Case No. 12-01703EE, 2015 WL 6511183 (Bankr. S.D. Miss. Oct. 27, 2015).

Current Matters:

On November 22, 2016, Jones Walker, LLP (JW), as attorney for Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc (Trustee), filed a *Motion for Order Directing Immediate, Interim Payment of Fees in Second and Third Fee Applications in an Amount Not Less Than Amounts Not Objected to on a Line-Item Basis [Dkt. Nos. 1243 and 1400]* (Dkt. #1527) (Immediate Payment Motion). In its Immediate Payment Motion, JW stated that by its calculations, Edwards Family Partnership, LP and Beher Holdings Trust (collectively, Edwards) have not objected to $628,037.00 in legal fees requested by JW. Therefore, JW requested that the Court direct immediate payment (by December 31, 2016) on an interim basis the $628,037.00 to which Edwards has not objected out of the $2,631,930.98[2] the Trustee asserts are unencumbered

---

[1] These findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

[2] The Immediate Payment Motion states that the total amount of unencumbered funds being held by the Trustee totaled $2,631,930.98. It appears, however, that this amount failed to include $12,500.00 recovered as a result of stay violation litigation. Consequently, the correct total of unencumbered funds is $2,644,430.98. For a complete breakdown of the $2,644,430.98, see page 6 of the Immediate Payment Opinion.

funds (Unencumbered Funds).

On November 30, 2016, *Edwards Family Partnership, LP and Beher Holdings Trust's Response and Objection to Motion for Order Directing Immediate, Interim Payment of Fees in Second and Third Fee Applications in an Amount Not Less Than Amounts Not Objected to on a Line-Item Basis (Dkt #1527)* (Dkt. #1533) (Objection) was filed. In its Objection, Edwards contended that: (1) the Court has already ruled that the "Trustee cannot automatically use any of the money she has on hand to pay any fees";[3] (2) that the only funds the Trustee has on hand which are not subject to Edwards' claimed security interest totals only $279,559.49; and (3) that the motion should be denied and the case converted to a Chapter 7.

A trial was held on December 9, 2016, on the Immediate Payment Motion and Objection. On December 16, 2016, the Court entered its *Memorandum Opinion on the Motion for Order Directing Immediate, Interim Payment of Fees in Second and Third Fee Applications in an Amount Not Less Than Amounts Not Objected to on a Line-Item Basis [Dkt. NOS. 1243 and 1400]* (Dkt. # 1543) and *Order on the Motion for Order Directing Immediate, Interim Payment of Fees in Second and Third Fee Applications in an Amount Not Less Than Amounts Not Objected to on a Line-Item Basis [Dkt. NOS. 1243 and 1400]* (Dkt. # 1544) (collectively, Immediate Payment Opinion). In its Immediate Payment Opinion, the Court awarded JW interim compensation pursuant to 11 U.S.C. § 330 and § 331[4] in the amount of $628,037.00. This amount represents the legal fees requested by

---

[3]*Order Denying Motion to Transfer Certain Contested Matters to Another Bankruptcy Judge Due to Congested Docket [Dkt. Nos. 984, 1136, 1243, 1399, and 1400]*, Dkt. No. 1464, p. 16 (Sept. 9, 2016).

[4]Hereafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

Page 3 of 16

JW in its fee applications[5] to which Edwards has not objected. The Court found that at that point in time, $2,644,430.98 were unencumbered funds. The Court allowed the Trustee to immediately pay JW on an interim bases $628,037.00 out of the Unencumbered Funds.

The motion currently before the Court is the *Edwards Family Partnership, LP and Beher Holdings Trust's Motion to Reconsider Order Granting Motion for Order Directing Immediate, Interim Payment of Fees in Second and Third Fee Applications in an Amount Not Less Than Amounts Not Objected to on a Line-Item Basis (Dkt. # 1543) (Dkt. # 1544)* (Dkt. #1555) (Motion) filed on December 30, 2016. In its Motion, Edwards requests that the Court reconsider its award of interim compensation to JW in the amount of $628,037.00. Basically, Edwards argues that the Trustee's testimony at trial as to the source of the Unencumbered Funds is in contradiction to her prior representations to the Court. Edwards contends that the funds are Edwards' collateral and that the Court surcharged Edwards' collateral in violation of § 506(c).

## CONCLUSIONS OF LAW

### I. Jurisdiction

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant

---

[5]JW has filed the following fee applications: a *Second Application for Compensation for the Period of August 1, 2014 through June 30, 2015, and Reimbursement of Expenses by the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc.* (Dkt. #1148); an *Amended Second Application for Compensation for the Period of August 1, 2014 through June 30, 2015, and Reimbursement of Expenses by the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc.* (Dkt. #1243) (Amended Second Fee Application); and a *Third Application for Compensation for the Period of July 1, 2015 Through February 29, 2016, and Reimbursement of Expenses by the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc.* (Dkt. #1400) (Third Fee Application). Trials have been held on these fee applications, and the Court currently has the matters under advisement.

to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(1) and (2)(A).

## II. LEGAL ANALYSIS

In its Motion, Edwards requests that the Court reconsider its Immediate Payment Opinion pursuant to Federal Rules of Bankruptcy Procedure 9023 and/or 9024. Federal Rule of Bankruptcy Procedure 9023 makes Federal Rule of Civil Procedure 59 applicable to bankruptcy cases. Federal Rule of Bankruptcy Procedure 9024 makes Federal Rule of Civil Procedure 60 applicable to bankruptcy cases. For purposes of this Opinion, the Court will refer to the rules as Federal Rule of Civil Procedure 59 and 60.

There is no "motion for reconsideration" either in the Federal Rules of Civil Procedure or in the Federal Rules of Bankruptcy Procedure. The Court of Appeals for the Fifth Circuit has held that "a motion so denominated, provided that it challenges the prior judgment on the merits, will be treated as either a motion 'to alter or amend' under Rule 59(e) or a motion for 'relief from judgment' under Rule 60(b)." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *overruled on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994). If the motion is served within the relatively short time frame prescribed in Rule 59(e), the motion falls under Rule 59(e); if it is served outside that time limit, it falls under Rule 60(b). *Id.*

The first paragraph of the Motion states that it is brought pursuant to Rule 59 "and/or" Rule 60. In the body of the Motion, however, only Rule 59(e) is alleged as a ground for the Court to alter or amend its Immediate Payment Motion. As previously stated, Federal Rule of Bankruptcy Procedure Rule 9023 makes Rule 59(e) applicable to bankruptcy cases, and states in pertinent part:

> **Rule 9023. New Trials; Amendment of Judgments.**
>
> Except as provided in this rule . . . Rule 59 FR Civ P applies in cases under the Code. A motion for a new trial or to alter or amend a judgment shall be filed, . . . no later than 14 days after entry of judgment.
> **Rule 59. New Trial; Altering or Amending a Judgment.**
>
> . . . .
>
> (e) **Motion to Alter or Amend a Judgment.** A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

Fed. R. Bankr. Pro. 9023.

The Motion at issue here falls under Rule 59(e), rather than Rule 60, because it was filed within fourteen (14) days after entry of the Immediate Payment Opinion, which was within the time frame of Rule 59. Consequently, while pled, the Court will not consider Rule 60.

Rule 59 serves the narrow purpose of allowing a party "'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Lavespere*, 910 F.2d at 174 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). A Rule 59 motion is not the proper place for "rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). "Because of the interest in finality, Rule 59(e) motions may only be granted if the moving party shows there was a mistake of law or fact or presents newly discovered evidence that could not have been discovered previously." *Parker v. Colvin*, No. 11-3024, 2016 WL 951522, at *1 (E.D. La. March 9, 2016) (citation omitted). Reconsideration under Rule 59(e) "is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479; *Williams v. United States*, No. 3:14cv446, 2015 WL 518701, at *1 (S.D. Miss. Feb. 6, 2015).

As the Fifth Circuit stated in its recent opinion in *Naquin v. Elevating Boats, L.L.C.,* 817 F.3d 235 (5th Cir. 2016):

>Such motions are not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of judgment. *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). "Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory." *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (quoting *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)). "Relief under Rule 59(e) is also appropriate when there has been an intervening change in the controlling law." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (citing *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002)).

*Naquin,* 817 F.3d at 240 n.4.

Turning to the Motion before the Court, Edwards asserts as grounds for the Court to alter or amend its Immediate Payment Opinion the following:

>1. That the Trustee's testimony at the trial on the Immediate Payment Motion regarding the source of the Unencumbered Funds was a "completely different story"[6] than what the Trustee stated in her *Trustee's First Statement of Investigation and Report* (Dkt. # 918) (Trustee's First Report) and the *First Amended Disclosure Statement for the Chapter 11 Plan of Liquidation of the Estate of Community Home Financial Services, Inc. Proposed by the Trustee, Kristina M. Johnson Dated as of May 15, 2015* (Dkt. # 1080) (First Amended Disclosure Statement);
>
>2. That the Trustee has not shown that the Unencumbered Funds are property of the bankruptcy estate; and
>
>3. That the payment of attorney fees to JW "appears to surcharge the Edwards Entities collateral"[7] in violation of § 506(c) because the Trustee did not prove that her actions and those of JW "directly benefitted the Edwards Entities' collateral as § 506(c) required."[8]

---

[6]*Edwards Family Partnership, LP and Beher Holdings Trust's Motion to Reconsider Order Granting Motion for Order Directing Immediate, Interim Payment of Fees in Second and Third Fee Applications in an Amount Not Less Than Amounts Not Objected to on a Line-Item Basis (Dkt. # 1543) (Dkt. # 1544),* Dkt. No. 1555, p. 9, ¶ 24 (Dec. 30, 2016).

[7]*Id.* at 11, ¶ 32.

[8]*Id.* at 13, ¶ 36.

The Court will address each of Edwards' allegations separately.

### A. Changed Testimony

In its Motion, Edwards quotes passages from the Trustee's First Report and the First Amended Disclosure Statement which it alleges show that contrary to the Trustee's testimony at trial, the Trustee knew the source of the Unencumbered Funds. The Trustee's First Report was filed on December 17, 2014, clearly years before the trial on the Immediate Payment Motion. The First Amended Disclosure Statement was filed on May 15, 2015, over a year before the trial on the Immediate Payment Motion.

While there is not a written transcript of the trial, there is an audio recording. The Court listened to the audio recording of the trial. Beginning at 10:55:40 A.M.,[9] the attorney for Edwards began extensively questioning the Trustee regarding the source of the Unencumbered Funds. Edwards never asked the Trustee about what it now alleges in its Motion to be contradictory statements in the Trustee's First Report and the First Amended Disclosure Statement. Since both pleadings had been filed and were available to Edwards long before the trial on the Immediate Payment Motion, Edwards cannot "raise [these] arguments which could, and should, have been made before the judgment issued."[10]

Even if the Court were to consider Edwards' position that the Trustee has changed her story regarding the source of the Unencumbered Funds, the Court does not agree with Edwards' characterization of the Trustee's prior comments. In the statements Edwards quotes[11] in its Motion,

---

[9] The recording is marked with the time of day.

[10] *Naquin,* 817 F.3d at 240 n.4.

[11] In its Motion, Edwards quotes from the following pages of the Trustee's First Report: p. 4 n.9; p. 14, ¶ 27; p. 15, ¶ 31; and p. 16, ¶ 32.

the Trustee discusses the possible sources of the some of the funds she has collected. In the Trustee's Report, the Trustee states that "[i]t is unknown at this time what Warren Foundation did with the funds and who actually has possession of these funds;"[12] and that a BancorpSouth Bank check was purchased "with funds allegedly belonging to [Discount Mortgage Inc.]."[13] The Court finds that these statements corroborates her testimony at trial that the exact source of these funds is unknown.

In its Motion, Edwards also states that in the Trustee's First Report, the Trustee stated that funds she recovered belonged to the Debtor.

> The Trustee then stated unequivocally that she recovered $4,924,025.58 of these very funds taken from CHFS, which includes the $1,824,871.49 wired from an account in Dickson's name at Banco Panamero:
>
>> After weeks of negotiation with Dickson and failed attempts to return funds, the Trustee received on July 10, 2014, $4,924,025.58 wired from a Panamanian bank after negotiation the <u>voluntary return of said funds</u>.
>
> Trustee's First Report, Dkt #918, p. 16, ¶ 32 (emphasis added).[14]

The Court does not find that the Trustee "unequivocally" stated that the funds were taken from the Debtor. Rather, the quoted language simply states that the funds were wired from a Panamanian bank. As the Trustee testified at trial and the email confirming the wire transfers

---

[12] *Trustee's First Statement of Investigation and Report,* Dkt. No. 918, p. 4 n.9 (Dec. 30, 2016).

[13] *Id.* at p. 14, ¶ 27.

[14] *Edwards Family Partnership, LP and Beher Holdings Trust's Motion to Reconsider Order Granting Motion for Order Directing Immediate, Interim Payment of Fees in Second and Third Fee Applications in an Amount Not Less Than Amounts Not Objected to on a Line-Item Basis (Dkt. # 1543) (Dkt. # 1544),* Dkt. No. 1555, p. 9, ¶ 25 (Dec. 30, 2016).

states,[15] $1,824,871.49 came from an account in the name of William Dickson, while $3,099,154.09 came from an account in the name of Community Home Financial Services.

The Trustee testified at trial that at this point in time, she does not know that any of the funds wired from William Dickson's account are loan proceeds. Further as to the other funds the Trustee has collected, the Trustee testified that approximately four (4) million dollars[16] of the money she has recovered that she knows are payments on mortgages have not been credited to any specific mortgage accounts. The Trustee stated that not only is there a gap in the banking records, but that there is also a gap in the servicing records. Consequently, at this point in time, the Trustee testified that she does not know to which mortgage account to apply these funds.[17]

Edwards asserts that the Trustee stated in the Trustee's First Report and in the First Amended Disclosure Statement that approximately $540,000.00 of the Unencumbered Funds "represented payments on CHFS loans."[18] The Court disagrees. The Trustee did not state that these payments were specifically from CHFS loans. The Trustee simply states that she recovered payments that were intended for the rogue operation.

Consequently, the Court finds that Edwards' assertion that the Trustee has changed her testimony does not meet the standards of Rule 59(e) as "a manifest error of law or fact or . . . newly

---

[15]Trial Exhibit JW-1, *Motion for Order Directing Immediate, Interim Payment of Fees in Second and Third Fee Applications in an Amount Not Less Than Amounts Not Objected to on a Line-Item Basis (Dkt. # 1543) (Dkt. # 1544),* Exhibit 1.

[16]This four (4) million is separate and apart from the Unencumbered Funds.

[17]Starting at 10:49:43 A.M. in the audio recording.

[18]*Edwards Family Partnership, LP and Beher Holdings Trust's Motion to Reconsider Order Granting Motion for Order Directing Immediate, Interim Payment of Fees in Second and Third Fee Applications in an Amount Not Less Than Amounts Not Objected to on a Line-Item Basis (Dkt. # 1543) (Dkt. # 1544),* Dkt. No. 1555, p. 10, ¶¶ 27 and 28 (Dec. 30, 2016).

discovered evidence"[19] as required by the Fifth Circuit. Further, the Court finds that since the Trustee's First Report and the First Amended Disclosure Statement were available to Edwards long before the trial on the Immediate Payment Motion, Edwards could have and should have raised these arguments before the Immediate Payment Opinion was entered.

### B. Property of the Estate

Edwards' next ground for the Court to alter or amend its Immediate Payment Opinion is that Edwards contends that the Trustee has not proven that the Unencumbered Funds are property of the bankruptcy estate. Edwards did not raise this argument in its Objection to the Immediate Payment Motion or at trial. Further, Edwards does not cite to authority to explain the basis of why Edwards alleges this to be a ground for the Court to alter or amend its Immediate Payment Opinion. The Court finds this argument is not "a manifest error of law or fact or . . . newly discovered evidence"[20] and was an argument Edwards could have or should have raised before the Immediate Payment Opinion was entered, and thereby fails to meet the standards of Rule 59(e).

### C. Surcharge on Edwards' Collateral

Edwards final grounds it asserts meets the standard of Rule 59(e) for the Court to alter or amend its Immediate Payment Opinion is that Edwards claims that the Court improperly surcharged Edwards' collateral in violation of § 506(c) because the Trustee failed to prove that her and/or JW's actions directly benefitted "the Edwards Entities' collateral as § 506(c) required."[21]

---

[19]*Naquin,* 817 F.3d at 240 n.4.

[20]*Id.*

[21]*Edwards Family Partnership, LP and Beher Holdings Trust's Motion to Reconsider Order Granting Motion for Order Directing Immediate, Interim Payment of Fees in Second and Third Fee Applications in an Amount Not Less Than Amounts Not Objected to on a Line-Item Basis (Dkt. # 1543) (Dkt. # 1544),* Dkt. No. 1555, p. 13, ¶ 36 (Dec. 30, 2016).

In its Objection, Edwards does not raise § 506(c). In listening to the recording of the trial, Edwards did not raise § 506(c) at trial.

At the conclusion of the trial (at 11:08:26 A.M. in the recording), the attorney for Edwards reads a quote from *TNB Fin'l, Inc. v. James F. Parker Interests (In re Grimland, Inc.),* 243 F.3d 228 (5th Cir. 2001): "The default rule in bankruptcy is, accordingly, that administrative expenses are paid out of the estate and not by the secured creditors of the debtor."[22] While *Grimland* does address the surcharging of a creditor's collateral pursuant to § 506(c), Edwards did not specifically raise § 506(c) and surcharging of Edward's collateral at trial. Since this is an argument that Edwards could have or should have raised before judgment was entered, the Court finds this argument is not "a manifest error of law or fact or . . . newly discovered evidence"[23] and thereby fails to meet the standards of Rule 59(e).

Even if the Court allowed that Edwards had raised § 506(c) at trial by virtue of quoting from *Grimland*, the Court finds that it addressed *Grimland* in its Immediate Payment Opinion and found it to be distinguishable from the case at bar. The Court found in its Immediate Payment Opinion that Edwards had directly benefitted from the Trustee's actions. Edwards now contends in its Motion that Court "did not require the Trustee to prove that JW's actions directly (as opposed to indirectly) benefitted the Edwards Entities' collateral as § 506(c) required. Because there is a complete lack of proof on this issue, the [Immediate Payment Opinion] contains clear legal error and results in

---

[22]*In re Grimland, Inc.,* 243 F.3d at 233 (citations omitted). In the recording, Mr. Spencer states that the quote is found on page 232, but it is actually on page 233.

[23]*Id.*

manifest injustice."[24]

In almost every pleading filed by Edwards, Edwards states that they are "the only significant creditors and hold 99% of all outstanding claims in this bankruptcy case."[25] Further, in its pleadings Edwards also acknowledges the millions of dollars the Trustee has collected in this case–either from Central America or from collections from the Debtor's accounts receivables. At trial, the Trustee testified that through November of 2016, she has on hand approximately $12,977,000.00.[26]

The Court has extensive institutional knowledge of this case–from the bankruptcy estate being looted, moved from Mississippi and set up in Central America; to the appointment of the Trustee; to the Trustee servicing the loans and eventually hiring a servicing company to service the loans; to the Trustee's successful attempts to recover funds from Central America; and to the current

---

[24]*Edwards Family Partnership, LP and Beher Holdings Trust's Motion to Reconsider Order Granting Motion for Order Directing Immediate, Interim Payment of Fees in Second and Third Fee Applications in an Amount Not Less Than Amounts Not Objected to on a Line-Item Basis (Dkt. # 1543) (Dkt. # 1544),* Dkt. No. 1555, p. 13, ¶¶ 36 (Dec. 30, 2016).

[25]*Edwards Family Partnership, L.P. and Beher Holdings Trust's Objection to Third Application for Compensation for the Period of July 1, 2015, Through February 29, 2016, and Reimbursement of Expenses of the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc. (Dkt. #1400)*, Dkt. # 1417, p. 1, ¶ 1 (Aug. 3, 2016). *See also Edwards Family Partnership, LP and Beher Holdings Trust's Objection to Trustee's Notice of Proposed Abandonment of REO Properties (DKT #1436)*, Dkt. # 1454, p. 1, ¶ 1 (Aug. 31, 2016) (They hold 99% of all claims.); *Edwards Family Partnership, LP and Beher Holdings Trust's Response Objecting to Motion of Trustee and Her Counsel to Transfer Certain Contested Matters to Another Bankruptcy Judge Due to Congested Docket [Ct Dkt #1443]*, Dkt. 1446, p. 2, ¶ 4 (Aug. 25, 2016) (hold more than 99.3% of the claims); *Edwards Family Partnership, LP and Beher Holdings Trust's Supplemental Objection to Amended Second Application for Compensation for the Period of August 1, 2004 – June 30, 2015 and Reimbursement of Expenses of the Law Firm of Jones Walker, LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc. (Dkt. # 1243)*, Dkt. # 1257, p. 5, ¶ 16(a) (Jan. 8, 2016) (hold 99.9% of the claims); and *Edwards Family Partnership, L.P. and Beher Holdings Trust's Objection to Fee Application*, Dkt. # 1178, p. 1, ¶ 2 (Sept. 25, 2015) (They hold 99.9% of all outstanding claims in this bankruptcy.).

[26]Found at 10:49:46 A.M. in the audio recording.

matters set before the Court. Once the estate was looted and moved to Central America, without the Trustee being appointed and the Trustee's subsequent actions to recover the funds taken from the bankruptcy estate, the Court does not know what, if any, of the funds would have been recovered for the benefit of the bankruptcy estate. The Trustee has stabilized the Debtor's business and has hired a servicing company to collect the monthly payments from the mortgage holders. As the entity holding at least 99% of the claims in this case, the Court finds that Edwards certainly has benefitted from the Trustee's and JW's actions in collecting money for the bankruptcy estate.

The Court acknowledges that due to the tremendous amount of litigation pending in adversary proceedings and in the regular bankruptcy case, Edwards has not received any of the $12 million the Trustee currently has on hand. That does not mean, however, that Edwards has not benefitted from the recovery and collection of assets of the bankruptcy estate nor that Edwards will not eventually receive a substantial amount of the money the Trustee has on hand. Of course, how much and when depends on the outcome of all of the other litigation which is currently pending in this case.

The Court will note that Edwards' § 506(c) argument presupposes that the Unencumbered Funds are Edwards' collateral. This dispute is the subject of an adversary proceeding currently pending before this Court. The answer to this question will not be known until a final judgment is entered in this Court or on appeal on the validity and extent of Edwards' lien, which could be years in the future.

The Court finds Edwards has not shown that its ruling on *Grimland*, and in effect, § 506(c) were "a manifest error of law"[27] as contemplated by the Fifth Circuit. Therefore, the Court finds that

---

[27]*Naquin,* 817 F.3d at 240 n.4.

Edwards has not met its burden under Rule 59(e).

## CONCLUSION

Neither the Federal Rules of Civil Procedure nor the Federal Rules of Bankruptcy Procedure provide for a motion for reconsideration. Under Fifth Circuit precedent, the Motion is treated as a motion to alter or amend under Rule 59(e) because it was filed within fourteen (14) days of the entry of the Immediate Payment Opinion. *Lavespere*, 910 F.2d at 173.

Rule 59(e) motions are not "the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of judgment."[28] Rather, a motion to alter or amend "must clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could have and should have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory."[29]

The Court finds that the Motion revels no basis for the Court to alter or amend its Immediate Payment Opinion. All three grounds asserted by Edwards as a basis for the Court to alter or amend its Immediate Payment Opinion could have and should have been made before the Immediate Payment Opinion was entered. The Motion also does not demonstrate that the Court made a manifest error of law or fact as contemplated by Rule 59(e).

"'Whatever may be the purpose of Rule 59(e), it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge.' *Stark v. Univ. of S. Miss.*, 8 F.Supp.3d 825, 844 (S.D. Miss. 2014) (quoting *Nationwide Mut. Fire Ins. Co. v. Pham*, 193 F.R.D.

---

[28] *Id.* (citation omitted).

[29] *Id.* (citations omitted).

493, 494 (S.D. Miss. 2000))" *Robinson v. Wheeler, et al.*, No. 4:15-CV-104, 2016 WL 4384745, at *2 (N.D. Miss. Aug. 16, 2016). Consequently, the Court finds that the Motion should be denied.

To the extent the Court has not addressed any of the parties' other arguments or positions, it has considered them and determined that they would not alter the result.

A separate order consistent with this Opinion will be entered in accordance with Rule 9014 of the Federal Rules of Bankruptcy Procedure.

**##END OF OPINION##**