**SO ORDERED,**

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: May 3, 2017**

The Order of the Court is set forth below. The docket reflects the date entered.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

COMMUNITY HOME FINANCIAL                    CASE NO. 12-01703-NPO[1]
SERVICES, INC.,

DEBTOR.                                     CHAPTER 11

AMENDED MEMORANDUM OPINION AND ORDER ON
APPLICATIONS FOR COMPENSATION FOR THE PERIOD
OF JANUARY 2, 2014, THROUGH FEBRUARY 29, 2016, AND
REIMBURSEMENT OF EXPENSES BY THE LAW FIRM OF JONES
WALKER LLP AS COUNSEL TO KRISTINA M. JOHNSON, TRUSTEE
OF THE ESTATE OF COMMUNITY HOME FINANCIAL SERVICES, INC.

This matter came before the Court for hearing most recently on February 27, 2017 (the "Hearing"), on applications for compensation and reimbursement of expenses for the combined period of January 2, 2014, through February 29, 2016, filed by the law firm of Jones Walker LLP ("JW") as counsel to Kristina M. Johnson ("Johnson"), the chapter 11 trustee (the "Trustee") in the above-referenced bankruptcy case (the "Bankruptcy Case"), as follows:

---

[1] An order entered on February 1, 2017, reassigned the Bankruptcy Case from Judge Edward Ellington to Chief Judge Neil P. Olack (Dkt. 1609).

(1.)   <u>First Fee Application</u>:

First Application for Compensation for the Period of January 2, 2014 Through July 31, 2014, and Reimbursement of Expenses by the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc. (the "<u>First Fee Application</u>") (Dkt. 783) filed by JW

Edwards Family Partnership, L.P. and Beher Holdings Trust's Objection to Fee Applications (the "<u>First Fee App Objection</u>") (Dkt. 820) filed by the Edwards Family Partnership, LP and Beher Holdings Trust ("Edwards")

Combined Reply and Memorandum:   (I) in Support of First Application for Compensation for the Period of January 2, 2014 Through July 31, 2014, and Reimbursement of Expenses by the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc. [Dkt. #783]; and (II) in Opposition to Edwards Family Partnership, L.P. and Beher Holdings Trust's Objection to Fee Applications [Dkt. #820] (the "<u>JW Brief-First Fee App</u>") (Dkt. 849) filed by JW

Supplemental Memorandum of Law:   (I) in Support of First Application for Compensation for the Period of January 2, 2014 Through July 31, 2014, and Reimbursement of Expenses by the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee   of the Estate of Community Home Financial Services, Inc. (Dkt. #783); and (II) in Opposition to Objection Thereto by Edwards Family Partnership and Beher Holdings Trust (Dkt. #820) (the "<u>JW Hearing Brief-First Fee App</u>") (Dkt. 916) filed by JW

Edwards Family Partnership, LP and Beher Holdings Trust's Trial Brief and Supplement to Objection to First Application for Compensation of Jones Walker LLP as Attorneys for the Trustee (the "<u>Edwards Hearing Brief-First Fee App</u>")(Dkt. 917) filed by Edwards9+6

Post-Trial Memorandum in Support of Jones Walker LLP's First Fee Application (the "<u>JW Post-Hearing Brief-First Fee App</u>") (Dkt. 973) filed by JW

Edwards Family Partnership, LP and Beher Holdings Trust's Post-Trial Brief in Support of its Objection to First Application for Compensation of Jones Walker LLP as Attorneys for the Trustee (the "<u>Edwards Post-Hearing Brief-First Fee App</u>") (Dkt. 990) filed by Edwards

Reply in Support of Jones Walker LLP's First Fee Application (the JW Post-Hearing Reply Brief-First Fee App") (Dkt. 995) filed by JW

United States Trustee's Comment Pursuant to 28 U.S.C. § 586(a)(3)(A)(ii) Regarding the First Application of Compensation for the Period of January 2, 2014, Through July 31, 2014, and Reimbursement of Expenses by the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc. (the "U.S. Trustee Response to First Fee App") (Dkt. 996) filed by Henry G. Hobbs, Jr., Acting U.S. Trustee for Region 5 (the "U.S. Trustee")

Supplemental Brief in Support of Jones Walker LLP's First Fee Application (the "JW Supplemental Post-Hearing Brief-First Fee App") (Dkt. 1039) filed by JW

Supplement to Edwards Family Partnership, LP and Beher Holdings Trust's Post-Trial Brief on First Application for Compensation of Jones Walker LLP as Attorneys for the Trustee [Ct Dkt. #990] (the "Edwards Supplemental Post-Hearing Brief-First Fee App") (Dkt. 1046) filed by Edwards

(2.)   Second Fee Application

Second Application for Compensation for the Period of August 1, 2014 Through June 30, 2015, and Reimbursement of Expenses by the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc. (the "Second Fee Application") (Dkt. 1148) filed by JW

Edwards Family Partnership, L.P. and Beher Holdings Trust's Objection to Fee Application (the "Second Fee App Objection") (Dkt. 1178) filed by Edwards

(3.)   Amended Second Fee Application

Amended Second Application for Compensation for the Period of August 1, 2014 through June 30, 2015, and Reimbursement of Expenses by the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc. (the "Amended Second Fee Application") (Dkt. 1243) filed by JW

Edwards Family Partnership, LP and Beher Holdings Trust's Supplemental Objection to Amended Second Application for Compensation for the Period of August 1, 2004 [sic] – June 30, 2015 and Reimbursement of Expenses of the Law Firm of Jones Walker, LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc. (Dkt. #1243) (the "Amended Second Fee App Objection") (Dkt. 1257) filed by Edwards

Post-Trial Memorandum in Support of:   (1) Jones Walker LLP's Amended Second Fee Application [Dkt. #1243]; (2) the Trustee's First Fee Application [Dkt. #984];

and (3) the Supplemental Application as to the Trustee's First Fee Application [Dkt. #1136] (the "JW Post-Hearing Brief-Amended Second Fee App") (Dkt. 1303) filed by JW

EFP/BHT's Post-Trial Brief in Support of 1) Objection to Amended Second Application for Compensation of Jones Walker LLP as Attorneys for the Trustee and 2) Response/Objection to Trustee's First and Supplemental First Fee Applications (the "Edwards Post-Hearing Brief-Amended Second Fee App") (Dkt. 1329) filed by Edwards

Post-Trial Reply Memorandum in Support of Jones Walker LLP's Amended Second Fee Application [Dkt. #1243], the Trustee's First Fee Application [Dkt. #984] and the Supplemental Application [Dkt. #1137] (the "JW Supplemental Post-Hearing Brief-Amended Second Fee App") (Dkt. 1336) filed by JW

(4.)    Third Fee Application

Third Application for Compensation for the Period of July 1, 2015 Through February 29, 2016, and Reimbursement of Expenses by the Law Firm of Jones Walker, LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc. (the "Third Fee Application") (Dkt. 1400) filed by JW

Edwards Family Partnership, L.P. and Beher Holdings Trust's Objection to Third Application for Compensation for the Period of July 1, 2015, Through February 29, 2016, and Reimbursement of Expenses of the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc. (Dkt. #1400) (the "Third Fee App Objection") (Dkt. 1417) filed by Edwards

Edwards Family Partnership, LP and Beher Holdings Trust's Post-Trial Brief in Support of their Objections to the Third Application for Compensation for the Period of July 1, 2015 Through February 29, 2016 and Reimbursement of Expenses by the Law Firm of Jones Walker LLP, as Counsel for Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc. (Dkt. #1400) (Dkt. #1417) (the "Edwards Post-Hearing Brief-Third Fee App") (Dkt. 1545) filed by Edwards

Post-Trial Memorandum in Support of Jones Walker LLP's Third Fee Application and in Opposition to Objection to Same [Dkt. Nos. 1400, 1417, and 1545] (the "JW Post-Hearing Brief-Third Fee App") (Dkt. 1588) filed by JW

Edwards Family Partnership, LP and Beher Holdings Trust's Reply to Post-Trial

Memorandum in Support of Jones Walker LLP's Third Fee Application and in Opposition to Objection to Same (Dkt. #1588) (the "Edwards Post-Hearing Reply Brief-Third Fee App") (Dkt. 1621) filed by Edwards

At the Hearing, Mark A. Mintz, Jeffrey R. Barber ("Barber"), and Stephanie B. McLarty represented JW and the Trustee; Jim F. Spencer, Jr. and Stephanie M. Rippee represented Edwards; and Ronald H. McAlpin represented the U.S. Trustee.   Having considered the above pleadings and briefs, the testimony and evidence presented at prior hearings, and the arguments of counsel, the Court finds as follows:

### Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334.   This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).   Notice of the Hearing was proper under the circumstances.

### Facts[2]

The facts and history of this Bankruptcy Case are unwieldy and involve proceedings filed both in the U.S. District Court for the Southern District of Mississippi (the "District Court") and in Bankruptcy Court. For purposes of the present matter, the following facts and history are largely limited to the time period ending on February 29, 2016, which is also the end of the fee and expense period in question.[3]

Community Home Financial Services, Inc. ("CHFS") is in the business of purchasing and servicing loan portfolios.   William D. Dickson ("Dickson") is the founder of CHFS and was its

---

[2] These proposed findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 9014(c).

[3] All of these events occurred when the Bankruptcy Case and related adversary proceedings were assigned to the prior bankruptcy judge.   *See supra* note 1.

chief executive officer until early 2014.    Before the fall of 2013, CHFS's principal place of business was in Jackson, Mississippi, where about eleven (11) employees, many of whom were Dickson's family members, serviced about 4,000 second-tier and third-tier mortgage loans on residential property located in over thirty (30) states. These loans are referred to as the "Home Improvement Loans."    To fund the purchase of the mortgage loan portfolios, CHFS borrowed approximately $18 million from several companies controlled by Dr. Charles C. Edwards ("Dr. Edwards"), including Edwards Family Partnership, L.P. and Beher Holdings Trust (collectively, "Edwards"), in 2007.    (Dkt. 167 at 9).    CHFS and Edwards also entered into a series of seven (7) joint ventures where Edwards provided approximately $9 million to purchase portfolios of subprime loans that CHFS serviced for a fee (the "Joint Venture Loan Portfolios").

As the result of business disputes between Dickson and Dr. Edwards, CHFS and Dickson sued Edwards and others in state court in February 2012, seeking a declaration of the parties' rights in their business relationships, including both the Home Improvement Loans and the Joint Venture Loan Portfolios. (the "Original Lawsuit").    CHFS and Dickson challenged the alleged secured status of the loans made by Edwards to fund the Home Improvement Loans and also asserted an interest in the net profits of the Joint Venture Loan Portfolios.    Edwards removed the Original Lawsuit to District Court (the "Receivership Action") (3:12-cv-00252-CWR-LRA, Dkt. 1).    In the Receivership Action, Edwards asserted counterclaims against CHFS and Dickson, seeking the equitable remedy of the appointment of a receiver and a judgment against Dickson personally for his guaranty of the promissory notes signed by CHFS.

During the trial of the Receivership Action, CHFS filed a voluntary chapter 11 petition for relief on May 23, 2012. (Dkt. 1). The commencement of the Bankruptcy Case stayed the

Receivership Action.   CHFS proceeded as the debtor-in-possession (the "DIP") in the Bankruptcy Case pursuant to 11 U.S.C. § 1101,[4] with Dickson acting as its designated representative for approximately nineteen (19) months.

On August 15, 2012, Edwards filed a motion to appoint a chapter 11 trustee (Dkt. 96) based, in part, on Dickson's alleged mismanagement of CHFS and his alleged diversion of funds to insiders.   That motion was rendered moot by later events and the emergency appointment of a chapter 11 trustee on December 23, 2013.   *See infra* at 9.

In the Bankruptcy Case, Edwards filed six (6) proofs of claim arising from the two distinct business relationships with CHFS, Home Improvement Loans and Joint Venture Loan Portfolios. (Claims 4-1 through 9-1).   Edwards filed identical proofs of claim four and five ("POC 4-1 & 5-1") (Claim 4-1 & 5-1) in the amount of $18,390,660.32 for "money loaned" to CHFS to fund the purchase of the Home Improvement Loans.   For CHFS's alleged breach of its fiduciary duty regarding the Joint Venture Loan Portfolios, Edwards filed nearly identical proofs of claim six and nine ("POC 6-1 & 9-1") in the estimated amount of $7,101,094.35 and nearly identical proofs of claim seven and eight ("POC 7-1 & 8-1") in the estimated amount of $4,917,547.35.   CHFS filed an objection (Dkt. 162) to POC 4-1 & 5-1 as to the status of it being secured and also filed objections to POC 6-1 & 9-1 (Dkt. 163) and POC 7-1 & 8-1 (Dkt. 164), denying any liability.

In the Receivership Action, which was stayed by the commencement of the Bankruptcy Case, the District Court on March 29, 2013, severed the counterclaims asserted against Dickson personally, realigned the parties (with Edwards as the Plaintiff and Dickson as the defendant), and

---

[4] Hereinafter, all code sections refer to the U.S. Bankruptcy Code found at title 11 of the U.S. Code unless otherwise noted.

assigned it a new cause number, 3:13-cv-00587-CWR-LRA (the "Guaranty Suit").[5] (3:12-CV-00252, Dkt. 109 & 110).

In order to facilitate the operation of CHFS's business, the prior bankruptcy judge entered orders on July 10, 2012, and May 3, 2013, regarding its cash flow (the "Cash Collateral Orders") (Dkt. 60, 231). Under the Cash Collateral Orders, other than carve outs for operating and other expenses, the funds in the DIP operating account (the "DIP Account") were not to be disbursed without further order.

During this same time period, CHFS and Dickson filed three (3) separate adversary proceedings against Edwards alleging claims similar to those asserted in the stayed Original Lawsuit: Adv. Proc. No. 12-00091-NPO, initiated on August 24, 2012; Adv. Proc. No. 12-00109-NPO, initiated on October 24, 2012; and Adv. Proc. No. 13-00104-NPO, initiated on November 26, 2013 (collectively, the "Edwards Adversary Proceedings"). In Adv. Proc. No. 12-00091-NPO, CHFS and Dickson sought a declaration that Edwards' claims to the Home Improvement Loans were either unenforceable or unsecured. CHFS's objection to POC 4-1 & 5-1 mirrored these allegations. In Adv. Proc. No. 12-00109-NPO, CHFS and Dickson sought a declaration as to the parties' rights under the Joint Venture Loan Portfolios and asserted claims that Edwards breached the joint venture agreements by failing to pay CHFS its share of the net profits. CHFS's objections to POC 6-1 & 9-1 mirrored these allegations. In Adv. Proc. 13-00104-NPO, CHFS and Dickson sued Edwards and others, including The Debt Exchange, Inc. ("Debt X"), alleging that Edwards used CHFS's accredited investor status with Debt X to purchase real properties

---

[5] The prior bankruptcy judge denied Dickson's request to extend the automatic stay to him. (Adv. Proc. 12-00091-NPO, Dkt. 92).

offered for sale in Georgia.    CHFS claimed that Edwards agreed to give CHFS fifty percent (50%) interest in the real estate purchased from Debt X.    The allegations in Adv. Proc. No. 13-00104-NPO overlap those in Adv. Proc. No. 12-00109-NPO.    Combined, the Edwards Adversary Proceedings seek a determination of the nature of the business relationship between CHFS and Edwards, which is similar to the relief requested in the Original Lawsuit.

On December 20, 2013, counsel for CHFS filed the Disclosure of Transfer of Funds and Other Matters (the "Disclosure") (Dkt. 426), notifying the prior bankruptcy judge that CHFS had moved its principal place of business from Jackson, Mississippi, to Panama, had transferred funds from the DIP Account to bank accounts located in Panama, and had set up branch offices in Panama and Costa Rica.    In response to the Disclosure, the U.S. Trustee filed the United States Trustee's Emergency Motion for Order for the Appointment of a Chapter 11 Trustee (Dkt. 427). On December 23, 2013, the prior bankruptcy judge entered the Order Granting United States Trustee's Emergency Motion for Order for the Appointment of a Chapter 11 Trustee (Dkt. 429). The U.S. Trustee subsequently filed an application for approval of the appointment of Johnson as Trustee.    (Dkt. 455).    After a hearing, an order (Dkt. 473) was entered on January 21, 2014, appointing Johnson as the Trustee over the objections of CHFS and Dickson. (Dkt. 458). Upon entry of the orders granting the emergency motion for appointment of a chapter 11 trustee and approving the appointment of Johnson as the Trustee, Dickson no longer had any decision-making authority for CHFS.    11 U.S.C. § 704, § 1106.

**JW's Employment**

The Trustee filed an application to employ her own law firm, JW, effective January 8, 2014. (Dkt. 474 & 543); *see* 11 U.S.C. § 327(d).    On March 5, 2014, an Order Granting

Application of Kristina M. Johnson, Trustee, to Employ Jones Walker LLP as Counsel *Nunc Pro Tunc* to January 8, 2014, and Disclosure of Compensation with Supporting Affidavit [Dkt. #474] (Dkt. 558) was entered.   At the time of the Trustee's appointment, CHFS had only approximately $7,500.00 in the DIP Account, no employees, and the task of servicing approximately 4,000 mortgage loans without any current loan records.   The Trustee's immediate goals were: (a) stabilizing the mortgage portfolio consisting of loans made in over thirty (30) states; (b) recovering the funds Dickson removed from the estate and prevent further diversion of funds; and (c) investigating CHFS's financial affairs. (Dkt. 918, 1017, 1188 & 1648).

When the Trustee was appointed, CHFS was essentially no longer an on-going business in the United States.   The Trustee's investigation revealed that sometime in the fall of 2013, Dickson had moved from Jackson, Mississippi, to Costa Rica and had set up a "rogue" operation of CHFS's business there and in Panama.   (Dkt. 918).   Dickson had previously arranged for the shipment of several computer servers, other office equipment, and almost all of CHFS's current loan records to Costa Rica.   According to a former business partner of Dickson, Mike James Meehan, Dickson entered into an agreement with Advanced Communications S.A., a call center in Costa Rica, to provide debt collection services for CHFS beginning in November 2013. (Dkt. 1017, Ex. AA). Dickson fired all of CHFS's employees as of December 31, 2013, although some may have been rehired by affiliates of CHFS, and some insiders may have followed Dickson to Costa Rica.   The Trustee received limited cooperation from Dickson and CHFS's former employees.   Her demands for turnover of the funds from the DIP Account and CHFS's books and records were ignored.

The Trustee learned that as part of the scheme, Dickson changed CHFS's physical mailing address from Jackson, Mississippi, to that of its corporate agent in Las Vegas, Nevada, where

payments from borrowers were received and forwarded to Dickson in Costa Rica. When the Trustee discovered the Nevada address, someone (perhaps a former employee of CHFS) notified borrowers to send their payments to a new address in Miami, Florida, where payments again were being forwarded to Dickson in Costa Rica.

With mostly outdated records obtained from Edwards and information gleaned from CHFS's mail, the Trustee was able to send letters to borrowers instructing them to remit their loan payments to her, to provide her with copies of any loan documents (since the borrowers initially were the Trustee's primary source of information) that they possessed, and to ignore payment instructions from anyone else. In response to these letters from the Trustee, she and JW began to receive emails, telephone calls, faxes, and letters from borrowers, closing agents, attorneys, and regulators regarding the Home Improvement Loans. There were many requests for 1098 mortgage statements and allegations of improper credit reporting. The volume of Home Improvement Loans (about 4,000), the lack of cooperation from Dickson and his former employees, and CHFS's failure to obtain proper licensing to service loans in some states complicated matters. Also, the Trustee learned that to save the expense of recording fees, CHFS did not record original mortgage assignments until a borrower paid off the loan. Further complicating matters, a sizeable number of borrowers had filed consumer bankruptcy cases, requiring the Trustee to file proofs of claim in numerous jurisdictions.

In the Edwards Adversary Proceedings, the Trustee was added as a party in interest, and on March 6, 2014, the prior bankruptcy judge entered orders staying the proceedings pending stabilization of the CHFS estate. (12-00091-NPO, Dkt. 121; 12-00109-NPO, Dkt. 71; 13-00104-NPO, Dkt. 21). Initially, the Trustee decided not to pursue litigation but instead to focus her

efforts on filing a confirmable plan of reorganization that would eliminate the expense of litigating the Edwards Adversary Proceedings.   (Third Fee App. Hr'g Tr. at 62-63).

On March 10, 2014, a criminal complaint was filed against Dickson, alleging that Dickson conspired to wire approximately $9,095,000.00 from the DIP Account to accounts he owned or controlled.   (3:14-cr-00078-TSL-FKB, Dkt. 1 at 4).   Dickson was detained in Panama and deported to the United States while en route to Costa Rica on March 14, 2014.   *See United States v. Dickson*, Case No. 3:14-cr-00078-TSL-FKB (S.D. Miss.   Upon his return to the United States, he was arrested for bank fraud and held without bond.   Following his arrest, the "rogue" operation in Latin America ceased, although loan records and assets remained in Costa Rica and Panama.

On April 11, 2014, the prior bankruptcy judge granted the Trustee interim authority to service the loans, with JW's assistance, until she could retain a professional servicing company (the "Servicer Order") (Dkt. 616).   In late April 2014, the Trustee obtained remote electronic access to three (3) computer servers located in Panama that contained the software program used by CHFS to manage and service some of its mortgage loans.

Edwards became concerned that Dickson, from his jail cell, was attempting to sell properties owned by other Dickson entities (but not CHFS) at an auction.   In District Court, Edwards sued Dickson and numerous Dickson companies, not including CHFS, on June 3, 2014 (the "Edwards TRO Case") (3:14-cv-00436-CWR-LRA).   On June 4, 2014, the Trustee initiated a similar action, Adv. Proc. No. 14-00030-NPO (the "Dickson Adversary Proceeding"), against Dickson, certain related companies, and insiders, seeking to recover prepetition and postpetition transfers under the avoidance powers granted a trustee under § 544.   The Trustee also sought to equitably subordinate Dickson's claims, including his claim for indemnity, and to enjoin the sale

at auction of the properties owned by insiders and/or affiliates of CHFS.

On April 11, 2014, the Trustee filed an application seeking permission to hire a professional mortgage servicing company, Vantium Capital, Inc., now known as ClearSpring Loan Services, Inc. ("ClearSpring") to service the vast majority of the Home Improvement Loans. (Dkt. 618).   Edwards objected to the proposed servicing relationship (Dkt. 630), and a hearing was held on May 30, 2014, after which the prior bankruptcy judge approved the application on June 3, 2014 (Dkt. 702).   The electronic information on CHFS's computer servers along with approximately five hundred (500) physical records and files created from the Trustee's contacts were transferred to ClearSpring, and the servicer went "live" on June 20, 2014.   Initially, about 3,800 loans were "boarded" with ClearSpring, but approximately 160 loans continued to be serviced by the Trustee, based on JW's recommendation, because of inadequate information and other unusual circumstances.   ClearSpring's employment increased stabilization of CHFS's mortgage loan portfolio.   In the spring of 2015, the Trustee located another computer server in Panama with electronic information about an additional 268 loans, which were also boarded with ClearSpring.

In the Guaranty Suit, the District Court entered an order granting partial summary judgment in favor of Edwards on September 10, 2014.   (Guar. Suit, Dkt. 52).   The District Court found that CHFS had defaulted on the loans and held Dickson liable on the personal guaranties he signed. (*Id*. at 4).

On February 9, 2015, the Trustee proposed her first plan of reorganization.   The Disclosure Statement for the Chapter 11 Plan of Liquidation of the Estate of Community Home Financial Services, Inc. Proposed by the Trustee, Kristina M. Johnson Dated as of February 9,

2015 (Dkt. 964) and the Chapter 11 Plan of Liquidation of the Estate of Community Home Financial Services, Inc. Proposed by the Trustee, Kristina M. Johnson Dated as of February 9, 2015 (the "Original Plan") (Dkt. 965) offered to recognize the validity of Edwards' claims and interests in the Home Improvement Loans and the Joint Venture Loan Portfolios by returning all loans to which Edwards claimed an interest and, thus, treating all of their claims as secured.   The Original Plan proposed to pay all administrative expense claims estimated between $1 million and $2 million (Dkt. 964 at 23).   All other claims would be transferred to a liquidating trust.   (Dkt. 964 at 29, Dkt. 965 at 18).

On April 7, 2015, the Trustee initiated in District Court a cause of action against Edwards, Dr. Edwards, James R. Edwards and Martha Borg, seeking, among other relief, the turnover of estate property under 11 U.S.C. § 542(a) and damages under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(c) (the "Turnover Case") (3:15-cv-00260-CWR-LRA).   In support of the RICO count in the complaint, the Trustee alleged that Edwards and the co-defendants "sought to knowingly and fraudulently conceal from the Trustee property belonging to the Estate [of CHFS], such as Costa Rican assets and loans purchased with money from the Estate [of CHFS] in violation of court orders, bankruptcy law, and 18 U.S.C. § 152(1) (concealment of property)."   (Turnover Case, Dkt. 1).   The Trustee also sought in the Turnover Case the equitable subordination of Edwards' claims to the rights of all creditors of CHFS, with the exception of Dickson, pursuant to § 510(c).   (*Id.*).

In early April, 2015, the Trustee filed five (5) motions seeking to withdraw the reference in the entire Bankruptcy Case or, alternatively, certain proceedings and matters and to consolidate them with other pending District Court cases pursuant to FED. R. CIV. P. 42(a) into two (2) new

parallel District Court cases (the "Withdrawal Motions") (12-01703-NPO, Dkt. 1026; 12-00091-NPO, Dkt. 156; 12-00109-NPO, Dkt. 77; 13-00104-NPO, Dkt. 26; 14-0030-NPO, Dkt. 90).   The filing of the Withdrawal Motions initiated five (5) new District Court actions, assigned to District Court Judge Carlton Reeves:   3:15-cv-00312-CWR-LRA; 3:15-cv-00313-CWR-LRA; 3:15-cv-00314-CWR-LRA; 3:15-cv-00315-CWR-LRA; and 3:15-cv-00316-CWR-LRA. Specifically, the Trustee asked the District Court either to withdraw the entire Bankruptcy Case or alternatively to withdraw certain adversary proceedings and contested matters, including:

    a.    Edwards Adversary Proceedings;

    b.    Dickson Adversary Proceeding;

    c.    Cash Collateral Orders & related contested matters;

    d.    Edwards POC 4-1 through 9-1; and

    e.    Dickson's proof of claim ("POC 10") (Claim 10-1).

The Trustee then asked the District Court to consolidate into one federal court action:

    a.    Guaranty Suit;

    b.    Turnover Case;

    c.    Edwards Adversary Proceedings;

    d.    Cash Collateral Orders & related contested matters; and

    e.    Edwards POC 4-1 through 4-9.

The Trustee asked the District Court to consolidate a second federal court action:

    a.    Edwards TRO Case and

    b.    Dickson Adversary Proceeding.

Judge Reeves denied the Withdrawal Motions, writing that "[a]s well-intentioned as the plan is,"

consolidation is not required under the law and is not the most efficient way to move all involved toward a resolution.   (Adv. Proc. 13-00104-NPO, Dkt. 35)

On May 15, 2015, the Trustee filed the First Amended Disclosure Statement for the Chapter 11 Plan of Liquidation of the Estate of Community Home Financial Services, Inc. Proposed by the Trustee, Kristina M. Johnson Dated as of May 15, 2015 (the "Amended Disclosure Statement") (Dkt. 1080) and First Amended Chapter 11 Plan of Liquidation of the Estate of Community Home Financial Services, Inc. Proposed by the Trustee, Kristina m. Johnson Dated as of May 15, 2015 (the "Amended Plan") (Dkt. 1081).   The Amended Plan subordinated Edwards' claims to all creditors except Dickson.   After all administrative claimants and creditors other than Edwards and Dickson are paid, the remaining assets would be given to Edwards.

On August 5, 2015, the parties agreed to dismiss the RICO count in the Turnover Case (Turnover Case, Dkt. 28).   In an agreed order entered on December 10, 2015, the District Court referred the Turnover Case to the prior bankruptcy judge and it became Adv. Proc. 15-00080-NPO.

On September 10, 2015, Dickson pled guilty to two counts of bankruptcy fraud in violation of 18 U.S.C. § 152. *See United States v. Dickson*, No. 3:14-CR-00078-TSL-FSB (S.D. Miss.) (Dkt. 44). Certain property in Costa Rica was the subject of a criminal forfeiture order, and the Trustee was awarded $5,442,004.58 in restitution. (*Id*. Dkt. 83).   Dickson is currently serving a fifty-seven (57)-month sentence in a federal penitentiary.

**Summary of JW's Fee Applications**

As of the date of this Opinion, JW has filed three (3) fee applications, not including an amendment to the Second Fee Application, covering the period from January 2, 2014, through February 29, 2016.   They are: the First Fee Application (Dkt. 783); the Second Fee Application

(Dkt. 1148); the Amended Second Fee Application (Dkt. 1243); and the Third Fee Application (Dkt. 1400) (collectively, the "Fee Applications"). Edwards filed an objection to each one of JW's Fee Applications.   (Dkt. 820, 1178, 1257 & 1417).   The U.S. Trustee filed a response to the First Fee Application.   (Dkt. 996).   No other responses were filed.

A total of fourteen (14) briefs related to the Fee Applications have been filed.   JW filed eight (8) briefs in support of its Fee Applications (Dkt. 849, 916, 973, 995, 1039, 1303, 1336 & 1588), and Edwards filed six (6) briefs in opposition (Dkt. 917, 990, 1046, 1329, 1545 & 1621). Hearings on the Fee Applications were held on December 18, 2014, January 21, 2016, September 22, 2016, December 9, 2016, and February 27, 2017 (the "Fee Hearings").   Transcripts of all but the most recent hearing on February 27, 2017, appear in the record.   (Dkt. 933, 1282, 1498, 1684).

As to the status of the Fee Applications, two (2) interim orders have been entered on the First Fee Application (Dkt. 833 & 1209), and one (1) interim order allowing for immediate payment (Dkt. 1544) has been entered in partial satisfaction of the Amended Second Fee Application and Third Fee Application.   In the First Fee Application, the prior bankruptcy judge awarded JW $572,006.92 pursuant to the Order Granting, in Part and on an Interim Basis, First Application for Compensation for the Period of January 2, 2014 Through July 31, 2014, and Reimbursement of Expenses by the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community Home Financial Services, Inc. [Dkt. #783] (the "Interim First Fee Order") (Dkt. 833), and $734,129.55 (for net interim compensation of $162,122.63) pursuant to the Amended Order on the First Application for Compensation for the Period of January 2, 2014 through July 31, 2014, and Reimbursement of Expenses by the Law Firm of Jones Walker LLP as Counsel to Kristina M. Johnson, Trustee of the Estate of Community

Home Financial Services, Inc. (Dkt. #783) (the "First Fee Order") (Dkt. 1209).   In partial satisfaction of the Amended Second Fee Application and the Third Fee Application, the prior bankruptcy judge awarded JW $628,037.00 pursuant to the Order on the Motion for Order Directing Immediate, Interim Payment of Fees in Second and Third Fee Applications in an Amount Not Less Than Amounts Not Objected to on a Line-Item Basis [Dkt. Nos. 1243 and 1400] (the "Immediate Payment Order") (Dkt. 1543 & 1544).   The Amended Second Fee Application and Third Fee Application remain pending.

All of the aforementioned proceedings occurred before the Bankruptcy Case and all related adversary proceedings were transferred to this Court on February 1, 2017.   (Dkt. 1609).   After a status conference on February 15, 2017, the Court entered an order setting a hearing on the Fee Applications and instructing the parties to file a designation of items in the record that support their respective positions.   (Dkt. 1666).   On February 21, 2017, JW filed the Jones Walker LLP's Designation of Items in the Record Relating to Fee Applications of Jones Walker LLP (Dkt. 1705); and on February 23, 2017, Edwards filed the Edwards Family Partnership, LP and Beher Holdings Trust's Designation of Items to Include in the Record Regarding Jones Walker LLP's Fee Applications (Dkt. 1715).

At the Hearing on February 27, 2017, the Court announced its intention to enter interim orders on the Fee Applications covering the period from January 2, 2014, through February 29, 2016, and to establish procedures for the interim compensation and reimbursement of expenses of JW for the period beginning March 1, 2016. The Court also informed the parties that it intended to revisit all interim orders to the extent necessary to accomplish this goal.   *Cont'l Ill. Nat'l Bank & Trust Co. v. Charles N. Wooten, Ltd. (In re Evangeline Ref. Co.)*, 890 F.2d 1312, 1322 (5th Cir.

1989).   The Court then invited counsel for the parties to present oral arguments summarizing the legal issues raised in the pleadings and the testimony and other evidence presented at prior hearings.   No new testimony or evidence was presented at the Hearing, and the Court instructed the parties <u>not</u> to file any briefs after the Hearing as the record already contained fourteen (14) briefs.   A detailed discussion of the Fee Applications, the objections to same, the briefs, the hearings, and the interim orders follows below:

**First Fee Application**

On August 15, 2014, JW filed the First Fee Application, seeking interim fees of $733,656.50 and interim expenses of $67,203.53 (for a total of $800,860.03) for the period from January 2, 2014, through July 31, 2014.   Attached as "Exhibit A" to the First Fee Application is JW's fee statement, consisting of 703 pages (Dkt. 783-1 & 783-2). The Trustee, a partner at JW, did not charge any of her attorney time in the First Fee Application.   JW represented that the expenses in the First Fee Application included expenses of both JW and the Trustee, and the Trustee will not seek expenses incurred during this time period in her trustee fee application.

Edwards filed the First Fee App Objection on October 3, 2014, disputing the time entries for trustee-related work performed by legal billing professionals charging law firm hourly rates (but not identifying those time entries); all time entries for law clerks ($6,072.00); hourly billing rates higher than $340.00 for lawyers except David A. Restrepo ("Restrepo"), an attorney in JW's Washington DC office, and above $155.00 for paralegals; overtime pay to non-lawyer billing professionals ($3,992.75); computer-assisted legal research ("CALR") charges of $9,512.33; and long distance charges of $3,000.00 to the extent they exceeded charges actually incurred.

### a.    Interim First Fee Order

On October 10, 2014, the prior bankruptcy judge entered the Interim First Fee Order, authorizing payment of the following amounts on an interim basis:

> A.      $513,559.55, representing seventy percent (70%) of fees requested (70% × $733,656.50 = $513,559.55); and
>
> B.      $58,447.37, representing expenses of $67,203.53 less $4,000.00 in expenses attributed to employee overtime and $4,756.16 attributed to fifty percent (50%) of computer-assisted legal research charges, which JW waived.

(Dkt. 833 at 2).   The Interim First Fee Order did not resolve the issues raised by Edwards and reserved all rights, defenses, and claims of the parties.   (*Id.*).   Moreover, the process of allowing payment of seventy percent (70%) of the interim fees requested by JW was not followed as to later fee applications.

### b.    First Fee Hearing

A hearing was held on the First Fee Application on December 18, 2014, on the remainder of $220,096.95 (the "First Fee Hearing").   Before the First Fee Hearing, JW filed the JW Brief-First Fee App on October 27, 2014, and the JW Hearing Brief-First Fee App on December 15, 2014. Two (2) days before the First Fee Hearing, Edwards filed the Edwards Hearing Brief-First Fee App on December 16, 2014, to which it attached a summary chart that identified the time entries to which Edwards objected (the "Summary Chart-First Fee App") (Dkt. 917-1).   The issues that remained for resolution at the First Fee Hearing were: (1) whether JW sought compensation for work that fell under the Trustee's statutory compensation under § 326; (2) lawyers' hourly billing rates above $340.00, excluding Restrepo; (3) paralegals' hourly billing rates above $155.00; (4) fees for law clerks of $6,072.00; and (5) certain expenses.   Two witnesses testified at the First

Fee Hearing, the Trustee and Barber, lead counsel for the Trustee.   No witnesses testified on behalf of Edwards.

After the First Fee Hearing, JW and Edwards filed the following briefs:   the JW Post-Hearing Brief-First Fee App on February 13, 2015; the Edwards Post-Hearing Brief-First Fee App on March 2, 2015; and the JW Post-Hearing Reply Brief-First Fee App on March 13, 2015.   The U.S. Trustee filed the U.S. Trustee's Response to First Fee App on March 13, 2015.   To address and respond to the Fifth Circuit's decision in *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 271-72 (5th Cir. 2015), rendered on April 9, 2015, JW filed the JW Supplemental Post-Hearing Brief-First Fee App on April 15, 2015; and the Edwards Supplemental Post-Hearing Brief-First Fee App on April 20, 2015.

### c.    First Fee Order

On October 27, 2015, the Memorandum Opinion (Dkt. 1206) and First Fee Order (collectively, the "First Fee Order") were entered on the First Fee Application. The prior bankruptcy judge awarded JW interim compensation of $734,129.55, consisting of interim fees of $678,526.00 and interim expenses of $55,603.55.   The award reflected reductions in fees of $55,130.50 and expenses of $11,599.98, from the original amounts requested in the First Fee Application.

The reduction in fees of $55,130.50 was the result of caps the prior bankruptcy judge placed on hourly billing rates and the disallowance of "block billing" charges.   The prior bankruptcy judge capped billing rates for professionals at $350.00 an hour (resulting in a total reduction of $330.00) and for non-professionals at $125.00 an hour (resulting in a total reduction of $48,728.50).   The prior bankruptcy judge disallowed $6,072.00 in fees because the charges listed

were for one block billing entry, "LAW CLERKS, NO" who billed 36.80 hours at an hourly rate of $165.00 for fees totaling $6,072.00 with only a vague, general description as to what duties the law clerks performed or even the number of law clerks who performed the work.

The First Fee Order found that the First Fee Application contained many time entries billed by professionals and non-professionals of JW for performing the statutory duties of the Trustee. It further found, however, that because of the exceptional or unique circumstances existing at the time the Trustee was appointed—where she was faced with operating a business with no employees, only about $7,500.00 in cash, and ongoing criminal activity by the designated representative of CHFS, the prior bankruptcy judge would allow JW to be compensated for assisting the Trustee with carrying out her statutory duties.   The prior bankruptcy judge also held that he was not finding that these exceptional or unique circumstances would remain in effect for the duration of the Trustee's tenure.   Consequently, the prior bankruptcy judge allowed JW to be compensated for these non-legal time entries under § 330.   When JW and the Trustee filed final fee applications, he would address Edwards' position that the estate was paying double compensation.   (Dkt. 1465 at 7-8).

The reduction in expenses of $11,599.98 was for the disallowance of overtime, long-distance charges, and one-half of the CALR charges.   The prior bankruptcy judge informed the parties that in the future, it would adopt the three-part test expressed in *In re Fibermark, Inc.,* 349 B.R. 385, 399 (Bankr. D. Vt. 2006), in determining whether to reimburse JW for its CALR charges.

**Second Fee Application**

JW filed the Second Fee Application on August 26, 2015, seeking interim fees of $938,397.50 and interim expenses of $67,943.88 (for a total of $1,006,341.38) for the period of

August 1, 2014, through June 30, 2015.   Attached as "Exhibit A" to the Second Fee Application is JW's fee statement, consisting of 684 pages. (Dkt. 1148-1, 1148-2, 1148-3). These amounts reflected reductions of $93,947.00 in fees and $436.62 in expenses based on the U.S. Supreme Court's decision in *Baker Botts, L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158 (2015), rendered on June 15, 2015, which held that fees and expenses incurred in defending a fee application are not compensable by a bankruptcy estate.   According to the Second Fee Application, these amounts also reflected voluntary reductions of $83,993.60 in fees and expenses.   On September 25, 2015, Edwards filed the Second Fee App Objection. The Second Fee Application and the Second Fee App Objection were filed before entry of the First Fee Order.

### a.    Amended Second Fee Application

In response to certain rulings in the First Fee Order, JW made adjustments to the amount of fees sought in the Second Fee Application through the Amended Second Fee Application filed on December 18, 2015.   In the Amended Second Fee Application, JW seeks interim fees of $895,274.00 and interim expenses of $67,943.88 (for a revised total of $963,217.88) for the period of August 1, 2014, through June 30, 2015. Attached as "Exhibit A" to the Amended Second Fee Application is JW's fee statement, consisting of 774 pages ("Fee Statement-Amended Second Fee App") (Dkt. 1243-1). These amounts reflected reductions in the billing rates for attorneys other than Restrepo, who charged more than $350.00 per hour, and for paralegals who charged more than $125.00 per hour. Edwards filed the Amended Second Fee App Objection on January 8, 2016. Their objections to the Amended Second Fee Application can be divided into two (2) categories: (1) JW was performing Trustee work; and (2) the Trustee's pursuit of the Edwards Adversary Proceeding, the Withdrawal Motions, and the Turnover Case was not beneficial to the estate.

### b.      Second Fee Hearing

A hearing was held on the Amended Second Fee Application on January 21, 2016 (the "Second Fee Hearing").   At issue at the Second Fee Hearing was $244,000.50 in time entries that Edwards alleged were dual compensation or "double-dipping," that is, where JW was seeking compensation for work that fell under the provisions of § 326 providing for a chapter 11 trustee's compensation.   Edwards further objected to $279,680.50 in time entries that it asserted were for services that did not benefit the estate.

At the Second Fee Hearing, JW voluntarily agreed to reduce its fees by $87.50 to account for a typographical error and to reduce its expenses by $31,177.82, consisting of $29,952.81 in CALR charges and $1,225.01 in long-distance telephone charges.   (Second Fee Hr'g Tr. at 22). Barber was the only witness who testified.   After the Second Fee Hearing, the following briefs were filed by JW and Edwards:   the JW Post-Hearing Brief-Amended Second Fee App on February 29, 2016, the Edwards Post-Hearing Brief-Amended Second Fee App on April 4, 2016, and the JW Supplemental Post-Hearing Brief-Amended Second Fee App on April 18, 2016.   With the reductions set forth in the Amended Second Fee Application and announced at the Second Fee Hearing, JW seeks $895,186.50 in fees and $36,766.06 in expenses (for a revised total of $931,952.56) (JW Post-Hearing Br.–Am. Second Fee App at 506 & n.5).

**Third Fee Application & Third Fee Hearing**

On July 8, 2016, JW filed the Third Fee Application, seeking interim fees of $557,647.00 and interim expenses of $12,580.88 (for a total of $570,227.88) for the period of July 1, 2015, through February 29, 2016.   Attached as "Exhibit A" to the Third Fee Application is JW's fee statement consisting of 357 pages (the "Fee Statement-Third Fee App") (Dkt. 1400-1).   This

amount reflects capped attorneys' fees at $350.00 per hour and non-attorney rates at $125.00 per hour and $35,000.00 in fees and reductions in expenses for long-distance and CALR charges. This amount also reflects reductions of approximately $65,000.00 for fees associated with JW's defense of the Amended Second Fee Application pursuant to *ASARCO*.[6]   JW did not remove any fees associated with its defense of the Trustee's fee application.   On August 3, 2016, Edwards filed the Third Fee App Objection.

A hearing was held on the Third Fee Application on September 22, 2016 (the "Third Fee Hearing").   At the Third Fee Hearing, JW voluntarily agreed to reduce its paralegal fees by $6,058.00 (Dkt. 1588 at 3; Third Fee Hr'g Tr. at 4, 8, 20) based on concerns raised informally by the office of the U.S. Trustee that time expended by a paralegal for downloading and filing pleadings electronically constituted non-compensable overhead.   JW further agreed to reduce its expenses by $1,797.20, representing copying costs and charges for Public Access to Court Electronic Records ("PACER").   (Third Fee Hr'g Tr. at 9).   At the Third Fee Hearing, Edwards objected to:   (1) $42,075.00 in time entries that were dual compensation or "double-dipping"; (2) $205,568.50 in time entries related to the Edwards Adversary Proceedings and the Turnover Case; (3) $23,885.00 in time entries that were incurred for JW's defense of the Fee Applications and the Trustee's fee application; and (4) $24,825.00 in reimbursement for expenses for PACER charges and copying costs.   Of the requested $557,647.00, Edwards objected to time entries totaling $296,353.50.   Barber was the only witness who testified.   During the Third Fee Hearing, Edwards objected to time entries totaling $600.00 of "Practice Support Analysts" for work

---

[6] In the Fee Statement-Third Fee App, the fees that JW related to these defense costs are shown as "$0."

performed by JW's information technology department and to the time entries of Edward J. Ashton ("Ashton") for research regarding *Bank of America, N.A. v. Caulkett*, 135 S. Ct. 1995 (2015), as being excessive.   (Dkt. 1545 at 7).   The following briefs were filed after the hearing on the Third Fee Application:   the Edwards Post-Hearing Brief-Third Fee App on December 16, 2016, the JW Post-Hearing Brief-Third Fee App on January 20, 2017, and the Edwards Post-Hearing Reply Brief-Third Fee App on February 3, 2017.   With the reductions announced at the Third Fee Hearing, JW seeks $551,589.00 in interim fees and $10,783.68 in interim expenses.   (Third Fee Hr'g Tr. at 4 & 9).

**Immediate Payment Order**

On November 22, 2016, JW filed the Motion for Order Directing Immediate, Interim Payment of Fees in Second and Third Fee Applications in an Amount Not Less Than Amounts Not Objected to on a Line-Item Basis [Dkt. Nos. 1243 and 1400] (Dkt. 1527).   Edwards filed the Edwards Family Partnership, LP and Beher Holdings Trust's Response and Objection to Motion for Order Directing Immediate, Interim Payment of Fees in Second and Third Fee Applications in an Amount Not Less Than Amounts Not Objected to on a Line-Item Basis (Dkt. #1527) (Dkt. 1533).

The Immediate Payment Order granting JW interim compensation of $628,037.00 and authorizing the Trustee to pay these funds immediately was entered on December 16, 2016.   This amount represented compensation for which there was no objection by Edwards in the Amended Second Fee Application of $331,680.50 and the Third Fee Application of $296,356.50.   The prior bankruptcy judge found that "*at this point in time*, $2,364,871.49 the Trustee recovered from the Panamanian bank account and the two bank checks is unencumbered."   (Immediate Payment

Order at 14) (emphasis in original).   The prior bankruptcy judge thus allowed the Trustee to immediately pay JW, on an interim basis, $628,037.00.[7]   (*Id*. at 17).   Edwards filed the Edwards Family Partnership, LP and Beher Holdings Trust's Motion to Reconsider Order Granting Motion for Order Directing Immediate, Interim Payment of Fees in Second and Third Fee Applications in an Amount Not Less than the Amounts Not Objected to on a Line-Item Basis (Dkt. #1543) (Dkt. #1544) (the "Motion to Reconsider") (Dkt. 1555) on December 30, 2016.   In the Motion to Reconsider, Edwards argued, *inter alia*, that the payment of compensation to JW constituted an improper surcharge on its collateral in violation of § 506 in the absence of evidence that the firm's actions benefited Edwards. On January 18, 2017, the prior bankruptcy judge denied the Motion to Reconsider, finding that Edwards could have made the same arguments before entry of the Immediate Payment Order and otherwise finding no manifest error of law or fact. (Dkt. 1585). As to the Third Fee Application, the amount JW seeks are fees and expenses of $562,372.68 minus $296,356.50 awarded in the Immediate Payment Order for a total of $266,016.18.

### Discussion

These are *interim* Fee Applications pursuant to § 331.   "Any amounts that were awarded as interim compensation are subject to reconsideration at any time prior to the final award, for any reason."   3 COLLIER ON BANKRUPTCY ¶ 331.04[3] (16th ed. 2016).   "Interim fee awards are not final determinations intended to put a matter to rest.   Rather, they are interlocutory and reviewable, and are intended only to provide some interim relief from the economic hardships of

---

[7] In the Immediate Payment Order, the prior bankruptcy judge noted that Edwards did not object to a total of $632,886.50 in fees but JW requested immediate payment of only $628,037.00. (Immediate Payment Order at 5 note 10).   The prior bankruptcy judge awarded the amount requested by JW.

subsidizing litigation." *In re Evangeline Refining Co.,* 890 F.2d at 1322.

As the movant, JW bears the burden of "establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.,* No. 1:06-cv-00433, 2014 WL 691500, at *9 (S.D. Miss. Feb. 21, 2014). For each objection, however, Edwards bears the burden of providing as much detailed information as the fee or expense request itself. *See In re Inv'rs Lending Grp*., No. 11-41963, 2013 WL 3380995, at *4 (Bankr. S.D. Ga. 2013).

**A.     Interim Fees**

**1.          Evidentiary Objections**

Numerous exhibits were introduced into evidence at the Fee Hearings over JW's objections that they were an unfair surprise. *See Jimenez v. The Tuna Vessel "Granada*," 652 F.2d 415, 420 (5th Cir. Unit A 1981) ("[E]ach party is entitled to know what is being tried, or at least the means to find out. Notice remains a first-reader element of procedural due process and trial by ambush is no more favored here than elsewhere."); *In re CHC Indus., Inc.*, No. 8:03-bk-20775, 2006 WL 4968122 (Bankr. M.D. Fla. Sept. 5, 2006); *In re Snelson,* 305 B.R. 255, 264 (Bankr. N.D. Tex. 2003) (by raising for the first time in the debtor's closing argument that the lease in question contained an invalid penalty clause, the debtor failed to give fair notice to the creditor that he would be pleading that affirmative defense). The prior bankruptcy judge overruled JW's objections in large part because JW was granted an opportunity to respond to the exhibits in question in the form of post-hearing briefs. This Court will not reverse those rulings at this juncture but rejects Edwards' contention that it need not inform JW of its specific objections to time entries in the fee statements until the day before or the morning of a fee hearing. (Dkt. 1621

at 2). Although JW bears the burden to establish its right to compensation, it must have a fair opportunity to defend any and all objections to specific time entries in its fee statements. In this Amended Order, the Court has adopted procedures that: (a) will require detailed objections to specific time entries, at the time the written objection is filed and (b) will prevent the introduction into evidence of any exhibits not exchanged among the parties at least two (2) weeks before the hearing on any fee application.

### a.    Summaries

At the Fee Hearings, Edwards introduced into evidence summaries of time entries and of the claims register in the Bankruptcy Case, among other matters. For example, the Summary Chart-First Fee App was admitted into evidence at the First Fee Hearing over JW's objection. (First Fee Hr'g Tr. at 102). JW objected on the ground that the Summary Chart-First Fee App, consisting of 800 time entries, mischaracterized the work performed by JW and, therefore, violated FED. R. EVID. 1006. (*Id.*). The prior bankruptcy judge overruled JW's objection, holding that the Summary Chart-First Fee App was helpful because it showed the time entries to which Edwards specifically objected, but the prior bankruptcy judge further stated that he did not consider itself bound by the generalized descriptions of the work performed in the Summary Chart-First Fee App. At this stage, the Court will not sustain JW's objection and strike the Summary Chart-First Fee App or the other summaries introduced by Edwards into evidence at the Fee Hearings. At future hearings, however, the Court will not allow the introduction of summaries that do not comply with FED. R. EVID. 1006. *See United States v. Smyth*, 556 F.2d 1179, 1183 (5th Cir. 1977). Also, any such summary must be exchanged among the parties at least two (2) weeks before the hearing on any fee application.

### b.    Color-Coded Exhibits

At the hearings on the Amended Second Fee Application and the Third Fee Application, JW objected to the admission into evidence of highlighted versions of the fee portions of the Fee Statement-Amended Second Fee App (the "Color Coded Ex.-Second Fee Hr'g") and Fee Statement-Third Fee App (the "Color-Coded Ex.-Third Fee Hr'g" or together, the "Color-Coded Exhibits").   Unlike the Summary Chart-First Fee App challenged at the First Fee Hearing, which summarized the time entries with descriptive commentary, the Color-Coded Exhibits were JW's actual fee statements highlighted by Edwards in different colors to show which time entries they objected to and the nature of their objections.   In the Color-Coded Ex.-Second Fee Hr'g, yellow was for Trustee's work and orange was for work not reasonably calculated to benefit the estate. In all, Edwards highlighted 2,073 time entries in Color-Coded Ex.-Second Fee Hr'g.   In the Color-Coded Ex.-Third Fee Hr'g, yellow was for Trustee's work; blue was for work not reasonably calculated to benefit the estate; orange was for work defending fee applications; and green was for overhead.

The Color-Coded Exhibits were admitted into evidence during counsel for Edwards' cross-examination of Barber.   No witnesses testified at any of the Fee Hearings on behalf of Edwards. Instead, it appears that counsel for Edwards highlighted JW's fee statements and offered them into evidence without any testimony.   At this juncture, the Court will not strike the Color-Coded Exhibits from the record but will require the parties to provide a proper foundation for the admission of any such evidence at future fee hearings.   Moreover, the prior admission of the Color-Coded Exhibits in these matters does not mean they will automatically be admitted into evidence on behalf of Edwards in connection with any objections to JW's final fee application.

2.        **Hourly Billing Rates**

Edwards objected to billing rates more than $340.00 per hour for attorneys, excluding Restrepo, a Washington D.C. lawyer, and more than $155.00 per hour for paralegals.   In the First Fee Order, the prior bankruptcy judge capped billing rates for attorneys at $350.00 per hour and paralegals at $125.00 per hour.   Bankruptcy courts use the lodestar method described by the U.S. Supreme Court in *Perdue v. Kenny ex rel. Winn*, 559 U.S. 542 (2010), for determining the reasonableness of attorneys' fees.   The lodestar amount is determined by multiplying the prevailing market rate in the relevant community by the number of hours an attorney would reasonably expend handling the matter.   *In re Huffman*, No. 12-00099-NPO, 2014 WL 1767694, at *3 (Bankr. S.D. Miss. May 2, 2014).   Absent adjustment based on application of the twelve *Johnson* factors,[8] the lodestar amount is presumed to represent a reasonable fee.   *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).

It is well settled that "reasonable" hourly rates "are to be calculated according to the prevailing market rate in the relevant community . . . ."   *Blum v. Stenson*, 465 U.S. 886, 875 (1984).   The Fifth Circuit has interpreted "relevant community" to mean that courts must consider the customary fee for similar work "in the community."   *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011).   The Fifth Circuit has also recognized that under certain circumstances, "out-of-district counsel may be entitled to the rates they charge in their home districts."   *Id.* at 381-82.   In determining the reasonableness of hourly rates, a court relies on evidence submitted by the applicant as to the rates it customarily charges and the court's own knowledge of comparable

---

[8] *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974).

rates charged by lawyers.   *Id*. at 381 (citing *Blum*, 465 U.S. at 895).

JW is a regional law firm, with attorneys in ten (10) states, including Mississippi where both the Trustee and Barber are located.   JW asserts that its rates in the Fee Applications are lower than its standard rates, ranging from $210.00 per hour to $500.00 per hour, with the exception of Restrepo whose rate is $750.00 per hour.   Edwards does not dispute Restrepo's rate, and the Court finds it to be reasonable based on his specialized knowledge and experience of Latin American law.   (First Fee App. at 11-12).   In the Fee Applications, there are only three (3) attorneys, excluding Restrepo, whose billing rates exceed $440.00 per hour, and they expended only 13.1 hours combined.

As to the market rate in this district, courts have approved hourly billing rates up to $400.00.   *See Rigsby*, 2014 WL 691500, at *14.   Moreover, this Court has approved a billing rate of $450.00 per hour in *In re Natchez Reg'l Med. Ctr.*, No. 14-01048-NPO, Dkt. 349 (Bankr. S.D. Miss. July 22, 2014).   A billing rate of $440.00 per hour was approved in *In re Simply Wheelz LLC*, No. 13-03332-EE, Dkt. 632 (Bankr. S.D. Aug. 7, 2014).

The Court finds that the hourly billing rates for attorneys in the Fee Applications are reasonable under the market rate standard articulated by the U.S. Supreme Court and the Fifth Circuit.   Although the First Fee Order disallowed out-of-town attorney rates in the Bankruptcy Case (with the exception of Restrepo's rate), this Court finds that the complexity of the Bankruptcy Case—including the purchasing and servicing of approximately 4,000 loans in more than thirty (30) states valued in the schedules at $42,534,267.00 (Dkt. 94 at 4), criminal activity of the former chief executive officer, the transfer and concealment of estate assets in Panamanian banks, and the involvement of international law—warrants higher attorney rates than customarily charged in this

district.   See *In re Condere Corp.*, 251 B.R. 693 (Bankr. S.D. Miss. 2000); *In re Wash. Furn. Mfg. Co.*, 283 B.R. 201 (Bankr. N.D. Miss. 2002).   Adjusting only for the hourly billing rates previously capped at $350.00,[9] the Court finds that JW is entitled to the following attorneys' fees in addition to those already awarded in the First Fee Order:

| First Fee Application | |
| --- | --- |
| Edward J. Ashton | $20.50 |
| John F. Fletcher | $67.50 |
| Elizabeth J. Futrell | $71.50 |
| Louis S. Nunes | $32.50 |
| Rudolph R. Ramelli | $108.00 |
| R. Patrick Vance | $30.00 |
| TOTAL | $330.00 |

After the First Fee Order, JW reduced its attorneys' fees to account for the reduction in the hourly billing rates for its attorneys.   Adding these amounts back into the Amended Second Fee Application and the Third Fee Application results in the following additional attorneys' fees:

| Amended Second Fee Application | |
| --- | --- |
| Edward J. Ashton | $2,245.50 |
| C. Ellis Brazeal | $328.00 |
| R. Patrick Vance | $520.00 |
| TOTAL | $3,093.50 |

---

[9] JW billed travel time at full hourly rates, to which Edwards did not object.   In future fee applications, including the final fee application, the Court may reduce by fifty percent (50%) the full hourly rate for non-working travel time.   *Caplin & Drysdale Chartered v. Babcock & Wilcox Co. (In re Babcock & Wilcox Co.)*, 526 F.3d 824, 828 (5th Cir. 2008).

| Third Fee Application | |
|---|---|
| Edward J. Ashton | $4,150.00 |
| Robert Bieck, Jr. | $30.00 |
| John Fletcher | $1,141.00 |
| Gina Jacobs | $1,050.00 |
| R. Patrick Vance | $752.50 |
| TOTAL | $7,123.50 |

The same factors that support a higher billing rate for attorneys justifies a higher billing rate for paralegals. Although the First Fee Order capped the billing rate of paralegals at $125.00 per hour, the Court finds that the hourly billing rate of $155.00 is reasonable. Using the chart in the First Fee Order, the Court applies the following adjustments:

| First Fee Application | | | | | | |
|---|---|---|---|---|---|---|
| Initials | Hours Billed | Hourly Rate Billed | Total Billed | Total Billed at Hourly Rate of $125.00 | Total Billed at Hourly Rate of $155.00 | Additional Fees |
| MG | 6.30 | $155.00 | $976.50 | $787.50 | $976.50 | $189.00 |
| PSA | 5.40 | $165.00 | $891.00 | $675.00 | $837.00 | $162.00 |
| TK | 381.80 | $195.00 | $74,451.00 | $47,725.00 | $59,179.00 | $11,454.00 |
| CH | 94.30 | $185.00 | $17,445.50 | $11,787.50 | $14,616.50 | $2,829.00 |
| BKP | 48.70 | $200.00 | $9,740.00 | $6,087.50 | $7,548.50 | $1,461.00 |
| GMT | .40 | $160.00 | $64.00 | $50.00 | $62.00 | $12.00 |
| LSJ | .30 | $175.00 | $52.50 | $37.50 | $46.50 | $9.00 |
| KB | 408.60 | $155.00 | $63,333.00 | $51,075.00 | $63,333.00 | $12,258.00 |
| TOTAL | | | $166,953.50 | $118,225.00 | $146,599.00 | $28,374.00 |

The Court makes similar adjustments to the Amended Second Fee Application and the Third Fee Application, as follows:

| Amended Second Fee Application | | | | | |
|---|---|---|---|---|---|
| Paralegal | Hours Billed | Hourly Rate Billed | Total Billed | Total Billed at Hourly Rate of $155.00 | Additional Fees |
| Kilby M. Brabston | 613.30 | $155.00 | $74,375.00 | $95,061.50 | $20,686.50 |
| Cindy Hutson | .60 | $185.00 | $37.50 | $93.00 | $55.50 |
| Theresa Keys | 24.20 | $195.00 | $2,625.00 | $3,751.00 | $1,126.00 |
| B. Karan Payne | 242.60 | $200.00 | $29,950.00 | $37,603.00 | $7,653.00 |
| Ryan P. Smith | 1.00 | $170.00 | $125.00 | $155.00 | $30.00 |
| TOTAL | | | $107,112.50 | $136,663.50 | $29,551.00 |

| Third Fee Application | | | | | |
|---|---|---|---|---|---|
| Paralegal | Hours Billed | Hourly Rate Billed | Total Billed | Total Billed at Hourly Rate of $155.00 | Additional Fees |
| Rhonda Betbeze | .30 | $230.00 | $37.50 | $46.50 | $9.00 |
| Kilby M. Brabston | 428.40 | $155.00 | $50,275.00 | $66,402.00 | $16,127.00 |
| Michelle Green | .80 | $155.00 | $50.00 | $124.00 | $74.00 |
| B. Karan Payne | 20.7 | $210.00 | $2,512.50 | $3,208.50 | $696.00 |
| Jonathan L. Pick | 19.00 | $135.00 | $2,375.00 | $2,945.00 | $570.00 |
| TOTAL | | | $55,250.00 | $72,726.00 | $17,476.00 |

### 3.    Benefit to Estate

Edwards objects to categories of work performed by JW as not benefitting the estate. In the Fifth Circuit, the seminal case on the issue of whether professional fees should be considered necessary or beneficial to the administration of the estate is *In re Woerner*, 783 F.3d at 276.   The *Woerner* Court reviewed the text of § 330 and its legislative history, and joined the majority of other Circuits in adopting a prospective test that looks to the necessity or reasonableness of the professional services *at the time they were rendered* for determining whether services are compensable.   *Id.* at 274-77.   The *Woerner* Court overruled *Andrews & Kurth, L.L.P. v. Family*

*Snacks, Inc. (In re Pro-Snax Distribs., Inc.)*, 157 F.3d 414, 426 (5th Cir. 1998), to the extent it required compensable professional services to actually result in an "identifiable, tangible, and material benefit to the bankruptcy estate." *Woerner*, 783 F.3d at 277.   The Fifth Circuit in *Woerner* listed factors that bankruptcy courts "ordinarily consider" when determining whether professional services were necessary or beneficial at the time they were rendered:   "the probability of success at the time the services were rendered, the reasonable costs of pursuing the action, what services a reasonable lawyer or legal firm would have performed in the same circumstances, . . . and any potential benefits to the estate (rather than to the individual debtor)."   *Id.* at 276.

### a.      Withdrawal Motions

The Trustee filed five (5) motions asking the District Court to withdraw the reference to the bankruptcy court of the whole Bankruptcy Case, including all related adversary proceedings, under 28 U.S.C. § 157(d) or, at a minimum, withdraw all contested matters and adversary proceedings involving Edwards.   The Trustee then asked that upon withdrawal of the reference, the District Court consolidate some matters with the Turnover Case and others with the Edwards TRO Case, creating parallel District Court cases with Edwards in one, and Dickson in the other. Edwards described the Trustee's litigation strategy as "convoluted."   (Dkt. 1052 at 5).

Under 28 U.S.C. § 1334(a), the "district courts shall have original and exclusive jurisdiction of all cases under title 11."   Cases filed under title 11 are automatically referred to Bankruptcy Court in this district under 28 U.S.C. § 157(a). *See* MISS. L. U. CIV. R. 83.6.     Under 28 U.S.C. § 157(d), "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section on its own motion or on timely motion of any party, for cause shown. The district court shall on timely motion of a party, so withdraw a proceeding if the court

determines that resolution of the proceeding requires consideration of both title 11 and other law of the United States regulating organizations or activities affecting interstate commerce."

The withdrawal of the reference to a bankruptcy court of an entire bankruptcy case is rare but not unprecedented.   *See Ackles v. A.H. Robins Co. (In re A.H. Robins Co.,)*, 59 B.R. 99, 105 (Bankr. E.D. Va. 1986).   In support of the withdrawals, the Trustee argued that the facts of the Bankruptcy Case were "uniquely complicated" and that they involved "international, federal and state laws which are outside the scope of matters normally considered by the Bankruptcy Court." (13-00104-NPO, Dkt. 27). For the Trustee's strategy to succeed, she not only had to persuade the District Court that the Bankruptcy Case was an exception to the District Court's local reference rule, but also that the consolidation of an assortment of adversary proceedings, contested matters, and pending District Court cases (including the Edwards TRO Case in which the Trustee was not a named party) would promote judicial efficiency.

The District Court disagreed with the Trustee's strategy and in a five-page order denied the Withdrawal Motions, in large part because the requests for withdrawal were untimely.   (13-00104-NPO, Dkt. 35).   That the Trustee was ultimately unsuccessful in seeking to have the reference withdrawn does not necessarily mean that the legal services provided by JW were unnecessary or unreasonable at the time they were rendered.   In defense of its fees, JW refers to Judge Reeves's description of the Trustee's plan as "well-intentioned," but a subjective motive is not a relevant factor under *Woerner*.   (13-00104-NPO, Dkt. 35 at 3).   Rather, the relevant factors under *Woerner* require the Court to consider the probability of success and the reasonable costs of pursuing the action.   In balancing these factors, the Court finds that the probability of success at the time the Trustee filed the Withdrawal Motions was such that the amount of fees incurred in the

Amended Second Fee Application of $60,781.00[10] are unreasonable. The Court finds that half of these fees ($30,390.50) should be disallowed. By reducing JW's fees, the Court does not intend to curtail zealous advocacy, but to encourage the application of cost/benefit analysis to that strategy consistent with *Woerner*.

### b.   Edwards Adversary Proceedings

In support of their contention that JW should not be compensated for work performed in connection with the Edwards Adversary Proceedings, Edwards argues that more money has been spent in attorney's fees suing Edwards than the amount of non-Edwards unsecured claims for whom the litigation is presumably designed to benefit.[11]   (Dkt. 1545 at 5 n.3).   At the Third Fee Hearing, Edwards argued that the amount of scheduled, unliquidated, undisputed non-contingent claims for which no proof of claim was filed ($149,784.56) and the amount of non-Edwards proofs of claim totaled slightly over $200,000.00. Given this cost/benefit analysis, Edwards insists that the Trustee should have voluntarily dismissed the Edwards Adversary Proceedings.

Edwards' objections focused mainly on the time entries related to Adv. Proc. 12-00091-NPO, which purportedly totaled fees of $179,000.00 in the Third Fee Application.   (Edwards Ex. 2-Third Fee Hr'g).   Edwards' argument rests upon their ultimately succeeding in establishing its secured status as to the Home Improvement Loans.   In that regard, Edwards relies heavily on

---

[10] *See* Charts attached to this end of this Amended Order.

[11] In addition to numerous other arguments, Edwards presented this same argument in separate appeals to the District Court of the fees awarded Derek A. Henderson and Wells Marble & Hurst, PLLC, who acted as counsel for CHFS prior to the appointment of the Trustee.   *See Edwards Family P'ship, LP v. Wells Marble & Hurst, PLLC (In re Cmty. Home Fin. Servs., Inc.*, Case No. 3:16-cv-0085-CWR-LRA (S.D. Miss.); *Edwards Family P'ship, LP v. Henderson (In re Cmty. Home Fin. Servs., Inc.)*, Case No. 3:15-cv-00915-CWR-LRA (S.D. Miss.)

Dickson's testimony in the Guaranty Suit regarding the validity of the documents challenged by the Trustee.   (Dkt. 1329 at 12-13).   The Court places little weight on the testimony of a convicted felon.   At this point, Adv. Proc. 12-00091-NPO is set for trial beginning on August 21, 2017, and the Court finds Edwards' arguments presumptuous, given their admission that "[t]he secured status of [Edwards'] claims is the most significant issue in this bankruptcy."   (Dkt. 1329 at 12).   The Court finds that Edwards' objections to these time entries are not well taken.

### c.     Turnover Case

Edwards asserts that the Turnover Case did not benefit the estate. The allegations in the Turnover Case apparently stem from a trip Dr. Edwards took to Costa Rica in December 2014, to investigate and locate assets that Dickson "smuggled" out of the country.   On August 5, 2015, an Agreed Order Dismissing Count 1 of Complaint (Turnover Case, Dkt. 28) was entered in the Turnover Case.   This dismissal did not end the litigation, but only the Trustee's RICO allegations. Later, the Turnover Case was referred to the prior bankruptcy judge by agreement of the parties and it became Adv. Proc. 15-00080-NPO.   In the Order (15-cv-00260-CWR-LRA, Dkt. 30) that led to the referral, Judge Reeves noted that Edwards "presented several strong arguments for dismissal" and that the Trustee's allegations as to the individual defendants to be "thin."   In light of Judge Reeves' findings, the Court holds that the RICO allegations were not necessary to the administration of the estate.   *See In re Waterways Barge P'ship*, 104 B.R. 776, 786-87 (Bankr. N.D. Miss. 1989).   Accordingly, the time entries for services related solely to the RICO count in the amount of $33,448.50 in the Amended Second Fee Application and $2,468.00 in the Third Fee

Application are non-compensable.[12]

### d.    Defending Fee Applications

The U.S. Supreme Court in *ASARCO*, 135 S. Ct. at 2164, affirmed the Fifth Circuit's denial of fees to the debtor's law firm for defending its fee application. "Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Id.* (quotation omitted). JW purportedly removed all time entries for work defending its own Fee Applications but declined to remove any time entries for work defending the fee applications of other professionals in the Bankruptcy Case. JW does not cite any legal authority supporting its narrow interpretation of *ASARCO* and faults Edwards for failing to cite any cases that have expanded *ASARCO* "to prohibit the Trustee's law firm from defending such fee application." (Dkt. 1588 at 12).

*ASARCO* stands for the proposition that the estate should not bear the cost of defending attorneys' fees in the absence of a specific statute departing from the "American Rule." *See In re Boomerang Tube, Inc.*, 548 B.R. 69, 71 (Bankr. Del. 2016) (holding that time spent by the committee's counsel defending its fee as for benefit of counsel and not committee). It appears that the only charges in dispute are for work defending the Trustee's own fee applications. Although there are some time entries in the Second Amended Fee Application for work related to the litigation of JW's Fee Applications, those are likely unintentional and will be disallowed. As to the other time entries, the bankruptcy court in *Boomerang* found that *ASARCO* applied regardless of whether the retained professional defended its own fees or the professional hired

---

[12] *See* Charts attached to the end of this Amended Order.

outside counsel to represent it.   *Id.* at 78.   In that light, the Court finds that the fees for defending the Trustee's fee applications are non-compensable.   Charts attached to the end of this Amended Order show the affected time entries.   In the Second Amended Fee Application the time entries total $4,785.00, and in the Third Fee Application, they total $22,834.00.

### e.       Amended Plan & Amended Disclosure Statement

Edwards contends that the Amended Plan and Amended Disclosure Statement were not necessary to the administration of the estate and not reasonably likely to benefit the estate.   In the Amended Plan, the Trustee proposed to treat all of Edwards' claims as unsecured, whereas the Original Plan proposed the opposite treatment.

Whether services related to a chapter 11 plan are reasonably likely to benefit the estate "is not restricted to success measured by confirmation of a plan or the prospect of confirming a plan." *In re Macco Props., Inc.*, 540 B.R. 793, 868 (Bankr. W.D. Okla. 2015) (quotation omitted).   Here, Edwards' contentions appear to arise largely out of their dislike for the Amended Plan and their belief that the Amended Plan was prepared for the benefit of JW, as set forth in the Edwards Family Partnership, LP and Beher Holdings Trust's Objection to Trustee's First Amended Chapter 11 Plan of Reorganization (Dkt. #1081) (the "Plan Objection") (Dkt. 1594).   Given that a hearing on the First Amended Plan, as modified by the First Amended Chapter 11 Plan of Liquidation of the Estate of Community Home Financial Services, Inc. Proposed by the Trustee, Kristina M. Johnson Dated as of February 1, 2017 (Dkt. 1607), is not scheduled to take place until December 7 and 8,

2017,[13] the Court finds at this time that the services related to the Amended Plan and Disclosure Statement are compensable.

### 4.   Trustee's Compensation

A chapter 11 trustee is entitled to reasonable compensation for performing her duties.   11 U.S.C. § 326(a).   By statute, a chapter 11 trustee's compensation consists of a percentage of the moneys disbursed or turned over in the case by the trustee to parties of interest not to exceed twenty-five percent (25%) on the first $5,000.00 or less, ten percent (10%) on any amount in excess of $5,000.00 but not in excess of $50,000,00, five percent (5%) on any amount in excess of $50,000.00 but not in excess of $1 million, and three percent (3%) in excess of $1 million.   *Id*. A trustee's compensation may not exceed the maximum amount allowed under § 362(a). In the Bankruptcy Case, the Trustee's First Application for Interim Compensation as the Chapter 11 Trustee of Community Home Financial Services, Inc. (Dkt. 984) and the Supplement to Trustee's First Application for Interim Compensation as the Chapter 11 Trustee of Community Home Financial Services, Inc. [Dkt. #984] (Dkt. 1136) were tried together and, on September 9, 2016, the prior bankruptcy judge entered orders on both. (Dkt. 1465 & 1467).

The Trustee may hire attorneys, including herself, to represent her in carrying out her duties.   In her role as lawyer, she may only recover for legal services rendered and not for duties generally performed without the assistance of an attorney.   11 U.S.C. § 328(b).   "[T]he attorney

---

[13] The confirmation hearing on the Amended Plan was set for March 22, 2017, but the Court found that the hearing was premature in the light of the trials set in various adversary proceedings and contested matters, including the consolidated trial set in Adv. Proc. 12-00091-NPO and Adv. Proc. 13-00104-NPO on August 21-25, 2017, and the separate trials set in 13-00104-NPO on October 30-31, 2017, and in 15-00080-NPO on November 1-3, 2017.

must establish that the tasks for which compensation is sought are not duties which are generally performed by a trustee without attorney assistance." *In re Finney,* No. 91-20239-SCS, 1997 WL 33475580, at *25 (Bankr. E.D. Va. 1997) (citation omitted).   "Several courts have stated that the attorney for the trustee should only perform services that someone without a law license could not perform." *In re Lexington Hearth Lamp & Leisure, LLC,* 402 B.R. 135, 143 (Bankr. M.D.N.C. 2009) (citation omitted).   Citing § 328(b), the *Chapter 11 Trustee Handbook* provides that "[a] trustee acting as an attorney . . . under § 327(d) may receive compensation only for services performed in that capacity and not for the performance of regular trustee duties.   Similarly, attorneys and accountants may not be compensated for performing the statutory duties of the trustee."  (JW Ex. 3-Third Fee Hr'g); *Chapter 11 Trustee Handbook*, Ch. 10, § E, at 67 (May 2004), available at http://www.justice.gov/UST/eo/private_trustee/library/chapter11/index.htm. Examples in the *Chapter 11 Trustee Handbook* of the statutory duties of a chapter 11 trustee that are non-compensable as legal services in the absence of special circumstances include:

1.  preparing for and examining the debtor at the § 341(a) meeting in order to verify factual matters;
2.  examining proofs of claim to eliminate duplicate claims and to identify those that are in addition to or differ in amounts from claims listed on the debtor's schedules;
3.  investigating the financial affairs of the debtor;
4.  furnishing information to parties in interest on factual matters;
5.  collecting and liquidating assets of the estate by employing auctioneers or other agents and soliciting offers;
6.  preparing required reports;
7.  performing banking functions;
8.  supervising professionals; and
9.  engaging in any specific duties assigned pursuant to court order.

*Id*. at 67-68.

In its objections and briefs, Edwards complained that the Fee Applications contain

numerous time entries for trustee-related work performed by lawyers and paralegals charging law firm hourly rates.   Edwards also complained, however, that payment for staff necessary for operating CHFS's loan mortgage business should come from the Trustee's statutory compensation. (Dkt. 1417 at 5).   At the most recent Hearing, the Court questioned counsel for Edwards regarding this aspect of their argument.   For example, in the chapter 11 case of a commercial airline, would Edwards expect a chapter 11 trustee to check in passengers, load their baggage onto the airplane, and fly the airplane to its destination?   In the alternative, would Edwards expect a chapter 11 trustee to hire a passenger service agent, baggage handler, and pilot from her own statutory compensation in order to maintain the ongoing business operations of the airline?   *See In re Computer Learning Ctrs., Inc.*, 285 B.R. 191, 208 (Bankr. E.D. Va. 2002) (noting that in a large case, it may be physically impossible for a trustee to personally perform all statutory duties). Edwards' counsel answered "no" to these questions but argued that it was unreasonable for the estate to pay the Trustee's lead counsel, Barber, to load luggage onto an airplane at his hourly billing rate of $350.00.   In other words, the Court clarified at the Hearing that Edwards' objection was to the reasonableness of the rates billed and not to the necessity of the work performed by JW.

The Color-Coded Ex.-Second Fee Hr'g and the Color-Coded Ex.-Third Fee Hr'g highlight in yellow the specific time entries in the Amended Second Fee Application and Third Fee Application that Edwards asserts are for the performance of the Trustee's statutory duties and should not be compensated under § 330.   The Trustee, on the other hand, asserts that every time entry in the Fee Applications that has a charge (meaning an amount other than $0) is for legal work compensable under § 330.   For example, the Trustee testified at the Amended Second Fee Hearing, as follows:

Q.   [A]re you contending that in the second [JW] fee application that every service that's in there was a legal service for which . . . [JW] should be . . . compensated for legal services, regardless of whether it's trustee work or not?

A.   Okay.   That's a compound question, and so I'll answer it this way.   If it is in the application and doesn't have a zero by it, yes, it is a legal service.

Q.   Okay. You would agree with me that there are things in that application that Judge Ellington's previous order indicated were matters that were typically not compensable as legal services, but were trustee services, correct?

A.   There are thing [*sic*] on the page that reflect a zero charge that might fall into those categories. If there's a question, some of those might have been voluntary reductions, just to avoid the issue. Some of them may have fallen into that category of the opinion. But if it's on there with a dollar charge, it is our position as a firm, but Mr. Barber is going to be testifying to the actual fee application, it's my position that those are legal services that should be compensated.

(Second Fee Hr'g Tr. at 83-84.)   Barber concurred with the Trustee's position.   Barber testified

at the Second Fee Hearing:

Q.   Mr. Barber, did Jones Walker in this fee application charge the estate for matters the trustee could have handled herself?

A.   I would say generally no. I do believe that there are perhaps some issues where I believe those unique circumstances apply where we perhaps did charge for some of that.

* * *

Q.   There was [*sic*] several times in not only your testimony bit [*sic*] also in Ms. Johnson's testimony where there was testimony to the fact that the trustee simply couldn't do the task, just didn't have the time or the expertise to do certain matters. Do you remember that testimony?

A.   Yes.

Q.   Would you agree with me or not that the issue is not whether the trustee has time or the expertise to do a particular matter, but the issue is whether or not it is something that a trustee is compensated for under -- is required to do under the code as a trustee as opposed to legal services? Those are two different issues, right?

A.   No, I don't agree with that.

Q.   Okay. You don't agree that a trustee can only be compensated for trustee work under trustee compensation?

A.   A trustee can sometimes be compensated for work that that trustee does as an attorney also. So that's not the limit of the compensation.

(Second Fee Hr'g Tr. at 173 &179).

Mindful that these are *interim* Fee Applications, the Court finds that the Trustee and JW have demonstrated that the services for which compensation is sought involved legal skills beyond the scope of the Trustee's statutory duties, given the unique and exceptional circumstances of the Bankruptcy Case. The chaos that the Trustee faced upon her appointment resulted from the criminal activities of Dickson, with whom Dr. Edwards (not the Trustee) chose to do business. Edwards' frustration with the amount of administrative expenses incurred in the Bankruptcy Case appears to be misdirected at JW rather than Dickson.   Just as the prior bankruptcy judge held in the First Fee Order, however, this Court will evaluate whether a charge against or a reduction in the Trustee's compensation is warranted at the time final fee applications for JW and the Trustee are filed.

   5.   **Block Billing**

In the First Fee Order, the prior bankruptcy judge denied JW any compensation for the time entry billed for law clerks in the First Fee Application in the amount of $6,072.00 because of impermissible "block billing."   Block billing is a "time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Harris v. Allstate Ins. Co.,* No. 07-8789, 2009 WL 86673, at *3 (E.D. La. Jan. 12, 2009) (citation omitted).   This practice impedes a court's ability to determine

the reasonableness of the hours spent on individual tasks.   *Id*.

The First Fee Application included a block entry for an unknown number of "LAW CLERKS, NO" and a brief, generic description of the work performed.   For the reasons discussed in the First Fee Order, the Court finds this entry to be block billing.   Therefore, the entire fee of $6,072.00 is disallowed.   Block billing in any future fee applications likewise will be disallowed.

### 6.      Excessive Research on *Caulkett*

Edwards challenges the time expended by Ashton reviewing the Supreme Court's then recent decision in *Caulkett* as excessive.   In a five-page opinion, the Supreme Court ruled that a debtor in a chapter 7 bankruptcy may not void a junior mortgage lien under § 506(d) when the debt owed on a senior mortgage lien exceeded the current value of the collateral.   *Caulkett*, 135 S. Ct. at 2001.   In the Third Fee Application, Ashton expended 18.1 hours considering whether the holding in *Caulkett* applied to chapter 13 bankruptcy cases.[14]   The Court finds these hours excessive and will disallow half of Ashton's fees, resulting in a reduction of $3,167.50.

### B.      Interim Expenses

Edwards' objections to expenses in the Fee Applications were mostly resolved by JW's apparent agreement to waive those charges.   Summaries at the end of this Amended Order lists the expenses apparently waived by JW.   Any expense not listed in the summary as being waived and/or disallowed is deemed by the Court to be reasonable and necessary.   The Court addresses only Edwards' objections to the CALR charges because it may impact future fee applications.

In the First Fee Application, JW agreed to waive its request for reimbursement of one-half

---

[14]   *See* Charts attached to the end of this Amended Order.

of its CALR charges of $9,512.33 and in the Amended Second Fee Application, JW waived all of its CALR charges of $29,952.81.   JW did not seek reimbursement of any CALR charges in the Third Fee Application.

In the First Fee Order, the prior bankruptcy judge adopted the test announced in *In re Fibermark, Inc.*, 349 B.R. at 399, for allowing reimbursement of CALR charges.   Under that test, such charges are reimbursable, "provided the applicant: (1) demonstrates that the use charges incurred were reasonable and necessary (which necessarily includes a description of the research topic and the length of time spent on each topic); (2) affirms that the applicant bills its non-bankruptcy clients for CALR use charges, including the rate at which it bills its non-bankruptcy clients; and (3) certifies the invoiced cost from the vendor."   *Id*. at 400.   The prior bankruptcy judge determined that JW did not meet this test but awarded JW one-half of its requested CALR charges ($4,756.16) given that JW did not have notice of the adoption of the *Fibermark* test.   This Court likewise will apply *Fibermark* to future fee applications.

## C.     Interim Compensation Procedures

For the period beginning March 1, 2016, and ending February 28, 2017, JW shall file and serve an interim fee application for compensation and reimbursement of expenses by June 30, 2017.   Thereafter, JW shall file and serve interim fee applications within sixty (60) days after the end of each four (4)-month interval.   For example, after June 30, 2017, JW shall file the next interim fee application for the period from March 1, 2017, through June 30, 2017, by August 29, 2017.

Parties will have twenty-one (21) days after service of an interim fee application to file an objection.   In any objection, the party must specify the precise amount of interim fees and

expenses to which it objects and the precise amount of interim fees and expenses to which it does not object.   Upon expiration of the objection deadline, the Trustee is authorized to pay JW eighty percent (80%) of the fees and one hundred (100%) of the expenses that are not subject to any objection.   Any exhibits that either party proposes to introduce into evidence at any fee hearing, including any summaries or color-coded fee statements, must be exchanged at least two (2) weeks before the date of the fee hearing.   All fees and expenses paid to JW under these compensation procedures are subject to approval of the Court after a hearing is held and an order issued on any interim fee application.   These compensation procedures will not authorize payment of such expenses to the extent that such authorization does not exist under the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or other applicable law.

## Conclusion

Based on the above and foregoing, the Court finds that pursuant to § 331, JW is entitled to the interim fees and interim expenses as reflected in the summary of interim compensation awarded attached to the end of this Amended Order.

IT IS THEREFORE, ORDERED that the Trustee is authorized to pay JW the net interim fees and interim expenses reflected in the summaries below:

*First Fee Application (January 2, 2014 through July 31, 2014)*

ORIGINAL FEES REQUESTED: .............................................................................$733,656.50

FEE REDUCTIONS:
Fees of Paralegals billing hourly rates above $155.00: ...............................................$20,354.50[15]
Block billing: ............................................................................................................$6,072.00
TOTAL FEE REDUCTIONS:.....................................................................................$26,426.50

---

[15]  $20,354.50 = $48,728.50 - $28,374.00.

**TOTAL INTERIM FEES AWARDED**: ................................................................**$707,230.00**

ORIGINAL EXPENSES REQUESTED: ....................................................$67,203.53

DISALLOWED EXPENSES:
Long-distance telephone charges: ................................................$2,851.07
Overtime pay: ................................................................................$3,992.75
Computer-assisted legal research ("CALR") charges (50%): .........................$4,756.16
TOTAL DISALLOWED EXPENSES: ....................................................$11,599.98

**TOTAL INTERIM EXPENSES AWARDED**: ..........................................**$55,603.55**

*First Fee Order*

**TOTAL INTERIM FEES AWARDED**: ................................................**$678,526.00**
**TOTAL INTERIM EXPENSES AWARDED**: ..........................................**$55,603.55**

**NET INTERIM COMPENSATION AWARDED**: ....................................**$28,704.00**

*Amended Second Fee Application (August 1, 2014 through June 30, 2015)*

ORIGINAL FEES REQUESTED: ..........................................................$895,274.00

FEE ADDITIONS:
Fees of attorneys charging hourly rates above $350.00 (excluding Restrepo): ............$3,093.50
Fees of paralegals billing hourly rates above $125.00 up to $155.00: ........................$29,551.00
TOTAL FEE ADDITIONS: ....................................................................$32,644.50

FEE REDUCTIONS:
Typographical error: ......................................................................$87.50
Withdrawal Motions (50%): ............................................................$30,390.50
RICO: ..........................................................................................$33,448.50
Defending fee applications: ............................................................$4,785.00
TOTAL FEE REDUCTIONS: ................................................................$68,711.50

**TOTAL INTERIM FEES AWARDED**: ................................................**$859,207.00**

ORIGINAL EXPENSES REQUESTED: ....................................................$67,943.88

DISALLOWED EXPENSES:
Long-distance telephone charges: ................................................$1,225.01
CALR charges: ................................................................................$29,952.81
TOTAL DISALLOWED EXPENSES: ....................................................$31,177.82

**TOTAL INTERIM EXPENSES AWARDED**:..................................................**$36,766.06**

*Immediate Payment Order-Amended Second Fee Application*):
**COMPENSATION AWARDED**: .....................................................**$331,680.50**

**NET INTERIM COMPENSATION AWARDED**: ...............................**$564,292.56**

*Third Fee Application (July 1, 2015 through February 29, 2016)*

<u>ORIGINAL FEES REQUESTED</u>: ..............................................$557,647.00

FEE ADDITIONS:
Fees of attorneys charging hourly rates above $350.00 (excluding Restrepo):.................$7,123.50
Fees of paralegals billing hourly rates above $125.00 up to $155.00: ...........................<u>$17,476.00</u>
TOTAL FEE ADDITIONS: .........................................................$24,599.50

FEE REDUCTIONS:
Paralegal fees: ...........................................................................$6,058.00
RICO:.......................................................................................$2,468.00
Defending fee applications: ....................................................$22,834.00
Legal research on *Bank of America, N.A. v. Caulkett* (50%):...........................<u>$3,167.50</u>
TOTAL FEE REDUCTIONS:.....................................................$34,527.50

**TOTAL INTERIM FEES AWARDED**: ...............................................**$547,719.00**

ORIGINAL EXPENSES REQUESTED: ....................................................$12,580.88

DISALLOWED EXPENSE:
PACER charges: ......................................................................$1,797.20

**TOTAL INTERIM EXPENSES AWARDED**:..................................................**$10,783.68**

*Immediate Payment Order-Third Fee Application*
**COMPENSATION AWARDED**: ......................................................**$296,356.50**

**NET INTERIM COMPENSATION AWARDED**: ...............................**$262,146.18**

IT IS FURTHER ORDERED that the interim fees and expenses awarded to JW are subject to disgorgement in the event the bankruptcy estate becomes administratively insolvent and the Court orders a disgorgement of the fees and expenses previously awarded JW.

IT IS FURTHER ORDERED that the following interim compensation procedures shall apply to all future applications filed by JW:

1.      For the period beginning March 1, 2016, and ending February 28, 2017, JW shall file and serve an interim fee application for compensation and reimbursement of expenses by June 30, 2017.   Thereafter, JW shall file and serve interim fee applications within sixty (60) days after the end of each four (4)-month interval.

2.      Parties will have twenty-one (21) days after service of an interim fee application to file an objection.   In any objection, the party must specify the precise amount of interim fees and expenses to which it objects and the precise amount of interim fees and expenses to which it does not object.

3.      Upon expiration of the objection deadline, the Trustee is authorized to pay JW eighty percent (80%) of the fees and one hundred (100%) of the expenses that are not subject to any objection.

4.      Any exhibits that either party proposes to introduce into evidence at any fee hearing, including any summaries or color-coded fee statements, must be exchanged at least two (2) weeks before the date of the fee hearing.

5.      All fees and expenses paid to JW under these compensation procedures are subject to approval by the Court after a hearing is held and an order issued on any interim fee application.

| WITHDRAWAL MOTIONS-SECOND AMENDED FEE APPLICATION | | | | | | |
|---|---|---|---|---|---|---|
| Page No. | Date | Initials | Description | Hours | Billing Rate | Fees |
| 259 | 03/25/15 | MAM | RESEARCH REGARDING WITHDRAWAL OF THE REFERENCE. | 2.5 | 290.00 | 725.00 |
| 260 | 03/25/15 | MWG | RESEARCH BANKRUPTCY DOCKET FOR MOTION TO | .30 | 155.00 | 46.50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | WITHDRAW IN SOUTHERN DISTRICT ADVERSARY PROCEEDING. | | | |
| 260 | 03/26/15 | KMJ | REVIEW WITHDRAWAL OF REFERENCE OPTIONS. | 1.50 | 350.00 | 525.00 |
| 260 | 03/26/15 | MAM | RESEARCH REGARDING WITHDRAWAL OF THE REFERENCE. | 2.50 | 290.00 | 725.00 |
| 265 | 03/30/15 | SBM | RESEARCH FOR MOTION TO WITHDRAW REFERENCE | 3.40 | 210.00 | 714.00 |
| 267 | 03/31/15 | KJM | RESEARCH AND DETERMINE STRATEGY RE MOTION TO WITHDRAW REFERENCE. | 3.00 | 350.00 | 1,050.00 |
| 267 | 03/31/15 | SBM | RESEARCH AND DRAFTING SECTION FOR MOTION TO WITHDRAW REFERENCE | 4.9 | 210.00 | 1,029.00 |
| 267 | 03/31/15 | KB | ASSIST IN PREPARATION OF MOTION TO WITHDRAW REFERENCE AND FOR CONSOLIDATION OF ADVERSARIES. | .40 | 155.00 | 62.00 |
| 269 | 04/01/15 | KMJ | RESEARCH RE WITHDRAWAL OF REFERENCE OF ENTIRE CASE OR PART UNDER MANDATORY AND PERMISSIBLE THEORIES. | 6.00 | 350.00 | 2,100.00 |
| 269 | 04/01/15 | KMJ | BEGIN DRAFT OF MOTION TO WITHDRAW REFERENCE AND CONSOLIDATE. | 2.10 | 350.00 | 735.00 |
| 269 | 04/01/15 | MAM | RESEARCH REGARDING MOTION TO WITHDRAW REFERENCE | 1.50 | 290.00 | 435.00 |
| 270 | 04/01/15 | KB | REVIEW WITH K. JOHNSON RE PREPARATION OF EXHIBITS TO MOTION TO WITHDRAW REFERENCE. | .40 | 155.00 | 62.00 |

| 271 | 04/02/15 | JRB | LIMITED RESEARCH ON SECTION 157(D) | 2.80 | 345.00 | 966.00 |
|-----|----------|-----|-------------------------------------|------|--------|--------|
| 271 | 04/02/15 | JRB | CONFERENCE WITH TRUSTEE AND M. MINTZ RE STRATEGY ON PLAN, WITHDRAWAL OF REFERENCE AND LITIGATION | .50 | 345.00 | 172.50 |
| 271 | 04/02/15 | KMJ | CONTINUE DRAFT MOTION TO WITHDRAW AND CONSOLIDATE ACTIONS. | 5.00 | 350.00 | 1,750.00 |
| 272 | 04/02/15 | KMJ | CONTINUE RESEARCH ON 28 USC 157(D) AS APPLICABLE TO STRATEGY. | 3.00 | 350.00 | 1,050.00 |
| 273 | 04/02/15 | KB | EXTENSIVE PACER SEARCHES AND RELATED DOCUMENT REVIEW FOR PREPARATION OF EXHIBIT TO MOTION TO WITHDRAW REFERENCE | 1.50 | 155.00 | 232.50 |
| 273 | 04/02/15 | KB | DRAFT, REVIEW AND REVISE EXHIBIT TO MOTION TO WITHDRAW REFERENCE | 1.00 | 155.00 | 155.00 |
| 274 | 04/03/15 | KMJ | STRATEGY DISCUSSIONS OF MOTION TO INTERVENE AND CONSOLIDATE FOR CONSISTENCY WITH MOTION TO WITHDRAWAL OF REFERENCE. | 1.00 | 350.00 | 350.00 |
| 274 | 04/03/15 | KMJ | RESEARCH; DRAFT AND REVIEW AND REVISE MOTION FOR WITHDRAWAL OF REFERENCE. | 8.50 | 350.00 | 2,975.00 |
| 274 | 04/03/15 | MAM | VARIOUS RESEARCH REGARDING MOTIONS TO WITHDRAW AND COMPLAINT ISSUES. | 3.50 | 290.00 | 1,015.00 |

| 275 | 04/04/15 | KMJ | CONTINUE RESEARCH AND DRAFT AND REVIEW AND REVISE BRIEF IN SUPPORT OF MOTION TO WITHDRAW REFERENCE | 10.00 | 350.00 | 3,500.00 |
|---|---|---|---|---|---|---|
| 275 | 04/04/15 | MAM | REVISE AND EDIT MOTION TO WITHDRAW REFERENCE | 1.50 | 290.00 | 435.00 |
| 275 | 04/05/15 | KMJ | REVIEW AND REVISE MOTION TO WITHDRAW REFERENCE AND CONSOLIDATE ACTIONS AND BRIEF IN SUPPORT OF SAME. | 8.00 | 350.00 | 2,800.00 |
| 275 | 04/05/15 | SBM | REVIEWING AND REVISING DRAFT MOTION AND BRIEF RE WITHDRAWAL OF REFERENCE. | 3.00 | 210.00 | 630.00 |
| 275 | 04/06/15 | JRB | WORK ON MOTION AND BRIEF TO WITHDRAW THE REFERENCE. | 2.00 | 345.00 | 690.00 |
| 275 | 04/06/15 | KMJ | CONTINUE REVIEW AND REVISE MOTION TO WITHDRAW REFERENCE AND BRIEF IN SUPPORT | 4.50 | 350.00 | 1,575.00 |
| 276 | 04/06/15 | MAM | WORK ON MOTIONS TO WITHDRAW REFERENCE AND COMPLAINT AGAINST EDWARDS ENTITIES | 4.00 | 290.00 | 1,160.00 |
| 276 | 04/06/15 | KB | REVIEW PROOF OF CLAIM REGISTRY FOR EXHIBIT TO MOTION TO WITHDRAW REFERENCE. | .10 | 155.00 | 15.50 |
| 276 | 04/06/15 | KB | WORK ON EXHIBIT TO MOTION TO WITHDRAW REFERENCE | 1.00 | 155.00 | 155.00 |
| 277 | 04/06/15 | KB | PACER SEARCH AND EXTENSIVE DOCUMENT REVIEW RE ASSERTIONS AS TO CORE OR NON-CORE PROCEEDINGS IN | .80 | 155.00 | 124.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | ALL ADVERSARY PROCEEDING FOR PURPOSES OF MOTION TO WITHDRAW REFERENCE. | | | |
| 277 | 04/06/15 | KB | ASSIST IN FINALIZATION OF MOTION TO WITHDRAW REFERENCE. | 2.10 | 155.00 | 325.50 |
| 279 | 04/07/15 | KMJ | FINALIZE MOTION TO WITHDRAW REFERENCE AND BRIEF FOR FILING. | 2.00 | 350.00 | 700.00 |
| 279 | 04/07/15 | MAM | FINALIZE MOTIONS FOR WITHDRAWAL OF REFERENCES. | 1.70 | 290.00 | 493.00 |
| 280 | 04/07/15 | KB | REVISE AND FINALIZE MOTION TO WITHDRAW REFERENCE, EXHIBITS TO SAME AND BRIEF IN SUPPORT OF MOTION. | 1.00 | 155.00 | 155.00 |
| 280 | 04/07/15 | KB | ELECTRONICALLY FILE MOTION TO WITHDRAW REFERENCE AND BRIEF IN SUPPORT OF MOTION. | .40 | 155.00 | 62.00 |
| 280 | 04/07/15 | KB | TELEPHONE CONFERENCES WITH BANKRUPTCY COURT RE CROSS REFERENCE OF MOTION TO WITHDRAW REFERENCE IN RELATED ADVERSARIES. | .20 | 155.00 | 31.00 |
| 280 | 04/07/15 | KB | ELECTRONICALLY FILE MOTION TO WITHDRAW REFERENCE AND BRIEF IN SUPPORT OF SAME IN FOUR RELATED ADVERSARY PROCEEDINGS. | .80 | 155.00 | 124.00 |
| 282 | 04/07/15 | KB | TELEPHONE CONFERENCE WITH JUDGE REEVES COURTROOM DEPUTY RE TIMING OF SETTING HEARINGS ON MOTION TO INTERVENE AND MOTION | .20 | 155.00 | 31.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | TO WITHDRAW REFERENCE. | | | |
| 300 | 0420/15 | KB | DOCUMENT REVIEW AND DRAFT, REVISE AND FINALIZE LETTER TO J. SPENCER GRANTING REQUESTED EXTENSION TO RESPOND TO MOTION TO WITHDRAW REFERENCE. | 1.10 | 155.00 | 170.50 |
| 301 | 04/21/15 | KMJ | REVIEW FILE AND ANALYZE RE C. EDWARDS BANKRUPTCY HISTORY AND EFFECT ON WITHDRAWAL MOTION AND MOTION TO CONVERT | 4.00 | 350.00 | 1,400.00 |
| 303 | 04/22/15 | JRB | E-MAIL EXCHANGE WITH TRUSTEE ET AL. RE SCHEDULING ISSUES ON MOTIONS TO INTERVENE, CONSOLIDATE AND WITHDRAW THE REFERENCE. | .20 | 345.00 | 69.00 |
| 306 | 04/24/15 | LFA | T/C WITH MR. BARBER REGARDING RESEARCH OF ISSUES TO ASSIST WITH REBUTTAL TO OBJECTION TO MOTION TO WITHDRAW THE REFERENCE. | .30 | 265.00 | 79.50 |
| 306 | 04/24/15 | LFA | RESEARCHED ISSUES TO ASSIST WITH REBUTTAL TO OBJECTION TO MOTION TO WITHDRAW THE REFERENCE. | 1.00 | 265.00 | 265.00 |
| 306 | 04/24/15 | SBM | REVIEWING RESPONSE TO MOTION TO WITHDRAW. | .40 | 210.00 | 84.00 |
| 308 | 04/27/15 | ASH | WORK ON LEGAL STRATEGY FOR COMMUNICATING TO COURT THE NECESSITY TO CONSOLIDATE | .30 | 220.00 | 66.00 |

| | | | MULTIPLE ACTIONS AND BANKRUPTCY WITHDRAWAL AND SET HEARING RE SAME. | | | |
|---|---|---|---|---|---|---|
| 308 | 04/27/15 | SBM | REVIEWING RESPONSE AND RESEARCHING FOR REBUTTAL ON MOTION TO WITHDRAW | 7.30 | 210.00 | 1,533.00 |
| 309 | 04/28/15 | KMJ | RESEARCH FOR REBUTTAL ON MOTION TO WITHDRAW REFERENCE. | 5.00 | 350.00 | 1,750.00 |
| 310 | 04/28/15 | KMJ | REVIEW CASES CITED BY EDWARDS IN RESPONSE TO MOTION TO WITHDRAW. | 3.00 | 350.00 | 1,050.00 |
| 310 | 04/28/15 | KMJ | DRAFT AND REVIEW AND REVISE CORRESPONDENCE TO CHAMBERS RE PROTOCALL [sic] ON JUDGE ASSIGNMENTS RE MOTION TO WITHDRAW REFERENCE. | 1.00 | 350.00 | 350.00 |
| 310 | 04/28/15 | MAM | CONFERENCE AND RESEARCH REGARDING MOTION TO WITHDRAW | 2.50 | 290.00 | 725.00 |
| 310 | 04/28/15 | ASH | REVIEW THREE NOTICES OF TRANSMITTAL OF CASES TO MULTIPLE DISTRICT JUDGES | .10 | 220.00 | 22.00 |
| 310 | 04/28/15 | ASH | WORK ON REVIEWING, ANALYZING, AND DRAFTING REVISIONS TO PROPOSED EMAIL TO CHAMBERS RE MULTIPLE MATTERS PENDING BEFORE MULTIPLE JUDGES ON WITHDRAWAL OF THE REFERENCE. | .60 | 220.00 | 132.00 |
| 310 | 04/28/15 | LFA | RESEARCHED AND REVIEWED CASE LAW TO | 3.00 | 265.00 | 795.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | ASSIST IN RESPONSE TO REBUTTAL REGARDING MOTION TO WITHDRAW THE REFERENCE. | | | |
| 310 | 04/28/15 | SBM | RESEARCHING FOR REBUTTAL TO RESPONSE TO WITHDRAW AND CONSOLIDATE. | 1.10 | 210.00 | 231.00 |
| 311 | 04/28/15 | KB | REVIEW K. JOHNSON'S E-MAIL CORRESPONDENCE TO DISTRICT COURT JUDGES AND MAGISTRATES RE TRANSMITTAL OF MOTION TO WITHDRAW REFERENCE FROM BANKRUPTCY COURT. | .20 | 155.00 | 31.00 |
| 311 | 04/28/15 | KB | TELEPHONE CONFERENCE WITH DISTRICT COURT RE ECF NOTIFICATIONS AND E-MAILS FROM JUDGE REEVES CHAMBERS. | .30 | 155.00 | 46.50 |
| 311 | 04/29/15 | JRB | CONFERENCE WITH TRUSTEE RE STRATEGY ON REBUTTAL FOR MOTION TO WITHDRAW THE REFERENCE | .30 | 345.00 | 103.50 |
| 312 | 04/29/15 | KMJ | REVIEW AND ANALYZE EDWARDS RESPONSE TO WITHDRAW REFERENCE | 3.00 | 350.00 | 1,050.00 |
| 312 | 04/29/15 | KMJ | CONTINUE RESEARCH FOR REBUTTAL ON MOTION TO WITHDRAW REFERENCE | 7.00 | 350.00 | 2,450.00 |
| 312 | 04/29/15 | LFA | E-MAIL CORRESPONDENCE WITH GROUP REGARDING COMPLETION OF RESEARCH RELATED TO WITHDRAWAL OF THE REFERENCE. | .20 | 265.00 | 53.00 |
| 312 | 04/29/15 | SBM | RESEARCH RE REBUTTAL FOR MOTION TO | 6.90 | 210.00 | 1,449.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | WITHDRAW AND CONSOLIDATE INCLUDING RESEARCH ON EQUITABLE SUBORDINATION | | | |
| 312 | 04/29/15 | KB | EXTENSIVE DOCUMENT REVIEW AND PACER SEARCHES TO ASSIST IN PREPARATION OF REBUTTAL TO EDWARDS REPLY TO MOTION TO WITHDRAW REFERENCE. | 1.70 | 155.00 | 263.50 |
| 313 | 04/29/15 | KB | PREPARE INITIAL DRAFT OF REBUTTAL | .40 | 155.00 | 62.00 |
| 313 | 04/29/15 | KB | REVIEW WITH K. JOHNSON RE PREPARATION OF LITIGATION CHARTS FOR REBUTTAL. | .30 | 155.00 | 46.50 |
| 313 | 04/29/15 | KB | BEGIN PREPARATION OF CHARTS FOR PROPOSED CONSOLIDATION OF CASES | 4.10 | 155.00 | 635.50 |
| 313 | 04/30/15 | KMJ | BEGIN DRAFT REBUTTAL ON MOTION TO WITHDRAW REFERENCE. | 5.00 | 350.00 | 1,750.00 |
| 314 | 04/30/15 | KMJ | CONTINUE RESEARCH FOR REBUTTAL ON MOTION TO WITHDRAW REFERENCE | 10.00 | 350.00 | 3,500.00 |
| 314 | 04/30/15 | SBM | REVIEWING PLEADINGS TO SUPPORT REBUTTAL FOR MOTION TO WITHDRAW AND CONSOLIDATE. | 1.00 | 210.00 | 210.00 |
| 315 | 04/30/15 | KB | ASSIST IN FINALIZATION OF REBUTTAL TO EDWARDS' RESPONSE TO MOTION TO WITHDRAW REFERENCE | 1.80 | 155.00 | 279.00 |
| 315 | 04/30/15 | KB | DOCUMENT REVIEW AND COMPLETE PREPARATION OF CHARTS FOR | 4.10 | 155.00 | 635.50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | PROPOSED CASE CONSOLIDATION AS EXHIBIT TO REBUTTAL. | | | |
| 315 | 05/01/15 | JRB | REVIEW AND REVISE REBUTTAL ON MOTION TO WITHDRAW REFERENCE. | 3.50 | 345.00 | 1,207.50 |
| 315 | 05/01/15 | KMJ | CONTINUE DRAFT AND REVIEW AND REVISE REBUTTAL BRIEF ON MOTION TO WITHDRAW REFERENCE. | 13.00 | 350.00 | 4,550.00 |
| 316 | 05/01/15 | SBM | REVIEWING AND REVISING REBUTTAL TO MOTION TO WITHDRAW. | 3.50 | 210.00 | 735.00 |
| 316 | 05/01/15 | SBM | REVIEWING CASE LAW CITED BY CREDITORS IN RESPONSES TO TRUSTEE'S MOTION TO INTERVENE AND CONSOLIDATE. | .20 | 210.00 | 42.00 |
| 319 | 05/04/15 | KB | EXTENSIVE DOCUMENT REVIEW AND EXTENDED TELEPHONE CONFERENCES WITH DISTRICT COURT DOCKETING CLERKS RE ECF NOTIFICATION TO ALL BANKRUPTCY COUNSEL IN THE FIVE CASES REFERRED FROM BANKRUPTCY COURT TO DISTRICT COURT | .80 | 155.00 | 124.00 |
| 339 | 05/20/15 | JRB | E-MAIL TO TRUSTEE AND JONES WALKER TEAM RE WITHDRAWAL OF REFERENCE ISSUES. | .10 | 345.00 | 34.50 |
| 363 | 06/17/15 | JRB | PREPARE FOR STATUS CONFERENCE BEFORE FEDERAL DISTRICT COURT ON REMOVAL/ CONSOLIDATION ISSUES. | 1.10 | 345.00 | 379.50 |

| 363 | 06/17/15 | JRB | CONFERENCE WITH TRUSTEE AND CONFERENCE CALL WITH MARK MINTZ RE STRATEGY ON CONSOLIDATION/ WITHDRAWAL ISSUES. | 1.20 | 345.00 | 414.00 |
|-----|----------|-----|------|------|--------|--------|
| 363 | 06/17/15 | KMJ | ATTEND STATUS CONFERENCE SET BY JUDGE REEVES ON DISTRICT COURT MOTIONS AND ARGUE TRUSTEE POSITION ON SAME. | 2.50 | 350.00 | 875.00 |
| 364 | 06/17/15 | SBM | STATUS CONFERENCE BEFORE JUDGE REEVES. | 2.50 | 210.00 | 525.00 |
| 373 | 06/29/15 | JRB | REVIEW ORDER DENYING WITHDRAWAL OF REFERENCE. | .30 | 345.00 | 103.50 |
| 373 | 06/29/15 | KMJ | REVIEW JUDGE REEVES ORDER DENYING WITHDRAWAL OF REFERENCE. | .50 | 350.00 | 175.00 |
| 374 | 06/29/15 | KB | DOCUMENT REVIEW AND REVIEW RE DISTRICT COURT'S DENIAL OF MOTION TO WITHDRAW REFERENCE. | .40 | 155.00 | 62.00 |
| 374 | 06/30/15 | JRB | E-MAIL TO COURT CLERK RE ENTRY OF ORDER DENYING MOTIONS TO WITHDRAW THE REFERENCE. | .20 | 345.00 | 69.00 |
| 374 | 06/30/15 | KMJ | DETERMINE STRATEGY RE ORDER DENYING WITHDRAWAL OF REFERENCE AND RELATED EMAILS. | .50 | 350.00 | 175.00 |
| 374 | 06/30/15 | RPV | EMAILS FROM AND TO MS. JOHNSON REGARDING ORDER DENYING THE MOTION TO | .10 | 475.00 | 47.50 |

| Page No. | Date | Initials | Description | Hours | Billing Rate | Fees |
|---|---|---|---|---|---|---|
| | | | WITHDRAW THE REFERENCE | | | |
| 374 | 06/30/15 | RPV | RECEIVED AND REVIEWED ORDER DENYING WITHDRAWAL OF THE REFERENCE AND OFFICE CONFERENCES WITH MR. MINTZ AND MS. JOHNSON REGARDING SAME | .20 | 475.00 | 95.00 |
| | | | | | TOTAL | 60,781.00 |

| RICO-SECOND AMENDED FEE APPLICATION | | | | | | |
|---|---|---|---|---|---|---|
| **Page No.** | **Date** | **Initials** | **Description** | **Hours** | **Billing Rate** | **Fees** |
| 267 | 03/31/15 | SBM | DRAFTING RICO STATEMENT | 4.80 | 210.00 | 1,008.00 |
| 269 | 04/01/15 | SBM | DRAFTING RICO COMPLAINT AND STATEMENT. | 8.30 | 210.00 | 1,743.00 |
| 274 | 04/03/15 | KMJ | REVIEW AND REVISE RICO COMPLAINT | 1.00 | 350.00 | 350.00 |
| 275 | 04/05/15 | SBM | REVIEWING AND REVISING CHANGES TO RICO COMPLAINT | 1.80 | 210.00 | 378.00 |
| 275 | 04/05/15 | JRB | REVIEW AND REVISE RICO STATEMENT PER LOCAL RULES. | .90 | 345.00 | 310.50 |
| 276 | 04/06/15 | SBM | REVISING RICO COMPLAINT. | 4.40 | 210.00 | 924.00 |
| 276 | 04/06/15 | SBM | REVISING RICO STATEMENT. | 3.80 | 210.00 | 798.00 |
| 287 | 04/10/15 | KB | CONSOLIDATE RICO COMPLAINT AND SUMMONSES FOR SERVICE ON DEFENDANTS | .20 | 155.00 | 31.00 |
| 347 | 05/30/15 | JRB | RESEARCH AUTOMATIC STAY ISSUES ASSOCIATED WITH RICO CASE. | 1.10 | 345.00 | 379.50 |

| 347 | 05/30/15 | JRB | REVIEW AND REVISE RESPONSE TO MOTION TO DISMISS RICO CASE | 1.30 | 345.00 | 448.50 |
|-----|----------|-----|-----------------------------------------------------------|------|--------|--------|
| 347 | 05/30/15 | JRB | ADDITIONAL RESEARCH OF JURISDICTIONAL AND OTHER ISSUES FOR RESPONSE TO MOTION TO DISMISS RICO COMPLAINT. | .40 | 345.00 | 138.00 |
| 347 | 06/01/15 | JRB | WORK ON BRIEF IN SUPPORT OF RESPONSE TO MOTION TO DISMISS RICO SUIT | 2.40 | 345.00 | 828.00 |
| 349 | 06/02/15 | KB | REVIEW E-MAIL CORRESPONDENCE GRANTING TRUSTEE ADDITIONAL TIME TO RESPOND TO EFP/BHT MOTION TO DISMISS RICO COMPLAINT. | .10 | 155.00 | 15.50 |
| 349 | 06/03/15 | JRB | REVIEW AND REVISE MOTION AND ORDER FOR ADDITIONAL TIME TO RESPOND TO MOTION TO DISMISS IN RICO SUIT | .20 | 345.00 | 69.00 |
| 349 | 06/03/15 | SBM | CASE LAW RESEARCH FOR RESPONSE TO MOTION TO DISMISS. | .90 | 210.00 | 189.00 |
| 349 | 06/03/15 | KB | DOCUMENT REVIEW AND DRAFT, REVISE AND FINALIZE MOTION FOR EXTENSION TO FILE RESPONSE TO EFP/BHT MOTION TO DISMISS RICO COMPLAINT AND ORDER GRANTING SAME. | 1.90 | 155.00 | 294.50 |
| 350 | 06/03/15 | KB | ELECTRONICALLY FILE MOTION FOR EXTENSION TO RESPOND TO EFP/BHT MOTION TO DISMISS RICO COMPLAINT. | .20 | 155.00 | 31.00 |
| 350 | 06/03/15 | KB | E-MAIL CORRESPONDENCE TO | .30 | 155.00 | 46.50 |

| | | | JUDGE'S CHAMBERS SUBMITTING ORDER GRANTING MOTION FOR EXTENSION TO FILE RESPONSE TO EFP/BHT MOTION TO DISMISS RICO COMPLAINT. | | | |
|---|---|---|---|---|---|---|
| 350 | 06/04/15 | JRB | WORK ON BRIEF IN SUPPORT OF MOTION TO DISMISS. | 2.20 | 345.00 | 759.00 |
| 350 | 06/04/15 | SBM | CASE LAW RESEARCH FOR RESPONSE TO MOTION TO DISMISS. | 7.90 | 210.00 | 1,659.00 |
| 351 | 06/04/15 | JRB | WORK ON BRIEF IN OPPOSITION TO MOTION TO DISMISS RICO SUIT. | 3.00 | 345.00 | 1,035.00 |
| 351 | 06/01/15 | SBM | MEETING WITH J. BARBER RE RESPONSE TO MOTION TO DISMISS | .60 | 210.00 | 126.00 |
| 352 | 06/06/15 | JRB | WORK ON BRIEF IN SUPPORT OF RESPONSE TO MOTION TO DISMISS. | 3.00 | 345.00 | 1,035.00 |
| 352 | 06/7/15 | SBM | DRAFTING ASSIGNED SECTIONS FOR RESPONSE TO MOTION TO DISMISS. | 5.10 | 210.00 | 1,071.00 |
| 352 | 06/08/15 | JRB | WORK ON BRIEF IN SUPPORT OF RESPONSE TO MOTION TO DISMISS. | 5.60 | 345.00 | 1,932.00 |
| 353 | 06/08/15 | SBM | DRAFTING ASSIGNED SECTIONS FOR RESPONSE TO MOTION TO DISMISS. | 7.30 | 210.00 | 1,533.00 |
| 353 | 06/08/15 | SBM | REVIEWING AND SUMMARIZING RICO CASE LAW FOR RESPONSE TO MOTION TO DISMISS AT REQUEST OF M. MINTZ | 5.20 | 210.00 | 1,092.00 |
| 354 | 06/09/15 | JRB | WORK ON BRIEF IN SUPPORT OF RESPONSE TO MOTION TO DISMISS RICO SUIT. | .40 | 345.00 | 138.00 |
| 355 | 06/09/15 | SBM | REVIEWING AND SUMMARIZING RICO CASE LAW FOR RESPONSE | 6.10 | 210.00 | 1,281.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | TO MOTION TO DISMISS AT REQUEST OF M. MINTZ | | | |
| 355 | 06/09/15 | SBM | DRAFTING ASSIGNED SECTIONS FOR RESPONSE TO MOTION TO DISMISS. | 7.20 | 210.00 | 1,512.00 |
| 356 | 06/10/15 | JRB | WORK ON BRIEF IN SUPPORT OF REPLY TO MOTION TO DISMISS RICO SUIT. | 1.70 | 345.00 | 586.50 |
| 357 | 06/11/15 | JRB | WORK ON BRIEF IN OPPOSITION TO MOTION TO DISMISS | 2.90 | 345.00 | 1,000.50 |
| 357 | 06/11/15 | KMJ | REVIEW AND REVISE RESPONSE BRIEF ON MOTION TO DISMISS | 1.00 | 350.00 | 350.00 |
| 358 | 06/12/15 | JRB | WORK ON BRIEF IN OPPOSITION TO MOTION TO DISMISS RICO CASE. | 4.90 | 345.00 | 1,690.50 |
| 359 | 06/13/15 | JRB | WORK ON BRIEF IN OPPOSITION TO MOTION TO DISMISS RICO CLAIM | 4.40 | 345.00 | 1,518.00 |
| 359 | 06/14/15 | JRB | E-MAIL EXCHANGES AND CONFERENCE CALL WITH M. MINTZ AND K. JOHNSON RE BRIEF IN OPPOSITION TO MOTION TO DISMISS. | .70 | 345.00 | 241.50 |
| 359 | 06/14/15 | JRB | WORK ON BRIEF IN OPPOSITION TO MOTION TO DISMISS | 2.70 | 345.00 | 931.50 |
| 360 | 06/15/15 | JRB | REVIEW, REVISE, AND FINALIZE OPPOSITION TO MOTION TO DISMISS AND BRIEF IN OPPOSITION TO MOTION TO DISMISS RICO COMPLAINT. | 9.80 | 345.00 | 3,381.00 |
| 360 | 06/15/15 | KMJ | REVIEW AND REVISE DRAFT OF RESPONSE TO MOTIN [*sic*] TO DISMISS RICO CASE FOR CONSISTENCY WITH PRIOR FILINGS. | 1.50 | 350.00 | 525.00 |

| 360 | 06/15/15 | SBM | REVIEWING AND REVISING RESPONSE TO MOTION TO DISMISS IN PREPARATION OF FILING. | 6.90 | 210.00 | 1,449.00 |
| 360 | 06/15/15 | KB | WORK ON FINALIZATION OF RESPONSE BRIEF TO EFP/BHT MOTION TO DISMISS IN RICO SUIT. | 3.60 | 155.00 | 558.00 |
| 360 | 06/15/15 | KB | ELECTRONICALLY FILE RESPONSE AND BRIEF IN SUPPORT OF RESPONSE TO EFP/BHT MOTION TO DISMISS IN RICO SUIT. | .40 | 155.00 | 62.00 |
| | | | | | TOTAL | 33,448.50 |

| DEFENDING FEE APPLICATIONS-SECOND AMENDED FEE APPLICATION | | | | | | |
|---|---|---|---|---|---|---|
| Page No. | Date | Initials | Description | Hours | Billing Rate | Fees |
| 70 | 09/29/14 | JRB | PREPARE FOR MEETING WITH J. SPENCER AND U.S. TRUSTEE RE JONES WALKER FEE APPLICATION, INCLUDING REVIEW OF FEE APPLICATION AND CONFIRMING INFORMATION ON ACTUAL COSTS | 1.20 | 340.00 | 408.00 |
| 72 | 09/30/14 | JRB | EXTENDED E-MAIL TO J. SPENCER AND R. MCALPIN RE FEE RESOLUTION OFFER | .80 | 340.00 | 272.00 |
| 72 | 09/30/14 | JRB | ANALYZE FEE APPLICATION AND EXPENSES WITH A VIEW TOWARD PROPOSING A CONSENSUAL RESOLUTION OF SAME. | 1.20 | 340.00 | 408.00 |
| 77 | 10/03/14 | JRB | CONFERENCE CALL WITH M. MINTZ RE FEE APPLICATION ISSUES | .30 | 340.00 | 102.00 |

| 79 | 10/06/14 | JRB | CONFERENCE CALL AND E-MAIL EXCHANGES WITH R. MCALPIN RE RESOLUTION OF FEE APPLICATION. | .30 | 340.00 | 102.00 |
|---|---|---|---|---|---|---|
| 83 | 10/07/14 | JRB | CONFERENCE CALL WITH R. MCALPIN RE FEE APPLICATION ISSUES. | .20 | 340.00 | 68.00 |
| 95 | 10/15/14 | JRB | CONFERENCE CALL WITH M. MINTZ RE PROTOCOL FOR FEE APPLICATION OBJECTIONS REGARDING OTHER PROFESSIONALS. | .60 | 340.00 | 204.00 |
| 110 | 10/28/14 | JRB | PREPARING FOR STATUS CONFERENCE ON MULTIPLE FEE APPLICATIONS [1.20] AND ONE ADVERSARY PROCEEDING, INCLUDING REVIEW OF NUMEROUS PLEADINGS IN 00091 ADVERSARY PROCEEDING [1.20]. | 1.20 | 340.00 | 408.00 |
| 113 | 10/29/14 | JRB | CONFERENCE WITH TRUSTEE RE STRATEGY ON FEE APPLICATIONS. | .40 | 340.00 | 136.00 |
| 119 | 10/31/14 | KB | DOCUMENT REVIEW AND DRAFT, REVIEW AND LIST OF FEE APPLICATION PLEADINGS TO BE HEARD AT RESET HEARING ON NOVEMBER 25, 2014. | 1.00 | 155.00 | 155.00 |
| 145 | 11/24/14 | JRB | CONFERENCE CALL WITH M. MINTZ TO DISCUSS SCHEDULING AND STRATEGY WITH REGARD TO UPCOMING DEADLINE ON RULE 2004 MOTION OF DICKSON [.30], TRIAL ON JONES WALKER FEE APPLICATION [.20], AND OTHER MATTERS. | .20 | 340.00 | 68.00 |

| 147 | 11/25/14 | JRB | ATTEND RE-SET HEARING ON VARIOUS FEE APPLICATIONS [.50]AND ADVERSARY PROCEEDINGS [.50] | .50 | 340.00 | 170.00 |
| 199 | 01/27/15 | JRB | E-MAIL EXCHANGES WITH S. SPENCER RE FEE APPLICATION AND HOUSTON ORDER ISSUES. | .20 | 345.00 | 69.00 |
| 199 | 01/27/15 | SBM | RESEARCHING AND DRAFTING POST-TRIAL BRIEF ON JONES WALKER'S FEE APPLICATION. | 7.50 | 210.00 | 1,575.00 |
| 285 | 04/09/15 | KMJ | REVIEW NEW CASE ON FEE APP STANDARDS AND RELATED EMAIL TO COUNSEL ON PENDING FEE APP BRIEFINGS. | 1.00 | 350.00 | 350.00 |
| 352 | 06/08/15 | MAM | CONFERENCE AND CORRESPONDENCE WITH MR. BARBER REGARDING FEE APPLICATIONS | 1.00 | 290.00 | 290.00 |
| | | | | TOTAL | | 4785.00 |

### RICO-THIRD FEE APPLICATION

| Page No. | Date | Initials | Description | Hours | Billing Rate | Fees |
|---|---|---|---|---|---|---|
| 1 | 07/01/15 | JRB | E-MAIL EXCHANGE WITH S. RIPPEE RE DEFENDANTS' REQUEST TO EXCEED PAGE LIMITS ON RICO BRIEF | .20 | 345.00 | 69.00 |
| 1 | 07/07/15 | JRB | CONFERENCE CALL WITH M. MINTZ RE STRATEGY IN RICO ACTION | .20 | 345.00 | 69.00 |
| 3 | 07/06/15 | JRB | REVIEW EFP AND BHT REPLY BRIEF ON MOTION TO DISMISS IN RICO ACTION | .40 | 345.00 | 138.00 |

| 11 | 07/15/15 | JRB | REVIEW ORDER ON MOTION TO DISMISS RICO CASE | .30 | 345.00 | 103.50 |
|---|---|---|---|---|---|---|
| 11 | 07/15/15 | RPV | EMAILS FROM AND TO MS. JOHNSON, MR. MINTZ, MS MCLARTY AND MR. BARBER REGARDING STATUS OF RICO SUIT | .20 | 350.00 | 70.00 |
| 12 | 07/15/15 | MAM | CONFERENCES WITH MS. JOHNSON AND MR. BARBER REGARDING DECISION FROM JUDGE REEVES ON RICO CASE | 2.50 | 290.00 | 725.00 |
| 24 | 07/28/15 | RPV | EMAILS FROM MS. JOHNSON REGARDING RESEARCH AND STATUS OF RICO CASE | .10 | 350.00 | 35.00 |
| 28 | 07/30/15 | JRB | REVIEW AND REVISE ORDER DISMISSING RICO COUNT AND DIRECTING MEDIATION. | .90 | 345.00 | 310.50 |
| 28 | 07/30/15 | KMJ | REVIEW AND REVISE PROPOSED ORDERS IN RICO CASE FOR MEDIATION AND DISMISSAL WITHOUT PREJUDICE OF RICO COUNT | .60 | 350.00 | 210.00 |
| 35 | 08/05/15 | JRB | FINALIZE COUNT DISMISSAL AND MEDIATION ORDERS FOR SUBMISSION TO JUDGES REEVES AND ANDERSON. | .50 | 345.00 | 172.50 |
| 37 | 08/05/15 | KB | REVISE AND FINALIZE AGREED ORDER DIRECTING MEDIATION IN RICO ACTION | .50 | 155.00 | 77.50 |
| 37 | 08/05/15 | KB | REVIEW WITH J. BARBER RE FINALIZATION OF AGREED ORDER DISMISSING COUNT 1 OF RICO COMPLAINT AND AGREED ORDER | .30 | 155.00 | 46.50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | DIRECTING MEDIATION IN RICO ACTION AND PROCEDURES FOR SUBMITTING SAME TO JUDGE. | | | |
| 168 | 11/30/15 | JRB | REVIEW AND REVISE REFERRAL ORDER RE RICO SUIT. | .20 | 345.00 | 69.00 |
| 172 | 12/02/15 | JRB | REVIEW AND REVISE DISMISSAL SUMMARY JUDGMENT AND REFERRAL ORDERS IN RICO CASE AND AP 12-91 | .70 | 345.00 | 241.50 |
| 173 | 12/03/15 | JRB | FINALIZE ORDERS ON REFERRAL, RULE 12 AND RULE 56 MOTIONS | .20 | 345.00 | 69.00 |
| 181 | 12/10/15 | KB | REVIEW AGREED ORDER REFERRING RICO CASE TO BANKRUPTCY COURT AND E-MAIL CORRESPONDENCE TO JUDGE REEVES' CHAMBERS FORWARDING SAID ORDER FOR ENTRY | .40 | 155.00 | 62.00 |
| | | | | | TOTAL | 2,468.00 |

| DEFENDING FEE APPLICATIONS-THIRD FEE APPLICATION | | | | | | |
|---|---|---|---|---|---|---|
| Page No. | Date | Initials | Description | Hours | Billing Rate | Fees |
| 215 | 01/18/16 | JRB | REVIEW PLEADINGS IN CONNECTION WITH TRUSTEE'S FEE APPLICATIONS AND OBJECTIONS TO SAME AND REVISE AND REVISE [*sic*] WITNESS OUTLINES FOR TRUSTEE AND STEPHEN SMITH | 4.10 | 345.00 | 1,414.50 |
| 216 | 01/19/16 | SBM | REVIEW DOCUMENTS FOR HEARINGS ON TRUSTEE'S FEE APPLICATION. | .60 | 230.00 | 138.00 |

| 216 | 01/19/16 | KB | PACER SEARCHES TO OBTAIN CLAIMS REGISTRY AND PROOFS OF CLAIM FOR TRUSTEE'S REVIEW PRIOR TO TRIAL ON TRUSTEE'S FEE APPLICATIONS. | 1.70 | 155.00 | 263.50 |
|---|---|---|---|---|---|---|
| 216 | 01/19/16 | KB | WORK ON NOTEBOOKS FOR TRIAL ON FEE APPLICATIONS | 1.00 | 155.00 | 155.00 |
| 216 | 01/20/16 | JRB | WITNESS PREPARATION FOR TRUSTEE FEE APPLICATION TRIAL. | 1.60 | 345.00 | 552.00 |
| 216 | 01/20/16 | JRB | CONTINUE PREPARATION FOR TRIAL ON TRUSTEE'S FEE APPLICATION. | 8.30 | 345.00 | 2,863.50 |
| 217 | 01/20/16 | MAM | PREPARE FOR HEARING ON TRUSTEE AND JONES WALKER FEE APP | 1.00 | 300.00 | 300.00 |
| 217 | 01/20/16 | MAM | TRAVEL TO JACKSON FOR HEARING ON JONES WALKER AND TRUSTEE FEE APPLICATIONS | 3.50 | 300.00 | 1,050.00 |
| 217 | 01/20/16 | SBM | MEETING/ TELECONFERENCE WITH J. BARBER, K. JOHNSON AND M. MINTZ REGARDING FINAL PREPARATION FOR EVIDENTIARY HEARINGS ON JANUARY 21, 2016 | .40 | 230.00 | 92.00 |
| 217 | 01/20/16 | SBM | REVIEW AND ANALYZE CONTENT OF POTENTIAL EXHIBITS FOR EVIDENTIARY HEARING JANUARY 21, 2016 | .80 | 230.00 | 184.00 |
| 218 | 01/20/16 | KB | COMPLETE TRIAL NOTEBOOKS AND EXHIBITS FOR TRIAL ON FEE APPLICATIONS | 1.20 | 155.00 | 186.00 |
| 218 | 01/21/16 | JRB | ADDITIONAL PREPARATION FOR TRIAL | .50 | 345.00 | 172.50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | ON TRUSTEE'S FEE APPLICATION. | | | |
| 219 | 01/21/16 | JRB | ATTEND AND PARTICIPATE IN TRIAL ON TRUSTEE'S FEE APPLICATION | 3.00 | 345.00 | 1,035.00 |
| 219 | 01/21/16 | JRB | POST-TRIAL MEETING WITH TEAM TO DISCUSS BRIEFING AND STRATEGY OF TRUSTEE AND JONES WALKER FEE APPLICATIONS | 1.50 | 345.00 | 517.50 |
| 219 | 01/21/16 | MAM | PREPARE FOR AND ATTEND TRIAL ON JONES WALKER AND TRUSTEE FEE APP | 4.50 | 300.00 | 1,350.00 |
| 220 | 01/21/16 | KB | DOCUMENT REVIEW RE REQUESTING TRANSCRIPT FROM TRIAL ON FEE APPLICATIONS. | .20 | 155.00 | 31.00 |
| 220 | 01/21/16 | KB | DOCUMENT REVIEW AND BEGIN DRAFT OF TRUSTEE'S SECOND FEE APPLICATION. | 1.20 | 155.00 | 186.00 |
| 220 | 01/22/16 | MAM | TRAVEL TO NEW ORLEANS FROM JACKSON HEARINGS. | 3.50 | 300.00 | 1,050.00 |
| 221 | 01/22/16 | SBM | DISCUSS STRATEGY FOR BRIEFING JW'S SECOND FEE APPLICATION AND TRUSTEE'S FEE APPLICATION | .30 | 230.00 | 69.00 |
| 222 | 01/25/16 | KMJ | RESEARCH RE POST TRIAL BRIEF ON TRUSTEE FEE APPLICATIONS (1.00); RELATED CORRESPONDENCE TO S. MCLARTY RE SAME (.30). | 1.30 | 350.00 | 455.00 |
| 223 | 01/26/16 | JRB | E-MAIL EXCHANGES WITH JONES WALKER TEAM AND TRUSTEE RE STRATEGY FOR BRIEFING | .30 | 345.00 | 103.50 |

| | | | ON FEE APPLICATIONS (.30) (REDUCED BY .30). | | | |
|---|---|---|---|---|---|---|
| 224 | 01/26/16 | KMJ | RESEARCH AND ANALYZE LEGAL ISSUES RELATED TO POST TRIAL BRIEFING ON TRUSTEE FEE APPLICATION AND EXTENDED CORRESPONDENCE TO TEAM RE SAME (3.50). | 3.50 | 350.00 | 1225.00 |
| 231 | 02/02/16 | KMJ | BEGIN MEMO TO TEAM RE BRIEFING ISSUES ON TRUSTEE COMPENSATION APPLICATION. | 1.00 | 350.00 | 350.00 |
| 232 | 02/02/16 | SBM | CONFERENCE WITH J. BARBER REGARDING RESPONSE TO OBJECTIONS TO TRUSTEE'S COMPENSATION. | .20 | 230.00 | 46.00 |
| 232 | 02/03/16 | KMJ | ANALYSIS MEMO TO TEAM RE TRUSTEE HANDBOOK AND UST FEE GUIDELINES IMPACT ON TRUSTEE FEE APPLICATIONS POST-TRIAL BRIEF (1.00). | 1.0 | 350.00 | 350.00 |
| 235 | 02/04/16 | KMJ | PROVIDE ANALYSIS RE TRUSTEE HANDBOOK ISSUES FOR UPCOMING FEE APPLICATION BRIEFING ON TRUSTEE FEE APPLICATIONS (1.00). | 1.00 | 350.0 | 350.00 |
| 237 | 02/07/16 | SBM | PREPARE POST-TRIAL BRIEF ON 1/19/2016 HEARINGS (REDUCED BY 1.60). | 1.00 | 230.00 | 230.00 |
| 237 | 02/08/16 | SBM | PREPARING POST-TRIAL BRIEF ON FEE APPLICATIONS (REDUCED BY 3.0). | 1.10 | 230.00 | 253.00 |
| 241 | 02/10/16 | SBM | PREPARE POST-TRIAL BRIEF ON FEE | .30 | 230.00 | 69.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | APPLICATIONS (REDUCED BY .60). | | | |
| 244 | 02/11/16 | SBM | REVIEW TRANSCRIPT OF HEARING ON FEE APPLICATIONS FOR POST TRIAL BRIEF (REDUCED BY 2.30). | 1.00 | 230.00 | 230.00 |
| 247 | 02/15/16 | SBM | DRAFTING POST-TRIAL BRIEF ON TRUSTEE AND JW'S FEE APPLICATIONS (REDUCED BY 4.90). | 3.00 | 230.00 | 690.00 |
| 250 | 02/1716 | SBM | PREPARING POST-TRIAL BRIEF AND RESPONDING TO EFP/BHT OBJECTIONS ALL REGARDING FE APPLICATIONS (REDUCED BY 4.40) | 2.00 | 230.00 | 460.00 |
| 252 | 02/18/16 | SBM | PREPARING SCHEDULING ORDER ON POST-TRIAL BRIEFING. (REDUCED BY .50). | .20 | 230.00 | 46.00 |
| 254 | 02/19/16 | SBM | PREPARING POST-TRIAL BRIEF ON FEE APPLICATIONS (REDUCED BY 2.70). | 2.00 | 230.00 | 460.00 |
| 254 | 02/20/16 | SBM | PREPARE POST-TRIAL BRIEF ON FEE APPLICATIONS (REDUCED BY .80). | .70 | 230.00 | 161.00 |
| 254 | 02/21/16 | SBM | PREPARE POST-TRIAL BRIEF ON FEE APPLICATIONS (REDUCED BY .40). | .40 | 230.00 | 92.00 |
| 255 | 02/22/16 | SBM | PREPARE POST-TRIAL BRIEF ON FEE APPLICATIONS (REDUCED BY 4.90). | 2.00 | 230.00 | 460.00 |
| 257 | 02/23/16 | MAM | WORK ON FEE POST TRIAL BRIEFINGS ON FEE APPLICATIONS OF | 1.00 | 300.00 | 300.00 |
| 258 | 02/24/16 | SBM | PREPARE POST-TRIAL BRIEF ON FEE | 1.00 | 230.00 | 230.00 |

| | | | APPLICATIONS (REDUCED BY 2.00). | | | |
|---|---|---|---|---|---|---|
| 259 | 02/24/16 | MAM | WORK ON POST TRIAL BRIEFING ON JONES WALKER SECOND FEE APPLICATION AND TRUSTEE FEE APPLICATION (REDUCED BY 1.50) | 1.00 | 300.00 | 300.00 |
| 259 | 02/25/16 | SBM | PREPARE POST-TRIAL BRIEF ON FEE APPLICATIONS (WRITTEN DOWN BY 1.20). | 1.00 | 230.00 | 230.00 |
| 261 | 02/26/16 | JRB | WORK ON BRIEF IN SUPPORT OF JONES WALKER AND TRUSTEE FEE APPLICATIONS (REDUCED BY 4.30). | 2.00 | 345.00 | 690.00 |
| 261 | 02/26/16 | MAM | WORK ON FEE APPLICATION BRIEFING (REDUCED BY 2.00). | .50 | 300.00 | 150.00 |
| 263 | 02/27/16 | JRB | WORK ON BRIEF IN SUPPORT OF TRUSTEE'S FEE APPLICATION. | 5.40 | 345.00 | 1,863.00 |
| 263 | 02/27/16 | KMJ | REVIEW AND REVISE POST-TRIAL BRIEF ON JW AND TRUSTEE FEES (REDUCED BY .70). | .80 | 350.00 | 280.00 |
| 263 | 02/28/16 | KMJ | REVIEW CHANGES TO POST-TRIAL BRIEF ON THIRD FEE APPLICATION AND RELATED CORRESPONDENCE RE ECONOMIC FACTORS NEEDED TO BE ADDED. | 2.00 | 350.00 | 700.00 |
| 263 | 02/29/16 | KMJ | REVIEW AND REVISE POST-TRIAL BRIEF ON JW FEES AND TRUSTEE'S FEES TO INCORPORATE RELATED ECONOMIC FACTORS AN [sic] SELECT EXHIBITS TO SUPPORT SAME (REDUCED BY .80) | 1.20 | 350.00 | 420.00 |

| 265 | 02/29/16 | KB | ELECTRONICALLY FILE POST-TRIAL BRIEF IN FEE APPLICATIONS (REDUCED BY .30). | .20 | 155.00 | 31.00 |
| | | | | | TOTAL | 22,834.00 |

| LEGAL RESEARCH REGARDING *Bank of America, N.A. v. Caulkett* THIRD FEE APPLICATION | | | | | | |
|---|---|---|---|---|---|---|
| Page No. | Date | Initials | Description | Hours | Billing Rage | Fees |
| 8 | 07/09/15 | EJA | RESEARCH REGARDING EFFECT OF CAULKETT CASE (CANNOT STRIP LIENS ON WHOLLY UNDER WATER LIENS IN CHAPTER 7 CASES) IN CHAPTER 13 CASES | 2.10 | 350.00 | 735.00 |
| 10 | 07/14/15 | EJA | CONTINUE RESEARCH REGARDING LIEN STRIPPING IN CHAPTER 13 VIA SCOTUS CAULKETT CASES. | 2.10 | 350.00 | 735.00 |
| 12 | 07/15/15 | EJA | READ AND ANALYZE DEWSNUP CASE AND ITS EFFECT ON LIEN STRIPPING | 1.50 | 350.00 | 525.00 |
| 16 | 07/17/15 | EJA | RESEARCH TO DETERMINE EFFECT OF SCOTUS CAULKETT CASE ON BORROWER CASE 1322(C), 1322(B)(5), AND 1325 REGARDING MODIFICATION OF HOME MORTGAGE DEBT AND CONFIRMATION OF A PLAN THAT WOULD MODIFY A HOME MORTGAGE | 2.00 | 350.00 | 700.00 |
| 29 | 07/30/15 | EJA | REVIEW RESEARCH REGARDING WHETHER A WHOLLY UNDER SECURED LIEN MAY BE | .70 | 350.00 | 245.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | STRIPPED IN A CHAPTER 13 CASE | | | |
| 31 | 07/31/15 | EJA | RESEARCH AND WRITING MEMORANDUM REGARDING WHETHER SCOTUS CAULKETT CASE (CANNOT STRIP WHOLLY UNDER WATER LIEN IN A CHAPTER 7 CASE) | 2.70 | 350.00 | 945.00 |
| 79 | 09/14/15 | EJA | RESEARCH 9TH CIRCUIT CASES ON LIEN STRIPPING IN CHAPTER 13 CASES IN CONNECTION WITH 2015 BORROWER CASE (1.10) | 1.10 | 350.00 | 385.00 |
| 147 | 11/11/15 | EJA | BEGIN RESEARCH IN ORDER TO ADVISE KRISTINA JOHNSON REGARDING LIEN STRIPPING IN CHAPTER 13 CASES | 1.10 | 350.00 | 385.00 |
| 150 | 11/12/15 | EJA | CONTINUE RESEARCH ON LIEN STRIPPING IN CHAPTER 13 CASES (2.70) | 2.70 | 350.00 | 945.00 |
| 238 | 02/08/16 | EJA | RESEARCH PROCEEDING IN LIEN STRIPPING CONTESTED MATTERS REGARDING MOTIONS TO STRIP BOTH FIRST MORTGAGE LIEN AND CHFS'S LIEN(1.00); LEGAL RESEARCH REGARDING LIEN STRIPPING LEGAL ISSUES IN CHAPTER 13 CASES (1.10) | 2.10 | 350.00 | 735.00 |
| | | | | | TOTAL | 6,335.00 |

**##END OF ORDER##**