

SO ORDERED,

Judge Neil P. Olack
United States Bankruptcy Judge
Date Signed: February 27, 2018

**The Order of the Court is set forth below. The docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

| | |
|---|---|
| **COMMUNITY HOME FINANCIAL SERVICES, INC.,** | **CASE NO. 12-01703-NPO** |
| **DEBTOR.** | **CHAPTER 11** |

## MEMORANDUM OPINION AND ORDER ON REMAND REGARDING FEE APPLICATIONS OF DEREK A. HENDERSON AND WELLS MARBLE & HURST, PLLC, INCLUDING:  FOURTH APPLICATION OF ATTORNEY FOR THE DEBTOR FOR ALLOWANCE OF FEES AND ALLOWANCE OF COSTS AND EXPENSES (BANKR. DKT. 317); FIFTH APPLICATION OF ATTORNEY FOR THE DEBTOR FOR ALLOWANCE OF FEES AND ALLOWANCE OF COSTS AND EXPENSES (BANKR. DKT. 443); AND APPLICATION OF ATTORNEY FOR THE DEBTOR FOR ALLOWANCE OF FEES AND ALLOWANCE OF COSTS AND EXPENSES (BANKR. DKT. 398)

This matter came before the Court[1] on the Orders issued by the U.S. District Court

for the Southern District of Mississippi, Northern Division (the "District Court") in

*Edwards Family Partnership, LP; Beher Holdings Trust v. Kristina M. Johnson; Derek A.*

---

[1] On May 23, 2012, the above-referenced bankruptcy case (the "Bankruptcy Case") was assigned to Bankruptcy Judge Edward Ellington.  On February 1, 2017, the Bankruptcy Case and all related adversary proceedings were transferred to the above-signed Bankruptcy Judge.  (Bankr. Dkt. 1609).  Citations to the record are as follows: (1) citations to docket entries in the Bankruptcy Case are cited as "(Bankr. Dkt. ___)"; (2) citations to docket entries in adversary proceeding 12-00091-NPO are cited as "(HIL Adv. Dkt. ___)"; (3) citations to docket entries in adversary proceeding 13-00104-NPO are cited as "(MPF Adv. Dkt. ___)"; and (4) citations to docket entries in other adversary proceedings are cited by the case number followed by the docket number.

*Henderson*, No. 3:15-cv-00915-CWR-LRA (S.D. Miss. Sept. 11, 2017) (the "Henderson Remand Order") and *Edwards Family Partnership, LP; Beher Holdings Trust v. Kristina M. Johnson; Wells, Marble & Hurst, PLLC*, No. 3:16-cv-00085-CWR-LRA (S.D. Miss. Sept. 11, 2017) (the "WMH Remand Order" or, together with the Henderson Remand Order, the "Remand Orders"), remanding two (2) contested matters in the Bankruptcy Case for additional findings.  In the appeals, Edwards Family Partnership, LP ("EFP") and Beher Holdings Trust ("BHT") challenge:  (1) the Memorandum Opinion on the Fifth Application of Attorney for the Debtor for Allowance of Fees and Allowance of Costs and Expenses (the "Henderson Fee Opinion") (Bankr. Dkt. 1227) and Final Judgment on the Fifth Application of Attorney for the Debtor for Allowance of Fees and Allowance of Costs and Expenses (Bankr. Dkt. 1228) (the "Henderson Final Judgment") issued on December 7, 2015; and (2) the Memorandum Opinion on the Fourth and Fifth Fee Applications of Attorneys for the Debtor, Wells Marble & Hurst, PLLC (the "WMH Fee Opinion") (Bankr. Dkt. 1272) and Final Judgment on the Fourth and Fifth Fee Applications of Attorneys for the Debtor, Wells Marble & Hurst, PLLC (the "WMH Final Judgment") (Bankr. Dkt. 1273) issued on January 27, 2016.

## I.    Henderson

### A.    Henderson Final Judgment

In the Henderson Final Judgment, the Bankruptcy Court granted in part and denied in part the Fifth Application of Attorney for the Debtor for Allowance of Fees and Allowance of Costs and Expenses (the "Henderson Fee App") (Bankr. Dkt. 443) filed by Derek A. Henderson ("Henderson").  In the Henderson Fee App, Henderson requested compensation of $46,595 and expenses of $5,169.44 in connection with his representation

of the debtor-in-possession, Community Home Financial Services, Inc. ("CHFS"), from September 2, 2013 through December 28, 2013.[2]  In the Henderson Final Judgment, the Bankruptcy Court awarded Henderson compensation of $43,542.50 and expenses of $5,169.44 pursuant to 11 U.S.C. § 330.  This compensation award did not include $715 that Henderson voluntarily had agreed to deduct from his fees or $2,337.50 that the Bankruptcy Court determined was not compensable under 11 U.S.C. § 330(a)(4)(A)(ii)(I). (Henderson Fee Op. at 6 & 24).

EFP and BHT appealed the Bankruptcy Court's award of fees and expenses on the ground that Henderson's services were not reasonably likely to benefit the estate at the time the services were performed.  These services included:  (1) his opposition of the motion to appoint a chapter 11 trustee filed by EFP and BHT; (2) his pursuit of a plan of reorganization that released the debtor's principal, William D. Dickson ("Dickson"), from liability; and (3) his initiation and litigation of adversary proceedings 12-00091, 12-00109, and 13-00104 against EFP and BHT.

**B.    Henderson Remand Order**

In the Henderson Remand Order, the District Court affirmed the Bankruptcy Court's decision awarding fees and expenses to Henderson "for time spent opposing a Chapter 11 trustee and proposing an ultimately unsuccessful plan of reorganization." (Henderson Remand Order at 1).  As to the remaining ground posited by EFP and BHT on appeal, the District Court ruled that "additional findings are necessary on how *exactly* the Estate was reasonably likely to benefit from the adversary proceedings."  (*Id.*).

Though the Bankruptcy Court is cloaked with broad discretion, *In re Woerner*, 783 F.3d 266, 276 (5th Cir. 2015) (en banc) requires that court to

---

[2] Henderson withdrew as counsel for CHFS on March 6, 2014.  (Bankr. Dkt. 559).

evaluate the likelihood of benefit to the estate, rather than an individual debtor, when the services were rendered. At least from this vantage point, the record testimony and briefing suggest that the benefits to the Estate were illusory because any recovery from the Edwards entities would be returned right back to the Edwards entities—only now with hundreds of thousands of dollars having been lost to the Estate's attorneys and experts.

Henderson presses that his fees were justified because the Estate "disputed and questioned" *some* of the money owed to the Edwards entities. But the record is not clear as to whether disputing that debt would actually materially aid the Estate's other creditors, given the *aggregate* debt owed to the Edwards entities. Setting aside all theoretical justifications for an Estate to sue a majority creditor, on the facts of this particular case, were the Estate's adversary proceedings reasonably likely to benefit anyone other than the Estate's own professionals?

(Henderson Remand Order at 1-2) (footnote omitted).

## II.   WMH

### A.   WMH Final Judgment

In the WMH Final Judgment, the Bankruptcy Court granted in part and denied in part the Fourth Application of Attorney for the Debtor for Allowance of Fees and Allowance of Costs and Expenses (the "WMH Fourth Fee App") (Bankr. Dkt. 317) filed by Roy H. Liddell ("Liddell") and Jonathon Bissette ("Bissette") of the law firm of Wells Marble & Hurst, PLLC ("WMH") on September 4, 2013, and the Application of Attorney for the Debtor for Allowance of Fees and Allowance of Costs and Expenses (together with the WMH Fourth Fee App, the "WMH Fee Apps") (Bankr. Dkt. 398) filed by Liddell and Bissette of WMH on November 12, 2013.

In the WMH Fee Apps, WMH requested compensation of $124,867 and expenses of $4,135.59 in connection with its representation of CHFS in the Bankruptcy Case from May 1, 2013 through October 31, 2013.[3]  In the WMH Final Judgment, the Bankruptcy

---

[3] WMH withdrew as counsel for CHFS on November 13, 2013.  (Bankr. Dkt. 401).

Court awarded WMH compensation of $98,730 and expenses of $4,135.59 pursuant to 11 U.S.C. § 330. This compensation award did not include fees that the Bankruptcy Court determined was not compensable under 11 U.S.C. § 330(a)(4)(A)(ii)(I). (WMH Fee Op. at 59).

EFP and BHT appealed the Bankruptcy Court's award of fees and expenses to WMH on numerous grounds. EFP and BHT argued that the Bankruptcy Court abused its discretion by holding that WMH was retained as special counsel pursuant to 11 U.S.C. § 327(e) and also by concluding that WMH did not hold an interest adverse to the estate notwithstanding its simultaneous representation of CHFS and Dickson. Additionally, EFP and BHT argued that WMH's services in filing and litigating adversary proceedings 12-00091 and 12-00109 against EFP and BHT were not reasonably likely to benefit the estate at the time the services were performed.

### B.   WMH Remand Order

After noting the companion appeal of the Henderson Final Judgment, the District Court in the WMH Remand Order concluded that "this case must also be remanded to the Bankruptcy Court for additional findings on how exactly the Estate was reasonably likely to benefit from the adversary proceedings and whether those benefits (if any) would be realized by the Edwards entities." (WMH Remand Order at 1). The District Court reserved EFP's and BHT's remaining arguments "for adjudication in a subsequent appeal, should one be necessary." (*Id.*).

## III.   Remand Hearing

Although EFP and BHT raised multiple issues in their companion appeals to the District Court, the Remand Orders require the Court to render additional findings only as

to the likelihood that services provided in connection with the adversary proceedings benefitted the estate under the standard adopted by the Fifth Circuit in *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266 (5th Cir. 2015).  To that end, the Court held a hearing on November 7, 2017 (the "Remand Hearing").  At the Remand Hearing, Jim F. Spencer, Jr. and Stephanie M. Rippee appeared on behalf of EFP and BHT; Henderson appeared on his own behalf; Liddell appeared on behalf of WMH; and Kristina M. Johnson, the duly appointed chapter 11 trustee (the "Trustee"), appeared on her own behalf.  At the beginning of the Remand Hearing, the Trustee announced that she held no position on the matter and would abide by the Court's decision.  The Court then heard testimony from Henderson and Liddell.  Henderson introduced eleven (11) exhibits into evidence, and WMH introduced two (2) exhibits into evidence.  EFP and BHT presented no testimony but introduced two (2) exhibits into evidence.[4]  Having considered the pleadings, exhibits, and evidence, the Court finds as follows:[5]

## Jurisdiction

The Court has jurisdiction over the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Notice of the Remand Hearing was proper under the circumstances.

---

[4] The exhibits introduced by Henderson are cited as "(H. Ex. __)"; the exhibits introduced by WMH are cited as "(WMH Ex. __)"; and the exhibits introduced by EFP and BHT are cited as "(EFP & BHT Ex. __)".

[5] These findings of fact and conclusions of law are made pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.  To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such.  Moreover, to the extent any conclusion of law is construed as a finding of fact, it is adopted as such.

**Facts**

In the Henderson Fee Opinion and the WMH Fee Opinion, the Bankruptcy Court found that the adversary proceedings filed by CHFS were for the benefit of the estate and necessary for the administration of the bankruptcy estate, largely because the status of EFP and BHT as creditors, whether secured or unsecured, would impact the provisions of CHFS's plan of liquidation.  (Henderson Fee Op. at 19; WMH Fee Op. at 39).  At that point, however, the adversary proceedings had not yet been tried, and the Bankruptcy Court was "of no opinion as to the validity of [CHFS]'s claims in the adversary proceedings." (Henderson Fee Op. at 20; WMH Fee Op. at 39).

The adversary proceedings at issue in the Remand Orders were filed by CHFS and Dickson on August 24, 2012 (Adv. Proc. 12-00091), October 24, 2012 (Adv. Proc. 12-00109), and November 26, 2013 (Adv. Proc. 13-00104).  After this case was reassigned to the above-signed bankruptcy judge, the Court, in the spring of 2017, issued a series of orders severing and consolidating claims asserted in these adversary proceedings and certain contested matters filed in the Bankruptcy Case that shared common questions of fact, law, witnesses, and exhibits.  Of relevance to the Remand Orders, the Court severed and consolidated all claims alleged by CHFS against EFP and BHT in adversary proceeding 12-00109 with CHFS's claims in adversary proceeding 13-00104 and, conversely, severed and consolidated all claims alleged by Dickson against EFP and BHT in adversary proceeding 13-00104 with Dickson's claims in adversary proceeding 12-00109.  (Adv. Proc. 12-00109-NPO, Dkt. 111; MPF Adv. Dkt. 55).  As a result, the adversary proceedings at issue in the Remand Orders are now adversary proceeding 12-00091-NPO (the "Home Improvement Loans Adversary") and adversary proceeding 13-

00104-NPO (the "Mortgage Portfolios Adversary" or, together with the Home Improvement Loans Adversary, the "Adversary Proceedings").  The Court also consolidated numerous contested matters filed in the Bankruptcy Case into the Adversary Proceedings.  (HIL Adv. Dkt. 285; MPF Adv. Dkt. 57).  These contested matters included the following objections to proofs of claim filed by CHFS and the responses filed by EFP and BHT:[6]

> Objection to Claim of Beher Holdings Trust (Claim No. 4) and to Claim of Edwards Family Partnership (Claim No. 5) (the "Objection to POC 4 & 5") (Bankr. Dkt. 162) filed by CHFS;

> Edwards Family Partnership, LP and Beher Holdings Trust's Responses to Objection to Proof of Claim of Beher Holdings Trust No. 4 and to Proof of Claim of Edwards Family Partnership, LP No. 5 (DK #162) (Bankr. Dkt. 208) filed by EFP and BHT;

> Objection to Claims of Edwards Family Partnership (Claim No. 6 and Claim No. 9) (the "Objection to POC 6 & 9") (Bankr. Dkt. 163) filed by CHFS;

> Edwards Family Partnership, LP's Responses to Objection to Proof of Claim of Edwards Family Partnership, LP No. 6 and to Proof of Claim of Edwards Family Partnership, LP No. 9 (DK #163) (Bankr. Dkt. 209) filed by EFP;

> Objection to Claims of Beher Holdings Trust (Claim No. 7 and Claim No. 8) (the "Objection to POC 7 & 8") (Bankr. Dkt. 164) filed by CHFS; and

> Beher Holdings Trust's Responses to Objection to Proof of Claim of Beher Holdings Trust No. 7 and to Proof of Claim of Beher Holdings Trust No. 8 (Dk #164) (Bankr. Dkt. 210) filed by BHT.

At a hearing on the confirmation of the First Amended Chapter 11 Plan of Liquidation of the Estate of Community Home Financial Services, Inc. Proposed by the

---

[6] In addition to the objections to proofs of claim filed by CHFS and the responses filed by EFP and BHT, other contested matters consolidated in the Adversary Proceedings included EFP's and BHT's objection to the Trustee's use of their purported cash collateral. (Bankr. Dkt. 901, 906, 919, 926, 927, 1023 & 1024).

Trustee, Kristina M. Johnson Dated as of February 1, 2017 (the "Plan") (Bankr. Dkt. 1607) held on March 23, 2017 (the "Confirmation Hearing"), counsel for the Trustee[7] alleged in his opening statement that confirmation of the Plan would preclude "having to undo the Gordian knot[8] and untangle the claims" of CHFS and EFP and BHT in the Adversary Proceedings.  (H. Ex. 11 at 15).  Counsel for EFP and BHT, however, stated that the Confirmation Hearing was premature and urged the Bankruptcy Court to delay the Confirmation Hearing until after resolution of the Adversary Proceedings.  In general, he argued that the legal issues raised in the Adversary Proceedings had to be determined before the Court could consider any Plan providing for payment of administrative expenses, priority claims, and unsecured claims because all loan proceeds and other cash in the Trustee's possession either belonged to the "Edwards Entities" or constituted their cash collateral.  (H. Ex. 11 at 20).  Needless to say, Dr. Charles Edwards ("Dr. Edwards") refused to consent to the Trustee's use of these assets to pay any administrative expenses or any claims other than those filed by the "Edwards Entities."  "We think we're entitled to that hearing on those issues first . . . before this plan goes forward."  (*Id.*).  In response, counsel for the Trustee pointed out that EFP and BHT consistently had objected to payment of professional fees incurred in pursuit of the Adversary Proceedings and that confirmation of the Plan would result in the settlement or resolution of the Adversary Proceedings, thus curtailing future administrative expenses.  (*Id.* at 26).  Counsel for EFP and BHT

---

[7] At the Confirmation Hearing, the Trustee was represented by Mark A. Mintz, who did not appear at the Remand Hearing.

[8] The legend of the Gordian knot is that "a knot tied by Gordius, king of Phrygia, [was] held to be capable of being untied only by the future ruler of Asia, and [was] cut by Alexander the Great with his sword."  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 501 (10th ed. 1996).

nonetheless argued that the "Court's rulings on [the Adversary Proceedings] make a whole lot of difference about . . . where we end up at the end of the day, but we're entitled to that." (*Id.* at 29). After considering the matter, the Court granted EFP's and BHT's request to delay the Confirmation Hearing until after resolution of the Adversary Proceedings.[9] At the Remand Hearing, Henderson introduced into evidence a transcript of the Confirmation Hearing to show that in a different context, EFP and BHT have agreed that the Adversary Proceedings were necessary for the administration of the estate.

**Trial of the Adversary Proceedings**

The Court held the consolidated trial of the Adversary Proceedings, adversary proceeding 15-00080 (filed by the Trustee after Henderson's and WMH's withdrawal as counsel), and numerous contested matters over five (5) non-consecutive days, beginning October 30, 2017, and ending November 27, 2017 (the "Adversary Trial"). Henderson introduced into evidence copies of the original complaints filed in adversary proceeding 12-00109 (H. Ex. 8), the Home Improvement Loans Adversary (H. Ex. 6), and the Mortgage Portfolios Adversary (H. Ex. 9) and compared them to the pretrial orders filed in the Mortgage Portfolios Adversary (H. Ex. 10) and the Home Improvement Loans Adversary (H. Ex. 7). Henderson testified that many of the same issues raised in the original complaints that he and WMH filed were actually tried during the Adversary Trial. He pointed specifically to paragraph 15 of the original complaint filed in adversary

---

[9] After announcing its decision, the Court reminded counsel for EFP and BHT that Dr. Edwards' choice to litigate the Adversary Proceedings rather than to pursue resolution of the issues through confirmation of a plan of liquidation was an expensive one. (H. Ex. 11 at 45).

proceeding 12-00109 and pages five and six of the original complaint filed in the Mortgage Portfolios Adversary.

After the Adversary Trial, the Bankruptcy Court resolved all issues regarding the claims of CHFS, Dr. Edwards, EFP, and BHT in the Memorandum Opinion and Order on Third Amended Complaint in Adversary Proceeding 12-00091-NPO; Consolidated Amended Complaint in Adversary Proceeding 13-00104-NPO; Amended Complaint for Turnover, Recovery or Property Transferred Post-Petition, Damages, Declaratory Relief, Equitable Subordination, and Other Relief in Adversary Proceeding 15-00080-NPO; and Consolidated Contested Matters (the "Global Opinion")[10] (HIL Adv. Dkt. 357; MPF Adv. Dkt. 137; Bankr. Dkt. 2182) and the Final Judgment on Third Amended Complaint in Adversary Proceeding 12-00091-NPO; Consolidated Amended Complaint in Adversary Proceeding 13-00104-NPO; Amended Complaint for Turnover, Recovery or Property Transferred Post-Petition, Damages, Declaratory Relief, Equitable Subordination, and Other Relief in Adversary Proceeding 15-00080-NPO; and Consolidated Contested Matters (HIL Adv. Dkt. 358; MPF Adv. Dkt. 138; Bankr. Dkt. 2183), issued contemporaneously with this Remand Opinion. The proofs of claim filed by EFP and BHT in the Bankruptcy Case and the positions adopted by EFP and BHT in the Adversary Proceedings differ greatly from the findings of facts and conclusions of law of the Court in the Global Opinion. Because of the considerable length of the Global Opinion,[11] only the

---

[10] The term "Global Opinion" is used because the Adversary Trial involved all claims asserted by or against EFP and BHT. On December 7, 2017, a separate trial in adversary proceeding 14-00030-NPO was held involving all claims asserted against William D. Dickson, the principal of CHFS, his related entities, and Reshonda Rhodes, a former employee of CHFS.

[11] The Global Opinion consists of 214 pages.

Court's rulings that are relevant to the Remand Orders are summarized below, beginning with a brief outline of the proofs of claim filed by EFP and BHT.[12]

EFP and BHT each filed three (3) proofs of claim in the Bankruptcy Case.[13]  CHFS objected to all of EFP's and BHT's proofs of claim, thereby initiating the claims-resolution process contemplated by Rule 9014 of the Federal Rules of Bankruptcy Procedure, which governs contested matters.  As noted previously, the Court consolidated these contested matters into the Adversary Proceedings.

**EFP's Proofs of Claim**

EFP filed proof of claim five ("POC 5-1"), proof of claim six ("POC 6-1"), and proof of claim nine ("POC 9-1").  EFP filed POC 5-1 in the amount of $18,390,660.32 for "Money Loaned" to CHFS for the purchase of mortgages, known as "Home Improvement Loans."  EFP alleged that it held a perfected security interest in the Home Improvement Loans.  CHFS challenged the status, validity, and amount of EFP's claim in the Objection to POC 4 & 5 and in the Home Improvement Loans Adversary.  A discussion of the Home Improvement Loans Adversary can be found on pages 97-147 of the Global Opinion.

The Court concluded that EFP's security interest was unperfected and, therefore, EFP is a general, unsecured creditor of the bankruptcy estate with respect to the Home Improvement Loans.  The Court also determined that CHFS owed EFP $4,458,124 as of

---

[12] This discussion includes only a general summary of the Global Opinion, and any inconsistency between the Global Opinion and this Remand Opinion should be resolved in favor of the Global Opinion.

[13] Dr. Edwards, individually, did not file a proof of claim in the Bankruptcy Case. (EFP & BHT Ex. 2).

May 23, 2012, the date the Bankruptcy Case was commenced. These conclusions of law are reached on page 143 of the Global Opinion.

EFP filed POC 6-1 and POC 9-1 in the nearly identical amounts of $7,101,094.35 and $7,101,094.55, respectively. (Global Op. at 50). The basis for these claims was a series of six (6) purported "joint venture" agreements, related to six (6) portfolios of mortgages, known individually as "Portfolios #1-#6." CHFS challenged the validity and amount of EFP's claim in the Objection to POC 6 & 9 and in the Mortgage Portfolios Adversary. A discussion of the Mortgage Portfolios Adversary can be found on pages 147-75 of the Global Opinion.

The Court concluded that the transactions as to Portfolios #1-#6 are loans, not true "joint ventures," and that CHFS owns Portfolios #1-#6. Moreover, the Court found that as of May 23, 2012, EFP held a secured claim of $1,728,804 as to Portfolios #1 and #2, to the extent the proceeds could be traced to funds of the estate. The Court ruled that EFP's loans to CHFS for the purchase of Portfolios #3-#6 are unenforceable under Mississippi's Statute of Frauds, MISS. CODE ANN. § 15-3-1(d). These conclusions of law appear on pages 170-71 of the Global Opinion.

**BHT's Proofs of Claims**

BHT filed proof of claim four ("POC 4-1"), proof of claim seven ("POC 7-1"), and proof of claim eight ("POC 8-1"). BHT filed POC 4-1 in the amount of $18,390,660.32 for "Money Loaned" to CHFS. POC 4-1 is almost identical to EFP's POC 5-1, and both POC 4-1 and POC 5-1 name EFP and BHT jointly as the creditor. Both POC 4-1 and POC 5-1 relate to the Home Improvement Loans. Like EFP, BHT maintained that it held a perfected security interest in the Home Improvement Loans. CHFS challenged the status,

validity, and amount of BHT's claim in the Objection to POC 4 & 5 and in the Home Improvement Loans Adversary.  The Court found that BHT's security interest was unperfected and that CHFS owed BHT $13,374,372 as of May 23, 2012, as a general, unsecured claim.  These conclusions of law are reached on page 143 of the Global Opinion.

BHT filed POC 7-1 and POC 8-1 in the nearly identical amounts of $4,917,547.35 and $4,917,547.34, respectively.  The basis for these claims was a seventh purported "joint venture" agreement, related to a mortgage portfolio known as Portfolio #7.  CHFS challenged the status, validity, and amount of BHT's claim in the Objection to POC 7 & 8 and the Mortgage Portfolios Adversary.  The Court found that the business arrangement between CHFS and BHT did not constitute a true "joint venture," that BHT owned Portfolio #7, and CHFS owed nothing to BHT other than traceable post-petition collections, less CHFS's fees for servicing the mortgages.  These conclusions of law appear on pages 171 of the Global Opinion.

## Discussion

In *In re Woerner*, the Fifth Circuit joined the majority of Circuit Courts in adopting a prospective test for determining whether professional services are compensable.  783 F.3d at 276.  The Fifth Circuit provided the following list that bankruptcy courts should consider in determining "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered" pursuant to 11 U.S.C. § 330(a)(3)(C):

> the probability of success at the time the services were rendered, the reasonable costs of pursuing the action, what services a reasonable lawyer or legal firm would have performed in the same circumstances, whether the attorney's services could have been rendered by the Trustee and his or her staff, and any potential benefits to the estate (rather than to the individual debtor).

*In re Woerner*, 783 F.3d at 276.  In his concurring opinion, Circuit Judge E. Grady Jolly, Jr., synthesized the new legal standard as follows:

> A bankruptcy court's analysis of attorney fee awards ordinarily should begin and end by applying the statutory language in 11 U.S.C. § 330.  This analysis usually can be reduced as follows:  (1) a court is permitted, but not required, to award fees under § 330 for services that could reasonably be expected to provide an identifiable, material benefit to the estate at the time those services were performed (or contributed to the administration of the estate); and (2) courts may consider all other relevant equitable factors, as stated in § 330(a)(3), including as one of those factors, when appropriate, whether a professional service contributes to a successful outcome.

*Id.* at 278.

Dr. Edwards opposed the Henderson Fee App and the WMH Fee Apps on the ground that the professionals in the Bankruptcy Case were spending his money to dispute his claims that ultimately will have to be paid back to him as the largest creditor in the Bankruptcy Case.  (EFP & BHT Ex. 1).  Dr. Edwards opined that the Adversary Proceedings were not likely to benefit anyone other than the professionals.  In the Henderson Final Judgment and the WMH Final Judgment, the Bankruptcy Judge previously assigned to this matter was limited by a prospective analysis of the services rendered by Henderson and WMH in connection with the Adversary Proceedings.  The Adversary Proceedings raised complicated issues potentially requiring interpretation of the laws of Costa Rica, Bermuda, British Virgin Islands, Maryland, Mississippi, and California.  At that juncture, the previous Bankruptcy Judge found that the legal services rendered in pursuit of the Adversary Proceedings were beneficial to the estate but was unable to quantify the amount of the benefit.  With the advantage of hindsight from having tried the Adversary Trial, the Court is able now to make a comparison of the amount and status of EFP's and BHT's proofs of claim before and after the Adversary Trial

demonstrates the extent to which the unencumbered assets of the estate increased because of the initiation and pursuit of the Adversary Proceedings:

| EFP & BHT's Proofs of Claim | | Global Opinion |
|---|---|---|
| BHT POC 4-1 | $18,390,660.32 Secured | $13,374,372 Unsecured |
| EFP POC 5-1 | $18,390,660.32 Secured | $4,458,124 Unsecured |
| EFP POC 6-1 | $7,101.094.35 Secured | $0 |
| BHT POC 7-1 | $4,917,547.35 Secured | Post-Petition Collections, Less CHFS's Servicing Fees |
| BHT POC 8-1 | $4,917,547.34 Secured | $0 |
| EFP POC 9-1 | $7,101,094.55 Secured | $1,728,804 Secured |

(Global Op. at 209-14). Before the Adversary Trial, EFP and BHT argued that the estate did not have sufficient uncontested funds to pay any administrative expenses, priority claims, or unsecured claims. After the Adversary Trial, these claims may now be paid, as may be allowed by the Court, from the unencumbered assets of the estate. The Court thus finds that the Adversary Proceedings produced identifiable, tangible, and material benefits to the estate.

Notwithstanding the reduction and reclassification of their claims, EFP and BHT remain the largest creditors of the estate. For that reason, the Court considers the main thrust of EFP's and BHT's argument—that the Adversary Proceedings were not beneficial to the estate because all assets (or nearly all assets) will have to be paid to the "Edwards Entities."

By referring to EFP and BHT as the "Edwards Entities," Dr. Edwards ignores the separate identities of EFP and BHT. The advantage of this tactic is the suggestion that there is only a single creditor in the Bankruptcy Case. As found in the Global Opinion,

however, EFP and BHT are separate entities with different claims against the estate. Moreover, EFP and BHT do not share a common relationship with Dr. Edwards.

EFP is a family limited partnership formed under the laws of Delaware. Dr. Edwards is the general partner of EFP. Unlike EFP, BHT is not an entity "controlled" by Dr. Edwards. BHT is an offshore trust formed under Bermuda law. The trustee of BHT is not Dr. Edwards but Church Bay Trust Co., a Bermuda company. Under Bermuda law, Dr. Edwards is the "settlor" of BHT and acts as Church Bay Trust Co.'s investment advisor, but Church Bay Trust Co. (not Dr. Edwards) controls BHT. Dr. Edwards, in his role as the settlor of BHT, has only limited powers over BHT[14] under Bermuda trust law. *See* The Trusts (Special Provisions Act) 1989 § 2A(2)(3); (Global Op. at 31 & 134 n.47). Dr. Edwards' description of EFP and BHT as "Edwards Entities" is inaccurate and misleading. Because of the separate legal identities of EFP and BHT from each other and from Dr. Edwards, it would have been a breach of the Trustee's statutory and fiduciary duties to treat them as if they were merely alter egos of Dr. Edwards.

The Court finds that EFP's and BHT's reliance on *In re Waterways Barge Partnership*, 104 B.R. 776 (Bankr. N.D. Miss. 1989), is misplaced. There, the bankruptcy court denied the confirmation of a plan of reorganization because certain other plan provisions violated the absolute priority rule. *See* 11 U.S.C. § 1129(b)(2)(B). Pursuant to the absolute priority rule, "[i]f the dissenting unsecured class is not being paid in full with interest, when the payments are to be paid over time, then a junior class may retain or receive nothing." *In re Waterways Barge P'ship*, 104 B.R. at 786. The plan violated the

---

[14] Dr. Edwards testified at the Adversary Trial that Church Bay Trust Co. authorized him to represent BHT in the Adversary Proceedings. (Global Op. at 149).

absolute priority rule because the debtor proposed to continue the existence of the limited partnership with the limited partners retaining their certificates of ownership, which the bankruptcy court concluded could have some value in the future. In that vein, the bankruptcy court noted that the debtor's announced intention to pursue litigation against the U.S. Department of Transportation, Maritime Administration ("MARAD"), its largest creditor, would enhance the value of the limited partnership interests in violation of the absolute priority rule unless "any recovery would . . . be paid over to MARAD in reduction of its unsecured claim." *Id.* at 787. Under that later scenario, the bankruptcy court surmised that "the only persons that would benefit . . . are the debtor's attorneys." *Id.* EFP and BHT rest their argument on this supposition by the bankruptcy court in *In re Waterways Barge P'ship*.

The Court finds that the facts of this matter are distinguishable from those in *In re Waterways Barge P'ship*. Here, the Confirmation Hearing was delayed at EFP's and BHT's request until after resolution of the Adversary Proceedings.[15] In *In re Waterways Barge P'ship*, the debtor proposed to retain certain causes of action against MARAD in its proposed plan. The Court is unaware of any challenge by EFP and BHT to the Plan based on the absolute priority rule, as was made by MARAD. Moreover, the Trustee's Plan proposes to liquidate, not reorganize, CHFS, and there are two different creditors, EFP and BHT, with significant claims against the estate, not one. Administrative expense, priority,

---

[15] Delaying the Confirmation Hearing until after the resolution of the Adversary Proceedings proved to be appropriate. Given the breadth and impact of the Global Opinion, the Court entered an order in the Bankruptcy Case rescinding the Order Approving the First Amended Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of the First Amended Plan of Reorganization Combined with a Notice of Hearing (Bankr. Dkt. 1556), which, in effect, began the confirmation process anew. (Bankr. Dkt. 2161).

and unsecured creditors will receive a material benefit from the rulings reached in the Global Opinion. Finally, the potential causes of action against MARAD in *In re Waterways Barge P'ship* under the Tucker Act, the Federal Torts Claim Act, and the Administrative Procedures Act, were wholly unrelated to the administration of the case. Here, the Adversary Proceedings were a necessary part of the claims-resolution process.

Under 11 U.S.C. § 330(a)(3)(C), the services of an attorney that promote the bankruptcy process and contribute to the administration of the estate are compensable regardless if they provided an economic benefit to the estate. In other words, compensation in a chapter 11 case is not limited to services that actually increase the assets of the estate. There are many critical functions performed by professionals in the course of a chapter 11 case that may not result in a material benefit to the estate but are required as a matter of bankruptcy and other law.

Determining the nature of the business relationship between Dr. Edwards and Dickson was complicated by the absence of written agreements and the presence of pervasive errors in the written agreements that did exist. As succinctly stated by Trustee's counsel at the Confirmation Hearing, determining the nature of the business relationship presented the Court with a "Gordian knot." Counsel for EFP and BHT demanded at the Confirmation Hearing that the Court cut the Gordian knot by requiring the prosecution of the Adversary Proceedings. In response to the statement by the Trustee's counsel, "I don't think we have to go forward with [the Adversary Proceedings] in order to confirm a plan today," counsel for EFP and BHT asked the Court, "Would [the Trustee] take property that we claim an interest and use it to pay other claims without us having the right to at least try to prove our interest in those funds[?]" (H. Ex. 11 at 28). Therefore, according to EFP's

and BHT's own cost-benefit analysis, the services performed in connection with the Adversary Proceedings are compensable under *In re Woerner*.

### Conclusion

Approaching the question on remand from hindsight, the Court finds that the legal services rendered in connection with the Adversary Proceedings initiated by Henderson and WMH and tried by the Trustee were necessary to the administration of the bankruptcy case and reasonably likely to benefit the bankruptcy estate for the reasons reflected in the Global Opinion.  The Adversary Trial was necessary as part of the claims-resolution process to create a clear path for an exit strategy in the Bankruptcy Case.  Moreover, the advice and services rendered in connection with the Adversary Proceedings by Henderson and WMH insured that CHFS met its responsibilities as a debtor-in-possession under the Bankruptcy Code.  Finally, the reduction and reclassification of EFP's and BHT's claims greatly increased the unencumbered assets of the bankruptcy estate.  Thus, there was a material benefit to creditors other than EFP and BHT, including administrative expense, priority, and unsecured claimants.[16]  (Global Op. at 52).  The Court interprets the Remand Orders narrowly and renders these additional findings only as to the beneficial nature of the Adversary Proceedings.  The Court, therefore, did not render any findings in this Opinion regarding the other relevant factors considered under 11 U.S.C. § 330 and the lodestar method.  A separate final judgment consistent with this Opinion will be entered in accordance with Rules 7054, 9014, and 9021 of the Federal Rules of Bankruptcy Procedure.

##END OF OPINION##

---

[16] There are nineteen (19) such unsecured claimants excluding Dickson.