UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


IN RE:                                        CASE NO. 12-01703-NPO

    COMMUNITY HOME FINANCIAL            CHAPTER 11
    SERVICES, INC.,
    DEBTOR.


**SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF THE ESTATE OF
COMMUNITY HOME FINANCIAL SERVICES, INC. PROPOSED BY THE
TRUSTEE, KRISTINA M. JOHNSON DATED AS OF JUNE 1, 2018**

Jeffrey R. Barber (MB #1982)
Kristina M. Johnson (MB #9382)
Stephanie B. McLarty (MB #104585)
**JONES WALKER LLP**
190 East Capitol Street, Suite 800 (39201)
Post Office Box 427
Jackson, Mississippi  39205-0427
Telephone:  (601) 949-4765
Facsimile:  (601) 949-4804
jbarber@joneswalker.com
kjohnson@joneswalker.com
smclarty@joneswalker.com


Admitted *Pro Hac Vice*:

Mark A. Mintz (LAB #31878)
Laura F. Ashley (LAB # 32820)
**JONES WALKER LLP**
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana  70170-5100
Telephone:  (504) 582-8368
Facsimile:  (504) 589-8368
mmintz@joneswalker.com
lashley@joneswalker.com

The Trustee, Kristina M. Johnson, proposes the following Second Amended Chapter 11 Plan of Liquidation (the "**Plan**") for the resolution of the outstanding claims against the Estate of and equity interests in Community Home Financial Services, Inc. (the "**Debtor**" or "**CHFS**").

# ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

In addition to such other terms as may be defined in other Sections of the Plan, the following capitalized terms will have the following meanings:

**Section 1.1**   "**Administrative Claim**" means a Claim for costs and expenses of administration allowed under sections 503(b), or 507(a)(2) of the Bankruptcy Code, including (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the Debtor's business, including (but not limited to) the costs of Servicing the Loans (b) the Professional Fee Claims, (c) the U.S. Trustee Fees, and (d) the Trustee's Fees.

**Section 1.2**   "**Administrative Claim Bar Date**" means the date by which all requests for payment of Administrative Claims are required to be Filed with the Bankruptcy Court, which date is ___ days after the Effective Date.

**Section 1.3**   "**Affiliate**" has the same meaning set forth in section 101(2) of the Bankruptcy Code.

**Section 1.4**   "**Allowed**" means, (a) when used with respect to an Administrative Claim, all or any portion of an Administrative Claim (i) that has been adjudicated in favor of the Holder by estimation or liquidation, by a Final Order, or (ii) that is specifically deemed allowed pursuant to the Plan, or (iii) for which a Proof of Claim in a liquidated amount has been timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court, or other applicable bankruptcy law, and as to which no objection to its allowance has been Filed within the periods of limitation fixed by the Plan, the Bankruptcy Code, or any Order of the Bankruptcy Court; or (b) when used with respect to a Claim other than an Administrative Claim, such Claim or any portion thereof (i) that has been allowed, or adjudicated in favor of the Holder by estimation or liquidation, by a Final Order, or (ii) as to which (x) no Proof of Claim has been Filed, and (y) the liquidated and noncontingent amount of which is included in the Schedules, other than a Claim that is included in the Schedules as Disputed, or (iii) for which a Proof of Claim in a liquidated amount has been timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court, or other applicable bankruptcy law, and as to which no objection to its allowance has been Filed within the periods of limitation fixed by the Plan, the Bankruptcy Code, or any Order of the Bankruptcy Court, or (iv) that is expressly deemed allowed pursuant to the Plan. For the avoidance of doubt, notwithstanding anything herein to the contrary, the EFP/BHT Claim is deemed Allowed solely for the purposes of voting on this Plan.

**Section 1.5**   "**Ballot**" means the forms of ballots to be distributed with the Disclosure Statement to each Holder of an Impaired Claim entitled to vote on the Plan on which the Holder shall indicate, among other things, acceptance or rejection of the Plan.

- 1 -

**Section 1.6** **"Bankruptcy Case"** means the bankruptcy case in the Bankruptcy Court under chapter 11 of the Bankruptcy Code, captioned *In re Community Home Financial Services, Inc.*, 12-01703-NPO (Bankr. S.D. Miss.).

**Section 1.7** **"Bankruptcy Causes of Action"** means all rights, claims, causes of action, avoiding powers, suits and proceedings of or brought by or which may be asserted by the Trustee under the Bankruptcy Code, including by way of illustration and not limitation, under sections 362, 510, 541, 544, 547, 548, 549, 550, 553 and 554 of the Bankruptcy Code, together with any claims, rights, remedies or demands that may be asserted by a creditor or representative of creditors under similar applicable state or other law, and claims in the nature of substantive consolidation, successor liability, veil piercing or alter ego.

**Section 1.8** **"Bankruptcy Code"** means title 11 section 101 *et seq.* of the United States Code, as amended from time to time.

**Section 1.9** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of Mississippi, Jackson Division, having jurisdiction over the Bankruptcy Case, or if such court ceases to exercise jurisdiction over the Bankruptcy Case, such court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

**Section 1.10** **"Bankruptcy Rules"** mean the Federal Rules of Bankruptcy Procedure as provided by the United States Supreme Court under section 2075 of title 28 of the United States Code, and any Local Rules of the Bankruptcy Court.

**Section 1.11** **"BHT"** means Beher Holdings Trust, a Bermuda Trust.

**Section 1.12** **"Business Day"** means any day other than a Saturday, Sunday, or other day on which commercial banks in Jackson, Mississippi are required or authorized to close by law or executive order.

**Section 1.13** **"Cash"** means legal tender of the United States of America and equivalents thereof.

**Section 1.14** **"Cash Collateral Matters"** means the *Edwards Family Partnership, LP and Beher Holdings Trust's Third Motion to Prohibit Use of Cash Collateral Until the Court Rules in Adversary Proceeding 12-00091* **[Dkt. #901]**; *Trustee's Objection to Edwards Family Partnership, LP and Beher Holdings Trust's Third Motion to Prohibit Use of Cash Collateral Until the Court Rules in Adversary Proceeding 12-00091* **[Dkt. #927]**; *Trustee's Supplemental Objection to Edwards Family Partnership, LP and Beher Holdings Trust's Third Motion to Prohibit Use of Cash Collateral Until the Court Rules in Adversary Proceeding 12-00091* **[Dkt. #1024]**; *Trustee's Motion for Use of Cash (to Extent Required) Nunc Pro Tunc* **[Dkt. #906]**; *Edwards Family Partnership, LP and Beher Holdings Trust's Response to Trustee's Motion for Use of Cash Collateral (to the Extent Required) Nunc Pro Tunc* **[Dkt. #919]**; *Trustee's Reply to Edwards Family Partnership, LP and Beher Holdings Trust's Response to Trustee's Motion for Use of Cash Collateral (to the Extent Required) Nunc Pro Tunc* **[Dkt. #926]**; and *Trustee's Supplemental Reply to Edwards Family Partnership, LP and Beher Holdings Trust's Response*

*to Trustee's Motion for Use of Cash Collateral (to the Extent Required)* Nunc Pro Tunc **[Dkt. #1023]** and the Bankruptcy Court's rulings thereon.

**Section 1.15** **"Causes of Action"** collectively means, without limitation, any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims and demands whatsoever, whether known or unknown, in law, equity or otherwise, excluding the Bankruptcy Causes of Action.

**Section 1.16** **"Claim"** has the same meaning as set forth in section 101(5) of the Bankruptcy Code.

**Section 1.17** **"Class"** means a category of Holders of Claims, as more fully described in Article II of the Plan.

**Section 1.18** **"Clerk"** means the Clerk of the Bankruptcy Court.

**Section 1.19** "**Collateral**" means any property or interest in property of the Estate subject to an unavoidable Lien securing the payment or performance of a Claim.

**Section 1.20** **"Confirmation"** means the entry of an Order by the Bankruptcy Court confirming the Plan.

**Section 1.21** **"Confirmation Date"** means the date on which the Clerk enters the Confirmation Order on the Docket.

**Section 1.22** **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

**Section 1.23** **"Confirmation Order"** means the Order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**Section 1.24** "**Consolidated Contested Matters**" means the matters consolidated for trial with the Edwards Adversary Proceedings including the Edwards Claims, Objections & Responses to Edwards Claims, and the Cash Collateral Matters.

**Section 1.25** **"Cure Amount Claim"** means a Claim for all unpaid monetary obligations, or such lesser amount as may be agreed upon by the parties, under an Executory Contract or Unexpired Lease assumed pursuant to section 365 of the Bankruptcy Code or the Plan**.**

**Section 1.26** **"Debtor"** has the meaning set forth in the introductory paragraph of the Plan.

**Section 1.27** **"Designated Loans"** means Loans which may have been fraudulently transferred, any interest the Estate has in Foreign Loans or any pending litigation associated with the Foreign Loans (defined in Section 1.60).

**Section 1.28** **"Dickson Related Parties"** means William D. Dickson and any of his Insiders, Affiliates, Insider of Affiliates, including, but not limited to, the Debtor, Discount Mortgage, Inc., Discount Home Mortgage, Inc., Double S Construction Inc., Crisco Investments, Inc., Victory Consulting Group, Inc., William D. Dickson Enterprises Inc., Phalanx, Inc., Phalanx, S.A., Philanfin, S.A., Bonami, S.A., Piranha, S.A., Reshonda Rhodes, Mary Madison Foundation, Brookwood-Byram Country Club, Inc., Colby Dickson, Cristen Dickson Nelson, Beau Nelson, Carol Runnels, W.W. Warren Foundation, any former employee of the Debtor (except as otherwise provided herein or by separate order of the Bankruptcy Court), or the predecessors, successors, assigns, officers, directors, principals, shareholders, members, partners, employees, agents, representatives, trustees, direct beneficiaries, or indirect beneficiaries of the corporate entities referenced in this Section.

**Section 1.29** **"Dickson Claim"** means a Claim or Interest held by William D. "Butch" Dickson, and any Affiliate, Insider, or Insider of an Affiliate, and any Claim held by any Dickson Related Parties. The Dickson Claim and all Interests are disallowed.

**Section 1.30** **"Dickson Shortfall Fund"** means the sum of $144,000.00 deposited with the registry of the Bankruptcy Court pursuant to the Bankruptcy Court's Order **[AP 14-30 Dkt. #71]** in the Trustee's Dickson Proceeding (defined in Section 1., subsequently released to the Trustee by order of the Court.

**Section 1.31** **"Disbursing Agent"** means, for all purposes under this Plan, the Trustee.

**Section 1.32** **"Disclosure Statement"** means, as amended, the *Second Amended Disclosure Statement for the Chapter 11 Plan of Liquidation of the Estate of Community Home Financial Services, Inc. Proposed by the Trustee, Kristina M. Johnson Dated as of June 1, 2018* **[Dkt. #___]**.

**Section 1.33** **"Disputed"** means, as to any Administrative Claim or Claim against or Interest in the Estate, (a) any Claim, proof of which was required to be Filed by Order of the Bankruptcy Court, but as to which a Proof of Claim was not timely or properly Filed, (b) any Claim which was timely and properly Filed, but which has been or hereafter is listed on the Schedules as unliquidated, disputed, contingent, at zero, or in an unknown amount, (c) any Administrative Claim, Claim or Interest which is disputed under the Plan, or (d) any Administrative Claim, Claim or Interest, to which the Debtor or, if not prohibited by the Plan, any other party in interest has interposed a timely objection, which objection has not been withdrawn or determined by a Final Order. Any Claim that is deemed Allowed pursuant the Plan is not Disputed within the meaning of this definition.

**Section 1.34** **"Distribution"** means a payment in Cash, or in kind, made by the Trustee to the Holder of an Allowed Claim on account of such Allowed Claim pursuant to the terms and conditions of the Plan.

**Section 1.35** **"Distribution Record Date"** means the first Business Day after the Confirmation Date.

- 4 -

**Section 1.36** **"District Court"** means the United States District Court for the Southern District of Mississippi, Jackson Division.

**Section 1.37** **"Docket"** means the docket in the Bankruptcy Case maintained by the Clerk.

**Section 1.38** **"Dr. Edwards"** means Dr. Charles C. Edwards in his individual capacity or, where applicable or otherwise indicated, in his capacity as general partner of EFP and/or as investment manager for BHT.

**Section 1.39** **"Edwards Adversary Proceedings"** means the adversary proceedings in this Bankruptcy Case, originally captioned *Cmty. Home Fin. Servs., Inc. & William D. Dickson v. Edwards Family P'ship, LP & Beher Holdings Trust*, Adv. Proc. 12-00091-EE (Bankr. S.D. Miss.), *Cmty. Home Fin. Servs., Inc. & William D. Dickson v. Charles Edwards, M.D., James Edwards, Edwards Family P'ship, LP, The Atkinson Trust, LLC, & The Debt Exchange, Inc.*, Adv. Proc. No. 13-00104-EE (Bankr. S.D. Miss.); *Kristina M. Johnson, Trustee v. Edwards Family Partnership, LP, et al.,* Adv. Proc. 15-00080-EE (Bankr. S.D. Miss.), each proceeding specifically includes the Trustee in her role substituting as the proper party-in-interest for the Debtor.

**Section 1.40** **"Edwards District Court Actions"** means the Edwards Guaranty Case and the Edwards TRO Case, collectively.

**Section 1.41** **"Edwards Guaranty Case"** means *Edwards Family P'ship, LP & Beher Holdings Trust v. William D. Dickson*, No. 3:13-cv-00587-CWR-LRA (S.D. Miss.).

**Section 1.42** **"Edwards Trial"** means the trial held before the Bankruptcy Court beginning October 30, 2017, through November 2, 2017, and concluding on November 27, 2017, regarding the Edwards Adversary Proceedings and the Consolidated Contested Matters.

**Section 1.43** **"Edwards TRO Case"** means *Edwards Family P'ship LP & Beher Holdings Trust, By And Through Its Tr., Church Bay Trust Ltd. v. William Dickson Enters. Inc., Crisco Invs., Inc., Phalanx, Inc., Victory Consulting Grp., Inc., W.W. Warren Found., Discount Mortg., Inc., Discount Home Mortg., Inc., Double S Constr., Inc. & William D. Dickson*, No. 3:14-cv-00436-CWR-LRA (S. D. Miss.).

**Section 1.44** **"Effective Date"** means the first Business Day after which the conditions specified in Section 8.1 of the Plan have been satisfied or waived in accordance with Section 8.2.

**Section 1.45** **"EFP"** means Edwards Family Partnership, LP, a Delaware limited partnership.

**Section 1.46** **"EFP/BHT"** means the Edwards Family Partnership LP and the Beher Holdings Trust.

**Section 1.47   "EFP/BHT Claims"** means Proofs of Claim 4-1, 5-1, 6-1, 7-1, 8-1, and 9-1 filed by EFP/BHT, the validity of which were determined by the Bankruptcy Court as set out in the Final Judgment on Edwards Trial and Opinion on Edwards Trial.

**Section 1.48   "EFP/BHT Claim Objections"** means the objections Filed by the Debtor on January 25, 2013 **[Dkt. Nos. 162–64]** to Proofs of Claim Nos. 4-1, 5-1, 6-1, 7-1, 8-1, and 9-1 Filed by the EFP/BHT,

**Section 1.49   "EFP/BHT Claim Responses"** means EFP/BHT's Responses to the EFP/BHT Claim Objections Filed by the Debtor on March 12, 2013 **[Dkt. Nos. 208-10]**.

**Section 1.50   "EFP/BHT Unsecured Claims"** means the Claims determined by the Bankruptcy Code to be held by EFP/BHT and to be Unsecured Claims for amounts specified by the Bankruptcy Court in the Final Judgment on Edwards Trial with respect to Proofs of Claim Nos. 4-1 and 5-1; these Claims also include the Claim transferred to EFP by Joe Logan in the amount of $100,000.00, pursuant to the Notice of Transfer of Claim Other than for Security, Filed and entered on the Docket on January 30, 2017 **[Dkt. #1598].** The EFP/BHT Unsecured Claims are treated in Class 5 of the Plan.

**Section 1.51   "EFP Secured Claim"** means the Claim determined by the Bankruptcy Court to be held by EFP and to be a Secured Claim for an amount specified by the Bankruptcy Court in the Final Judgment on Edwards Trial with respect to Proof of Claim No. 9-1. The EFP Secured Claim is treated in Class 3 of the Plan.

**Section 1.52   "Entity"** means any individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, unincorporated organization, estate, trust, governmental unit or other entity (notwithstanding origin of incorporation or formation), including the Trustee and the Office of the United States Trustee, whether singular or plural.

**Section 1.53   "Estate"** means the estate of the Debtor as created upon the commencement of the Bankruptcy Case by section 541 of the Bankruptcy Code.

**Section 1.54   "Exculpated Parties"** means the Trustee and her  Professionals, each in their capacities as such and with respect to each as entities, such entities' predecessors, successors, assigns, officers, directors, principals, shareholders, members, partners, employees, agents, or representatives, but specifically excluding Dickson Related Parties, EFP/BHT, and Dr. Edwards.

**Section 1.55   "Executory Contract"** means a contract to which the Debtor is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

**Section 1.56   "File," "Filed" or "Filing"** means file, filed or filing with the Bankruptcy Court or its authorized designee in the Bankruptcy Case.

**Section 1.57   "Final Judgment on Edwards Trial"** means the *Final Judgment on the Third Amended Complaint in Adversary Proceeding 12-00091-NPO; Consolidated Amended*

*Complaint in Adversary Proceeding 13-00104-NPO; Amended Complaint for Turnover, Recovery of Property Transferred Post-Petition, Damages, Declaratory Relief, Equitable Subordination, and Other Relief in Adversary Proceeding 15-00080-NPO; and Consolidated Contested Matters*, entered by the Bankruptcy Court on February 27, 2018 **[Dkt. #2183]**.

     **Section 1.58** **"Final Judgment on Trustee's Dickson Trial"** means the *Final Judgment on First Amended Verified Complaint to: (1) Recovery Money, Damages or Property; (2) To Avoid Pre-Petition and Post-Petition Transfers; (3) For Turnover of Property; (4) For Injunctive Relief; and (5) For Equitable Subordination*, entered by the Bankruptcy Court on February 27, 2018 [Dkt. #2188].

     **Section 1.59** **"Final Order"** means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on the Docket in the Bankruptcy Case, or on the docket of any other court of competent jurisdiction, as applicable, the operation or effect of which has not been stayed, reversed, modified or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing or leave to appeal has expired and as to which no appeal or petition for review or rehearing or leave to appeal was Filed or, if Filed, no appeal or petition for review or rehearing remains pending; *provided, however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

     **Section 1.60** **"Foreign Loans"** means loans purchased or originated outside of the United States using funds believed to be traceable to the Debtor or Dickson, directly or indirectly.

     **Section 1.61** **"Holder"** means any Entity that holds a Claim or Interest.

     **Section 1.62** "**Home Improvement Loan Adversary**" means the adversary proceeding originally captioned *Cmty. Home Fin. Servs., Inc. & William D. Dickson v. Edwards Family P'ship, LP & Beher Holdings Trust*, Adv. Proc. No. 12-00091-EE (Bankr. S.D. Miss.), and subsequently captioned *Kristina M. Johnson, Trustee of the Estate of Cmty. Home Fin. Servs., Inc. v. Edwards Family P'Ship; Beher Holdings Trust*, Adv. Proc. No. 12-00091-NPO (Bankr. S.D. Miss.).

     **Section 1.63** **"Home Improvement Loans"** means the consumer mortgage loans identified in the Final Judgment on Edwards Trial purchased by CHFS from various unrelated entities with funds ultimately loaned from EFP/BHT, and for which EFP/BHT failed to obtain a perfected security interest, as identified in the Opinion on Edwards Trial.

     **Section 1.64** **"Impaired"** means, with respect to any Claim or Interest, that such Claim or Interest is impaired within the meaning of section 1124 of the Bankruptcy Code.

     **Section 1.65** **"Insider"** has the same meaning as set forth in section 101(31) of the Bankruptcy Code, and specifically includes (a) if it refers to an individual (i) a relative of the individual, (ii) a partnership in which the individual is a general partner, (iii) a general partner of

the individual or (iv) a corporation of which the individual is a director, officer or person in control, (b) if it refers to a corporation (i) director of the corporation, (ii) officer of the corporation, (iii) person in control of the corporation, (iv) partnership in which the corporation is a partner, (v) general partner of the corporation, or (vi) relative of a general partner, director, officer, or person in control of the corporation, (c) if it refers to a partnership (i) a general partner in the partnership, (ii) relative of a general partner in, general partner of, or person in control of the partnership, (iii) partnership in which the partnership is a general partner, (iv) general partner of the partnership and (v) person in control of the partnership. Insiders specifically include Affiliates of any Entity and Insiders of such Affiliates as if such Affiliate were the Entity. Insider specifically includes the managing agent of any Entity.

Section 1.66   "**Interest**" means any interest in the Debtor that is an "equity security" within the meaning of section 101(16) of the Bankruptcy Code, or any similar interest in an Entity that is recognized under applicable law. Interests are disallowed.

Section 1.67   "**IRS**" means the Internal Revenue Service of the Department of Treasury of the United States of America.

Section 1.68   "**Lien**" has the same meaning as set forth in section 101(37) of the Bankruptcy Code.

Section 1.69   "**Loan**" means any advance of money or other credit evidenced by a promissory note, contract, or similar instrument (whether secured or unsecured) and related documents executed by a borrower that: (a) was purchased by or serviced by the Debtor, (b) is owned or serviced by the Debtor's Estate as of the Effective Date, (c) has been identified by the Trustee, and (d) has not been satisfied by the obligor as of the Effective Date and released by the Debtor or the Estate, but does not include the Designated Loans (as defined in Section 1).

Section 1.70   "**Material Adverse Change**" means an event affecting the Estate which, if it were to occur on or after the Effective Date, would render implementation and fulfillment of the Plan impossible.

Section 1.71   "**Monthly Operating Reports**" means periodic reports and summaries, in accordance with 28 U.S.C. § 586(A)(3)(D) and 11 U.S.C. § 1106(a)(1), of the operation of the Debtor's business, including statements of receipts and disbursements, and such other information as required by the U.S. Trustee or the Bankruptcy Court.

Section 1.72   "**Mortgage Portfolio Adversary**" means the adversary proceeding originally captioned *Cmty. Home Fin. Servs., Inc. & William D. Dickson v. Charles Edwards, M.D., James Edwards, Edwards Family P'ship, LP, The Atkinson Trust, LLC, & The Debt Exchange, Inc.*, Adv. Proc. No. 12-00109-EE (Bankr. S.D. Miss.), and subsequently captioned *Kristina M. Johnson, Chapter 11 Trustee of the Estate of Cmty. Home Fin. Servs., Inc. v. Charles C. Edwards, Edwards Family P' Ship, and Beher Holdings Trust,* Adv. Pro. No. 13-00104-NPO (Bankr. S.D. Miss.).

Section 1.73   "**Mortgage Portfolios**" means the Mortgage Portfolios as identified in the Opinion on Edwards Trial, defined in Section 1.74.

**Section 1.74** **"Opinion on Edwards Trial"** means the *Memorandum Opinion and Order on Third Amended Complaint in Adversary Proceeding 12-00091-NPO; Consolidated Amended Complaint in Adversary Proceeding 13-00104-NPO; Amended Complaint for Turnover, Recovery of Property Transferred Post-Petition, Damages, Declaratory Relief, Equitable Subordination, and Other Relief in Adversary Proceeding 15-00080-NPO; and Consolidated Contested Matters*, entered by the Bankruptcy Court on February 27, 2018 [**Dkt. #2182**].

**Section 1.75** **"Opinion on Trustee's Dickson Trial"** means the *Memorandum Opinion and Order on First Amended Verified Complaint to: (1) Recovery Money, Damages or Property; (2) To Avoid Pre-Petition and Post-Petition Transfers; (3) For Turnover of Property; (4) For Injunctive Relief; and (5) For Equitable Subordination*, entered by the Bankruptcy Court on February 27, 2018 [**Dkt. #2187**].

**Section 1.76** **"Order"** means an order or judgment of the Bankruptcy Court as entered on the Docket.

**Section 1.77** **"Petition Date"** means May 23, 2012.

**Section 1.78** **"Plan"** means, as applicable, the Second Amended Chapter 11 Plan of Liquidation, Filed by the Trustee herein, as the same may be amended, modified, or supplemented from time to time, together with the Plan Exhibits.

**Section 1.79** **"Plan Exhibits"** mean the exhibits that are attached to the Plan, or exhibits that will be Filed before the commencement of the Confirmation Hearing.

**Section 1.80** **"Plan Sponsor"** means the Trustee, the sponsor of this Plan.

**Section 1.81** **"Post-Petition Conduct Adversary"** means the adversary proceeding captioned *Kristina M. Johnson, Trustee of the Estate of Cmty. Home Fin. Servs., Inc. v. Edwards Family P'ship, LP, Beher Holdings Trust, Charles C. Edwards, Individually and as managing partner of Edwards Family P'ship, LP, Beher Holdings Trust*, Adv. Proc. No. 15-00080-NPO (Bankr. S.D. Miss.).

**Section 1.82** **"Prime Rate"** means the rate published in the *Wall Street Journal* on the Effective Date.

**Section 1.83** **"Priority Unsecured Claim"** means any Claim, other than an Administrative Claim entitled to priority in right of payment pursuant to section 507(a) of the Bankruptcy Code. Priority Unsecured Claims are treated in Class 2 of the Plan.

**Section 1.84** **"Professional"** means any professional employed in the Bankruptcy Case pursuant to sections 327 or 1103 of the Bankruptcy Code or any professional or other Entity seeking compensation or reimbursement of expenses in connection with the Bankruptcy Case pursuant to section 503(b) of the Bankruptcy Code.

**Section 1.85** **"Professional Fee Claims"** mean the Claims of (a) any Professional in the Bankruptcy Case pursuant to sections 330 or 1103 of the Bankruptcy Code, or (b) any

Professional or other Entity seeking compensation or reimbursement of expenses in connection with the Bankruptcy Case pursuant to section 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code.

**Section 1.86** "**Proof of Claim**" means a proof of claim that was Filed in the Bankruptcy Case.

**Section 1.87** "**Pro Rata**" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class.

**Section 1.88** "**Released Parties**" means the Estate, the Trustee, and her Professionals, each in their capacities as such and with respect to each as entities, such entities' predecessors, successors, assigns, officers, directors, principals, shareholders, members, partners, employees, agents, or representatives, but specifically excluding Dickson Related Parties, EFP/BHT, and Dr. Edwards.

**Section 1.89** "**Restitution Claim**" means all rights of the Debtor's Estate as victim of the $5,442,003.58 in the criminal restitution award in the Criminal Amended Judgment in *United States v. William David Dickson*, Case No. 3:14-CR-00078-TSL-FKB-001, including any criminal forfeiture recoveries.

**Section 1.90** "**Schedules**" collectively means the schedules of assets and liabilities and the statement of financial affairs Filed by the Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto through the Confirmation Date.

**Section 1.91** "**Secured Claim**" means an Allowed Claim that is secured by a Lien on property of the Estate, as provided in section 506(a) of the Bankruptcy Code, which is valid, perfected, and enforceable, and not avoidable, to the extent of the value of such Lien, as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code, or as otherwise agreed in writing by the Trustee and the Holder of such Claim, but excluding the EFP/BHT Claim. Secured Claims are treated in Class 1 of the Plan.

**Section 1.92** "**Servicer**" means Sortis Financial, Inc. (f/k/a ClearSpring Loan Services, Inc., f/k/a Vantium Capital, Inc. d/b/a Acqura Loan Services).

**Section 1.93** "**Servicing Agreement**" means the Residential Mortgage Special Servicing Agreement between the Trustee and the Servicer approved by Agreed Order **[Dkt. #702]** of the Bankruptcy Court, as supplemented by an Order **[Dkt. #931]** of the Bankruptcy Court.

**Section 1.94** "**State**" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

**Section 1.95** "**Stipulation of Amount and Nature of Claim**" means (a) before the Effective Date, a stipulation or other agreement between the Trustee and a Holder of a Claim that

is approved by an Order of the Bankruptcy Court, or (b) from and after the Effective Date, a stipulation or other agreement between the Disbursing Agent and a Holder of a Claim.

Section 1.96  **"Tax"** means (a) any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, State, local or foreign taxing authority, or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other Entity.

Section 1.97  **"Tax Claim"** means any Claim of a governmental unit, whether federal, State or local, for recovery of a tax of any kind whatsoever (including any interest, penalty, or addition thereto) incurred or arising before the Effective Date, including but not limited to Claims of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

Section 1.98  **"Trustee"** means Kristina M. Johnson, the duly appointed and qualified Chapter 11 Trustee for the Estate of Community Home Financial Services, Inc.

Section 1.99  **"Trustee's Fees"** collectively means all fees and charges the Trustee is entitled to pursuant to 11 U.S.C. §§ 323, 326, 330, or 331.

Section 1.100 "**Trustee's Dickson Proceeding**" means *Johnson v. Cmty. Home Fin. Servs., Inc., Discount Mortg., Inc., Discount Home Mortg., Inc., Double S Constr., Inc., Crisco Invs., Inc., Victory Consulting Grp., Inc., William D. Dickson Enters., Inc., William D. Dickson, W.W. Warren Found., Phalanx, Inc., Brookwood-Byram Country Club, Inc., and Reshonda Rhodes*, Adv. Proc. No. 14-00030-NPO (Bankr. S.D. Miss.).

Section 1.101 **"Trustee's Dickson Trial"** means the trial held before the Bankruptcy Court on December 7, 2017, regarding the Trustee's Dickson Proceeding.

Section 1.102  **"Unexpired Lease"** means a lease to which the Debtor is a party that is subject to assumption, assumption and assignment or rejection under section 365 of the Bankruptcy Code.

Section 1.103 **"Unimpaired"** means, with respect to any Claim or Interest, that such Claim or Interest is not impaired within the meaning of section 1124 of the Bankruptcy Code.

Section 1.104 **"Unsecured Accrued Interest Claims"** shall mean, subject to availability of Cash, Claims for accrued interest in Class 6 as provided for in Section 4.6.

Section 1.105 **"Unsecured Claims"** means any Claim that arose before the Petition Date that is not an Administrative Claim, Cure Amount Claim, Priority Unsecured Claim, Secured Claim, but specifically includes the EFP/BHT Unsecured Claims. Unsecured Claims are treated in Class 4 of the Plan.

**Section 1.106 "U.S. Trustee"** means the Office of the United States Trustee and/or the United States Trustee for Region 5.

**Section 1.107 "U.S. Trustee Fees"** collectively means all fees and charges assessed against the Estate under chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911–1930.

**Section 1.108 "Voting Record Date"** means the date for determining the Holders of Claims and Interests, who are entitled to vote on the Plan, in accordance with Bankruptcy Rule 3017(d), which date shall be contemporaneous with the date established for objections to confirmation of the Plan.

**Interpretation; Application of Definitions and Rules of Construction.** Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

Any reference in the Plan to a document or instrument being in a particular form means that the document or instrument shall be in substantially such form. Any reference in the Plan to an existing document or instrument means such document or instrument as it may have been amended, modified or supplemented from time to time. Unless otherwise specified, all Section, Article, schedule or exhibit references in the Plan are to the respective Section in, Article of, schedule to, or exhibit to, the Plan. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section or clause contained in the Plan. All Plan Exhibits are incorporated into the Plan, and shall be deemed to be included in the Plan, regardless of when such Plan Exhibits are Filed.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply as though the Plan is an Order of the Bankruptcy Court.

# ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

**Section 2.1     Division of Claims.**   For all purposes, including organization, voting, Confirmation and Distributions pursuant to the Plan, except as otherwise provided herein, all Claims (except for Administrative Claims) are classified as provided in Articles II through IV of the Plan.

**Section 2.2     No Interest After the Petition Date Unless Otherwise Provided.** Unless otherwise specifically provided for in the Plan or the Confirmation Order, no Holder of a Claim shall be entitled to interest after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

- 12 -

**Section 2.3**    **Allowed Claims and Interests.**   A Claim treated in a particular Class only to the extent such Claim is Allowed. Any and all Interests in the Debtor will be extinguished as of the Effective Date.

**Section 2.4**    **Classification of Claims with Respect to the Plan.** Claims and Interests are classified in the Plan as follows:

(a)    Class 1 consists of **Secured Claims**.  This Class of Claims is Unimpaired, and the Holders are entitled to vote with respect to such Claims.

(b)    Class 2 consists of **Priority Unsecured Claims**. This Class of Claims is Unimpaired and the Holders are deemed to accept the Plan.

(c)    Class 3 consists of the **EFP Secured Claim**. This Class of Claims is Unimpaired, and the Holders are deemed to accept the Plan.

(d)    Class 4 consists of **General Unsecured Claims**. This Class of Claims is Impaired, and the Holders are entitled to vote for or against the Plan with respect to such Claims.

(e)    Class 5 consists of **EFP/BHT Unsecured Claims**. This Class of Claims is Impaired, and the Holders are entitled to vote for or against the Plan with respect to such Claims.

(f)    Class 6 consists of **Unsecured Accrued Interest Claims**. This Class of Claims is Impaired, and Holders are entitled to vote for or against the Plan with respect to such Claims.

# ARTICLE III
# TREATMENT OF CERTAIN UNCLASSIFIED
# ADMINISTRATIVE CLAIMS, CERTAIN FEES AND TAXES

**Section 3.1**    **Administrative Claims.**

(a)    **Generally.** Except as otherwise provided herein or unless otherwise agreed in a written agreement by and among the Holder of an Administrative Claim and the Trustee, each Holder of an Allowed Administrative Claim will receive, in full satisfaction of its Administrative Claim, Cash equal to the Allowed amount of such Administrative Claim either (A) on the Effective Date or as soon as practicable thereafter, or (B) if the Administrative Claim is not Allowed on or before the Effective Date, within thirty (30) days after the date on which (i) an Order that Allows such Administrative Claim becomes a Final Order, or (ii) a Stipulation of Amount and Nature of Claim is executed.

(b)    **U.S. Trustee Fees.**  On or before the Effective Date, fees payable pursuant to 28 U.S.C. § 1930(a)(6) will be paid by the Trustee in Cash. All fees payable pursuant to 28 U.S.C. § 1930(a)(6) will be paid in accordance therewith until the closing of the Bankruptcy Case pursuant to section 350(a) of the Bankruptcy Code.

(c)     **Trustee Fees.**   For the avoidance of doubt, any Distributions made pursuant to this Plan of any property of the Estate (whether in cash or in kind) shall be counted as a Distribution made by the Trustee for Claims and must be Filed on or before the Administrative Claim Bar Date and served pursuant to the procedures specified in the Administrative Claim Bar Date Order. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by such date will be forever barred from asserting such Administrative Claims against the Estate, and such Administrative Claims will be deemed waived and released as of the Effective Date. Objections to such requests must be Filed and served as provided in Bankruptcy Rule 2002 on the Estate, the Trustee, and the requesting party by the later of (i) 120 days after the Effective Date, and (ii) sixty (60) days after the Filing of the applicable request for payment of Administrative Claims.

### Section 3.2     Bar Dates for Administrative Claims.

(a)     **General Bar Date Provisions.** Except as otherwise provided in the Plan, requests for payment of Administrative Claims.

(b)     **Bar Dates for Certain Administrative Claims.**

(i)     **Professional Fee Claims.**  Professionals or other Entities asserting a Professional Fee Claim for services rendered before the Effective Date, and whose services are no longer required after the Effective Date, must File and serve on the Trustee and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other Order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claims within sixty (60) days after the Effective Date. Professionals or other Entities asserting a Professional Fee Claim for services rendered before the Effective Date, and whose services will be required after the Effective Date, must File and serve on the Trustee and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other Order of the Bankruptcy Court, an application for interim allowance of such Professional Fee Claims within thirty (30) days after the Effective Date. Objections to any Professional Fee Claims, including any objections by the U.S. Trustee, must be Filed and served on the Trustee and the requesting party by the later of (A) ninety (90) days after the Effective Date, and (B) thirty (30) days after the Filing of the applicable request for payment of the Professional Fee Claims. To the extent necessary, the Confirmation Order will be deemed to amend and supersede any previously entered Order of the Bankruptcy Court regarding the payment of Professional Fee Claims. Any of the Administrative Claims of the Trustee's Professionals incurred after the Effective Date, will be paid on a monthly basis without need for approval by the Bankruptcy Court.

(ii)     **Ordinary Course Liabilities.** Holders of Administrative Claims based on liabilities incurred by the Estate in the ordinary course of its business that are paid by the Estate (as applicable) will not be required to File or serve any request for payment of such Administrative Claims.

(c)     **Bar Dates for Trustee Compensation.**

- 14 -

(i)      The Trustee shall be compensated pursuant to the provisions of the Bankruptcy Code. The Trustee must File and serve on such Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other Order of the Bankruptcy Court, an application for final allowance of her chapter 11 Trustee's fee under section 326 of the Bankruptcy Code within 120 days after the Effective Date. Objections to the Trustee's application, including any objection by the U.S. Trustee, must be Filed and served on the Trustee by the later of (a) 150 days after the Effective Date, and (b) thirty (30) days after the Filing of the Trustee's final application. To the extent necessary, the Confirmation Order will be deemed to amend and supersede any previously entered Order of the Bankruptcy Court regarding the payment of the Trustee's fee. Any Administrative Claims of the Trustee incurred after the Effective Date will be paid on a monthly basis without need for approval by the Bankruptcy Court.

# ARTICLE IV
# TREATMENT OF CLASSIFIED
# CLAIMS AND INTERESTS

### Section 4.1      Class 1 Claims (Secured Claims).

(a)      Classification:  Class 1 consists of the Secured Claims.

(b)      Treatment: Unless otherwise agreed in a written agreement by and among the Holder of an Allowed Secured Claim and the Trustee, on the Effective Date, in full satisfaction of the Holder's Secured Claim, each Holder of a Secured Claim will receive Cash in an amount equal to the Allowed amount of such Holder's Secured Claim, and will release all Liens on any Collateral in exchange for the receipt of such Cash. If the Holder's Secured Claim is not Allowed on or before the Effective Date, the Trustee will make the Distribution to such Holder within fifteen (15) days after the earlier of the date on which (a) an Order allowing the Secured Claim becomes a Final Order, or (b) a Stipulation Regarding the Amount and Nature of the Claim is executed.

(c)      Voting:  Class 1 is Unimpaired by the Plan. Holders of an Allowed Secured Claim are deemed to accept the Plan.

### Section 4.2      Class 2 (Priority Unsecured Claims).

(a)      Classification:  Class 2 consists of the Priority Unsecured Claims.

(b)      Treatment:  Unless otherwise agreed in a written agreement by and among the Holder of an Allowed Priority Unsecured Claim and the Trustee, on the Effective Date, in full satisfaction of the Holder's Priority Unsecured Claim, each Holder of a Priority Unsecured Claim will receive Cash in an amount equal to the Allowed amount of such Holder's Priority Unsecured Claim. If the Holder's Priority Unsecured Claim is Allowed on or before the Effective Date, the Trustee will make the Distribution to such Holder within fifteen (15) days of the Effective Date. If, however, the Holder's Priority Unsecured Claim is not Allowed on or before the Effective Date, the Trustee will make the Distribution to such Holder within fifteen (15) days after the earlier of the date on which an Order allowing the Priority Unsecured Claim

becomes a Final Order, or a Stipulation Regarding the Amount and Nature of the Claim is executed.

(c)     Voting:  Class 2 is Unimpaired by the Plan. Holders of an Allowed Priority Unsecured Claim are deemed to accept the Plan.

**Section 4.3     Class 3 (EFP Secured Claim).**

(a)     Classification:  Class 3 consists of the EFP Secured Claim.

(b)     Treatment:  Unless otherwise agreed in a written agreement by and among a Holder of an Allowed EFP Secured Claim and the Trustee, the following treatment is afforded the Holders of Class 3 Claims in full and final satisfaction of the EFP Secured Claim.

(i)     On or before the Effective Date, the Trustee will assign, without recourse or warranty of any kind or nature, to EFP or its designee, all Loans comprising of or designated in either Mortgage Portfolio #1 or #2, held by or otherwise owned by the Debtor. EFP will be responsible for issuing statements and all other forms of documents required by State or federal law related to the Loans for the calendar year in which the assignment occurs.  EFP will also be responsible for any costs associated with assignments of loans in Mortgage Portfolios #1 and #2 that are currently registered with the MERS® system.

(c)     Voting:  Class 3 is Unimpaired by the Plan. Holders of an Allowed EFP Secured Claim are deemed to accept the Plan.

**Section 4.4     Class 4 (Unsecured Claims).**

(a)     Classification:  Class 4 consists of the General Unsecured Claims.

(b)     Treatment: Unless otherwise agreed in a written agreement by and among the Holder of an Allowed General Unsecured Claim and the Trustee, on the Effective Date, in full satisfaction of the Holder's Unsecured Claim, each Holder of an Unsecured Claim will receive Cash in an amount equal to the Allowed amount of such Holder's General Unsecured Claim, exclusive of any and all accrued interest. If the Holder's Unsecured Claim is Allowed on or before the Effective Date, the Trustee will make the Distribution to such Holder on the Effective Date. If, however, the Holder's General Unsecured Claim is not Allowed on or before the Effective Date, the Trustee will make the Distribution to such Holder within fifteen (15) days after the earlier of the date on which an Order allowing the General Unsecured Claim becomes a Final Order, or a Stipulation Regarding the Amount and Nature of the Claim is executed.

(c)     Voting: Class 4 is Impaired by the Plan. Holders of an Allowed Unsecured Claim are entitled to vote to accept or reject the Plan.

**Section 4.5     Class 5 (EFP/BHT Unsecured Claims).**

(a)     Classification:  Class 5 consists of the EFP/BHT Unsecured Claims.

(b)    Treatment:    The Allowed amount of the EFP/BHT Unsecured Claims excludes all accrued interest. On or before the Effective Date of the Plan, the Trustee shall assign to EFP/BHT the Restitution Claim as part of the Distribution on the EFP/BHT Unsecured Claim. For the avoidance of doubt, the Trustee will assign the Restitution Award to EFP/BHT. On or before the Effective Date, the Trustee shall begin to take all necessary and reasonable steps, in her business judgment, to sell all remaining Loans held or owned by the Debtor, regardless of whether such Loans were purchased before or after the Petition Date, but specifically excluding all Loans comprising Mortgage Portfolio #1, Mortgage Portfolio #2, and Mortgage Portfolio #7. The Trustee file a motion to establish procedures to sell all such remaining Loans, Furthermore, the Trustee will seek an order from the Bankruptcy Court approving the sale of the Loans and granting the Trustee the right to disburse the funds received in accordance with the Plan and the Bankruptcy Code.

On or before the Effective Date, the Trustee shall execute documents sufficient to transfer to EFP/BHT or its designee any rights associated with Loans which may have been fraudulently transferred, funds and/or assets currently in or being held by the Costa Rican Government, all rights to funds associated with Restitution Order, and any interest the Estate has in Foreign Loans or any pending litigation associated with the Foreign Loans  toward full satisfaction of its Class 5 Claim. The value, excluding all associated costs, of such assignment is set out in **Plan Exhibit 4.5**. At her discretion, the Trustee may execute said documents by power of attorney. All costs associated with the preparation and/or recordation of the documents shall be borne by EFP/BHT. EFP/BHT will be responsible for issuing statements and all other forms or documents required by State or federal law related to the Loans for the calendar year in which the assignment occurs.

(c)    Voting: Class 5 is Impaired by the Plan. Holders of an Allowed EFP/BHT Unsecured Claim are entitled to vote to accept or reject the Plan.

### Section 4.6    Class 6 (Unsecured Accrued Interest Claims).

(a)    Classification: Class 6 consists of Unsecured Accrued Interest Claims

(b)    Treatment: The Allowed amount of the Unsecured Accrued Interest Claims will be determined after the payment of all Administrative Claims (including future Professional fees and expenses and consistent with the Bankruptcy Court's Final Orders regarding compensation), and after payment in full to Holders of all Allowed Claims in Classes 1 through 5, any remaining funds will be disbursed to Holders of Allowed Unsecured Accrued Interest Claims. Holders of Class 6 Claims will have Allowed Claims in either Class 4 or Class 5. Total interest will be calculated using the Prime Rate as of the Effective Date and taking into consideration the time the Allowed Claim was outstanding prior to the Petition Date as well as the Allowed amount of the Claim. All such disbursements will be made on a Pro Rata basis. However, if the Holders of Claims in Class 5, through distribution of all funds and the assignment of rights and/or assets, receive more than the Allowed EFP/BHT Unsecured Claims, the Allowed Accrued Interest Claim held by EFP/BHT will be reduced accordingly.

(c)    Voting: Class 6 is Impaired by the Plan. Holders of an Allowed Unsecured Accrued Interest Claim are entitled to vote to accept or reject the Plan.

# ARTICLE V
# MEANS FOR IMPLEMENTATION OF THE PLAN

### Section 5.1       General Means of Implementation

(a)       On or before the Effective Date, the Plan will be implemented and consummated through the means contemplated by section 1123 of the Bankruptcy Code, including by:

(A)       Before the Effective Date, the Trustee shall reject and terminate the Pre-petition Executory Contracts on **Plan Exhibit 7.2**.

(B)       Before the Effective Date, the Trustee will give the Servicer notice of her intention to terminate the Servicing Agreement. Unless otherwise agreed to between the Trustee and the Servicer, on or before the Effective Date, the Trustee will terminate the Servicing Agreement with the Servicer. All fees necessary as a result of terminating the Servicing Agreement will be paid by the Trustee, on the Effective Date, to the Servicer as an Administrative Claim. As of June 1, 2018, the estimated total amount of the Servicer's Administrative Claim for Termination of the Servicing Agreement is approximately $82,000.00.

(C)       On or before the Effective Date, the Trustee shall set aside an amount that is no less than $500,000.00, to be used to pay any and all Trustee fees and/or expenses, as well as to pay any professionals who incur fees and/or expenses at any time post-Confirmation of the Plan.

(D)       On or before the Effective Date, the Trustee shall pay Claims in Class 1. If a Holder's Claim in Class 1 is not Allowed on or before the Effective Date, the Trustee will make the Distribution to such holder within fifteen (15) days after the earlier of the date on which (a) an Order allowing such Claim becomes a Final Order, or (b) a Stipulation Regarding the Amount and Nature of the Claim is executed.

(E)       On or before the Effective Date, the Trustee shall pay Claims in Class 2. If a Holder's Claim in Class 2 is not Allowed on or before the Effective Date, the Trustee will make the Distribution to such holder within fifteen (15) days after the earlier of the date on which (a) an Order allowing such Claim becomes a Final Order, or (b) a Stipulation Regarding the Amount and Nature of the Claim is executed.

(F)       On or before the Effective Date, the Trustee shall execute documents sufficient to transfer to EFP its designee any Loan owned by or serviced by the Estate constituting, or included in, Mortgage Loan Portfolio #1 and Mortgage Portfolio #2, in full satisfaction of its Class 3 Claim. At her discretion, Trustee may execute said documents by power of attorney. All costs associated with the preparation and/or recordation of the documents shall be borne by EFP. EFP will be responsible for issuing statements and all other forms or documents required by State or federal law related to the Loans for the calendar year in which the assignment occurs.

(G)     On or before the Effective Date, the Trustee shall pay Claims in Class 4, exclusive of any and all accrued interest. If a Holder's Claim in Class 4 is not Allowed on or before the Effective Date, the Trustee will make the Distribution to such holder within fifteen (15) days after the earlier of the date on which (a) an Order allowing such Claim becomes a Final Order, or (b) a Stipulation Regarding the Amount and Nature of the Claim is executed.

(H)     On or before the Effective Date, the Trustee shall begin to take all necessary and reasonable steps, in her business judgment, to sell all remaining Loans held or owned by the Debtor, regardless of whether such Loans were purchased before or after the Petition Date, but specifically excluding all Loans comprising Mortgage Portfolio #1, Mortgage Portfolio #2, and Mortgage Portfolio #7. The Trustee will file a motion to establish procedures to sell all such remaining Loans, Furthermore, the Trustee will seek an order from the Bankruptcy Court approving the sale of the Loans and granting the Trustee the right to disburse the funds received in accordance with the Plan and the Bankruptcy Code. All executory contracts and/or leases, as set out in **Plan Exhibit 7.1**, will be rejected and terminated, or assumed and assigned to the buyer of the remaining  Loans at the buyer's option.

(I)     On or before the Effective Date, the Trustee shall execute documents sufficient to transfer to EFP/BHT or its designee any rights any interest the Estate may have in the Designated Loans, all rights to funds associated with Restitution Order, and all funds and/or assets currently in or being held by the Costa Rican Government toward full satisfaction of its Class 5 Claim. The value, excluding all associated costs, of such assignment is set out in **Plan Exhibit 4.5**. At her discretion, the Trustee may execute said documents by power of attorney. All costs associated with the preparation and/or recordation of the documents shall be borne by EFP/BHT. EFP/BHT will be responsible for issuing statements and all other forms or documents required by State, federal, and/or foreign law related to the Loans for the calendar year in which the assignment occurs.

(J)     Allowed Claims in Classes 4 and 5 will be effectively bifurcated between Allowed principal amounts and interest accrued through the Petition Date, the Allowance of which will be determined after full payment of all Administrative Claims (including future Professional fees and expenses and consistent with the Bankruptcy Court's Final Orders regarding compensation), and after full payment to Holders of all Allowed Claims in Classes 1 through 5. The amount of an Allowed Claim in Class 6 will be determined based on the Prime Rate as of the Effective Date. Any and all disbursements made on Allowed Class 6 Claims will be made on a Pro Rata basis. Holders of Allowed Class 6 Claims need not File any additional documents, such as a proof of claim, with the Bankruptcy Court. However, if the Holders of Claims in Class 5, through distribution of all funds and the assignment of rights and/or assets, receive more than the Allowed EFP/BHT Unsecured Claims, the Allowed Accrued Interest Claim held by EFP/BHT will be reduced accordingly.

**Section 5.2**     **Powers of the Trustee Post Effective Date.**  After the Effective Date, the Trustee shall have the following powers without need for approval by the Bankruptcy Court.

1.   Prosecute and settle litigation.

- 19 -

2. Sell and/or assign assets of the Estate.

3. Hire and pay Professionals as necessary for consummation of the Plan.

4. File any documents required by the Bankruptcy Code including, but not limited to, Monthly Operating Reports.

5. Use Cash of the Estate.

6. Pay all other expenses of the Estate.

7. Complete final tax returns for the Estate.

**Section 5.3     Stipulation Regarding the Amount and Nature of the Claim from and after the Effective Date.**  From and after the Effective Date, the Trustee will have authority to enter into a Stipulation Regarding the Amount and Nature of the Claim, without need for approval by Bankruptcy Court.

**Section 5.4     Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes.** The Trustee will be authorized to execute, deliver, File or record such contracts, instruments, releases and other agreements and documents and take such actions as may be necessary, appropriate or desirable to effectuate and implement the provisions of the Plan. The Trustee will be authorized to certify or attest to any of the foregoing actions. Pursuant to section 1146(c) of the Bankruptcy Code, the following will not be subject to a stamp tax, real estate transfer tax, sales or use tax or similar Tax: (a) the creation of any mortgage, deed of trust, lien or other security interest; (b) the making or assignment of any lease or sublease; and (c) the making or delivery of any deed, bill of sale or other instrument of transfer or assignment or any plan of merger, consolidation, liquidation or dissolution under, in furtherance of or in connection with the Plan.

**Section 5.5     General Settlement of Claims.**   Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to this Plan in accordance with Bankruptcy Rule 9019 and within the exercise of the Trustee's business judgment and shall be approved as in the best interests of the Estate. A vote to accept the Plan **will not** be considered a settlement of all claims against the Estate.

# ARTICLE VI
# PROVISIONS GOVERNING DISTRIBUTIONS
# AND OBJECTIONS TO CLAIMS

**Section 6.1     Distributions Generally.**  Distributions to be made under the Plan to Holders of Claims that are Allowed on or before the Effective Date will be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as is practicable, but in any event within fifteen (15) days after the Effective Date unless such Distribution is returned to

the Trustee as undeliverable. If a Claim is Allowed after the Effective Date, a Distribution will be made on account of the Allowed Claim within fifteen (15) days after the earlier of the date on which (a) an Order allowing the Claim becomes a Final Order, or (b) a Stipulation Regarding the Amount and Nature of the Claim is executed. Distributions under the Plan will be made to the Holder of each Allowed Claim at the address of such Holder as listed on the Schedules, unless the Trustee has been notified in writing of a change of address, including, without limitation, by the Filing of an amended Proof of Claim by such Holder that provides an address for such Holder different from the address reflected on the Schedules.

**Section 6.2     Delivery of Distributions to Holders of Allowed Claims.**  The Trustee will make Distributions to the Holders of Allowed Claims. No Distribution will be made with respect to all or any portion of any Disputed, contingent or unliquidated Claim until the Claim becomes an Allowed Claim. For purposes of this Plan, any Claims held by any Entity for which the Bankruptcy Court has entered a Final Judgment, shall be deemed to be an Allowed Claim.

**Section 6.3     Undeliverable Distributions.**

(a)     **No Further Attempts at Delivery.** If any Distribution to a Holder of an Allowed Claim is returned to the Trustee as undeliverable, then unless and until the Trustee is notified in writing of the Holder's then-current address:  (i) such undeliverable Distributions will remain in the possession of the Trustee and no further attempt will be made to deliver such Distribution; and (ii) no attempt will be made to deliver subsequent Distributions to such Holder.

(b)     **Forfeiture.** Any Holder of an Allowed Claim that does not assert a Claim for an undeliverable Distribution, by delivering to the Trustee a written notice setting forth such Holder's then-current address within 180 days after the later of (i) the Effective Date, and (ii) the last date on which a Distribution was deliverable to the Holder, will have its claim for undeliverable Distributions discharged and will be forever barred from asserting such claim or any claim for subsequent Distributions against the Trustee, the Debtor, or the Debtor's property.

(c)     **No Requirement to Attempt to Locate Holders.** Nothing contained in the Plan will require the Trustee to attempt to locate any Holder of an Allowed Claim.

**Section 6.4     Means of Cash Payments.** Except as otherwise provided in the Plan, Cash payments made pursuant to the Plan will be in United States currency by checks drawn on the account of the Trustee or by wire transfer from a domestic bank. The wiring fees of Claimants electing wire-transfer payments shall be deducted from their Distribution.  If a check included in a Distribution to a Holder of an Allowed Claim is not cashed within 180 days of the issuance thereof, the Trustee will void such check and such Distribution will be treated as undeliverable as provided in Section 6.3 of the Plan.

**Section 6.5     Setoffs and Recoupment.** The Trustee may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, setoff or recoup against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is made on account of such Claim) the Claims, rights and Causes of Action of any nature that the Estate may hold against the Holder of such Allowed Claim; *provided, however*, that neither the failure to effect a setoff or recoupment nor the allowance of

any Allowed Claim hereunder will constitute a waiver or release by the Estate of any Claims, rights and Causes of Action that the Estate may possess against such a Holder, which are preserved under the Plan.

**Section 6.6      Distribution Record Date.**

(a)      **Allowed Claim.**  The Trustee will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the Distribution Record Date and will be entitled for all purposes herein to recognize and make Distributions only to those Holders of Allowed Claims that are Holders of such Claims, or participants therein, as of the Distribution Record Date.

(b)      **Pending Transfers.**  Except as otherwise provided in a Final Order, the transferees of Allowed Claims that are transferred pursuant to Bankruptcy Rule 3001 before the Distribution Record Date will be treated as Holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objection to such a transfer has not expired before the Distribution Record Date.

**Section 6.7      Distributions in Complete Satisfaction.**  The payments, Distributions and other treatments provided in respect to each Allowed Claim under this Plan shall be in complete satisfaction, discharge and release of all such Allowed Claims.

**Section 6.8      Objections to Claims.**  Objections to Claims may be Filed until the Effective Date, or such later date as the Bankruptcy Court may Order. The Trustee reserves the right for herself and any other party in interest, to File objections through the Effective Date.

**Section 6.9      Estimation of Claims.**  Before or after the Effective Date, the Trustee may (but is not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of Distributions), and the Trustee may elect to pursue any supplemental proceedings to object to any ultimate Distribution with respect to such Claim.

# ARTICLE VII
# TREATMENT OF EXECUTORY CONTRACTS
# AND UNEXPIRED LEASES

**Section 7.1      Executory Contracts or Unexpired Leases to Be Rejected or Assumed.**

(a)      **Executory Contracts Relevant to Loan Servicing**. Except as otherwise provided in the Plan or Confirmation Order, the Trustee will hold all Executory Contracts or Unexpired Lease listed on **Plan Exhibit 7.1**. The Trustee will hold such Executory Contracts or

Unexpired Leases so that each may be assumed or rejected at the option of the buyer of the Loans the Trustee puts up for sale.

(b)    **Generally.** Except as otherwise provided in the Plan or the Confirmation Order, each Executory Contract or Unexpired Lease that is listed on **Plan Exhibit 7.1** will be assumed or rejected, pursuant to section 365 of the Bankruptcy Code, by the Buyer of the Loans. The Final Order of the Bankruptcy Court approving the Sale of Loans and granting the Trustee the right to disburse all funds received pursuant to the sale will constitute an Order of the Bankruptcy Court approving each such assumption or rejection pursuant to section 365 of the Bankruptcy Code. Such Order of the Bankruptcy Court, to be proposed by the Trustee, will specify the procedures for providing notice to each party whose Executory Contract or Unexpired Lease is being assumed or rejected by the buyer. Through the proposed Order submitted by the Trustee, the Trustee will (1) provide which Executory Contract and/or Unexpired Lease is being rejected or assumed; (2) set out the obligations to be paid by the buyer and/or the Estate, as agreed pursuant to any asset purchase agreement, in connection with assumption or rejection of the pertinent contract or lease; and (3) set out the procedures for the relevant party to object to the assumption or rejection of the applicable contract or lease or the amount of the proposed to satisfy the assumption or rejection of such contract or lease.

**Section 7.2    All Other Executory Contracts or Unexpired Leases Rejected**. Any Executory Contracts or Unexpired Leases provided in **Plan Exhibit 7.2** will be deemed rejected. The Order on confirmation of the Plan will constitute an Order of the Bankruptcy Court approving the rejection and termination as of the Effective Date, pursuant to section 365 of the Bankruptcy Code of each Executory Contract and Unexpired Lease that (i) is not held under Section 7.1(a) of the Plan, or (ii) is the subject of a motion to assume or reject pending as of the Effective Date; *provided, however*, that the Trustee reserves the right to amend Plan Exhibit 7.1 to (i) delete any Executory Contract or Unexpired Lease listed therein, thus providing for its rejection pursuant to Section 7.1(b) of the Plan, or (ii) add any Executory Contract or Unexpired Lease thereto, thus providing for it to be held by the Trustee until the sale of the Loans in accordance with Section 7.1(a) of the Plan. The Trustee will provide notice of any amendments to Plan Exhibit 7.1 to the parties to the Executory Contracts or Unexpired Leases affected thereby. Such notice will be sent by overnight delivery or telecopy, and will include a Ballot and a form for Filing a Proof of Claim.

**Section 7.3    Payments Related to the Assumption of Executory Contracts and Unexpired Leases.**    To the extent that such Claims constitute monetary defaults, the Cure Amount Claims associated with each Executory Contract or Unexpired Lease to be assumed pursuant to the Plan will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, at pursuant into the asset sale agreement entered into by the Trustee regarding the sale of the Loans: (a) by payment of the Cure Amount Claim in Cash as of the date of the Bankruptcy Court's Final Order approving the Sale of Loans and granting the Trustee the right to disburse all funds received pursuant to the sale or (b) on such other terms as are agreed to by any non-Debtor party to such Executory Contract or Unexpired Lease and the Trustee. If there is a dispute regarding the amount of any Cure Amount Claim, or any other matter pertaining to assumption of such contract or lease, the payment of any Cure Amount Claim required by section 365(b)(1) of the

- 23 -

Bankruptcy Code will be made following the entry of a Final Order resolving the dispute and approving the assumption.

**Section 7.4**     **Rejection Damages Claims.**     Pursuant to section 502(g) of the Bankruptcy Code, any Claims arising from the rejection of the Executory Contracts or Unexpired Leases shall File a Rejection Claim within the deadlines provided Bankruptcy Rule 3001. Any Rejection Claim Allowed under section 502(a), (b) or (c) of the Bankruptcy Code will be treated as a General Unsecured Claim and will be treated in Class 4 of the Plan.

# ARTICLE VIII
# CONDITIONS TO THE PLAN BECOMING EFFECTIVE
# AND IMPLEMENTATION OF THE PLAN

**Section 8.1**     **Conditions to the Plan Becoming Effective.** The Plan shall not be consummated, and the Effective Date shall not occur, until each of the following conditions has been satisfied or duly waived pursuant to Section 8.2 of the Plan:

(a)     The first Business Day after a Confirmation Order has been entered by the Bankruptcy Court in form and substance that is satisfactory to the Bankruptcy Court and the Trustee, so that such Confirmation Order shall be in full force and effect and shall be a Final Order;

(b)     no Material Adverse Change will have occurred from and after the Confirmation Date; and,

(c)     all consents, actions, documents, certificates, and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable governmental units in accordance with the applicable laws.

**Section 8.2**     **Waiver of Conditions to the Effective Date.**     One or more of the foregoing conditions to the Effective Date may be waived, in whole or in part, by the Trustee in her discretion at any time and without any Order of the Bankruptcy Court.

**Section 8.3**     **Filing Notice of Occurrence of the Effective Date.** The Trustee shall File a notice of occurrence of the Effective Date within three (3) Business Days of the Effective Date, and such Notice must state that all conditions to the Plan becoming effective have been satisfied.

**Section 8.4**     **Effect of Non-Occurrence of Conditions to Consummation.** If consummation of this Plan does not occur (including, without limitation, if the Confirmation Order is vacated pursuant to a Final Order), then except as provided in any Order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of any Entity, or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Entity.  All assignments and releases granted in this event prior to failure to consummate will be deemed null and void without further need for approval by the Bankruptcy Court.

**Section 8.5**    The Confirmation Order shall provide that all documents contemplated by this Plan will be executed by the Entity required to execute such document(s) no later than sixty (60) days after the Confirmation Date. The Trustee, in her sole discretion, may extend this time period without need for approval by the Bankruptcy Court.

# ARTICLE IX
## DISCHARGE, RELEASES AND INJUNCTION

**Section 9.1    Injunction.** Except as otherwise expressly provided in the Plan or the Confirmation Order, as of the Effective Date, any Entity that has held, currently holds or may hold a Claim or other debt, or liability, that is settled or deemed satisfied in accordance with the Plan will be permanently enjoined from taking any of the following actions on account of any such Claims, debts, liabilities or Interests:  (a) commencing or continuing in any manner any action or Cause of Action or other proceeding against the Estate, the Trustee, the Trustee's Professionals, or the property of any of them, other than to enforce any right that does not comply with, or is inconsistent with, the provisions of the Plan; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Estate, the Trustee, the Trustee's Professionals, or the property of any of them; (c) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Estate, the Trustee, the Trustee's Professionals, or the property of any of them; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Estate, Trustee or the property of any of them; and (e) commencing or continuing any action or Cause of Action, in any manner, in any place that does not comply with or is inconsistent with the Plan.

**Section 9.2    Term of the Automatic Stay.**  Unless otherwise provided in the Plan or the Confirmation Order, the automatic stay set forth in section 362 of the Bankruptcy Code shall remain in full force and effect until the Effective Date.

**Section 9.3    Release of Liens.**  Except as otherwise provided in the Plan, Confirmation Order, or in any contract, instrument, release, other agreement or document entered into or delivered, on the Effective Date, all mortgages, deeds of trust, Liens or other security interests or encumbrances of any kind against the property of the Estate will be fully released and discharged, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, Liens or other security interests, including any rights to any Collateral thereunder, will revert to the Estate and the former Holder thereof will, upon request of the Trustee, execute such documents evidencing such release and discharge as the Trustee may reasonably request.

**Section 9.4    No Successor Liability.** The Trustee will have no responsibilities for any Claims against or liabilities or obligations of the Estate relating to or arising out of the operations of or assets of the Trustee, the Debtor, the Estate or the Trustee's Professionals, including the Servicer, whether arising prior to, or resulting from actions, events or circumstances occurring or existing at any time prior to the Confirmation Date; *provided, however*, that the Trustee shall have the obligations specifically and expressly provided in the Plan.

**Section 9.5    Releases.**

(a)    Releases by the Holders of Claims.

- 25 -

**EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, EACH HOLDER OF A CLAIM WHO HAS VOTED TO ACCEPT THIS PLAN SHALL BE DEEMED TO HAVE UNCONDITIONALLY RELEASED THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE THAT IS IN ANY WAY RELATED TO THE ESTATE, ITS PROPERTIES, THE BANKRUPTCY CASE, THE TRUSTEE, HER PROFESSIONALS, THE DISCLOSURE STATEMENT OR THE PLAN;** *PROVIDED, HOWEVER*, **THAT NOTHING IN THIS SECTION 9.5 OF THE PLAN WILL OPERATE TO WAIVE OR RELEASE (A) THE RIGHTS OF ANY PARTY TO ENFORCE THIS PLAN AND THE CONTRACTS, INSTRUMENTS AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THIS PLAN OR ASSUMED PURSUANT TO THIS  PLAN, OR (B) ANY CLAIM OR RIGHT AGAINST A RELEASED PARTY THAT IS BASED ON THE GROSS NEGLIGENCE, FRAUD OR WILLFUL MISCONDUCT OF SUCH RELEASED PARTY AS DETERMINED BY A FINAL ORDER OF THE BANKRUPTCY COURT OR OTHER COURT OF COMPETENT JURISDICTION.**

**Section 9.6     Exculpation.**

**AS OF AND SUBJECT TO THE OCCURRENCE OF THE CONFIRMATION DATE, THE EXCULPATED PARTIES (A) SHALL BE DEEMED TO HAVE NEGOTIATED THE PLAN IN GOOD FAITH AND NOT BY ANY MEANS FORBIDDEN BY LAW, AND (B) SOLICITED ACCEPTANCES OF THE PLAN IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, INCLUDING SECTION 1125(a) AND (e) OF THE BANKRUPTCY CODE AND ANY APPLICABLE NON-BANKRUPTCY LAW, RULE, OR REGULATION GOVERNING THE ADEQUACY OF DISCLOSURE IN CONNECTION WITH THE SOLICITATION. ADDITIONALLY, NONE OF THE EXCULPATED PARTIES SHALL BE LIABLE TO ANY ENTITY FOR ANY ACTION TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR RELATED TO THE FORMULATION, PREPARATION, DISSEMINATION, IMPLEMENTATION, CONFIRMATION, OR CONSUMMATION OF THE  PLAN, THE DISCLOSURE STATEMENT, EARLIER VERSIONS OF THE SAME, OR ANY CONTRACT, INSTRUMENT, RELEASE, OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO, OR ANY OTHER ACTION TAKEN OR OMITTED TO BE TAKEN, IN CONNECTION WITH THE PLAN OR THE BANKRUPTCY CASES;** *PROVIDED, HOWEVER*, **THAT NOTHING IN THIS SECTION 9.6 OF THE  PLAN WILL OPERATE TO WAIVE OR RELEASE (A) THE RIGHTS OF ANY PARTY TO ENFORCE THIS PLAN AND THE CONTRACTS, INSTRUMENTS AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THIS PLAN OR ASSUMED PURSUANT TO THIS  PLAN, OR (B) ANY CLAIM OR RIGHT AGAINST AN EXCULPATED PARTY THAT IS BASED ON THE GROSS NEGLIGENCE, FRAUD OR WILLFUL MISCONDUCT OF SUCH EXCULPATED PARTY AS DETERMINED**

**BY A FINAL ORDER OF THE BANKRUPTCY COURT OR OTHER COURT OF COMPETENT JURISDICTION.**

# ARTICLE X
# RETENTION OF JURISDICTION

**Section 10.1**   Until the entry of a final decree in accordance with Bankruptcy Rule 3022, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising under, arising out of or relating to the Bankruptcy Case including, but not limited to, the following:

(a)     to insure that the purpose and intent of the Plan are carried out;

(b)     to consider any modification of the Plan under section 1127 of the Bankruptcy Code;

(c)     to hear and determine all Claims, controversies, defaults, suits, and disputes against the Estate, including, but not limited to, any Disputed Administrative Claim or Disputed Claim;

(d)     to hear, determine and enforce all Claims, Causes of Action, and Bankruptcy Causes of Action of the Estate that arose, in whole or in part, prior to the Effective Date;

(e)     to hear and determine all controversies, suits, defaults and disputes that may arise in connection with the interpretation, execution or enforcement of the Plan;

(f)     to hear and determine all requests for compensation and/or reimbursement of expenses for services rendered or expenses incurred before the Effective Date which may be made after the Effective Date;

(g)     to hear and determine all objections to Administrative Claims, Claims, controversies, suits and disputes that may be pending at or initiated after the Effective Date, except as provided in the Confirmation Order;

(h)     to consider and act on the compromise and settlement of any Administrative Claim, Claim or Cause of Action on behalf of or against the Estate;

(i)     to enforce and interpret by injunction or otherwise the terms and conditions of the Plan;

(j)     to enter an Order setting forth the procedures for the sale of the remaining Loans;

(k)     to enter a Final Order authorizing the sale of the remaining Loans and the disbursement of funds obtained pursuant to the sale by the Trustee;

(l)     to enter a Final Order concluding and terminating the Bankruptcy Case;

(m)    to correct any defect, cure any omission or reconcile any inconsistency in the Plan or Confirmation Order necessary or helpful to carry out the purposes and intent of the Plan;

(n)    to determine all questions and disputes regarding titles to the assets of the Debtor;

(o)    to classify the Claims or Interests of any Holder and to re-examine Claims allowed for purposes of voting, and to determine objections to Administrative Claims, Claims and Interests;

(p)    to consider and act on such other matters consistent with the Plan as may be provided in the Confirmation Order;

(q)    to enforce any injunction or stay whether arising under the Bankruptcy Code, Bankruptcy Rules, or the Plan; and/or

(r)    to consider the rejection of Executory Contracts and/or Unexpired Leases that are not discovered before Confirmation and allow Claims for damages with respect to the rejection of any such Executory Contracts or Unexpired Leases within such future time as the Bankruptcy Court may direct.

# ARTICLE XI
## RESERVED

# ARTICLE XII
## MISCELLANEOUS

**Section 12.1    Modification of the Plan.**  Subject to the restrictions on modification set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3019, the Trustee reserves the right to alter, amend or modify the Plan before its substantial consummation.

**Section 12.2    Revocation or Withdrawal of the Plan.**  The Trustee reserves the right to revoke or withdraw the Plan at any time before the Confirmation Date by Filing a notice of withdrawal or revocation. If the Plan is revoked or withdrawn, or if the Effective Date does not occur, then the Plan and all settlements and compromises set forth herein and not otherwise approved by Final Order shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Entity.

**Section 12.3    Severability.**  If, prior to confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted; *provided, however*, that any such alteration or interpretation must be in form and substance acceptable to the Trustee. Notwithstanding any such holding,

alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**Section 12.4**   **Plan Exhibits.**   All Plan Exhibits are incorporated by reference and are intended to be an integral part of this document as though fully set forth in the Plan.

**Section 12.5**   **Binding Effect.**   The Plan shall be binding upon and/or inure to the benefit of the Debtor, the Estate, the Trustee, the Holders of Claims and Interests, together with their respective successors and assigns.

**Section 12.6**   **Substantial Consummation.** The  Plan will be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code upon the Effective Date.

**Section 12.7**   **Successors and Assigns.** The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**Section 12.8**   **Headings.**   Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**Section 12.9**   **Governing Law.** Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by and construed and enforced as provided in the laws of the State of Mississippi; *provided, however*, that any documents executed in connection with the  Plan, including, but not limited to the Plan Exhibits, shall be governed by the laws of the State chosen therein.

**Section 12.10**   **Notices.** All notices, requests, elections or demands to or upon Trustee or the Estate in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, three (3) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested, and sent to the following:

**To the Estate and the Trustee**:

KRISTINA M. JOHNSON, Chapter 11 Trustee
JEFFREY R. BARBER
Jones Walker LLP
190 E. Capitol Street, Suite 800
Jackson, Mississippi 39201
Email: kjohnson@joneswalker.com
Email: jbarber@joneswalker.com

All notices and requests to Holders shall be sent to their last known addresses.

- 29 -

**Section 12.11  No Admissions.** Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by any Entity prior to Confirmation with respect to any matter set forth herein.

# ARTICLE XIII
# CRAMDOWN

**Section 13.1**   The Trustee may request Confirmation under section 1129(b) of the Bankruptcy Code, if any Impaired Class does not accept the Plan pursuant to section 1126 of the Bankruptcy Code.  The Trustee reserves the right to alter the treatment of any Class to effectuate a cramdown under section 1129(b) of the Bankruptcy Code.

Dated:  June 1, 2018.

Respectfully submitted,

KRISTINA M. JOHNSON,
TRUSTEE OF THE ESTATE OF
COMMUNITY HOME
FINANCIAL SERVICES, INC.

By Her Attorneys,

JONES WALKER LLP

By: *s/ Jeffrey R. Barber*
    JEFFREY R. BARBER

Jeffrey R. Barber (MB #1982)
Kristina M. Johnson (MB #9382)
Stephanie B. McLarty (MB #104585)
**JONES WALKER LLP**
190 East Capitol Street, Suite 800 (39201)
Post Office Box 427
Jackson, Mississippi  39205-0427
Telephone:  (601) 949-4765
Facsimile:  (601) 949-4804
jbarber@joneswalker.com
kjohnson@joneswalker.com

Admitted *Pro Hac Vice*:

Mark A. Mintz (LAB #31878)
**JONES WALKER LLP**
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana  70170-5100
Telephone:  (504) 582-8368
Facsimile:  (504) 589-8368
mmintz@joneswalker.com

Laura F. Ashley (LAB #32820)
**JONES WALKER LLP**
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana  70170
Telephone:  (504) 582-8118
Facsimile:  (504) 589-8118
lashley@joneswalker.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2018, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the parties set forth in the Electronic Mail Notice List as of the date hereof, including the following:

Ronald H. McAlpin, Esq.
ronald.mcalpin@usdoj.gov

Jim F. Spencer, Jr., Esq.
jspencer@wakinseager.com

Stephanie M. Rippee, Esq.
srippee@watkinseager.com

DATED:  June 1, 2018.

*s/Jeffrey R. Barber*

- 32 -

# PLAN EXHIBITS

PLAN EXHIBIT 4.5    ESTIMATED VALUATION OF ANY RIGHTS ASSOCIATED WITH LOANS WHICH MAY HAVE BEEN FRAUDULENTLY TRANSFERRED, FUNDS AND/OR ASSETS CURRENTLY IN OR BEING HELD BY THE COSTA RICAN GOVERNMENT, ALL RIGHTS TO FUNDS ASSOCIATED WITH RESTITUTION ORDER, AND ANY INTEREST THE ESTATE HAS IN FOREIGN LOANS OR ANY PENDING LITIGATION ASSOCIATED WITH THE FOREIGN LOANS TO BE ASSIGNED TO IN CONNECTION WITH CLASS 5

PLAN EXHIBIT 7.1    EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE HELD BY THE TRUSTEE FOR ASSUMPTION OR REJECTION BY THE BUYER OF LOANS TO BE SOLD FOR THE BENEFIT OF THE ESTATE

PLAN EXHIBIT 7.2    EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE REJECTED BY THE TRUSTEE

**PLAN EXHIBIT 4.5**

**PLAN EXHIBIT 7.1**

- Membership Agreement with MERS®

**PLAN EXHIBIT 7.2**

- Mortgage Portfolio Agreement III by and between Beher Holdings Trust and Community Home Financial Services