**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON-3 DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 11 PROCEEDING |
| COMMUNITY HOME FINANCIAL SERVICES, INC., | CASE NO. 12-01703-NPO |
| DEBTOR | |

| | |
|---|---|
| OCWEN LOAN SERVICING, LLC AND DAWN M. ZURINSKI | PLAINTIFF |

VS.

| | |
|---|---|
| COMMUNITY HOME FINANCIAL SERVICES, INC., | DEFENDANT |
| DEBTOR | |

### MOTION FOR RELIEF FROM AUTOMATIC STAY, ABANDONMENT AND FOR OTHER RELIEF

COMES NOW, Ocwen Loan Servicing, LLC, a party in interest in this cause, by and through its attorney, and moves this Court to lift the automatic stay as to certain property belonging to Dawn M. Zurinski, and for other relief including abandonment from the estate, and in support of said motion would respectfully show unto the Court the following to wit:

1. That on or about May 23, 2012, Community Home Financial Services, Inc. filed a voluntary petition in Bankruptcy pursuant to 11 U.S.C. Chapter 11. By operation of 11 U.S.C. 362, the Plaintiff is prohibited from commitment of any judicial proceeding against the Defendants, any act to obtain possession of property of the estate, or any act to enforce any lien against the property of the estate.

2. That the Bankruptcy Court has jurisdiction over this proceeding pursuant to 11 U.S.C. 362.

3. That on or about February 6, 2008, Dawn M. Zurinski, did execute a certain Note and Mortgage in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Quicken Loans, Inc., secured by the following real property:

> Situated in the City of Dayton, in the County of Montgomery and State of Ohio, and being Lot numbered thirteen thousand three hundred ninety (13390) of the consecutive numbers of lots on the revised plat of the said city of Dayton.
>
> Property Address: 133 S Willow St, Toluca, IL 61369

Said Mortgage is recorded in the Marshall County Clerk's office as Instrument No. 2008000000275 DR Book 883 Page 748. Further, said Note and Mortgage were subsequently assigned to Plaintiff by assignment recorded in the office of the County Recorder aforesaid. A copy of said Mortgage attached hereto as Exhibit A as though fully copied herein.

4. Dawn M. Zurinski has failed to pay the current months' indebtedness directly to the Plaintiff and is now due and owing for the September 2018 payment and all subsequent payments. As of March 26, 2019, Dawn M. Zurinski is delinquent in mortgage payments in the amount of $4,009.86, plus all payments and charges that accrue hereafter, and the total amount of the debt to Plaintiff is $49,467.16. The value of the property according to the County Assessor is $13,956.00. Said Mortgage is a first priority lien on the above referenced property, and is now due and owing. Upon information and belief, the Debtor, Community Home Financial Services, Inc. holds a second mortgage with reference to the subject property by that Mortgage dated May 28, 2008 and recorded in Instrument No. 200800001251 (assigned to Debtor at Instrument No. 20080001710). A copy of said Mortgage and Assignment is attached hereto as Exhibit B as though fully copied herein.

5. Plaintiff would show that sufficient cause exists for the termination, annulment or modification of the automatic stay as provided in 11 U.S.C.362 (d) (1) because of the failure of the Dawn M. Zurinski to make the payments set forth above and because there is no equity in the subject property. Plaintiff would urge the Court to terminate, modify or lift the automatic stay and abandon the subject property from the estate of the Debtor, so as to allow the Plaintiff to pursue

all remedies available to it under the terms and conditions of said Mortgage, and applicable state law, including initiation of foreclosure proceedings. Plaintiff further asks for attorney fees and court costs incurred. Plaintiff also requests that the 14-day stay imposed by FRBP 4001(a)(3) be waived.

WHEREFORE, PREMISES CONSIDERED, Ocwen Loan Servicing, LLC files this Motion and prays that the automatic stay afforded by 11 U.S.C. 362 be terminated, modified or lifted, said property be abandoned from the estate, after notice and hearing, so as to allow Plaintiff to pursue its remedies and to initiate foreclosure proceedings against the property which is subject to said Mortgage, and for attorney's fees and costs incurred. Plaintiff also requests that the 14-day stay imposed by FRBP 4001(a)(3) be waived.

**CERTIFICATE OF SERVICE**

      I hereby certify that in accordance with Fed. R. Bankr. P. 4001(a), 9014, and 7004 that a copy of the foregoing has been served upon the following using the CM/ECF System, on April 9, 2018, to wit:

Kristina M. Johnson
jbarber@joneswalker.com

Laura F. Ashley, Jones Walker, LLP,
Attorney for the Debtor
lashley@joneswalker.com

Office of the U.S. Trustee
USTPRegion05.JA.ECF@usdoj.gov

      And by United States Mail, postage prepaid and properly addressed to:

Dawn M Zurinski
133 S Willow St
Toluca, IL 61369

Community Home Financial Services, Inc.
P. O. Box 23368
Jackson, MS 39225

                                           /s/ Holly C. Ratcliff
                                           HOLLY C. RATCLIFF (MSB#4634)

Instrument Book Page
200800000275 OR 883 748

Return To:
Christie Holloway
Quicken Loans Inc.
20555 Victor Parkway
Livonia, MI 48152

200800000275
Filed for Record in
MARSHALL COUNTY, IL
ANDREA J MAHONEY-PLATT
02-07-2008 At 11:51 am.
MTG                48.00
STATE TAX           .00
LOCAL TAX           .00
OR Book 883 Page 748 - 757
RHSP Surcharge    10.00

Prepared By:
Erik Berry

**State of Illinois**                    **MORTGAGE**              FHA Case No.

THIS MORTGAGE ("Security Instrument") is given on       February 6, 2008
The Mortgagor is Dawn M. Zurinski, a single woman

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
Quicken Loans Inc.

("Lender") is organized and existing under the laws of    the State of Michigan    , and has an address of 20555 Victor Parkway, Livonia, MI 48152
. Borrower owes Lender the principal sum of
Fifty Four Thousand One Hundred Fifty and 00/100
Dollars (U.S. $54,150.00          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on March 1, 2038
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's

FHA Illinois Mortgage with MERS - 4/96
Wolters Kluwer Financial Services
VMP®-4N(IL) (0305).01              Amended 2/01
Page 1 of 9                        Initials: DMZ

200800000275 OR 883 749

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in
Marshall                                                                                                              County, Illinois:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.

Parcel ID Number:   14-05-384-011
which has the address of  133 S Willow St                                                                                  [Street]
Toluca            [City], Illinois    61369-9457      [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

Initials: _DmZ_

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>Third</u>, to interest due under the Note;

<u>Fourth</u>, to amortization of the principal of the Note; and

<u>Fifth</u>, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

Initials: _DM__

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

   **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

   (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

   (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

   **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

Initials: DM2

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

Initials: DM 2

```
Instrument      Book Page
200800000275 OR  883  753
```

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

Initials: DMZ

```
                                                        Instrument      Book Page
                                                        200800000275 OR  883  754
```

    **18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

    If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

    **19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

    **20. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

    **21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Growing Equity Rider | ☒ Other [specify] |
| ☐ Planned Unit Development Rider | ☐ Graduated Payment Rider | Legal Attached |

Initials: DMZ

```
                                                    Instrument      Book Page
                                                    200800000275 OR  883  755
```

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____     _Dawn M Zurinski_06/2008_ (Seal)
                              Dawn M. Zurinski            -Borrower


_____     _____(Seal)
                                                           -Borrower


_____(Seal)   _____(Seal)
                        -Borrower                          -Borrower


_____(Seal)   _____(Seal)
                        -Borrower                          -Borrower


_____(Seal)   _____(Seal)
                        -Borrower                          -Borrower

```
Instrument         Book  Page
200800000275  OR   883   756
```

**STATE OF ILLINOIS,**               Marshall                          **County ss:**

I, Elizabeth A. Beck              , a Notary Public in and for said county and state do hereby certify
that Dawn M. Zurinski, a single woman

, personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he/she/they signed and delivered the said instrument as his/her/their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this      6th      day of      February      2008      .

My Commission Expires:

_____Elizabeth B. Beck_____
Notary Public

```
OFFICIAL SEAL
ELIZABETH A BECK
Notary Public - State of Illinois
My Commission Expires Aug 14, 2009
```

VMP®-4N(IL) (0305).01                    Page 9 of 9

**LEGAL DESCRIPTION**

Instrument        Book Page
200800000275 OR   883  757

**Legal Description:**

The East Half of Lots 19 and 20 in Block 78 of Santa Fe's First Addition to the City of Toluca, Marshall County, Illinois, excepting therefrom all stone, coal and fireclay underlying said land with the right of removing the same therefrom.

**Permanent Index Number:**

Property ID: 14-05-384-011

**Property Address:**

    133 S. Willow
    Toluca, IL  61369

```
                                              Instrument      Book  Page
                                              200800001251 OR  888   521
```

This document was prepared by: HEATHER MORGAN
ACRI COMPANY
124 EAST 18TH STREET
MILAN, IL 61264

```
200800001251
Filed for Record in
MARSHALL COUNTY, IL
ANDREA J MAHONEY-PLATT
05-28-2008 At 11:42 am.
MTG                   45.00
OR Book  888 Page  521 -  527
RHSP Surcharge        10.00
```

Recording Requested by & Return To:
US Recordings, Inc.
c/o Intellihub Solutions and Services
11751 Interchange Drive, Suite B
Louisville, KY 40229

———— State of Illinois ————————————————— Space Above This Line For Recording Data ————

# MORTGAGE
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is .......3-18-08.................... and the parties, their addresses and tax identification numbers, if required, are as follows:

   **MORTGAGOR:**
   DAWN M ZURINSKI   UNMARRIED
   133 S WILLOW
   TOLUCA, IL 61369


   **LENDER:**
   ACRI COMPANY
   124 EAST 18TH STREET
   MILAN, IL 61264


2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, sells, conveys, mortgages and warrants to Lender the following described property:
   Buyer agrees that the Legal Description Exhibit A which is required by the County Recorder and is added for identification only, shall be filled in by Contractor/Seller or Holder at a later date.



   The property is located in ....MARSHALL.................................................. at ..................................................
   .................................................(County)
   ...133 S WILLOW................................, ....TOLUCA..............................., Illinois ..61369...........
   (Address)                                   (City)                                     (ZIP Code)

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*

   Security Agreement and Home Improvement Contract dated 3-18-08
   In the amount of $10,850.00

ILLINOIS - MORTGAGE (NOT FOR FNMA, FHLMC, FHA OR VA USE)                                      DMZ     *(page 1 of 6)*
Exper¥ ©1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-IL 12/14/2001

Instrument    Book Page
200800001251 OR  988  526

24. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ ..10,850.00.............................. . This limitation of amount does not include interest, attorneys fees, and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

25. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

    ☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.
    ☒ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.
    ☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.
    ☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
    ☐ Condominium Rider  ☐ Planned Unit Development Rider  ☐ Other ..........................................
    ☐ **Additional Terms.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

*Dawn M Zurinski  3-18-08*
(Signature) DAWN M ZURINSKI           (Date)    (Signature)                              (Date)

**ACKNOWLEDGMENT:**
STATE OF ....IOWA.............., COUNTY OF ...SCOTT.............} ss.
(Individual) This instrument was acknowledged before me this ....18.... day of ...March, 2008.......
by ...Dawn M. Zurinski...........................
My commission expires:
(Seal)   JULIE HILDEBRANDT
         Commission Number 725695
         My Commission Expires
                                        *Julie Hildebrandt*
                                        (Notary Public)
                                        JULIE HILDERBRANDT

Experí ©1994 Bankers Systems, Inc., St. Cloud, MN  Form RE-MTG-IL 12/14/2001                        (page 6 of 6)

```
Instrument        Book Page
200800001251 OR   888  527
```

EXHIBIT "A"

ZURINSKI, DAWN

THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE CITY OF TOLUCA, COUNTY OF MARSHALL AND STATE OF ILLINOIS:

THE EAST HALF OF LOTS 19 AND 20 IN BLOCK 78 OF SANTA FE'S FIRST ADDITION TO THE CITY OF TOLUCA, MARSHALL COUNTY, ILLINOIS, EXCEPTING THEREFROM ALL STONE, COAL AND FIRECLAY UNDERLYING SAID LAND WITH THE RIGHT OF REMOVING THE SAME THEREFROM.

PARCEL NO. 14-05-384-011

```
200800001710
Filed for Record in
MARSHALL COUNTY, IL
ANDREA J MAHONEY-PLATT
07-22-2008 At 11:38 am.
ASSIG MTG           42.00
OR Book  890 Page  522 - 523
RHSP Surcharge      10.00
```

——— State of Illinois ——————————————— Space Above This Line For Recording Data ———

This instrument was prepared by: *Heather Morgan*
ACRI COMPANY 124 EAST 18TH STREET, MILAN, IL 61264 *309-756-1404*
When recorded return to:
U.S. Recordings 2925 Country Drive St. Paul, MN 55117

## ASSIGNMENT OF MORTGAGE

For Value Received, ACRI COMPANY _____, which is organized and existing under the laws of ILLINOIS _____ sells, assigns and transfers to Community Home Financial Services, Inc. _____, which is organized and existing under the laws of MISSISSIPPI _____, whose address is 234 E Capitol Street, Ste. 200 Jackson, MS 39201-2410 _____, all right, title and interest in and to that certain Mortgage dated 3-18-08 _____, made and executed by DAWN M ZURINSKI _____ as Mortgagor, and ACRI COMPANY _____, as Mortgagee and filed for record on 5/28/2008 _____, in Book 888 Page 521 _____ in the _____ for MARSHALL County, Illinois, together with all right, title and interest in the note and debt described therein.

LENDER:
ACRI COMPANY

*/s/ Tim Acri - Vice President/*

TIM ACRI   VICE PRESIDENT

ACKNOWLEDGMENT.
(Lender Acknowledgment)

STATE OF ILLINOIS _____, COUNTY OF ROCK ISLAND ss.
This instrument was acknowledged before me this 5 day of MAY 2008 by
TIM ACRI      VICE PRESIDENT _____ (Title) of VICE
PRESIDENT ACRI COMPANY (Name of Business or Entity) a(n) VICE PRESIDENT _____ on behalf of the business or entity.
My commission expires: 8-31-2010
(Seal)

```
OFFICIAL SEAL
SHIRLEY A. BOLAND
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 8-31-10
```

*/s/ Shirley A. Boland/*
(Notary Public)
SHIRLEY A BOLAND

Expert© ©Bankers Systems, Inc., St. Cloud, MN Form ASSIGN-IL 3/21/2001                               (page 1 of 1)

EXHIBIT "A"

ZURINSKI, DAWN

THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE CITY OF TOLUCA, COUNTY OF MARSHALL AND STATE OF ILLINOIS:

THE EAST HALF OF LOTS 19 AND 20 IN BLOCK 78 OF SANTA FE'S FIRST ADDITION TO THE CITY OF TOLUCA, MARSHALL COUNTY, ILLINOIS, EXCEPTING THEREFROM ALL STONE, COAL AND FIRECLAY UNDERLYING SAID LAND WITH THE RIGHT OF REMOVING THE SAME THEREFROM.

PARCEL NO. 14-05-384-011